1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES COUR OF APPEALS**

**FOR THE NINTH CIRCUIT**

NADIA NAFFE                                )          U.S.C.A No. 13-55666
                                           )
   Plaintiff-Appellant,             )          U.S.D.C. No. 12CV08443
                                           )          (CENTRAL DISTRICT OF
v.                                         )          CALIFORNIA)
                                           )
JOHN PATRICK FREY,                         )
                                           )
   Defendant, Appellee.             )
                                           )
_____        )

---

APPELLANT'S OPENING BRIEF

---

Appeal from the United States District Court
for the Central District of California

The Honorable George H. Wu, District Court Judge

EUGENE G. IREDALE
State Bar No. 75292
GRACE JUN
State Bar No. 287973
105 West F Street, 4th Floor
San Diego, CA 92101
Telephone: (619) 233-1525
Facsimile: (619) 233-3221
Attorney for Plaintiff
Appellant NADIA NAFFE

**CERTIFICATION AS TO INTERESTED PARTIES**

Counsel for plaintiff-appellant Nadia Naffe certifies that the only known interested parties in this case are Nadia Naffe and John Frey.


Dated: December 9, 2013            */s/ Eugene G. Iredale*
                                   EUGENE G. IREDALE
                                   105 West "F" Street, Fourth Floor
                                   San Diego, California 92101
                                   Telephone: (619) 233-1525
                                   Facsimile: (619) 233-3221
                                   Attorney for Plaintiff-
                                   Appellant NADIA NAFFE

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

STANDARD OF REVIEW ............................................................................ 2

JURISDICTIONAL STATEMENT ............................................................... 2

STATEMENT OF ISSUES ............................................................................ 4

    1. Whether Defendant Frey, a Deputy District Attorney in Los Angeles County, acted under color of state law pursuant to 42 U.S.C. § 1983 when he "tweeted" the following to Ms. Naffe using his personal Twitter account @Patterico:  "My first task is learning what criminal statues, if any, you have admitted violating."................................................................... 4

    2. Whether the District Court failed to apply the correct standard to determine that Plaintiff failed to provide competent proof that she suffered damages satisfying the threshold for diversity jurisdiction.  ............................. 4

STATEMENT OF THE CASE....................................................................... 4

STATEMENT OF THE FACTS .................................................................... 7

SUMMARY OF ARGUMENT ................................................................... 13

    I.     DEPUTY DISTRICT ATTORNEY FREY ACTED UNDER COLOR OF LAW WHEN HE THREATENED TO INVESTIGATE PLAINTIFF FOR POSSIBLE CRIMINAL VIOLATIONS ON TWITTER .... 13

        A. Because Defendant Frey's Threat is Directly Related to His State-Conferred Authority as a Prosecutor, Frey Acted Under Color of Law .......................................................................... 14

            1. "Patterico" is the digital alter-ego of Los Angeles County Deputy District Attorney John Patrick Frey ................. 15

            2. Defendant Frey exploited the authority given him by virtue of his state office when he threatened to investigate Ms. Naffe for possible criminal violations .. 18

B. Defendant Frey Acted to Chill Ms. Naffe's Speech and Retaliated Against Her for the Exercise of Her Free Speech Right. ......... 21

II.   Plaintiff Presented a Good Faith Claim that She Suffered An Amount in Controversy in Excess of the Jurisdictional Threshold ................. 23

CONCLUSION ............................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006) .................................... 19

*Anthony v. County of Sacramento*, 845 F. Supp. 1396 (E.D. Cal. 1994) 15, 18, 20

*Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476 (9th Cir. 1991) ............. 18

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) ......................................... 17

*Geographic Expeditions, Inc. v. Estate of Lhotka*,

      599 F.3d 1102 (9th Cir. 2010) ............................................. 23, 24, 25

*Griffin v. Maryland*, 378 U.S. 130 (1964) .................................................... 13

*Hall v. United States*, 419 F.2d 582 (5th Cir.) ............................................. 16

*Hartman v. Moore*, 547 U.S. 250 (2006) ...................................................... 20

*Johnson v. Knowles*, 113 F.3d 1114 (9th Cir. 1997) ................................ 1, 17

*Knevelbaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979 (9th Cir. 2000) ...... 2

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ..................... 20, 21

*McDade v. West,* 223 F.3d 1135 (9th Cir. 2000) .......................................... 17

*Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283 (9th Cir.1999). 20

*Murphy v. Chicago Transit Authority*, 638 F. Supp. 464 (N.D. Ill. 1986) ... 17

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) .............................................. 1

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 58 S.Ct. 586, 82 L.Ed. 845 (1938) ...................................................................... 22, 24

*United States v. Classic*, 313 U.S. 299 (1941) ............................................. 13

*West v. Atkins*, 487 U.S. 42 (1988) ............................................................... 13

**Rules and Statues**

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. §§ 1331 ......................................................................... 1

28 U.S.C. §§ 1332 ..................................................................... 1, 22

28 U.S.C. § 1367 ........................................................................... 1

42 U.S.C. 1983 ................................................................... *Passim*

Cal. Code Civ. P. § 1030 ............................................................... 4

Cal. Code Civ. P. § 425.16 ............................................................ 4

Federal Rules of Civil Procedure Rule 12(b)(6) .................... 1, 4, 5

Fed. R. Civ. P. Rule 41(a)(1) ........................................................ 3

## <u>INTRODUCTION</u>

Defendant / Appellee John Patrick Frey is a Los Angeles County Deputy District Attorney who identifies himself as "Patterico" online, through Twitter and his blog posts.  Defendant Frey claims that his online posts are made in his private capacity as an individual, but he pervasively references his position as a prosecutor, uses his authority as a prosecutor to bolster his opinions and exert influence, and identifies "Patterico" as a Los Angeles County prosecutor.  Internet observers and readers know "Patterico" to be the online representation of Deputy District Attorney John Frey.

In 2012, "Patterico" targeted Plaintiff / Appellant Nadia Naffe in online posts, attacking her, harassing her, bullying her, and disclosing private information about Ms. Naffe, including her Social Security number.  On Twitter, "Patterico" issued the following threat to Ms. Naffe: "@NadiaNaffe My first task is learning what criminal statutes, if any, you have admitted violating."

Ms. Naffe brought suit against Defendant Frey, alleging, among other causes of action, violation of 42 U.S.C. § 1983.  The District Court dismissed Ms. Naffe's § 1983 claim, finding that Defendant Frey did not act under color of state law when he issued his threat on Twitter.  Because Defendant Frey's threat of criminal investigation related directly to his public position as a prosecutor, Ms. Naffe files the instant appeal.

1

## STANDARD OF REVIEW

A district court's dismissal for failure to state a claim pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) is reviewed de novo. *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). In reviewing the district court's dismissal, this Court "must take all allegations of material fact in the Complaint as true and construe them in the light most favorable" to the Plaintiff. *Id*. A complaint should not be dismissed unless "it appears beyond doubt" that plaintiff can prove no set of facts that would entitle her to relief. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332; this case involves at least one federal question, the cause of action under 42 U.S.C. 1983 against Defendant John Patrick Frey, and the parties in this case are completely diverse with a matter in controversy that exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. The district court had pendent and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the final order of the district court. "Ordinarily an order dismissing the complaint rather than dismissing the action is not a final order and thus not appealable. However,

2

[i]f it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000) (internal citations omitted).

On April 19, 2013, the District Court entered its order dismissing Plaintiff's § 1983 claim without leave to amend and dismissing Plaintiff's remaining claims, without prejudice, after concluding that diversity jurisdiction was not present. "Failure to allow leave to amend supports an inference that the district court intended to make the order final. Furthermore, the court's intention of finality is evinced by its apparent conclusion that amendment of the complaint would not save the action." *Knevelbaard Diaries*, 232 F.3d at 983 (internal citations omitted). Also probative is the docket entry for the District Court's order dismissing Plaintiff's claims, which indicates that the court's order was a final dismissal, as the clerk's docket entry states "Made JS-6. Case Terminated." *Id.*; (E.R. 001132) "A 'JS-6' stamp on the order shows that the clerk reported the case as terminated to the Administrative Office of the United States Courts." *Id.*

Based on the foregoing, the April 19, 2013 order by the District Court was final and intended to dispose of the action. Plaintiff's Notice of Appeal was filed on April 22, 2013, which was timely under Federal Rules of Appellate Procedure, Rule 4(a)(1).

3

## STATEMENT OF ISSUES

1. Whether Defendant Frey, a Deputy District Attorney in Los Angeles County, acted under color of state law pursuant to 42 U.S.C. § 1983 when he "tweeted" the following to Ms. Naffe using his personal Twitter account @Patterico:  "My first task is learning what criminal statues, if any, you have admitted violating."

2. Whether the District Court failed to apply the correct standard to determine that Plaintiff failed to provide competent proof that she suffered damages satisfying the threshold for diversity jurisdiction.

## STATEMENT OF THE CASE

Plaintiff Nadia Naffe filed the instant lawsuit on October 2, 2012 against Defendants Steve M. Cooley, John Patrick Frey, Christi Frey, and the County of Los Angeles.  On November 12, 2012, Defendant John Patrick Frey ("Frey") moved to strike the second through sixth causes of action of Plaintiff's complaint and moved to dismiss the first through sixth causes of action.  (E.R. 0060).  On November 19, 2012, Ms. Naffe dismissed Mr. Cooley and Ms. Frey pursuant to Fed. R. Civ. P. Rule 41(a)(1).  (E.R. 0083).  On December 10, 2012, the District Court granted Defendant Frey's motions with leave to amend.[1]  (E.R. 0090).

---

[1] In its tentative ruling, the court stated that its analysis of Defendant Frey's pending motions was limited to the Rule 12(b)(6) challenge to Plaintiff's § 1983 claim.  (E.R. 0095).

4

Plaintiff filed a first amended complaint on December 27, 2012 against Defendant Frey and Defendant County of Los Angeles ("County"). Ms. Naffe alleged a violation of 42 U.S.C. § 1983 against both Defendants Frey and County. (E.R. 00120). She subsequently dismissed the § 1983 allegation against the County. (E.R. 1056). Ms. Naffe has alleged the following state law causes of action against both Defendants Frey and County: (2) public disclosure invasion of privacy; (3) false light invasion of privacy; (4) defamation; (5) intentional infliction of emotional distress; (6) negligence; and, against Defendant County only, (7) negligent supervision. (E.R. 00121).

On January 11, 2013, Defendant Frey moved to dismiss the first through sixth causes of action of Plaintiff's First Amended Complaint (FAC) pursuant to Fed. R. Civ. P. Rule 12(b)(6) (E.R. 00136); he moved to dismiss the second through seventh causes of action of the FAC pursuant to Fed. R. Civ. P. Rule 12(b)(1) (E.R. 158); Frey moved for a security undertaking pursuant to Cal. Code Civ. P. § 1030 (E.R. 169); moved to dismiss the second through sixth causes of action of the FAC pursuant to California's Anti-Slapp statute, Code Civ. P. § 425.16; and requested the court take judicial notice of certain documents in support of the aforementioned motions (E.R. 215). Defendant Frey also filed various declarations in support of his motions. (E.R. 00617, 00622). On January 11, 2013,

5

Defendant County moved to dismiss Plaintiff's first amended complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6).  (E.R. 287).

On April 18, 2013, the District Court issued a tentative ruling on Defendants' motions to dismiss Plaintiff's FAC.  (E.R. 001138).  The court stated that it would consider the motions of Defendants Frey and County "to the extent they challenge plaintiff's first claim for relief, brought pursuant to 42 U.S.C. § 1983."  (E.R. 001139).  The court would then consider "Frey's motion to dismiss the second through seventh causes of action, a challenge to Plaintiff's assertion that diversity jurisdiction exists here based upon an argument that the $75,000 jurisdictional minimum is not satisfied."  *Id*.  Depending on the resolution of these issues, the court intended to either "dismiss what remains of the action or return to the other motions and arguments the defendants pose."  *Id*.

On April 19, 2013, the District Court issued its order confirming its tentative ruling.  (ECF no. 65 at page 2).  The court dismissed Plaintiff's § 1983 claim without leave to amend.  *Id*.  The court also dismissed Plaintiff's remaining claims, without prejudice, after concluding that diversity jurisdiction was not present in the action because Plaintiff had failed to show that an amount in excess of $75,000 was in controversy.  *Id*.

///

 ///

## STATEMENT OF THE FACTS

In February and March of 2012, Plaintiff Nadia Naffe became the target of Defendant John Patrick Frey's campaign of harassment and intimidation, which he perpetrated through his blog, "Patterico's Pontifications," http://patterico.com, and using his Twitter account @Patterico.[2] (E.R. 00110).  Defendant Frey is a Deputy District Attorney in Los Angeles County. (E.R. 0099).  He blogs extensively and is active on Twitter (https://twitter.com/Patterico)[3].  Frey has adopted the moniker "Patterico" to identify himself online and refers to himself as "Patterico" in Internet postings.  (E.R. 00101)  On his blog, (http://patterico.com/about-patterico)[4], Frey writes about himself, "Patterico," in the third person:

> Patterico is a prosecutor in Los Angeles County . . . . In addition to prosecuting criminals, Patterico maintains a blog called Patterico's Pontifications. Topics include media bias, legal issues, and political discussion from a libertarian/conservative perspective. A frequent target of criticism is the Los Angeles Dog Trainer (aka the Los Angeles Times).

Prior to the events underlying this case, Ms. Naffe had no contact with Defendant Frey, though they shared mutual friends and acquaintances, including

---

[2] Plaintiff / Appellant Nadia Naffe's factual recitation is taken from her first amended complaint in which she has alleged facts upon information and belief.  In reviewing the district court's dismissal, this Court "must take all allegations of material fact in the Complaint as true and construe them in the light most favorable" to the Plaintiff.  *Johnson v. Knowles*, 113 F.3d at 1117.

[3] Last accessed December 9, 2013.  As of that date, Defendant Frey had 10,535 tweets and 14,992 followers.

[4] Last accessed December 9, 2013.

the conservative activist James O'Keefe and the late conservative media mogul Andrew Brietbart.  (E.R. 00106, 00109).  Mr. O'Keefe became notorious for unlawfully recording his encounter with a staff member at the organization ACORN during which O'Keefe represented to the ACORN staff member that he was a pimp and his female associate a prostitute. (E.R. 00106).  Ms. Naffe believes that Defendant Frey and his wife are close, personal friends of O'Keefe and that O'Keefe interned at the Los Angeles County District Attorney's Office while he was a law school student at UCLA.  *Id*.  Frey has used his blog to publicly defend O'Keefe and encourage O'Keefe, even urging O'Keefe to file suit against certain individuals. (E.R. 00107).

In January 2010, Ms. Naffe and O'Keefe were involved in efforts to wiretap the office of Congresswoman Maxine Water, which is located in Los Angeles County. (E.R. 00108).  Frey became aware of Ms. Naffe's involvement with O'Keefe in the wiretap incident at some point after the incident occurred.  *Id*. During the wiretapping incident, Ms. Naffe also gained access to O'Keefe's e-mails after O'Keefe used Ms. Naffe's phone to log into his e-mail account and failed to log out; Frey became aware of this fact afterwards.  (E.R. 00108, 00113). Ms. Naffe gained access to seven years of O'Keefe's e-mails. (E.R. 00108).

In October 2011, O'Keefe drugged Ms. Naffe and attempted to sexually assault her in New Jersey (the "Barn Incident"). (E.R. 00109).  The following

8

month, O'Keefe posted a video containing derogatory statements about Ms. Naffe on the video sharing website, YouTube. *Id.* This prompted Ms. Naffe to file a criminal harassment complaint against O'Keefe that was ultimately dismissed for lack of jurisdiction. *Id.*

In February 2012, Defendant Frey began to publicly defend O'Keefe in interviews with various online news media sites and took to Twitter to attack and undermine Ms. Naffe. (E.R. 00110, 00112). Frey demanded that Ms. Naffe immediately issue a retraction of her claims of sexual assault against O'Keefe. (E.R. 00110). In order to discredit Ms. Naffe's claims that O'Keefe had drugged her and sexually assaulted her during the "Barn Incident," Defendant Frey told a reporter that Ms. Naffe should be asked, "[i]f you were given roofies, how do you remember so much?" and "[i]f you turned your back, how do you know O'Keefe stopped by your beer?" *Id.*

In late February 2012, Frey became aware that Ms. Naffe intended to come to Los Angeles to meet with authorities to discuss the wiretapping actions she had engaged in with O'Keefe who was, that time, on federal probation[5]. (E.R. 00108, 00110). Frey knew Ms. Naffe had evidence of the illegal wiretaps of

---

[5] In May 2010, O'Keefe was sentenced to three years probation for an incident that targeted the telephones in the office of U.S. Senator Mary Landrieu. (E.R. 00107). O'Keefe pled guilty to entering federal property under false pretenses. *See* case no. 10-cr-00081-SRD-DEK for the U.S. District Court, Eastern District of Louisiana.

Congresswoman Maxine Waters's office and the offices of OneUnited; he knew that Ms. Naffe intended to come forward with this evidence, and, because the incident had occurred in Los Angeles County, that the Los Angeles County District Attorney's Office would receive such evidence. (E.R. 00111). Frey also knew that O'Keefe faced a prison sentence if Ms. Naffe made evidence of the illegal wiretaps available and that Ms. Naffe also had access to O'Keefe's e-mails, which contained evidence of O'Keefe's misconduct. (E.R. 00111).

During this same time period, late February 2012, Defendant Frey began to vociferously attack Ms. Naffe. (E.R. 00110). In late February 2012 to March 2012, Defendant Frey wrote at least eight separate articles about Ms. Naffe on his blog and continued to harass Ms. Naffe via Twitter, calling her, among other things, a "liar, illiterate, callous, self-absorbed, despicable." *Id.* Frey repeatedly questioned why Ms. Naffe did not "call a cab to escape the barn during the Barn Incident" during which Ms. Naffe had alleged that O'Keefe had sexually assaulted her. *Id*. He also accused Ms. Naffe of filing a false complaint of harassment. *Id*.

On March 14, 2012, in an attempt to combat misconceptions regarding the Barn Incident, Ms. Naffe began posting a series of articles on her personal blog. (E.R. 00113). Ms. Naffe also wrote about the incident regarding O'Keefe and the illegal wiretapping of Congresswoman Water's office and the offices of the bank OneUnited. *Id*. At that time, Ms. Naffe intended to turn over audio recording of

10

the wiretapping of Congresswoman Waters's office to either the Los Angeles County Sheriff's Department or the Los Angeles County District Attorney's Office. *Id*.

Shortly thereafter, on Friday, March 23, 2012, during normal business hours, Defendant Frey published to his blog several documents related to the civil suit filed by O'Keefe against Ms. Naffe, including an order granting an injunction against Ms. Naffe (this civil suit was separate from the criminal harassment complaint arising from the Barn Incident). *Id*. That same day, Ms. Naffe informed Defendant Frey via Twitter that she intended to notify both the Los Angeles County District Attorney's Office and the California State Bar that he was misusing government time and resources by blogging and tweeting about the dispute between O'Keefe and Ms. Naffe. *Id*.

Immediately after Ms. Naffe notified Frey that she intended to report him to the State Bar, on the evening of March 23, 2012, and continuing to March 24, 2012, Defendant Frey unleashed a barrage of angry and threatening "tweets" directed at Ms. Naffe:

> "O'Keefe injunction against @NadiaNaffe releasing his hacked emails now online. Come see why she is threatening my job. http://t.co/BuPzYNXB" (time stamped Saturday March 24, 2012, at 01:21:18 am.)

> "It is crystal clear any complaint filed by @NadiaNaffe will be frivolous attempt to silence my public voice. Part of a pattern." (time stamped Saturday March 24, 2012, at 01:22:58 am.)

11

"All @NadiaNaffe is doing is strengthening evidence of ties between her and others who have used similar tactics." (time stamped Saturday March 24, 2012, at 01:24:47 am.)

"@NadiaNaffe Utterly false but why let that bother you?" (time stamped Saturday March 24, 2012, at 01:38:11 am.)

"@jdonels Can you send me the federal statute?" (time stamped Saturday March 24, 2012, at 01:39:27 am.)

"@Popehat Do you know the federal statute covering unauthorized access of email?" (time stamped Saturday March 24, 2012, at 01:40:45 am.)

"@NadiaNaffe This is quite a distraction from the points I raised in the post. I promise I will elaborate!" (time stamped Saturday March 24, 2012, at 01:45:07 am.)

**"@NadiaNaffe My first task is learning what criminal statutes, if any, you have admitted violating."** (time stamped Saturday March 24, 2012, at 01:46:01 am.)

"@Popehat If I check my email on ur phone, and when I return phone to you, you find you can access my email w/o my permission, can u legally?" (time stamped Saturday March 24, 2012, at 01:50:41 am.)

"@Popehat Fair enough. I'll look it up. Thanks." (time stamped Saturday March 24, 2012, 01:57:54 am.)

(E.R. 00113-00114) (emphasis added.)  Frey's tweets regarding checking e-mails

on a phone and statutes regarding illegal or unauthorized access to e-mails were

clearly in reference to the O'Keefe emails Plaintiff came to possess when O'Keefe

accessed his e-mail on Plaintiff's phone. (E.R. 00108).

12

Soon after publishing threats via Twitter to investigate Ms. Naffe for alleged criminal violations, Frey published on his blog a transcript containing Ms. Naffe's medical information, date of birth, maiden name, mother's maiden name, family address and Social Security number, information he accessed through PACER.gov, which Frey was acquainted with as a licensed attorney. (E.R. 00115, 00117). On March 26, 2012, Ms. Naffe began receiving numerous alerts from the credit reporting agency Experian that fraudulent changes had been made to her credit report. (E.R. 00117). Ms. Naffe continues to suffer from the effects of fraudulent uses of her Social Security number. *Id.*

Frey publicly disclosed where Ms. Naffe could be found on the campus of Harvard University, where Ms. Naffe is a student. FAC ¶ 61. This caused Ms. Naffe great distress as she feared for her personal safety and the possibility of attack from fans of Patterico, who had become vitriolic critics of Ms. Naffe, and expressed such comments on Patterico's blog. *Id.* at ¶¶ 58-59, 62. As a result of Defendant Frey's acts of harassment and intimidation, Ms. Naffe made private her previously public blog (nadianaffe.com) and her Twitter account (@NadiaNaffe). *Id.* a ¶ 68.

## <u>SUMMARY OF ARGUMENT</u>

I.    **DEPUTY DISTRICT ATTORNEY FREY ACTED UNDER COLOR OF LAW WHEN HE THREATENED TO INVESTIGATE PLAINTIFF FOR POSSIBLE CRIMINAL VIOLATIONS ON TWITTER**

### A. Because Defendant Frey's Threat is Directly Related to His State-Conferred Authority as a Prosecutor, Frey Acted Under Color of Law

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a Constitutional right and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49, *quoting United States v. Classic*, 313 U.S. 299, 326 (1941).

Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Atkins*, 487 U.S.at 50. *See also Griffin v. Maryland*, 378 U.S. 130, 135 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law").

Defendant Frey acted under color of state law when he relied on the authority of his state role as a prosecutor to threaten to criminally investigate Ms. Naffe. *Id.* A nexus exists between the wrongful act (the issuance of the threats) and Defendant Frey's abuse of his authority as a prosecutor in an attempt to

14

intimate and silence Ms. Naffe. *See Anthony v. County of Sacramento*, 845 F. Supp. 1396, 1401 (E.D. Cal. 1994). In a modern twist, Frey made these threats against Ms. Naffe, not in person, but through Twitter using his online persona "Patterico."

### 1. "Patterico" is the digital alter-ego of Los Angeles County Deputy District Attorney John Patrick Frey

Frey's pervasive online activity establishes that "Patterico" is a digital extension of John Patrick Frey, the Los Angeles County Deputy District Attorney. (E.R. 00100- 00106). Defendant Frey identifies himself as "Patterico" and describes "Patterico" as a prosecutor in Los Angeles County who prosecutes criminals. (E.R. 00101). In his blog posts, Defendant Frey has made clear that "Patterico's Pontifications" is the product of a deputy district attorney. (E.R. 00101-00104). Frey has indicated that "Patterico's Pontifications" is linked to his position as a prosecutor. (E.R. 00103). In a September 9, 2009 blog post entitled "**Patterico Banned at the L.A. Times???**," Frey wrote "**[a]re they banning all Deputy District Attorneys**? **Or just the ones that make them look like fools on a daily basis**?" *Id.* (emphasis added). Frey's post shows that he perceives any purported ban on "Patterico" to be related to Frey's position as Deputy District Attorney. *Id.* Due to Frey's repeated references to his position as a prosecutor, other media outlets have viewed "Patterico's Pontifications" as inextricably linked to his position as a deputy district attorney. (E.R. 00105).

15

Moreover, Frey frequently invokes his position as a prosecutor to lend substance and weight to his opinions. (E.R. 00103, 00104). He has used his position to lend authority and credence to his opinions, including claiming that "we Deputy DA's are suspicious by nature" (E.R. 00101); disparaging a commenter's critique on his blog post by stating "[i]n your world, every prosecution is of an innocent person . . . your world has nothing to do with the world I know, and you are clearly 100% ignorant of the nature of the process you are discussing" (E.R. 00102); asserting that "[b]eing a prosecutor is about presenting the truth" (Id.); and discussing inside information from the DA's Office (E.R. 00104).

"Patterico's" invocation of his authority as a prosecutor is subtle and Frey has intentionally crafted "Patterico" to give the impression that "Patterico" speaks as a private individual. His repeated identification as a prosecutor appears casual, offhand, and is almost always followed by a "disclaimer." But when "Patterico" continuously and extensively identifies himself as a prosecutor, when he uses his public position to exert influence and lend credibility to his opinions (*see* E.R. 00101-00103), and when he threatens criminal prosecution, Frey has transformed "Patterico" into the virtual, online personification of the Deputy District Attorney James Patrick Frey.

Thus, when "Patterico" spoke, he spoke with the authority and prestige of the Office of the District Attorney. By cloaking himself with the power of his

16

government position, "Patterico" placed readers and Internet observers on notice that his expressions carried the weight and gravitas of a prosecutorial office of the state government. Like the off-duty police officer who flashes his badge and uses a department issued handgun, "Patterico" openly displayed his credentials as a prosecutor.

When "Patterico" issued his threat to uncover "what criminal statutes, if any, you have admitted violating," the statement was uttered with the force of authority conferred on Frey by virtue of his position as a prosecutor on a matter in which Frey was uniquely endowed to act. In *Donnelly v. DeChristoforo*, 416 U.S. 637, 648 n.23 (1974), the Supreme Court cited to opinion of Chief Justice Tauro of the Supreme Judicial Court of Massachusetts:

> Unlike a newspaper, the prosecutor ostensibly speaks with the authority of his office. The prosecutor's 'personal status and his role as a spokesman for the government tend(ed) to give to what he . . . (said) the ring of authenticity . . . tend(ing) to impart an implicit stamp of believability.' *Hall v. United States*, 419 F.2d 582, 583-584 (5th Cir.).[6]

Defendant Frey's threats were not made by a private individual, in his personal capacity, who happened to also work as a prosecutor during normal

---

[6] The original quote from the Fifth Circuit's opinion in *Hall* reads as follows: the "prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity. The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says." *Hall v. United States*, 419 F.2d 582, 583-84 (5th Cir. 1969)

17

business hours.  Rather, "Patterico," the blogger and Internet persona, had a long, active online history and presence as the virtual ego of Deputy District Attorney John Patrick Frey.

> ### 2.   Defendant Frey exploited the authority given him by virtue of his state office when he threatened to investigate Ms. Naffe for possible criminal violations

"[A]ction under color of law is always identified by reference to the relationship between defendant's alleged misconduct and his state-created duties and powers, rather than the status of the parties."  *Anthony*, 845 F. Supp. at 1401. *See McDade v. West,* 223 F.3d 1135, 1140 (9th Cir. 2000) (a public officer is acting under color of state law if he or she "is acting, purporting, or pretending to act in the performance of his or her official duties"); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997) (public official's alleged wrongful conduct not performed under color of state law if conduct is not related to performance of official duties); *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) ("For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendants," *quoting Murphy v. Chicago Transit Authority*, 638 F. Supp. 464, 468 (N.D. Ill. 1986)).

By threatening to conduct an investigation into possible laws that Ms. Naffe had admitted violating, Defendant Frey spoke with the authority of his office on a subject that uniquely related to his exclusive, state-authorized duties: criminal

investigation and charges of criminal complaints. His threats of criminal investigation were made in context of extensive efforts to intimidate and silence Ms. Naffe in February and March 2012. Frey had repeatedly criticized Ms. Naffe's account of the "Barn Incident" and her allegations of sexual assault against O'Keefe; he knew Ms. Naffe had illegally wiretapped the offices of Congresswoman Waters and OneUnited; and he knew that Ms. Naffe held seven years of O'Keefe's e-mails.

Defendant Frey was obviously angered when Ms. Naffe indicated that she intended to notify Frey's employer and the California State Bar for his misuse of government time and resources when he blogged and tweeted about her dispute with O'Keefe. In response to Ms. Naffe's statement that she would be contacting the District Attorney's Office and State Bar, Frey tweeted back "[t]hat is false. But then, you're full of false allegations, aren't you?" (E.R. 00113).

Against this backdrop, Defendant Frey issued statements to Ms. Naffe, which a reasonable person could infer were threats to investigate and prosecute or to influence others prosecutors (including federal prosecutors) to do so. As a prosecutor in Los Angeles County, Frey was empowered to prosecute Ms. Naffe under California Penal Code § 632 for illegally recording conversations with Congresswoman Waters.

19

Whether Defendant Frey actually intended to prosecute Ms. Naffe is immaterial to the "color of law" analysis because the wrongful act was completed when "Patterico" issued his threats. The District Court found that Ms. Naffe had "failed to allege facts demonstrating that this comment has anything to do with anything over which a Los Angeles County Deputy District Attorney such as Frey could possibly have jurisdiction." (E.R. 001142). The court found it difficult to discern the meaning behind the Tweet at issue because it appeared that Frey was referring to incidents and actions that had occurred outside of the state of California and referenced potential violations of federal law. (E.R.001132).

For purpose of the § 1983 "color of law" analysis, Ms. Naffe need only show that the wrongful act alleged is related to the performance of the state actor's duties. *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) ("the challenged conduct must be related in some meaningful way either to the officer's governmental status or to the performance of his duties"); *Anthony*, 845 F. Supp. at 1400 ("[w]hether a state employee acts under color of law turns on the relationship of the wrongful act to the performance of the defendant's state duties"). The threat to investigate Ms. Naffe for possible criminal violations was intended to chill Ms. Naffe's speech. That misconduct, which led to Ms. Naffe's Constitutional deprivation, was directly related to Defendant Frey's state-conferred authority as a Deputy District Attorney to investigate and prosecute violations of law.

20

Because Defendant Frey abused the authority of his public position when he threatened Ms. Naffe, he acted under "color of law" for purposes of 42 U.S.C. § 1983.

### B. Defendant Frey Acted to Chill Ms. Naffe's Speech and Retaliated Against Her for the Exercise of Her Free Speech Right.

"Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (internal citations omitted; alteration in the original). To show a First Amendment violation, Ms. Naffe must plead facts that demonstrate that Frey's actions "deterred or chilled" her speech and that such deterrence "was a substantial or motivating factor" in Defendant Frey's conduct. *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012). Ms. Naffe need not show that her speech was "'actually inhibited or suppressed.'" *Id.*, *citing Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir.1999). The relevant inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Lacey*, 693 F.3d at 916-17 (internal quotation omitted). Ms. Naffe must allege facts ultimately enabling her to "'prove the elements of retaliatory animus as the cause of injury,'

21

with causation being 'understood to be but-for causation.' *Id*. at 917., *citing Hartman,* 547 U.S. at 260.

Plaintiff's First Amended Complaint makes clear that the timing and sequencing of Frey's threats were made to dissuade her from releasing evidence related to the wiretapping of Congresswoman Waters; to intimidate her into silence with respect to the issue of O'Keefe's e-mails, which she possessed; and to prevent her from seeking redress for her grievances by reporting a crime in the appropriate jurisdiction or making a complaint with the State Bar of California and the District Attorney's Office. (E.R. 00114, 00116, 00119). Ms. Naffe has alleged facts that show that the threats were made to deter Ms. Naffe from speaking out. *Id*.

Frey continued his harassment of Ms. Naffe when he uploaded deposition transcripts to his blog, which stemmed from a 2005 lawsuit involving Ms. Naffe and her former employer. (E.R. 00115, 00116). The transcripts contained private data concerning Plaintiff, including her Social Security number, date of birth, mother's maiden name, family address and Plaintiff's medical information. (E.R. 00115).

Ms. Naffe has alleged facts that show that Frey's conduct was for the sole purpose of silencing Ms. Naffe and dissuading her from reporting him. Ms. Naffe was further silenced when she was forced to make private her previously public blog and public Twitter account.

22

Because Ms. Naffe has alleged a Constitutional violation by a defendant acting under color of state law, she has pled sufficient facts to state a claim pursuant to 42 U.S.C. § 1983.

## II. PLAINTIFF PRESENTED A GOOD FAITH CLAIM THAT SHE SUFFERED AN AMOUNT IN CONTROVERSY IN EXCESS OF THE JURISDICTIONAL THRESHOLD.

A federal court may exercise diversity jurisdiction if the suit is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.  28 U.S.C. § 1332(a).  "Where the plaintiff originally files in federal court, 'the amount in controversy is determined from the face of the pleadings.'" *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010), *citing Crum*, 231 F.3d at 1131 (9th Cir.2000).  The amount in controversy alleged by the party seeking federal jurisdiction controls, so long the claim is made in good faith.  *Id.  Accord St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("the sum claimed by the plaintiff controls if the claim is apparently made in good faith").  "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount . . . a federal court has subject matter jurisdiction unless upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount."  *Geographic Expeditions*, 599 F.3d at 1106.  "The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad

faith or oust the jurisdiction.  Nor does the fact that the complaint discloses the existence of a valid defense to the claim."  *St. Paul*, 303 U.S. at 289 (internal citations omitted).

The District Court, *sua sponte*, indicated that it needed more from Ms. Naffe to determine whether damages of $75,000 or more were in controversy.  (E.R. 001144).  Ms. Naffe provided a declaration regarding her damages, which the court considered.  (E.R. 001145).  Because Plaintiff's declaration was the only evidence before the court regarding Plaintiff's injuries, the court found that her declaration, "purely as a mathematical matter . . . obviously would satisfy a 'preponderance standard.'"  *Id*.  In a footnote, the court also noted that Ms. Naffe had not argued with the court's reliance on "McNutt's preponderance standard, as opposed to the legal certainty standard mentioned in *Geographic Expeditions* and *Sanchez*."  Given the court's statement that Plaintiff's declaration "purely as a mathematical matter" would obviously "satisfy a 'preponderance standard,'" it is not entirely clear what standard the court applied in making its ruling.

Additionally, the court questioned whether Ms. Naffe would be able to recover the jurisdictional amount for her claimed injuries and whether Ms. Naffe could recover damages in light of certain defenses that Defendants Frey and County could raise.  (E.R. 001146).  The court stated the following:

> As Frey argues, there is reason to question whether
> Plaintiff ever could be liable for any sizable amount of

24

> money given the legal protections offered to those who
> have their identity stolen. . . . Plaintiff's complaints about
> 'death threats' forcing her to twice move that are
> attributable to Frey's "unstable fans and followers" are,
> again, relatively vague; moreover, the Court might
> question why Frey (and/or the County) should be
> chargeable for such conduct. . . . Finally, although
> Plaintiff asserts it is difficult for her to find employment
> (because of Frey's "attacks" on her credibility and
> honesty), she also admits that she is a full time student.
> She does not identify any particular employment she
> claims to have lost.  Nor does she appear to account for
> the fact that she has admitted to a role in the wiretappings
> of Maxine Water's office, see FAC ¶¶ 30-32, another fact
> that is – unfortunately for her – "available for all
> prospective employers to read."

*Id*.  Neither a plaintiff's inability to recover the jurisdictional amount nor the

existence of a valid defense to a claim will preclude diversity jurisdiction.  *St.*

*Paul*, 303 U.S. at 289.  Though Defendants Frey and County are permitted to raise

defenses to Ms. Naffe's claims for damages for lost employment opportunities,

harassment, and death threats, their possible defenses do not divest the court of

diversity jurisdiction.  *Id*.  Nor does the possibility that Ms. Naffe may recover less

than the jurisdictional threshold for damages related to identity theft.  *Id*.

A "federal court has subject matter jurisdiction unless upon the face of the

complaint, it is obvious that the suit cannot involve the necessary amount."

*Geographic Expeditions*, 599 F.3d at 1106.  In her first amended complaint, Ms.

Naffe has pled facts to show that her damages will exceed $75,000, including fears

for personal safety (E.R. 00118-00120); expenses related to identity theft (E.R.

25

00117); emotional distress (E.R. 00115, 00117-00120); and medical treatment for health issues, such as a bleeding ulcer, caused by the stress and trauma inflicted by defendants (E.R. 00121).

Because Ms. Naffe made a good-faith claim in her first amended complaint that she suffered damages in excess of $75,000, the jurisdictional requirement, and complete diversity of citizenship exists between the parties (E.R. 0099), the District Court possesses subject matter jurisdiction over the instant case.

## CONCLUSION

Based on the foregoing, Ms. Naffe respectfully requests this Court to find that Defendant Frey acted under color of law when he issued his threat on Twitter pursuant to 42 U.S.C. § 1983 and to find that her allegations in the First Amended Complaint satisfied the jurisdictional requirement for diversity.

Respectfully submitted,

s/ Eugene G. Iredale
Attorney for Plaintiff
Nadia Naffe

s/ Grace Jun
Attorney for Plaintiff
Nadia Naffe

26