No. 13-55666

U.S.D.C Case No. 2:12-cv-08443-GW-MRW

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

NADIA NAFFE, an individual,

Plaintiff - Appellant

v.

JOHN PATRICK FREY, an individual,

Defendant - Appellee

_____

## APPELLEE'S ANSWERING BRIEF

_____

Appeal from the United States District Court
for the Central District of California

The Honorable George H. Wu, Judge

_____

RONALD D. COLEMAN
rcoleman@goetzfitz.com
GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 3100
New York, NY 10119
Tel.: (212) 695-8100
Fax: (212) 629-4013

KENNETH P. WHITE (Bar No. 173993)
kwhite@brownwhitelaw.com
BROWN WHITE & NEWHOUSE LLP
333 South Hope Street, 40th Floor
Los Angeles, CA 90071-1406
Tel: (213) 613-0500
Fax: (213) 613-0550
Attorneys for Defendant and Appellee John Patrick Frey

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ......................................................................1

II.  ISSUES PRESENTED FOR REVIEW ..........................................4

III. STATEMENT REQUESTING ORAL ARGUMENT...................4

IV.  STATEMENT OF THE CASE ..................................................4

V.   STATEMENT OF FACTS ..........................................................6

    A.   Mr. Frey, A Deputy District Attorney, Writes A Blog In His
        Private Capacity ..................................................................7

    B.   Appellant Publicly Accused James O'Keefe Of Sexual Assault,
        And Mr. Frey Wrote About The Press Coverage And
        Appellant's Accusation .......................................................8

    C.   Appellant Repeatedly Threatened Mr. Frey In Retaliation For
        His Protected Speech..........................................................13

    D.   Appellant Filed Her Initial Complaint Against Mr. Frey, Mrs.
        Frey, The County of Los Angeles, And The Former District
        Attorney............................................................................14

    E.   Appellant Filed Her First Amended Complaint, But Failed To
        Plead Action Under Color of State Law Or Show That She
        Could Satisfy The Amount In Controversy Requirement..................15

VI.  SUMMARY OF ARGUMENT..................................................18

VII. ARGUMENT...........................................................................19

    A.   THE DISTRICT COURT DID NOT ERR IN FINDING THAT
        APPELLANT DID NOT STATE FACTS SUFFICIENT TO
        ESTABLISH THAT MR. FREY ACTED UNDER COLOR
        OR LAW .........................................................................19

i

# TABLE OF CONTENTS

Page

1.    Standard of Review ...................................................................20

2.    Pleading Standard and Facts Properly Considered ..................20

3.    Section 1983 Requires Appellant To Show Action
      "Under Color of State Law" .....................................................22

4.    Appellant Did Not Plead Facts Sufficient To Show That
      Mr. Frey Acted Under Color of State Law Throughout
      His Course of Blogging And Tweeting ....................................24

5.    Appellant Did Not Plead Facts Sufficient To Show That
      Mr. Frey Acted Under Color of State Law When He
      Tweeted A Comment About What Statutes She Might
      have Violated ...........................................................................30

B.    THE DISTRICT COURT DID NOT ERR IN FINDING THAT
      APPELLANT DID NOT DEMONSTRATE AN AMOUNT IN
      CONTROVERSY EXCEEDING THAT $75,000
      JURISDICTIONAL THRESHOLD...................................................36

      1.    Standard of Review .................................................................36

      2.    The Court Need Not Reach This Issue, As Appellant
            Conceded The Standard Below.................................................37

      3.    The District Court Correctly Placed The Burden On
            Appellant To Prove That The Amount In Controversy
            Exceeded $75,000 ....................................................................38

      4.    Appellant Does Not Argue That She Carried Her Burden,
            And She Did Not......................................................................41

VIII.  CONCLUSION.................................................................................43

IX.   CERTIFICATED OF COMPLIANCE PURSUANT TO
      FED.R.APP.P. 32(a)(7)(C) ............................................................44

ii

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

X.    STATEMENT OF RELATED CASES.........................................................45

XI.    CERTIFICATE OF SERVICE......................................................46

# TABLE OF AUTHORITIES

Page

**Cases**

. *Bell Atlantic Corporation v. Twombly*,
    550 U.S. 554 (2007) ................................................................20

*Anderson v. Warner*,
    451 F.3d 1063 (9th Cir. 2006) ................................................ *passim*

*Anthony v. Cnty. of Sacramento, Sheriff's Dep't*,
    845 F. Supp. 1396 (E.D. Cal. 1994) ..............................................28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................22

*Bell Atlantic Corporation*,
    550 U.S. at 555 (2007) ........................................................ 20, 35

*City of San Diego, Cal. v. Roe*,
    543 U.S. 77 (2004) ................................................................25

*Co-Efficient Energy Sys. v. CSL Indus., Inc.*,
    812 F.2d 556 (9th Cir. 1987) ................................................ 37, 41

*Crum v. Circus Circus Enterprises*,
    231 F.3d 1129 (9th Cir. 2000) ..................................................40

*Daniels-Hall v. National Educ. Ass'n*,
    629 F.3d 992, 998 (9th Cir. 2010) ..............................................21

*Donnelly v. DeChristoforo*,
    416 U.S. 637 (1974) ................................................................29

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir.2004) ....................................................37

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,
    599 F.3d 1102 (9th Cir. 2010) ................................................ 39, 40

*Hall v. United States*,
    419 F.2d 582 (5th Cir. 1969) ................................................ 21, 29

*Harris v. Amgen, Inc.*,
    738 F.3d 1026 (9th Cir. 2013) ................................................ *passim*

*Huffman v. County of Los Angeles*,
    147 F.3d 1054 (9th Cir. 1998) ..................................................23

*In re Howell*,
    731 F.2d 624 (9th Cir. 1984) ....................................................38

iv

# TABLE OF AUTHORITIES

Page

*Linda R.S. v. Richard D.,*
  410 U.S. 614 (1973) ..................................................................36

*Mark v. Borough of Hatboro,*
  51 F. 3d 1137 (3rd Cir. 1995)....................................................22

*Martinez v. Colon,*
  54 F.3d 980 (1st Cir. 1995 ) ......................................................23

*McNutt v. Gen. Motors Acceptance Corp. of Indiana,*
  298 U.S. 178 (1936) ............................................................ *passim*

*Obsidian Fin. Grp., LLC v. Cox,*
  12-35238, 2014 WL 185376 (9th Cir. Jan. 17, 2014) .......................34

*Price v. Hawaii,*
  939 F.2d 702 (9th Cir.1991) ......................................................23

*Schatz v. Republican State Leadership Comm.,*
  669 F.3d 50 (1st Cir. 2012) .......................................................21

*Simmons v. Sacramento County Superior Court,*
  318 F.3d 1156 (9th Cir. 2003)...................................................23

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
  303 U.S. 283 (1938) ..................................................................40

*Tellabs, Inc. v. Malkor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ..................................................................21

*Travelers Prop. Cas. v. Good,*
  689 F.3d 714 (7th Cir. 2012)......................................................40

*United States v. Cassidy,* 814 F.Supp.2d 574 (D. Md. 2011) ...................................7

*United States v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) .....................................................21

*United States v. Ritchie,*
  342 F.3d 903 (9th Cir.2003).......................................................21

*United States v. Ullah,*
  976 F.2d 509 (9th Cir. 1992) .....................................................41

*Van Ort v. Stanewich,*
  92 F.3d 831 (9th Cir. 1996) .......................................................23

*Vestron, Inc. v. Home Box Office, Inc.,*
  839 F.2d 1380 (9th Cir.1988)....................................................37

v

# TABLE OF AUTHORITIES

Page

*West v. Atkins,*
  487 U.S. 42 (1988) ...............................................................................22

**Statutes**

42 U.S.C. § 1983 ........................................................................ *passim*

Cal. Code Civ. Proc. § 425.16 ........................................................ 5, 14

Cal. Code Civ. Proc. §1030 ........................................................... 6, 19

**Rules**

Fed. Rule Civ. Proc.12(b)(6)........................................................ *passim*

1002487.1

## I.  <u>INTRODUCTION</u>

This appeal arises from the dismissal of a frivolous complaint calculated to suppress protected speech.

The facts of record are these:  Appellant Nadia Naffe ("Appellant") publicly accused a political figure named James O'Keefe of sexual assault, and aggressively promoted her accusation in the media.  Appellee John Patrick Frey ("Mr. Frey") exercised his rights under the First Amendment to the United States Constitution to raise questions about Appellant's public allegations on his blog, "Patterico's Pontifications," and his related Twitter account.  Mr. Frey, who works as a Deputy District Attorney in Los Angeles County, blogs in his private capacity.

Among other things, Mr. Frey questioned the logic and consistency of Appellant's allegations, discussed whether she had admitted to a federal crime by bragging about downloading O'Keefe's emails, and pointed out that her description of the alleged assault *to the press* was entirely inconsistent with her *sworn testimony at a court hearing*.  In connection with his reporting about Appellant's story, Mr. Frey found Appellant's related deposition transcripts in the public record on PACER and published them on his blog.  Those transcripts revealed Appellant's testimony that she took medication that impaired her memory and ability to testify, which raised more questions about her accusations.

While Appellant feels free to levy serious accusations in the press and on social media, she does not believe the courts should permit others to criticize or question her.  Appellant sued Mr. Frey, his wife, Los Angeles County, and the former District Attorney for Los Angeles County.  Her theory was that Mr. Frey was acting in his official capacity as a Deputy District Attorney while writing on his private blog, and that by virtue of this alone his speech about her violated her civil rights and gave rise to a claim under 42 U.S.C. § 1983.

Appellant pursued her "official capacity" theory even though Mr. Frey explicitly and repeatedly states on his blog that he is writing in his personal capacity.  She pursued the theory by misrepresenting the substance of the communications she complained of – misrepresentations the district court found potentially sanctionable.  Appellant's complaint also accused Mr. Frey of public disclosure invasion of privacy, false light invasion of privacy, defamation, intentional infliction of emotional distress, and negligence, and accused the County and the District Attorney of negligent supervision.

After giving Appellant an opportunity to amend her grievously flawed pleading, the district court, on Mr. Frey's motion, dismissed Appellant's First Amended Complaint with prejudice.  The district court found, correctly, that Appellant failed to plead any facts showing that Mr. Frey was, as required by 42 U.S.C. § 1983, acting under color of state law when he blogged and tweeted about

2

politics.  To the contrary, the court noted that the posts relied on by Appellant showed that Mr. Frey repeatedly stated that he was blogging in his personal capacity.  The district court also questioned, *sua sponte*, whether Appellant could satisfy the $75,000 amount in controversy threshold for diversity jurisdiction in light of the nature of her claims.  Appellant responded by submitting a vague and conclusory two-page declaration with few jurisdictional facts and no exhibits.  Finding that Appellant had not carried her burden of demonstrating that she could satisfy the amount in controversy requirement and hence establish subject-matter jurisdiction, the district court dismissed Appellant's state claims with her Section 1983 claim.

On appeal Appellant claims, first, that she did state facts sufficient to show that Mr. Frey blogged and tweeted under color of state law.  But here, as in the district court, her argument relies on conclusory assertions, speculation, and statements that directly contradict her own purported evidence.  Appellant also asserts that the district court applied the wrong standard for determining the amount in controversy and should have accepted, at face value, her conclusory assertions that she suffered more than $75,000 in damages.  In so doing, however, Appellant misstates the law.  Because the district court, policing its own jurisdiction, raised the issue *sua sponte*, Appellant was required to prove the amount in controversy by a preponderance of evidence.  She did not.

1002487.1

This Court should affirm the judgment below.

## II.     ISSUES PRESENTED FOR REVIEW

A.     Whether the district court erred in finding that, as a matter of law, Appellant's conclusory allegations, which contradicted the documents upon which she relied, failed to state a claim that Mr. Frey was acting under color of state law for purposes of 42 U.S.C. § 1983.

B.     Whether the district court erred in requiring Appellant to demonstrate the amount in controversy by a preponderance of the evidence, given that the district court raised the issue *sua sponte* and Appellant did not challenge the district court's standard of proof below.

## III.     STATEMENT REQUESTING ORAL ARGUMENT

Mr. Frey believes this matter is suitable for resolution without oral argument.  In the event of oral argument, he respectfully requests 15 minutes to assist the Court in evaluating the issues presented herein.

## IV.     STATEMENT OF THE CASE

On October 2, 2012, Appellant filed her complaint against Mr. Frey, his wife Christi Frey ("Ms. Frey"), former District Attorney of Los Angeles County Steve M. Cooley, and Los Angeles County.  (CD 1; ER 1.)[1]  The complaint included

---

[1] "CD" refers to the civil docket, submitted at page 1179 of Appellant's Excerpts of Record, followed by the applicable item number.  "ER" refers to the Appellant's Excerpts of Record, followed by the applicable page.

seven causes of action:  violation of 42 U.S.C. § 1983, public disclosure invasion of privacy, false light invasion of privacy, defamation, intentional infliction of emotional distress, negligence, and negligent supervision.  (*Id.*)

On November 12, 2012, Mr. Frey filed two motions:  a special motion to strike the second through sixth claims under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16 (CD 16; ER 32), and a motion to dismiss the first through sixth claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  (CD 17; ER 60).

Appellant opposed both motions (CD 17, 20; AER 1, 11.)[2]  Plaintiff also dismissed Mr. Cooley and Ms. Frey as defendants.  (CD 19.)

On December 10, 2012, the district court granted Mr. Frey's motion to dismiss under Rule 12(b)(6), and, questioning *sua sponte* whether it had jurisdiction over the state claims, dismissed the entirety of the complaint with leave to amend without reaching the anti-SLAPP motion.  (CR 29; ER 86-97.)

On December 27, 2012, Appellant filed her First Amended Complaint asserting the same seven claims.  (CD 33; ER 98.)

On January 11, 2013, Mr. Frey filed four motions:  a renewed motion to dismiss the first through sixth claims pursuant to Rule 12(b)(6) (CD 34; ER 136); a motion to dismiss Appellant's state claims for lack of jurisdiction pursuant to Rule

---

[2] "AER" refers to Appellee's Excerpts of Record, followed by the applicable page number.

12(b)(1) (CD 35; ER 158); a motion for a bond pursuant to California Code of Civil Procedure section 1030 (CD 36; ER 169); and a renewed anti-SLAPP motion to strike the second through sixth claims (CD 37; ER 186).

Appellant opposed the motions on February 20, 2013.  (CD 53 – 57; ER 1022, 1040, 1061, 1068.)  Mr. Frey submitted replies in support of his motions on March 4, 2013.  (CD 61-64; ER 1083, 1093, 1114, 1122).

The district court heard oral argument on April 18, 2013, and issued a tentative ruling granting Mr. Frey's motions under Rules 12(b)(6) and 12(b)(1) and dismissing the FAC with prejudice without reaching Mr. Frey's other motions. (CD 67; ER 1138).  The district court confirmed that tentative ruling on April 19, 2013.  (CD 65.)  Appellant filed her notice of appeal on April 19, 2013.  (CR 66.)

## V.    <u>STATEMENT OF FACTS</u>

The following facts established below were properly considered by the district court in the context of Mr. Frey's Rule 12(b)(6) motion and the district court's inquiry into the amount at controversy in the case.  They include Appellant's own allegations, documents she incorporated by reference in her FAC, facts she admitted, and judicially noticeable facts.  *See* Section VII(A)(2), below.[3]

---

[3] Notably, Appellant has never objected to the consideration of this material in the context of Mr. Frey's Rule 12(b)(6) motion, and has never contested the authenticity of any of the documents.

A.     **Mr. Frey, A Deputy District Attorney, Writes A Blog In His Private Capacity**

Mr. Frey is a Deputy District Attorney for Los Angeles County.  (First Amended Complaint ("FAC") at ¶4; ER 99.)  He prosecutes gang murder cases. (FAC at ¶28; ER 418-419.)  Separate and apart from his professional duties, Mr. Frey also writes a blog[4] called "Patterico's Pontifications."  (FAC at ¶ 9; ER 100.) The blog's topics include media bias, legal issues, and political discussions "from a libertarian/conservative perspective."  (FAC at ¶ 10(a); ER 101.)  Mr. Frey also has a Twitter account[5] associated with the blog under the username "@Patterico." (FAC at ¶ 48; ER 113.)

As Appellant has repeatedly admitted, the Patterico's Pontifications blog bears a disclaimer that its content is "personal opinions . . . not made in any official capacity."  (Complaint at § 38; ER 9.)  Similarly, the profile page for Mr. Frey's

---

[4] This Court is undoubtedly familiar with the definition of a "blog."  See, e.g., *United States v. Cassidy*, 814 F.Supp.2d 574, 576 (D. Md. 2011) (defining a blog as a form of communication maintained on the Internet which is accessible to any person who chooses to read it).  The word is also used as a verb, i.e., "to blog" is to write or publish material on a blog.

[5] The *Cassidy* Court also explained Twitter as follows:

> "Twitter" is a "real-time information network that connects" users to the "latest information about what you find interesting. * * * At the heart of Twitter are small bursts of information called Tweets. Each Tweet is 140 characters in length...."  Twitter users may choose to "follow" other users. If user No. 1 decides to "follow" user No. 2, Twitter messages (Tweets) posted by user No. 2 will show up on the home page of user No. 1 where they can be read. (814 F.Supp.2d at 576.)

7

Twitter account @Patterico bears the disclaimer "All statements are made in my private capacity and not on behalf of my employer." (CD 20-3 at 1, AER 104.) Moreover, in several posts Appellant cited in her FAC (and therefore incorporated into her pleadings by reference), Mr. Frey repeatedly and specifically stated that he blogs in his personal capacity and not as a public official. (FAC at ¶ 28, ER 107, 418-19 ["I think it is actually known as the Invasion of Privacy Act, but don't take my word for it; contrary to Friedman's suggestions, I am not a wiretap violations prosecutor but a gang murder prosecutor, speaking in my private capacity as I always do on this blog."]; FAC at ¶ 45; ER 112, 423 ["I offer no opinion on that, as this post (like all my posts!) is written in my private capacity, as an exercise of my rights as a private citizen under the First Amendment."].

### B. Appellant Publicly Accused James O'Keefe Of Sexual Assault, And Mr. Frey Wrote About The Press Coverage And Appellant's Accusation

Appellant describes James O'Keefe as a "popular member of the conservative community" who, she claims, has been "vilified by the mainstream press for unfair and biased attacks on his targets." (FAC at ¶24; ER 106.) Appellant acknowledges that she was once a close associate of the "vilified" O'Keefe. She asserts, for instance, that she joined O'Keefe in illegally wiretapping the offices of Congresswoman Maxine Waters in 2010. (FAC at ¶ 30.) That association ended, however, and Appellant went so far as to accuse O'Keefe of

8

drugging her and sexually assaulting her in October 2011 in what she calls the "Barn Incident."  (FAC at ¶ 34; ER 109.)  The late Andrew Breitbart – whom Appellant describes as a "conservative media mogul" – commented to a reporter about Appellant's allegations concerning the "Barn Incident."  In response, Appellant, by her own admission, set out to "publicly challenge" Breitbart's statements on her own blog and Twitter account.  (FAC at ¶ 36, 46; ER 109, 113.)

In 2012, Mr. Frey began commenting on his blog and via Twitter about Appellant's public allegations against O'Keefe and the press coverage thereof. Appellant cited and complained of in her FAC (and, again, incorporated by reference) many of these posts.  For instance, in criticizing a journalist named Tommy Christopher for what he saw as credulous acceptance of Appellant's accusations, Mr. Frey posited a list of questions he believed Christopher *should* have asked Appellant about factual inconsistencies in her account of the Barn Incident.  (FAC at ¶ 45; ER 112, 423.)  In the course of doing so he noted that a court had issued an injunction against Appellant preventing her from releasing O'Keefe's emails.  (ER 423.)  Appellant admitted that she downloaded seven years of O'Keefe's emails, and that O'Keefe sued her to recover them.  (FAC at ¶¶ 32-33; ER 108-109.).  Musing on Appellant's downloading of O'Keefe's emails, Mr. Frey blogged the following hypothetical question:

> By the way:  given Naffe's admission that she accessed O'Keefe's emails, evidently without his permission, ***has she committed a crime?***

> ***I offer no opinion on that, as this post (like all my posts!) is written
> in my private capacity, as an exercise of my rights as a private
> citizen under the First Amendment***.  (ER 423 [emphasis added].)

This post is among those claimed by Appellant to constitute a violation of her

constitutional rights.

Similarly, Appellant complained in the FAC that Mr. Frey "harassed" a

"television news personality" named David Shuster for reporting on her

allegations, and that Mr. Frey had suggested that O'Keefe should sue Shuster for

his reporting.  (FAC at ¶¶ 18-19; ER 105-106.)  In fact, in the post that Appellant

incorporated into the FAC Mr. Frey contrasted Shuster's reporting on the "Barn

Incident" with what Appellant said about it *under oath* at a probable cause hearing

in New Jersey.  (ER 558-562.)[6]

Appellant alleged in the FAC that Mr. Frey wrote at least eight separate

articles about Appellant's accusations against O'Keefe, and that using his

@Patterico account he described her as a liar, illiterate, callous, self-absorbed,

---

[6] Mr. Frey noted, for instance, that contrary to Shuster's reporting, under oath
Appellant said that O'Keefe did not harass her until she left town *after* the Barn
Incident, and that he did not touch her or threaten to do so during the Barn
Incident.  (ER 560.)  Mr. Frey submitted the transcript of the probable cause
hearing in the district court subject to a request for judicial notice in connection
with his Rule 12(b)(6).  (AER 136, 187.)  The transcript showed that Appellant's
testimony under oath materially contradicted her allegations in the FAC, which she
repeats before this Court.  For instance, Appellant repeats her claims below that
O'Keefe sexually assaulted her in the Barn Incident.  (AOB 9, 10.)  But the
transcript shows that Appellant testified under oath that the only alleged
harassment occurred *after* the Barn Incident and that no harassment, touching, or
threat occurred during the Barn Incident.  (AER 195-8.)

10

despicable, a smear artist, dishonest, and absurd.  (FAC at ¶ 42; ER 111.)[7]  She

also complained that Mr. Frey violated her civil rights by writing blog posts that

sought to "poke holes" in her criminal harassment complaint against O'Keefe.

(*Id.*)

Plaintiff also alleges that in March 2012, a post on Patterico's Pontifications

discussed a federal lawsuit between Appellant and the Florida Republican Party in

the United States District Court for the Middle District of Florida.  (FAC at ¶¶ 49-

50; ER 115, 470-471.)  This post included transcripts of Appellant's deposition

from the case that Mr. Frey had downloaded from PACER, where they were

publicly available.  (FAC at ¶ 50; ER 115, 471-472.)[8]  When, a short time after

publication, Mr. Frey was advised that the transcripts included Appellant's social

security number, Mr. Frey redacted that information from his blog.  (FAC at ¶ 53;

---

[7] In his Anti-SLAPP motion below – which is not at issue on appeal – Mr. Frey
explained that he called Appellant "callous and self-absorbed" because she posted
a joke about Andrew Breitbart's heart attack on Twitter the day he died.  (ER 340.)
Appellant evidently believes it is actionable to criticize her for joking about
someone's death.

[8] Appellant claimed in her FAC that Mr. Frey was lying about downloading the
deposition transcripts from PACER.  (FAC at ¶ 50; ER 115.)  Mr. Frey
demonstrated in the district court that the depositions had been temporarily marked
as "restricted" but were again publicly available on PACER.  (ER 625.) Appellant
now concedes that the transcripts were downloaded from PACER.  (AOB at 13.)
The deposition transcripts remain in the public record on PACER, available for
judicial notice, as attachments to Docket Item 75 in *Naffe v. Republican Party of
Florida*, 04-cv-1916-JDW, in the Middle District of Florida.  Appellant filed the
transcripts as part of the Excerpts of Record on appeal in the public record.  (ER
628-1018.)

478.)

Mr. Frey's post noted, in terms of questioning Appellant's credibility, that the federal court in Florida found that Appellant took a laptop and failed to return it when ordered to.  (ER at 470.)  Mr. Frey's post also stated that according to her testimony in the depositions found on PACER, Appellant was taking Seroquel, a medication which, according to online resources, may be prescribed for schizophrenia, mania, and bipolar disorder, and which can have serious side effects if mixed with alcohol.  (ER 471, 475.)  Mr. Frey opined that the side effects of Seroquel when mixed with alcohol could explain Appellant's assertion that O'Keefe drugged her drink.  (ER 471.)

These facts, Mr. Frey explained, could be relevant to evaluating Appellant's claims about the Barn Incident.  (*Id.*)  In the district court, Mr. Frey submitted for judicial notice public filings by both Appellant and the Republican Party of Florida noting that her condition might impair her memory and testimony about matters. (AER at 157["Naffe even claimed that because of the medication she was taking, her doctor told her 'it is possible that I can't give accurate answers.'"]; 178 ["Defendant Republican Party of Florida decided it did not like Plaintiff's statement that she spoke with her treating doctor who told her that her medication could affect her memory and testimony."].)

12

### C.    Appellant Repeatedly Threatened Mr. Frey In Retaliation For His Protected Speech

Appellant's subsequent actions demonstrate her belief – relevant here because this belief is the premise of her appeal – that Mr. Frey does not have the right to question or criticize her when she accuses a public figure of sexual assault in the press.  For example, Appellant admits that, because of Mr. Frey's commentary about this matter, she threatened to report him to the District Attorney's Office and the California State Bar.  (FAC at ¶ 48; ER 113.)

Later, in a series of tweets from the @Patterico Twitter account, Mr. Frey pointed out that O'Keefe's injunction against Appellant regarding O'Keefe's email was online:  "O'Keefe injunction against @NadiaNaffe releasing his hacked emails now online.  Come see why she is threatening my job."  (FAC at ¶ 48(b); ER 114.) Minutes later, over the span of 20 minutes, he tweeted questions about Appellant's admitted downloading of O'Keefe's email:  "Do you know the federal statute covering unauthorized access of email?" and "can you send me the federal statute?" and "If I check my email on ur phone, and when I return phone to you, you find you can access my email w/o my permission, can u legally?"  (FAC at ¶ 48(f), (g), (j); ER 114.  During this same short period of time, Mr. Frey tweeted in response to a tweet from Appellant "@NadiaNaffe My first task is learning what criminal statutes, if any, you have admitted violating."  (FAC at ¶ 48(i); ER 114.)

**D.** **Appellant Filed Her Initial Complaint Against Mr. Frey, Mrs. Frey, The County of Los Angeles, And The Former District Attorney**

On October 2, 2012, Appellant filed her district court complaint against Mr. Frey, as well as Ms. Frey, former District Attorney of Los Angeles County Steve M. Cooley, and Los Angeles County.  (CD 1; ER 1.)  The complaint included seven causes of action:  violation of 42 U.S.C. § 1983, public disclosure invasion of privacy, false light invasion of privacy, defamation, intentional infliction of emotional distress, negligence, and negligent supervision.  (*Id.*)  The factual basis of the complaint was the content of the blog posts and tweets described above, and the allegation that Mr. Frey violated the law by revealing supposedly private information about Appellant by republishing on his blog deposition transcripts that were, at the time, already available to the public on PACER.

Mr. Frey filed a special motion to strike the second through sixth claims under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16 (CD 16; ER 32), and a motion to dismiss the first through sixth claims under Rule 12(b)(6). (CD 17; ER 60).  Mr. Frey's motion to dismiss argued that Appellant had not stated facts showing that his blogging and tweeting was under color of state law, and that Appellant had stated no facts whatsoever about Mrs. Frey but had only sued Mrs. Frey to attack Mr. Frey.  After being served with Mr. Frey's motions, Appellant dismissed her claims against Mrs. Frey and Mr. Cooley.  (CD 19.)

The district court granted Mr. Frey's motion to dismiss, agreeing that Appellant had not stated facts sufficient to show that Mr. Frey's blogging and tweeting were under color of state law as required for Section 1983.  (CR 29; ER 86-97.)  Although Mr. Frey had not challenged the court's subject matter jurisdiction, the district court raised it *sua sponte*, questioning both whether Appellant had adequately alleged that the parties were from different states and whether she could satisfy the $75,000 amount in controversy requirement for diversity jurisdiction.  (ER 89-90.)  The district court asked the parties to address that issue.  (*Id.*)  Granting plaintiff leave to file an amended complaint, the district court specified that based on the nature of the claims, it would not be inclined to exercise supplemental jurisdiction even if the Section 1983 claim survived amendment, and declined to reach Mr. Frey's anti-SLAPP motion.  (ER 90-91.)

### E. Appellant Filed Her First Amended Complaint, But Failed To Plead Action Under Color of State Law Or Show That She Could Satisfy The Amount In Controversy Requirement

On December 27, 2012, Appellant filed her FAC, asserting the same seven claims as she did in the original complaint.  (CD 33; ER 98.)  The FAC repeated Appellant's complaints about Mr. Frey's blogging and tweeting, doing so in a form that is replete with overt hostility towards not just Mr. Frey's reporting and commentary concerning Appellant's accusations against her former associate Mr. O'Keefe, but towards Mr. Frey's political beliefs and those of his readers.  Those

characterizations are not only of no legal significance, but in fact reveal the censorious and frivolous nature of Appellant's suit.  (*See, e.g.*, FAC at ¶ 58 ["Moreover, FREY published his blog to the delight of a bunch of sycophantic followers who he calls "The Jury."  The Jury consists of hardcore conservatives who spend a good deal of their life reading far right conservative blogs, like 'Patterico's Pontifications' . . . ."].)

Appellant having made neither legal or factual improvements in the pleadings that had already been dismissed once, Mr. Frey filed a renewed Rule 12(b)(6) motion and a renewed anti-SLAPP motion.  (CD 34, 37; ER 136, 186.)  In addition, in response to the district court's *sua sponte* invitation, he filed a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), arguing that Appellant bore the burden of proving by a preponderance of the evidence that at least $75,000 was in controversy to trigger diversity jurisdiction, and that she could not do so.  (CD 35; ER 162, citing *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992).)

Appellant opposed the motions.  (CD 53 – 57; ER 1022, 1040, 1061, 1068.)  In her opposition to the Rule 12(b)(1) motion, Appellant did not contest Mr. Frey's assertion that she bore the burden of proving by a preponderance of the evidence that at least $75,000 was in controversy. (ER 1061-63.)  Rather, she submitted a conclusory and perfunctory declaration claiming damages but attaching no exhibits.  (ER 163.)  Nor did she challenge the standard of proof for establishing

16

the amount of controversy at oral argument in the wake of the district court's

tentative ruling.  (ER 1151-58.)

      After a hearing, the district court dismissed Appellant's FAC with prejudice

as to the Section 1983 claim and without prejudice as to the state claims.  In doing

so, the district court expressly contemplated sanctioning Appellant and her

counsel, finding that they had misrepresented the contents of some of Mr. Frey's

tweets in an effort to make it appear that he was writing in his official capacity.

(ER at 1140 n.5, 1141 n.7.)  The district court found that Appellant had not stated

any *facts* sufficient to show that any of Mr. Frey's blogging or tweeting constituted

acts under color of state law, but had only offered speculation and self-serving

conclusions that were themselves inconsistent with the blog posts and tweets relied

on by the FAC itself.  (ER 1140-43, 1135-36.)  The district court – noting again

that it had raised the issue *sua sponte* – also found that Appellant had not carried

her burden to prove by a preponderance of the evidence that more than $75,000

was in controversy, and dismissed the remaining claims based on a lack of subject

matter jurisdiction in light of the dismissal of the federal claim under Section 1983.

(ER 1144-48.)

      This appeal followed.

17

## VI.   **SUMMARY OF ARGUMENT**

Appellant makes two arguments on appeal: That the district court erred in dismissing her Section 1983 claim because she adequately pled that Mr. Frey acted under color of state law, and that the district court erred when it imposed on her the burden of demonstrating the amount in controversy by a preponderance of the evidence.  Appellant is wrong on both issues.

To state a claim under Section 1983, Appellant must state facts sufficient to show that Mr. Frey's actions "related in some meaningful way either to the officer's governmental status or to the performance of his duties."  *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006).  But Appellant did not and could not show that blogging and tweeting about politics or current events was related to Mr. Frey's job.  Rather, she offered only conclusory allegations of state action and speculation.  Appellant struggles to ignore the many places in which Mr. Frey specifically stated that his blog posts and tweets were uttered as a private individual, but cannot.  Some of those disclaimers came in posts that she deceptively and selectively cited (and incorporated by reference) for the proposition that Mr. Frey was blogging as a public official.  On appeal she focuses on a tweet in which Mr. Frey speculates about what statutes Appellant, if her own claims were believed, may have violated.  While under no circumstance could such musing be deemed an official act by Mr. Frey, the factual context Appellant herself

18

provided showed that Mr. Frey asked the question in the course of discussing her admitted downloading of O'Keefe's emails as part of Mr. Frey's ongoing personal reporting and commentary about her accusations against O'Keefe.

Appellant also argues that the district court erred by not accepting at face value as a good faith allegation the FAC's claim that she suffered more than $75,000 in damages for purposes of diversity jurisdiction. Appellant, however, incorrectly cites the standard that applies when a *defendant* attacks diversity jurisdiction by questioning the amount in controversy. Here, however, the district court raised the issue *sua sponte* in policing its own exercise of jurisdiction. Under long-standing Supreme Court precedent, when the district court raises such a jurisdictional question, the plaintiff bears the burden of proving the challenged fact by a preponderance of the evidence. Appellant did not do so here, and in fact does not even attempt to argue that she did.

This Court should therefore affirm the judgment below.

## VII.  <u>ARGUMENT</u>

### A.  <u>THE DISTRICT COURT DID NOT ERR IN FINDING THAT APPELLANT DID NOT STATE FACTS SUFFICIENT TO ESTABLISH THAT MR. FREY ACTED UNDER COLOR OF LAW.</u>

On appeal, Appellant has dramatically narrowed her original Section 1983 theory of recovery. In the district court, she argued extravagantly that all of Mr. Frey's blogging and tweeting was undertaken under color of state law. (AER 6-8;

19

ER 1030-1033.)  On appeal, she narrows her argument to a single tweet:  Mr. Frey's tweet from the @Patterico account stating "My first task is learning what criminal statutes, if any, you have admitted violating."  (AOB 4.)[9]  Even so dramatically narrowed, however, Appellant's argument is without merit.  While in the district court she propounded numerous conclusions, many of them contradicting the very documents she incorporated in her FAC, nowhere did Appellant plead *facts* that could be plausibly construed as demonstrating that any of Mr. Frey's blogging or tweeting was done under color of state law.

### 1.     Standard of Review

This Court reviews *de novo* a district court's dismissal of a complaint under Rule 12(b)(6).  *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1035 (9th Cir. 2013).

### 2.     Pleading Standard and Facts Properly Considered

In reviewing a dismissed complaint, this Court accepts all well-pleaded allegations in the complaint as true.  *Harris*, 738 F.3d at 1035.  But conclusions are not well-pleaded allegations.  A complaint that relies upon "labels and conclusions, and a formulaic recitation of the elements of a cause of action" does not suffice to state a cause of action.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 555 (2007).

---

[9] "AOB" refers to Appellant's Opening Brief, followed by the applicable page number.

Moreover, the Court considers the complaint "in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*, quoting *Tellabs, Inc. v. Malkor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). The Court *does not* accept as true allegations that contradict documents of which it may take notice. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

On a Rule 12(b)(6) motion federal courts consider documents incorporated by reference into the complaint even if they are not attached. *See, e.g., United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003) (explaining that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ("We may also consider unattached evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."). Moreover, on a motion to dismiss a court also considers facts that the plaintiff concedes. *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012).

21

Mr. Frey's Rule 12(b)(6) motion below was premised in part on blog posts and tweets that Appellant referred to in her FAC but did not attach.  (ER 136-57.) Appellant never objected or challenged the authenticity of those blog posts or tweets.  (ER 1022-39.)  Considering all these sources, this Court determines, as did the court below, "whether the allegations in the complaint and information from other permissible sources 'plausibly suggest an entitlement to relief.'"  *Harris*, 738 F.3d at 1035, quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009).

### 3.     Section 1983 Requires Appellant To Show Action "Under Color of State Law"

To state a claim under Section 1983, Appellant must establish that (1) a right under the Constitution of the United States was violated, and (2) the defendant violated that right acting under "color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988).  As the district court found, the FAC fails to do either of these.

As a preliminary matter, it is well established that Appellant cannot meet her burden of showing that any conduct of Mr. Frey constitutes an act performed "under color of state law" just by observing that he works for the District Attorney's Office.  "An otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Mark v. Borough of Hatboro,* 51 F. 3d 1137, 1150-1151 (3rd Cir. 1995).  Moreover, acts performed in a personal capacity by a state employee are also not under color of state law.  "If a government officer does not *act within his scope of employment* or under color of

state law, then that government officer acts as a private citizen." *Van Ort v. Stanewich*, 92 F.3d 831, 835 (9ᵗʰ Cir. 1996), *citing Martinez v. Colon,* 54 F.3d 980, 986 (1st Cir. 1995 ) ("acts of state officials in the ambit of their personal pursuits are not state action").  Rather, an act is under color of state law only if it "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006) (internal quotation and citation omitted).  A defendant "pursuing his own goals" does not act under color of state law unless he "purports or pretends" to do so. *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1057-58 (9ᵗʰ Cir. 1998).

Because the factual distinctions inherent in these standards are critical, a plaintiff seeking to show that an act was under color of law must allege facts, not conclusions, to meet them.  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient" to withstand dismissal of a Section 1983 claim. *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982).  *See also Simmons v. Sacramento County Superior Court*, 318 F.3d 1156 (9ᵗʰ Cir. 2003) (conclusory allegations that attorney was acting under color of law through conspiracy with state actors was insufficient to state a Section 1983 claim); *Price v. Hawaii,* 939 F.2d 702, 707-08 (9th Cir.1991) (conclusory allegations of action under color of state law, unsupported by facts, are insufficient to state claim under Section 1983).  Appellant here failed completely to do so.

### 4. Appellant Did Not Plead Facts Sufficient To Show That Mr. Frey Acted Under Color of State Law Throughout His Course of Blogging And Tweeting

Appellant begins by repeating several arguments she previously offered in support of her argument that *all* of Mr. Frey's blogging and tweeting were acts under color of state law. The district court correctly rejected those arguments. (ER 92-97, 1140-43.)

First Appellant argues that "other media outlets" view Mr. Frey's online persona as linked to his position as a Deputy District Attorney. (AOB at 15.) But how third parties perceive Mr. Frey is irrelevant. Tellingly, Appellant offers no authority for her argument, for as this Court explained in *Van Ort*:

> The Van Orts' argument rests largely upon Donald's trial statement that he recognized Stanewich as a police officer, and the conjecture that this recognition somehow rendered his acts under color of state law. Merely because Donald recognized Stanewich, however, would not make the attack under color of law. . . . Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law.

92 F.3d at 839. Appellant's vague claims about perceptions fail here too.

Next, Appellant argues that Mr. Frey's blog posts sometimes refer to his job as a Deputy District Attorney, and that he has used his experience as a prosecutor "to lend authority and credence to his opinions." (AOB 15-16.) Once again, Appellant cites no authority for the proposition that such biographical references or

explanations for a speaker's basis for knowledge transform blogging and tweeting into action under color of state law. No such authority exists, and for good reason.

Appellant's unprincipled argument, if accepted, would mean that books, newspaper columns, letters to the editor, blogs, and Facebook posts would all become acts under color of state law any time speakers discussed their experiences working for the government, or how this experience forms a basis for their opinions. A teacher writing a blog about teaching would be treated as acting in his official capacity. A police officer writing about her experiences on the beat would be treated as engaging in an act under color of state law. A state legislator's speech at a campaign rally would be an official act if the legislator boasted of accomplishments in government. Even a government employee's Facebook post saying "I had a terrible day at my job at the DMV and it was all because my co-worker John Doe did something wrong" would, under such a standard, be an act under color of state law.

Thankfully, that is not the law. A "government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004). Thus the relevant question is not whether Mr. Frey mentioned his job and work experience while blogging or tweeting. The relevant question is whether blogging or tweeting is "related in some meaningful way" either to Mr. Frey's governmental

25

status or the performance of his duties.  *Anderson*, 451 F.3d at 1069.  Appellant did not, and could not, plead any facts showing such a relationship.

Moreover, Appellant's argument means that the Court, even if it were to employ her unsupportable "perception" standard, would also have to ignore the explicit disclaimers concerning Mr. Frey's activities contained in the very communications on which Appellant relies in arguing that Mr. Frey was blogging and tweeting in his official capacity.  Those communications, incorporated by reference in the FAC, clearly and repeatedly state that Mr. Frey blogged and tweeted in his personal capacity:

- Appellant admits, as she must, that Mr. Frey's blog "Patterico's Pontifications" has a disclaimer that it contains "personal opinions . . . not made in any official capacity."   (Complaint at ¶ 34; ER 9.)

- Appellant admits – because she *submitted it* – the fact that Mr. Frey's @patterico Twitter account bears the disclaimer "Harangues that just make sense.  All statements are made in my private capacity and not on behalf of my employer."  (CD 20-3 at 1, AER 104.)

-  Appellant herself cited – and therefore incorporated by reference – a post in which Mr. Frey specifically stated: "I think it is actually known as the Invasion of Privacy Act, but don't take my word for it; contrary to Friedman's suggestions, I am not a wiretap violations prosecutor but a

gang murder prosecutor, speaking in my private capacity as I always do on this blog."  (FAC at ¶ 28; ER 107, 418-419.)

- Appellant herself cited – and therefore incorporated by reference – another post in which Mr. Frey specifically said "I offer no opinion on that, as this post (like all my posts!) is written in my private capacity, as an exercise of my rights as a private citizen under the First Amendment." FAC at ¶ 45; ER 112, 423.)

These undisputed facts show why Appellant's posited standard is so limitless and pernicious, and why this Court must reject it.  It implies that any state employee's utterance about their job can be transformed by conclusory assertions in a complaint into an act "under color of state law" *even if the state employee offers repeated and explicit disclaimers that they are speaking in their private capacity.*  Appellant's argument, if accepted, would dramatically chill speech by public employees that in any way implicates their government work.  Moreover, it would impose upon public employers an obligation to police their employees' private speech in order to avoid public liability; to avoid Section 1983 liability, they would have to insist that their employees never mention what they do for a living whenever engaging in any expression on a matter of public concern.  This would be both a vast administrative burden and a substantial impairment of First Amendment rights.

Appellant ultimately revealed the disingenuousness of her argument in a petty attack senselessly woven into the FAC.  Seeking to embarrass Mr. Frey, and perhaps cynically thinking that it would bias judges in this Circuit against Mr. Frey, Appellant cited a 2009 post in which Mr. Frey berated this Court for a ruling about the release of state prisoners, suggesting for reasons known only to her that *that* post was an exception to her assertion that Mr. Frey always blogged in his official capacity.  (FAC at ¶¶ 11-12; ER at 104.)  (*Id.*)  Appellant offered no coherent theory explaining why one post would be in Mr. Frey's official capacity and another is not.  In fact, Mr. Frey's use of profane language to criticize a court decision he does not like affirmatively demonstrates that his blog – as its explicit disclaimers state – is a personal hobby, and certainly cannot rationally be viewed as "related in some meaningful way" to Mr. Frey's duties.  *Anderson*, 451 F.3d at 1069.

Appellant misleadingly cites several cases to suggest that a prosecutor's words should generally be understood as being acts under color of state law.  Unlike the blog posts and tweets at issue here, however, these cases all involved clearly official acts directly related to the defendants' job duties.  In *Anthony v. Cnty. of Sacramento, Sheriff's Dep't*, 845 F. Supp. 1396, 1400 (E.D. Cal. 1994), a Sheriff's deputy alleged that other deputies harassed her in retaliation for her complaints about jail conditions the Sheriff controlled; the court found that

28

"response to complaints about [prisoner] treatment" were part of the Sheriff's authority over prisoners. *Id.* Appellant cites *Donnelly v. DeChristoforo*, 416 U.S. 637, 652 n.23 (1974), for the proposition that "unlike a newspaper, the prosecutor ostensibly speaks with the authority of his office." But *Donnelly* was referring to a prosecutor's conduct *making a closing argument to a jury*, an obviously official act. *Id.* Appellant also cites *Hall v. United States*, 419 F.2d 582, 583 (5th Cir. 1969) for the proposition that a "prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity." But once again, *Hall* was referring to a prosecutor's *closing arguments at trial* – not his personal Twitter commentary about a public controversy. These cases offer no support for Appellant's argument that a Deputy District Attorney who blogs and tweets about political and legal issues should be treated as acting in his official capacity, much less when he expressly, repeatedly, and plausibly states that he is acting in his private capacity.

In short, Appellant does not and cannot establish that she pled any facts sufficient to establish that Mr. Frey's blogging and tweeting *in general* were acts under color of state law.

//

//

29

**5.**    **Appellant Did Not Plead Facts Sufficient To Show That Mr. Frey Acted Under Color of State Law When He Tweeted A Comment About What Statutes She Might Have Violated**

The authority above demonstrates that Appellant's arguments fail when applied to Mr. Frey's blogging and tweeting *in general*.  In her statement of issues (AOB 4), however, she focuses on one particular tweet in support of her appeal: The tweet from the @Patterico account that "My first task is learning what criminal statutes, if any, you have admitted violating."  (FAC at ¶ 48(i) ; ER 114.) Appellant, however, has never pled facts showing that this tweet, notwithstanding the confluence of its content and the general nature of Mr. Frey's work, was itself an act under of state law – i.e., related to his official work.  To the contrary; as the court below correctly determined, the documents she submitted and incorporated by reference, and the factual context they provide, directly contradict that proposition.

In her FAC, Plaintiff suggested that it is difficult to infer meaning from one side of a multi-party conversation.  (FAC at ¶ 48 n.1; ER 113.)  Indeed, as the district court noted, Appellant did not hit upon her theory of what this tweet "meant," and how that meaning made it an action under color of state law, until oral argument on Mr. Frey's motion to dismiss.  (ER 135-3.)[10]  But on appeal, she

---

[10] The district court also noted that Appellant mischaracterized this tweet as issuing a "direct threat to investigate." The district court correctly concluded that this misrepresentation by Appellant was deceitful and potentially sanctionable.  (ER

1002487.1

claims to be *certain* of that meaning: it is, she says, a threat by Mr. Frey to use official authority to investigate or prosecute Appellant because she admittedly illegally wiretapped the offices of Congresswoman Maxine Waters, or possibly because she "held seven years of O'Keefe's emails," or possibly both.  (AOB 19.) The problem with Appellant's newfound interpretation of this tweet is that it is not supported by any facts alleged in the FAC and indeed contradicts facts she has admitted or incorporated by reference.

First, Appellant herself admitted that Mr. Frey's @Patterico twitter feed bears the disclaimer "Harangues that just make sense.  All statements are made in my private capacity and not on behalf of my employer."  (CD 20-3 at 1, AER at 104.)  As argued above, this disclaimer both undermines the legal basis of her argument and, for purposes of her "interpretation" of the tweet in question, provides significant context.

Second, Appellant's interpretation is implausible because she herself alleged in the FAC, and incorporated by reference, blog posts in which Mr. Frey expressly (a) disclaimed any involvement in wiretapping prosecutions, and (b) stated that his discussion of Appellant had nothing to do with his job – which, it is undisputed, has nothing to do with either topic.  For instance, Appellant complained of a blog post in which Mr. Frey criticized a story that accused O'Keefe of illegal

1141 n.7.)

31

wiretapping.  (FAC at ¶ 28; ER 107.)  In that post, Mr. Frey explained that he has

no role in wiretapping prosecutions:

> Friedman also links to this set of Penal Code sections, which he
> claims is the "California wiretap act," to argue that undercover videos
> are somehow actually wiretaps.  (I think it is actually known as the
> Invasion of Privacy Act, but don't take my word for it; ***contrary to
> Friedman's suggests, I am not a wiretap violations prosecutor but a
> gang murder prosecutor, speaking in my private capacity as I always
> do on this blog***.  (ER 418-419 [emphasis added].)

Similarly, Appellant asserted that Mr. Frey wrote a post "acting as a Deputy

District Attorney" suggesting that a journalist had been credulous in reporting

Appellant's accusations about Mr. O'Keefe.  (FAC at ¶ 45; ER 112.)  Yet in the

blog post itself Mr. Frey actually wrote as follows very much to the contrary:

> By the way:  given Naffe's admission that she accessed O'Keefe's
> emails, evidently without his permission, ***has she committed a crime?
> I offer no opinion on that, as this post (like all my posts!) is written
> in my private capacity, as an exercise of my rights as a private
> citizen under the First Amendment***.  (ER 423 [emphasis added].)

Ultimately appellant never pled any *specific facts* suggesting that Mr. Frey

was, or could be, involved in any investigation or prosecution either of her

possession of Mr. O'Keefe's emails or her wiretapping of a Member of Congress.

In fact, as the quotes above show, the posts she reference show the *exact opposite*.

Third, the other tweets Appellant herself cited show that this tweet was part

of Mr. Frey's ongoing reporting and commentary concerning Appellant's

accusations against O'Keefe in his private capacity.  The FAC described tweets

just minutes before in which Mr. Frey, a *county* prosecutor, asked "Do you know the federal statute covering unauthorized access of email?" and "can you send me the federal statute?" and "If I check my email on ur phone, and when I return phone to you, you find you can access my email w/o my permission, can u legally?" (FAC at ¶ 48(f), (g), (j); ER 114.) As the district court noted, these show that Mr. Frey was talking about potential *federal* violations. (ER 135-36.) Appellant offers nothing but speculation to the contrary. Appellant never claimed – and could not claim – that Mr. Frey (1) said the District Attorney's Office would investigate or prosecute her, or (2) said that he would have any role in any such investigation or prosecution. Moreover, appellant has never pled any facts explaining how Mr. Frey, a Deputy District Attorney, would have any official role in a federal investigation. Rather, these tweets are consistent with the blog posts quoted above, which show that Mr. Frey – a gang prosecutor with no involvement in wiretap cases – was commenting about the public controversy surrounding Appellant's conduct and public statements in his *private* capacity. (ER 418-419.)

       That reading is also consistent with the platform Mr. Frey was using to express his views, i.e., a blog called "Patterico's Pontifications" and a related Twitter account with the legend "harangues that just make sense." (CD 20-3 at 1, AER at 104.) Statements made on such a platform cannot rationally give rise to an inference that they are "related in some meaningful way" to the speaker's

government job. *Anderson*, 451 F.3d at 1069.  Nor are any facts alleged in the FAC that could possibly provide support for such a preposterous proposition.  This Court has recently noted, in the context of the distinction between statements of fact and statements of opinion, that a colorful website name will lead "the reader of the statements [to be] predisposed to view them with a certain amount of skepticism and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable facts." *Obsidian Fin. Grp., LLC v. Cox*, 12-35238, 2014 WL 185376 (9th Cir. Jan. 17, 2014).  In the same way, a name like "Patterico's Pontifications" clearly signals communications made not in any official capacity, in an idiosyncratic and very personal capacity.

Finally, Appellant's arguments about the significance of the tweet should be considered in the context of her consistent practice of misrepresenting Mr. Frey's tweets, or small snippets of them, to the district court.  In the FAC, for example, she quoted one of Mr. Frey's tweets as saying "You owe [O'KEEFE] @gamesokeefeiii a retraction.  A big one.  You'd better issue it promptly.  [A threat made as a Deputy District Attorney.]"  (FAC at ¶ 39; ER 110.)  In fact, the actual tweet did not include the bracketed words "A threat made as a Deputy District Attorney"; Appellant inserted them dishonestly to advance her color of state law argument.  (ER 596.)  The district court correctly noted that this misrepresentation was potentially sanctionable.  (ER 1140 n.5.)  Similarly,

34

Appellant misrepresented the tweet she emphasizes on this Appeal, arguing to the district court that it was a "direct threat to investigate" her; again the district court noted this was dishonest and could be sanctionable.  (ER 1141 n.7.)

Finally, at oral argument, Appellant asserted that Mr. Frey's tweet about criminal sanctions stated "My first task is to determine what, if any, *penal statutes* you have admitted violating."  (ER 1155 at lines 11-15.)  Of course, as Appellant admits on appeal (AOB 4), the tweet reads "My first task is learning what *criminal statutes*, if any, you have admitted violating."  (FAC at ¶ 59(i), ER 114.) Appellant's subtle switch of the "penal statute" language was intended to suggest – falsely – that Mr. Frey was speaking about the California *Penal* Code, a body of law that has some, albeit unrelated, bearing on his official work.  Ultimately, Appellant cites no facts to justify this disingenuous misrepresentation.

In short, the FAC alleged no *facts* showing that Mr. Frey's tweet – or any of his blogging or tweeting – was an act under color of state law.  She offered only speculation.  That, as the district court correctly noted (ER 1136.) was insufficient as a matter of law. *Bell Atlantic Corporation,* 550 U.S. at 555 (2007).[11]

---

[11] Mr. Frey also established in his Rule 12(b)(6) motion that Appellant had not pled facts sufficient to show a deprivation of constitutional rights as required to state a claim under Section 1983.  (ER 154-156.)  The district court expressed skepticism that the original complaint stated sufficient facts to meet this element (ER 97 n.9) but did not reach the issue in dismissing the FAC.  (ER 1143.)  This Court need not reach the issue because of Appellant's utter failure to plead facts sufficient to show Mr. Frey was acting under color of state law.  However, if the Court *did* reach the

35

**B.  THE DISTRICT COURT DID NOT ERR IN FINDING THAT APPELLANT DID NOT DEMONSTRATE AN AMOUNT IN CONTROVERSY EXCEEDING THE $75,000 JURISDICTIONAL THRESHOLD.**

Upon reviewing the original complaint, the district court *sua sponte* questioned whether Appellant could show that more than $75,000 was at issue in this case as required for diversity jurisdiction.  (ER 89-90, 1144.)  After briefing and a hearing, the district court found that Plaintiff had not satisfied her burden of meeting that threshold.  (ER 1136.)  Now Appellant argues for the first time that the district court applied the wrong standard, and that the district court was bound to accept her allegation in the FAC that her damages exceeded $75,000.  (AOB 23-26.)  Appellant is wrong.  The district court applied the right standard – the one that Appellant conceded below – and reached the correct result.

**1.  Standard of Review**

Generally this Court reviews *de novo* a district court's dismissal of a complaint under Rule 12(b)(1).  *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1061

---

issue, Appellant's claim failed on this basis as well.  Just as Appellant offered only conclusions and speculation to suggest that Mr. Frey was acting under color of state law, she offered only conclusory assertions to suggest that his private blogging and tweeting could have caused any official suppression of any right.  Indeed, Appellant's argument reveals that she still believes she has a protected constitutional right to have disciplinary or criminal proceedings go forward against *other people* (AOB 22), even though that is patently not the law.  *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")  The judgment below was correct for this additional reason.

(9th Cir.2004); *Vestron, Inc. v. Home Box Office, Inc.,* 839 F.2d 1380, 1381 (9th Cir.1988). However, this Court reviews a district court's *factual findings* regarding jurisdictional facts under the "clearly erroneous" standard. *Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 557 (9th Cir. 1987).

### 2.    The Court Need Not Reach This Issue, As Appellant Conceded The Standard Below

As a preliminary matter, this Court need not reach Appellant's argument because Appellant conceded the standard the district court applied. When the district court first questioned the amount in controversy *sua sponte*, it articulated the standard that it would apply – that Appellant would have to produce evidence proving by preponderance of the evidence that the amount in controversy exceeded $75,000. (ER 89-90, quoting *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).) Mr. Frey relied upon the district court's enunciation of that standard and cited to it in the Rule 12(b)(1) motion filed at the Court's invitation. (ER 162, citing *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992).) In opposing the motion, Appellant did not contest that standard. In fact, she cited no authority at all. (ER 1061-63.) Rather, she relied entirely on a conclusory and perfunctory declaration presumably meant to meet the standard set forth by the district court and cited by Mr. Frey. (ER 163.) Nor did she challenge the standard at oral argument. (ER 1151-58.) The district court specifically noted her failure to challenge the standard. (ER 1145 n. 13.)

37

Appellant therefore conceded below the very standard she is now challenging. Faced with this concession, this Court *may* still consider her argument, but has the discretion not to. *See, e.g., In re Howell*, 731 F.2d 624, 627 (9th Cir. 1984). Appellant has not articulated any reason the Court should actually exercise its discretion to address her defaulted argument, and it is respectfully submitted that the Court should decline to do so.

### 3. The District Court Correctly Placed The Burden On Appellant To Prove That The Amount In Controversy Exceeded $75,000

In any event, Appellant's argument concerning the burden of proof as to the amount in controversy is meritless. As this Court has made clear, federal courts have inherent power to monitor their own exercise of jurisdiction and may, *sua sponte*, require parties to satisfy jurisdictional thresholds – with competent proof. "[W]here the district court has doubts about whether diversity exists, the district court may 'insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify [its] allegations by a preponderance of evidence.'" *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012), quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992).

This rule applies specifically to the context of the jurisdictional threshold for amount in controversy in diversity cases, as the Supreme Court has noted:

38

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.

*McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

Here, the district court did exactly what the Supreme Court contemplated in *McNutt*. The district court questioned, *sua sponte*, whether Appellant could meet the $75,000 jurisdictional threshold and directed the parties to address its concerns. (ER 89-89.) Though Mr. Frey addressed the district court's questions through the vehicle of a Rule 12(b)(1) motion, in ruling upon it the district court made clear that the genesis of its review was its own *sua sponte* questioning. (ER 1144.)

Ignoring these authorities completely, Appellant asserts that the district court erred and that her damages allegation in the FAC must be accepted as face value. (AOB 23-25.) But Appellant's cases do not support her argument. Thus Appellant cites *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010), for the proposition that her allegation of damages controls. But in *Geographic Expeditions, Inc.* the district court acted **based on a defendant's motion to dismiss**. (*Id.* at 1104 n.1.) Here, by contrast, the district court raised the issue *sua sponte*, triggering the standard articulated by the

Supreme Court in *McNutt.* 298 U.S. at 189. This Court reinforced that distinction

two years *after Geographic Expeditions, Inc.* in *Harris*, 682 F.3d at 846:

> Additionally, where the district court has doubts about whether
> diversity exists, the district court may "insist that the jurisdictional
> facts be established or the case be dismissed, and for that purpose the
> court may demand that the party alleging jurisdiction justify [its]
> allegations by a preponderance of evidence." *Gaus v. Miles, Inc.,* 980
> F.2d 564, 567 (9th Cir.1992) (emphasis omitted) (quoting *McNutt v.
> Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80
> L.Ed. 1135 (1936)).

Similarly, in *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 717, 722 (7th Cir.

2012), the Seventh Circuit applied the *McNutt* preponderance standard after it

raised the issue of the amount in controversy during oral argument and requested

supplemental briefing. This distinction between a defendant challenging the

amount in controversy and the court challenging it *sua sponte* is the only way that

cases like *Geographic Expeditions, Inc.* can be reconciled with the Supreme

Court's clear ruling in *McNutt* and with the federal courts' well-established power

to police their own jurisdiction. For this reason, Appellant's argument is meritless.

Appellant's other authorities fail for the same reason. The defendant, not the

district court, attacked the amount in controversy in *Crum v. Circus Circus

Enterprises*, 231 F.3d 1129, 1130 (9th Cir. 2000). In *St. Paul Mercury Indem. Co.

v. Red Cab Co.,* 303 U.S. 283, 289-90 (1938), the question was whether events

*after removal* (in that case, a low jury verdict) divested a federal court of

jurisdiction. The Supreme Court found that they did not because the amount in

40

controversy was determined at the time the suit was filed, but did not purport to overturn its own holding two years earlier in *McNutt.  Id.*

The district court was right: because it challenged the amount in controversy *sua sponte*, Appellant was bound to submit competent evidence proving it by a preponderance of the evidence.  *McNutt*, 298 U.S. at 189.

### 4.    Appellant Does Not Argue That She Carried Her Burden, And She Did Not

To the extent the question presented is not whether the district court correctly applied a preponderance of the evidence standard, but whether it applied that standard properly to the facts, this Court reviews the district court's ruling under the clearly erroneous standard.  *Co-Efficient Energy Sys.*, 812 F.2d at 557. Appellant does not argue that the district court clearly erred in applying the standard it chose (AOB 4, 23-26), and has therefore waived the issue.  *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (appellant waives issues not "specifically and distinctly argued" in an opening brief).

Even if Appellant had raised the issue, she could not prevail.  Appellant's declaration was two pages, entirely vague and conclusory, and attached no evidence.  (ER 1065-66.)  She did not cite a single specific charge or bill or cost she had been forced to incur.  (*Id.*)  Though she complained that she was finding it difficult to find a job, she simultaneously and inconsistently claimed that she was a full-time student and did not earn any income.  (*Id.* at 1066.)  Though she

41

complained of suffering health setbacks and mental anguish, she offered no specifics of doctors consulted or medical costs. (*Id.*) In short, she did not offer anything but a conclusory and self-serving declaration (or, indeed, any basis on which her posited "good faith" belief that the jurisdictional minimum was met could be credited). The district court correctly rejected it. (ER 1145-47.)

By contrast, to rebut her, Mr. Frey offered evidence of Appellant's own words in support of his Rule 12(b)(1) that contradicted Appellant's claims of harm. Specifically, Mr. Frey offered evidence directly contradicting Appellant's claims that Mr. Frey chilled her speech and forced her to make her blog private. (ER 349, 598-99.) That evidence showed that in May 2012 – months after Mr. Frey allegedly chilled her into silence – Appellant's blog was still public, and that she wrote the following defiant statement on it:

> Patrick Frey may have believed that posting my Social Security Number and medical records online to his blog, in retaliation, would intimidate and stop me from telling the truth about O'keefe [sic], chill my First Amendment right and dissuade me from coming forward to report a crime committed in his jurisdiction. Though, what he has accomplished is precisely the opposite.
>
> These two civil servants, both deputy district attorney's [sic] in Los Angles [sic] County, in the past were able to bully and harass private individuals, with impunity. But their patent on intimidation and retribution expired when they came to me. The Frey's [sic] are the poster children for the type of rampant corruption Carmen Trutanich, Alan Jackson and Danette Myers [sic] have each spoken out against. (ER 349, 598-99.)

42

In other words, consistent with her pattern, the actual blog posts at issue in this case show that Appellant's representations to the court were false. Moreover, Mr. Frey introduced evidence that Appellant boasted about using this case to harass Mr. Frey and his wife, ask them about unrelated issues, and identify an unrelated anonymous conservative blogger. (ER 349-50.)

In light of this record, Appellant cannot possibly show that this decision was clearly erroneous.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the judgment of the district court.

DATED:   February 7, 2014          Respectfully submitted,

                                             GOETZ FITZPATRICK LLP

                                             By

                                                   */s/ Ronald D. Coleman*
                                               RONALD D. COLEMAN
                                   Attorneys for Defendant-Appellee
                                         JOHN PATRICK FREY

DATED:   February 7, 2014          Respectfully submitted,

                                             BROWN WHITE & NEWHOUSE LLP

                                             By

                                                   */s/ Kenneth P. White*
                                               KENNETH P. WHITE
                                   Attorneys for Defendant-Appellee
                                         JOHN PATRICK FREY

1002487.1

## IX.  CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C)

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that Defendant – Appellee John Patrick Frey's Response Brief is proportionately spaced, in a typeface of 14 points or more and contains 10,948 words, excluding parts of the Brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

DATED:  February 7, 2014          Respectfully submitted,

BROWN WHITE & NEWHOUSE LLP

By  _____
        */s/ Kenneth P. White*
        KENNETH P. WHITE
        Attorneys for Defendant-Appellee
        JOHN PATRICK FREY

44

X.    **STATEMENT OF RELATED CASES**

To the knowledge of counsel, there are no related cases pending.

## XI.    <u>CERTIFICATE OF SERVICE</u>

When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 7, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*s/<u>Kenneth P. White</u>*
Kenneth P. White