No. 13-55666

U.S.D.C Case No. 2:12-cv-08443-GW-MRW

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

NADIA NAFFE, an individual,

Plaintiff - Appellant

v.

JOHN PATRICK FREY, an individual,

Defendant - Appellee
_____

## APPELLEE'S EXCERPTS OF RECORD
## VOLUME I OF I
_____

Appeal from the United States District Court
for the Central District of California

The Honorable George H. Wu, Judge
_____

RONALD D. COLEMAN
rcoleman@goetzfitz.com
GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 4401
New York, NY  10119
Tel.: (212) 695-8100
Fax: (212) 629-4013

KENNETH P. WHITE (Bar No. 173993)
kwhite@brownwhitelaw.com
BROWN WHITE & NEWHOUSE LLP
333 South Hope Street, 40th Floor
Los Angeles, CA  90071-1406
Tel:  (213) 613-0500
Fax: (213) 613-0550
Attorneys for Defendant and Appellee John Patrick Frey

999684.1

## <u>TABLE OF CONTENTS</u>

## <u>APPELLEE'S EXCERPTS OF RECORD</u>

## <u>VOLUME I</u>

| DATE | DOCKET NO. | EXHIBIT NO. | TITLE OF DOCUMENT | PAGES |
|------|------------|-------------|------------------|-------|
| 11/19/12 | 18 | | Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) | 1-10 |
| 11/19/12 | 20 | | Plaintiff's Opposition to Defendant John Patrick Frey's Motion to Strike the Second Through Sixth Causes of Action of the Complaint Pursuant to C.C.P. § 425.16 | 11-29 |
| 11/19/12 | 20-1 | | Declaration of Nadia Naffe in Support of Plaintiff's Opposition to Defendnat's Anti-SLAPP Motion | 30-36 |
| 11/19/12 | 20-2 | | Exhibit A to Plaintiff's Opposition to Defendant John Patrick Frey's Motion to Strike the Second Through Sixth Causes of Action of the Complaint | 37-103 |
| 11/19/12 | 20-3 | | Exhibit B to Plaintiff's Opposition to Defendant John Patrick Frey's Motion to Strike the Second Through Sixth Causes of Action of the Complaint | 104-135 |

i

| 01/11/13 | 38 | | Defendant John Patrick Frey's Request for Judicial Notice in Support of Pending Motions and Declaration of Kenneth P. White | 136-207 |
|---|---|---|---|---|

DATED:  February 7, 2014          BROWN WHITE & NEWHOUSE LLP

By  _____*/s/ Kenneth P. White*_____

KENNETH P. WHITE
Attorneys for Defendant-Appellee
JOHN PATRICK FREY

ii

1  JASON S. LEIDERMAN, SBN 203336
   jay@leidermandevine.com
2  JAMES B. DEVINE, SBN 205270
   james@leidermandevine.com
3  LEIDERMAN DEVINE LLP
   5740 Ralston Street, Suite 300
4  Ventura, California 93003
   Tel: 805-654-0200
5  Fax: 805-654-0280

6  Attorneys for Plaintiffs
   NADIA NAFFE
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11 NADIA NAFFE, an individual,        ) Case No.: CV12-08443-GW (MRWx)
                                      )
12          Plaintiff,                ) **PLAINTIFF'S OPPOSITION TO**
                                      ) **DEFENDANT'S MOTION TO**
13     vs.                            ) **DISMISS PURSUANT TO FRCP**
                                      ) **12(b)(6).**
14 JOHN PATRICK FREY, an individual,  )
   CHRISTI FREY, an individual,       )
15 STEVE M. COOLEY, an individual,    ) Hearing Date:    December 10, 2012
   COUNTY OF LOS ANGELES, a           ) Time:            8:30 a.m.
16 municipal entity, and              ) Courtroom:       10
   DOES 1 to 100, inclusive,          )
17                                    )
18          Defendants.               )
                                      )
19                                    )
   _____   )
20

21 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22      **PLEASE TAKE NOTICE** that Plaintiff Nadia Naffe ("Plaintiff" or "Naffe")

23 hereby submits her Opposition to Defendant John Patrick Frey's Motion pursuant to Fed.

24 R. Civ. P. 12(b)(6) to dismiss the First through Sixth Causes of Action from the

25 Complaint.

26                       **INTRODUCTION**

27      This is a case, as Defendant ironically points out, about an attempt to "intimidate

28 and silence private citizens."  Def.'s Mot. to Dismiss ("MTD"), Docket Number ("DN")

OPPOSITION TO MOTION TO DISMISS,              LEIDERMAN DEVINE LLP
                                             5740 Ralston Street, Suite 300
        Page 1                               Ventura, California 93003
                                             Tel: 805-654-0200
                                             Fax: 805-654-0280

1

17 at 1.  However, Plaintiff Nadia Naffe ("Plaintiff" or "Ms. Naffe") wishes to use this court not to perpetrate that intimidation, but to remedy it.  In an abuse of his position as a Los Angeles County District Attorney, Defendant John Patrick Frey ("Defendant" or "Mr. Frey") engaged in a campaign intended to discredit Ms. Naffe and to intimidate her into not coming forward with evidence of a crime in his own jurisdiction.

By preventing Ms. Naffe from coming to the prosecutor's office with evidence of a crime and by further forcing her out of the realm of public debate on the Internet, Mr. Frey's harassment campaign succeeded in suppressing her speech.  And despite cloaking his conduct in denials and disclaimers, Mr. Frey's online persona "Patterico" is inextricably intertwined with—and intentionally benefits from—his offline government position as a county prosecutor; he was acting under color of state law.

In light of the fact that this case is still in the pleading stage, Plaintiff has sufficiently alleged a violation of her First Amendment and Due Process rights.  Defendant's Motion to Dismiss should be denied.

## SUMMARY OF ALLEGATIONS

Crucial to this suit is Plaintiff's allegation that Defendant undertook the alleged harassment campaign in order to protect from incarceration his personal friend, James O'Keefe ("O'Keefe").  (Compl. ¶ 36.)  O'Keefe is a controversial conservative political activist who made a name for himself producing undercover "exposés."  (*Id.* at ¶ 11, 12.) He is currently serving probation after pleading guilty to charges of entering real property of the United States under false pretenses, charges that arose out of one of O'Keefe's exposés aimed at sitting U.S. Senator Mary Landrieu.  (*Id.* at ¶ 13, 14.)

### A. MS. NAFFE'S FRIENDSHIP WITH JAMES O'KEEFE ENDED IN CONTENTIOUS LITIGATION.

Ms. Naffe was at one time a friend and colleague of O'Keefe.  (Compl. ¶ 11.)  But in the fall of 2011, after a friendship of more than two years, their relationship soured. (*Id.* at ¶ 15.)  O'Keefe began making unwanted sexual advances, which Plaintiff rebuffed. (*Ibid.*)  On October 2, 2011, Ms. Naffe was alone with O'Keefe in a barn in New Jersey,

OPPOSITION TO MOTION TO DISMISS,

Page 2

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

2

and O'Keefe drugged her in an attempt to sexually assault her (the "Barn Incident"). (*Ibid.*)  O'Keefe offered Ms. Naffe money to keep quiet, and, when she rejected the offer and notified O'Keefe's colleagues, he threatened her with a lawsuit if she reported the incident to law enforcement.  (*Ibid.*)  And in November 2011, O'Keefe published a video degrading Ms. Naffe to youtube.com.  (*Id.* at ¶ 16.)  Fed up, Ms. Naffe filed a criminal harassment complaint against O'Keefe.  (*Ibid.*)  That complaint was ultimately dismissed for lack of jurisdiction.  (*Ibid.*)  Mr. O'Keefe later filed an unrelated civil lawsuit against Ms. Naffe.  (*Id.* at ¶ 29.)  Their relationship has not been repaired.

Centrally important to this suit and Mr. Frey's motivations, Ms. Naffe had, at all relevant times, evidence that O'Keefe had wiretapped the Los Angeles office of California Congresswoman Maxine Waters and the office of OneUnited, where Congresswoman Waters' husband worked.  (*Id.* at ¶ 21.)

**B.    MR. FREY HAD A PERSONAL FRIENDSHIP WITH JAMES O'KEEFE.**

Defendant Mr. Frey is a close personal friend of O'Keefe.  (Compl. ¶ 18.)  This friendship began when O'Keefe was an intern at the Los Angeles County District Attorney's Office (the "Office").  (*Ibid.*)

No later than February 28, 2012, Mr. Frey knew O'Keefe was in danger of going to prison: he knew O'Keefe was on federal probation; he knew O'Keefe had wiretapped Congresswoman Waters' office in his Office's jurisdiction; he knew Ms. Naffe had evidence of that wiretapping; and he knew that if she came forward with that evidence, O'Keefe's punishment for violating the terms of his probation would likely be incarceration.  (*Id.* at ¶¶ 19, 22, 25.)  These are the facts that primarily motivated Mr. Frey's subsequent behavior.

**C.    MR. FREY'S ONLINE PERSONA, "PATTERICO," IS DELIBERATELY LINKED WITH HIS POSITION AND AUTHORITY AS A DISTRICT ATTORNEY.**

Mr. Frey has a substantial following on his blog, www.patterico.com, and on his Twitter account, @patterico.  (Compl. ¶ 23.)  Although his blog contains a strategic

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

3

disclaimer—a disclaimer that a reader may only find if he scrolls down and reads the sidebar's fine print—stating that its contents are "personal opinions . . . not made in any official capacity," that disclaimer is illusory and false.  (*Id.* at ¶ 38.)  On the contrary, Mr. Frey uses his position and reputation as a government officer to advance his political agenda, to increase the size of his audience, and to intimidate political enemies.  (*Ibid.*)  In short, Mr. Frey intends to—and does—imbue his online speech with the weight of state authority, all while being careful not to declare so directly.

**D.    IN AN EFFORT TO STOP MS. NAFFE FROM COMING FORWARD WITH EVIDENCE OF JAMES O'KEEFE'S CRIME, MR. FREY HARASSED AND INTIMIDATED MS. NAFFE.**

Beginning in February 2012, in order to protect O'Keefe from a potential prison sentence, Mr. Frey began a campaign of harassment against Ms. Naffe.  (Compl. ¶¶ 24-32.)  He published eight public articles to his blog disparaging Ms. Naffe and demonstrating his allegiance to O'Keefe.  (*Id.* at ¶¶ 24, 27.)  One of these posts was intended as a public cross-examination of her account of the Barn Incident.  (*Id.* at ¶ 27.)  Another post included documents related to O'Keefe's civil suit against Ms. Naffe.  (*Id.* at ¶ 29.)

Yet another, unrelated to the Barn Incident or O'Keefe, was simply a vicious publication of private information about Ms. Naffe.  (*Id.* at ¶ 31.)  This post included a transcript from a 2005 deposition of Ms. Naffe taken in an entirely distinct dispute with her former employer.  (*Ibid.*)  That unredacted transcript included extremely sensitive information about Ms. Naffe's medical condition and the medications she was taking at the time.  (*Ibid.*)  It also included Ms. Naffe's social security number, date of birth, maiden name, and family address: a road map for identity thieves.  (*Ibid.*)

Mr. Frey also published several dozen threatening, misleading, and defamatory tweets from his @patterico Twitter account, including the following:

- On March 22, 2012, referring to Ms. Naffe and the Barn Incident, Mr. Frey tweeted: "@Dust92 Or because the 'victim' is a liar whose lies will be exposed?  That sometimes happens too!"  (*Id.* at ¶ 60.)

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

4

- On more than one occasion, and at least once on March 22, 2012, Mr. Frey attempted to destroy Ms. Naffe's credibility by suggesting that, since she did not call a cab during the Barn Incident, her whole story was made up: "Finally, for the umpteenth time: why not call a cab?"  (*Id.* at ¶ 24.)

- On March 23, 2012, tweeting directly at Ms. Naffe (and also referring to the Barn Incident), Frey posted: "@NadiaNaffe That is false.  But then, you're full of false allegations, aren't you?"  (*Id.* at ¶ 60.)

- On March 23, 2012, Frey contacted Ms. Naffe via Twitter, stating: "My first task is learning what criminal statutes, if any, you have admitted violating."  (Decl. of Nadia Naffe ("Naffe Decl.") at ¶ 27.)

These publications (the blog posts and tweets) have caused Ms. Naffe a great deal of anguish.  She has suffered a bleeding ulcer, which continues to cause her problems. (Naffe Decl. ¶ 35).  She was intimidated into not coming forward with evidence of O'Keefe's wiretapping in Los Angeles.  (Naffe Decl. ¶ 33.)  She was forced to make her previously public website and Twitter account private.  (Naffe Decl. ¶ 36.)  The day after Mr. Frey published the deposition transcript with Ms. Naffe's personal information, she began receiving alerts from credit reporting agency Experian explaining that someone had made changes to her credit report.  (Compl. ¶ 34.)  Indeed, she continues to receive reports that others are using her social security number fraudulently.  (*Ibid.*)

## ARGUMENT

### I.    THE STANDARD TO SURVIVE A MOTION TO DISMISS ON THE PLEADINGS IS VERY LOW.[1]

As a threshold matter, it is important to point out that at the pleading stage, a plaintiff's burden is merely to *allege* the facts supporting the elements of the complaint, not to prove them. Under the federal court system's notice pleading rules, a complaint

---

[1] Plaintiff has voluntarily dismissed Christy Frey from this case.  She is no longer a named defendant.  As such, the argument in Defendant's Motion to Dismiss regarding Christy Frey is moot.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

5

must provide "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  On a motion to dismiss courts "must take all of the factual allegations in the complaint as true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  And to survive such a motion, the complaint need only contain "factual content that allows the court to draw a reasonable inference" of the elements of the plaintiff's stated causes of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

II.    **PLAINTIFF'S COMPLAINT STATES A COGNIZABLE VIOLATION OF 42 U.S.C. § 1983.**

As Defendant correctly points out, a claim under 42 U.S.C. § 1983 has two elements.  A plaintiff must show (1) that the defendant acted under color of state law; and (2) that the plaintiff suffered deprivation of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988).  Defendant argues that Plaintiff's Complaint does not satisfactorily allege either element.  As discussed below, however, this argument fails.

A.    **PLAINTIFF'S COMPLAINT ALLEGES FACTS DEMONSTRATING THAT DEFENDANT MR. FREY ACTED "UNDER COLOR OF STATE LAW."**

First, Plaintiff has sufficiently alleged that Defendant was acting under color of state law.  There is "no rigid formula for measuring state action for purposes of section 1983 liability." *Outz v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974).  "In order to determine color of law, a court must examine the totality of the circumstances." *Abudiab v. City and Cnty. of San Francisco*, No. C 09-1778 MHP, 2010 WL 207622 at 3 (N.D. Cal. Apr. 12, 2010).  Generally, "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945).  However, a state officer who "purports or pretends" to act under color of law in the course of his personal pursuits is liable, "even if his goals were private and outside the scope of authority." *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996).

Here, under the totality of the circumstances, Plaintiff's allegation is not a "mere recitation" of a legal conclusion.  (MTD at 11.)  True, Mr. Frey's blog includes a

OPPOSITION TO MOTION TO DISMISS,

Page 6

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

6

1   disclaimer stating that its contents are "personal opinions . . . not made in any official

2   capacity . . . ." (Compl. ¶ 38.)  However, Ms. Naffe also alleges that this disclaimer is

3   illusory and false.  (*Id.* at ¶ 40.)  Plaintiff also alleges that Mr. Frey was motivated by his

4   personal relationship to James O'Keefe.  (*Id.* at ¶¶ 18-20, 36.)  But a personal motivation

5   does not itself preclude a finding that a state officer acted under color of state law, at least

6   where, as here, Plaintiff alleges that Defendant "purports or pretends" to do so.  *See*

7   *Huffman*, *supra*.

8       In particular, the following alleged facts demonstrate Defendant acted under color

9   of state law: Ms. Naffe alleges that Mr. Frey used County time and resources to publish

10  his blog, tweet from his blog-associated account, and research his personal political

11  enemies, including Ms. Naffe.  (*Id.* at ¶¶ 24, 29, 30.)  Defendant "wants readers to

12  associate him and his website with his official title to add credibility to his published

13  statements and commentary."  (*Id.* at ¶ 40.)  He uses his official position to "advance his

14  personal political agenda, to increase his audience, and to amplify his harassment against

15  political enemies."  (*Id.* at ¶ 38.)  And with respect to conduct specifically directed at Ms.

16  Naffe, Defendant conducted what amounted to a personally motivated, public, ex parte

17  cross-examination of Ms. Naffe on his blog.  (*Id.* at ¶ 27.)

18      Indeed, at the time, Defendant's own counsel thought it "the most thorough

19  consideration of exculpatory evidence that [he] ha[d] ever seen from a Los Angeles

20  County Deputy District Attorney . . . ."  Ken White, *Nadia Naffe Won't Shut Up, But*

21  *She'll Threaten You To Make You Shut Up*, Popehat (Mar. 26, 2012),

22  http://www.popehat.com/2012/03/26/nadia-naffe-wont-shut-up-but-shell-threaten-you-to-

23  make-you-shut-up/.[2]  Worse, on the same day that Mr. Frey published Ms. Naffe's social

24

25  [2] Mr. White's blog post is also illustrative of the culture of impunity exhibited by Mr. Frey and other political
    "bloggers."  Immediately following his characterization of Mr. Frey's post as a "thorough consideration of
26  exculpatory evidence . . . from a Los Angeles County District Attorney," Mr. White goes on to offer the same
    kind of meaningless disclaimer Mr. Frey offers on his website.  He acknowledges that his analysis of Mr. Frey's
27  blog post is "uncouth" and asks his readers to "forget that I brought it up."  White, *Nadia Naffe Won't Shut Up*,
    *supra*.  Like Mr. Frey, who says one thing (his website is purely "personal") but does another (conducts Internet
28  cross-examinations of potential witnesses to crimes in his jurisdiction, intends to use his position to gain
    influence), Mr. White also says one thing ("forget that I brought it up") and does another (posts anyway, leaves it

OPPOSITION TO MOTION TO DISMISS,

Page 7

1   security number and medical information on his blog, he also directly contacted Ms.

2   Naffe via Twitter and threatened her with a criminal investigation, stating ominously:

3   "My first task is learning what criminal statutes, if any, you have admitted violating."

4   (Decl. of Nadia Naffe ("Naffe Decl.") at ¶ 27 (attached to Pl.'s Opp. to Def. Mot. to

5   Strike).)  In short, Plaintiff's allegations are not "[v]ague and conclusory," (MTD at 11);

6   they sufficiently demonstrate Mr. Frey acted "under color of state law."

7      **B.     PLAINTIFF'S COMPLAINT ALLEGES FACTS AMOUNTING TO A**
8             **DEPRIVATION OF CONSTITUTIONAL RIGHTS.**

9         Furthermore, Ms. Naffe's Complaint states violations of her First Amendment and

10  Due Process rights.

11         **1.     Plaintiff's First Amendment Rights Were Violated.**

12         With respect to the First Amendment claim, Defendant makes two arguments.

13  First, he suggests that Plaintiff's Complaint "explicitly contradict[s]" itself.  (MTD at14.)

14  Defendant claims that Ms. Naffe's right to free speech could not possibly have been

15  infringed because she did speak out in some limited circumstances: she (1) informed Mr.

16  Frey via Twitter that she would report his harassment to his employer, (2) filed an

17  administrative claim against Mr. Frey, and (3) filed this lawsuit.  (MTD at 15.)

18         This argument, however, completely misunderstands Plaintiff's First Amendment

19  claim.  Ms. Naffe does not claim that, as a result of Mr. Frey's harassment, she ceased

20  speaking entirely.  Nor does she claim that Mr. Frey's harassment chilled her from

21  reporting his misconduct.  Instead, she alleges that Mr. Frey's harassment stopped her

22  from coming forward with evidence of a crime committed in Mr. Frey's jurisdiction—

23  clearly protected speech.  (Compl. at ¶ 36.)  She further claims that Mr. Frey's

24  harassment forced her out of at least two forums for public speech on the Internet: she has

25  been forced to make private both her previously public Twitter account and her

26  previously public personal website.  (Naffe Decl. at ¶ 36.)

27

28  on his website indefinitely).  It is commonplace in this culture to make a deliberately inflammatory, harmful,
    unethical or even tortious statement, then immediately walk it back, attempting to avoid responsibility.

OPPOSITION TO MOTION TO DISMISS,                              LEIDERMAN DEVINE LLP
                                                             5740 Ralston Street, Suite 300
          Page 8                                             Ventura, California 93003
                                                             Tel: 805-654-0200
                                                             Fax: 805-654-0280

Just because Plaintiff attempted to stop the harassment without resorting to federal court by exhausting other possible remedies (such as self-help and filing state/administrative complaints) does not mean that her allegations are contradictory.  In fact, these other efforts *add* weight to her allegations by demonstrating the authenticity of her desire to stop Mr. Frey's behavior.

Defendant's second argument suggests that Plaintiff's allegations do not support the inference that his actions "would chill or silence a person of ordinary firmness" from speaking.  (MTD at 15 (citing *Mendoceno Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).)  Defendant does not elaborate, leaving counsel to speculate whether he thinks Ms. Naffe is not "of ordinary firmness" or if, instead, he thinks his behavior, viewed objectively, would not "chill or silence" a reasonable person.  Regardless, either interpretation of Defendant's second argument falls short.  Mr. Frey's campaign of harassment was cruel.  It was relentless.  And it was imbued with the weight of his authority as a District Attorney.  At the pleading stage, the court cannot say that Ms. Naffe's allegations fail to state a First Amendment claim as a matter of law.

### 2.    Plaintiff's Due Process Rights Were Violated.

Addressing the due process claim, Defendant correctly observes that one possible basis is Plaintiff's fear that the DA's Office would "not adequately investigate or pursue her allegations that Mr. O'Keefe wiretapped Representative Waters."  (MTD at 16.)  Defendant also correctly observes that no citizen has a due process right to an investigation or prosecution of another.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (dismissing for lack of standing a complaint for an injunction requiring the district attorney to prosecute a crime, even though a state statute required the district attorney to do so).  If the due process claim hinged entirely on this fact, it would fail.

But the crux of the claim has nothing to do with Mr. O'Keefe.  Instead, Ms. Naffe fears that Mr. Frey—indeed, any attorney at the LA County DA's Office—as an officer of the state, has prejudged her character and credibility.  (Compl. at ¶ 46.)  She fears that she would be entirely unwelcome at the Office in all cases, not just with respect to Mr.

OPPOSITION TO MOTION TO DISMISS,

Page 9

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

9

O'Keefe; she fears that they would turn her away at the outset, regardless of the strength of her evidence; and she fears that ultimately, coming forward would accomplish nothing more than subjecting her to further harassment from Mr. Frey.  (Naffe Decl. at ¶ 31.)  In sum, Ms. Naffe felt and still feels that Mr. Frey's conduct toward her was intended as a message: do not come forward to incriminate Mr. O'Keefe, *or else*.  Just as making threats to potential defense witnesses constitutes prosecutorial misconduct (*see, e.g.*, *In re Martin*, 44 Cal.3d 1, 39-40 (Cal. 1987)), so does making threats to potential state witnesses.  Plaintiff's due process claim should stand.

## III.   PLAINTIFF HAS STATED COGNIZABLE CLAIMS FOR COUNTS TWO THROUGH SIX.

As demonstrated in Plaintiff's Opposition to Defendant's Anti-SLAPP Motion, Plaintiff not only alleges cognizable claims for counts two through six, but she has actually presented substantive evidence of each.  Since the standard for defeating an Anti-SLAPP motion is higher than the standard for defeating a 12(b)(6) motion, Plaintiff has clearly met her burden for the purposes of this Opposition.  The Court should deny the Motion to Dismiss on each of these counts.

## IV.   ALTERNATIVELY, IF THE COURT GRANTS DEFENDANT'S MOTION IN WHOLE OR IN PART, IT SHOULD GRANT PLAINTIFF LEAVE TO AMEND.

Should the court grant Defendant's Motion to Dismiss, it should also grant Plaintiff leave to amend.  Indeed, Plaintiff may amend her Complaint "as a matter of course" within 24 days of service of Defendant's Motion to Dismiss.  *See* Fed. R. Civ. P. 15(a)(1)(B); Fed. R. Civ. P. 6(d).  Further, the court "should freely give leave when justice requires."  Fed. R. Civ. P. 15(a)(2).  It should do so here.

Dated: November 19, 2012                              LEIDERMAN DEVINE LLP


                                                      By:/s/ James B. Devine
                                                      Jason S. Leiderman
                                                      James B. Devine
                                                      Attorneys for Plaintiff
                                                      NADIA NAFFE

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1 | JASON S. LEIDERMAN, SBN 203336
  | jay@leidermandevine.com
2 | JAMES B. DEVINE, SBN 205270
  | james@leidermandevine.com
3 | LEIDERMAN DEVINE LLP
  | 5740 Ralston Street, Suite 300
4 | Ventura, California 93003
  | Tel: 805-654-0200
5 | Fax: 805-654-0280
6 | Attorneys for Plaintiff
  | NADIA NAFFE, an individual
7 |

8 |                    UNITED STATES DISTRICT COURT

9 |                    CENTRAL DISTRICT OF CALIFORNIA

10 |                           WESTERN DIVISION

11 | NADIA NAFFE, an individual,          )  Case No.: CV12-08443-GW (MRWx)
                                          )
12 |                 Plaintiff,           )  Complaint Filed: October 2, 2012
                                          )  Judge: Hon. George H. Wu
13 |          vs.                         )
                                          )  **PLAINTIFF'S OPPOSITION TO**
14 | JOHN PATRICK FREY, an individual,    )  **DEFENDANT JOHN PATRICK**
    | STEVE M. COOLEY, an individual, and )  **FREY'S MOTION TO STRIKE THE**
15 | the COUNTY OF LOS ANGELES, a         )  **SECOND THROUGH SIXTH CAUSES**
    | municipal entity,                   )  **OF ACTION OF THE COMPLAINT**
16 |                                      )  **PURSUANT TO C.C.P. § 425.16;**
    |                                      )  **MEMORANDUM OF POINTS AND**
17 |                 Defendants.          )  **AUTHORITIES IN SUPPORT**
                                          )  **THEREOF; DECLARATION OF**
18 |                                      )  **NADIA NAFFE; EXHIBITS**
                                          )
19 |                                      )
                                          )  **Date: December 10, 2012**
20 |                                      )  **Time: 8:30 a.m.**
                                          )  **Dept.: 10**
21 |                                      )
                                          )
22 | _____ )

23 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

24 |          **PLEASE TAKE NOTICE** that Plaintiff Nadia Naffe ("Plaintiff" or "Naffe")

25 | hereby submits her Opposition to Defendant John Patrick Frey's ("Mr. Frey") Motion

26 | pursuant to Cal. Code Civ. P. § 425.16 to strike the Second, Third, Fourth, Fifth and

27 | Sixth Causes of Action from the Complaint.

28 |

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - i

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

11

## TABLE OF CONTENTS

INTRODUCTION...................................................................................1

SUMMARY OF FACTUAL ALLEGATIONS..............................................1

  A.   MS. NAFFE'S FRIENDSHIP WITH JAMES O'KEEFE ENDED IN
CONTENTIOUS LITIGATION. ...............................................................2

  B.   MR. FREY HAD A PERSONAL FRIENDSHIP WITH JAMES O'KEEFE. .........2

  C.   MR. FREY'S ONLINE PERSONA, "PATTERICO," IS DELIBERATELY
LINKED WITH HIS POSITION AND AUTHORITY AS A DISTRICT ATTORNEY.
    3

  D.   IN AN EFFORT TO STOP MS. NAFFE FROM COMING FORWARD WITH
EVIDENCE OF JAMES O'KEEFE'S CRIME, MR. FREY HARASSED AND
INTIMIDATED MS. NAFFE. ...................................................................3

ARGUMENT.........................................................................................4

  **I.    CHRISTY FREY HAS BEEN DISMISSED.**.......................................5

  **II.   PLAINTIFF'S CAUSES OF ACTION DO NOT ARISE FROM ACTS IN
FURTHERANCE OF DEFENDANT'S RIGHT TO FREE SPEECH ON A
PUBLIC ISSUE.** .................................................................................5

  **III.  PLAINTIFF HAS ESTABLISHED A PROBABILITY OF PREVAILING ON
HER CLAIMS BY THE ATTACHED EVIDENCE.** ..................................6

  A.   THE STANDARD OF PROOF FOR ESTABLISHING A PROBABILITY OF
PREVAILING IS LOW..........................................................................7

  B.   DEFENDANT'S PUBLIC DISCLOSURE OF NAFFE'S PRIVATE
INFORMATION WAS A TORTIOUS INVASION OF HER PRIVACY. .................8

  C.   DEFENDANT'S CONDUCT PAINTED PLAINTIFF IN A FALSE LIGHT.......9

  D.   DEFENDANT IS LIABLE TO PLAINTIFF FOR DEFAMATION. .................10

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - ii

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

12

E.    DEFENDANT'S OUTRAGEOUS CONDUCT CAUSED PLAINTIFF SEVERE EMOTIONAL DISTRESS. ...................................................................................11

F.    DEFENDANT HAD A STATUTORY DUTY NOT TO PUBLISH MS. NAFFE'S SOCIAL SECURITY; HIS BREACH OF THAT DUTY CONSTITUTED NEGLIGENCE. ...........................................................................................12

G.    PLAINTIFF HAS SUBMITTED "MINIMAL MERIT" EVIDENCE OF EACH OF THE ABOVE CLAIMS....................................................................................12

**IV.  IN THE ALTERNATIVE, PLAINTIFF REQUESTS THAT THE HEARING BE CONTINUED AND SHE BE ALLOWED TO CONDUCT LIMITED DISCOVERY.** ...........................................................................................13

**CONCLUSION** ..........................................................................................14

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - iii

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).............................................14

*Conroy v. Spitzer*, 70 Cal.App.4th 1446 (Cal. Ct. App. 1999).......................7, 12

*Cox Broadcasting Corp v. Cohn*, 420 U.S. 469 (1975).............................................8

*Diaz v. Oakland Tribune, Inc.*, 139 Cal.App.3d 118 (Cal. Ct. App. 1983).............9

*Havellier v. Sletten*, 29 Cal.4th 82 (Cal. 2002).......................................................5

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2009).......................................5

*Hughes v. Pair*, 46 Cal.4th 1035 (Cal. 2009) .......................................................11

*Kashian v. Harriman*, 98 Cal.App.4th 892 (Cal. Ct. App. 2002)............................5

*Matson v. Dvorak*, 40 Cal.App.4th 539 (Cal. Ct. App. 1995) .............................7

*Melvin .v Reid*, 112 Cal.App. 285 (Cal. Ct. App. 1931).........................................9

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) .......................14

*Paulus v. Bob Lynch Ford*, 139 Cal.App.4th 659 (Cal. Ct. App. 2006)...............7

*Rogers v. Home Shopping Network*, 57 F.Supp.2d 973 (C.D. Cal. 1999).............14

*Rosenfeld v. U.S. Dep't of Justice*, No. C-07-3240 EMC, 2012 WL 710186 (N.D. Cal., Mar. 5, 2012) ...................................................................................8

*Shulman v. Group W Prods., Inc.*, 18 Cal.4th 200 (Cal. 1998) .........................8

*Smith v. Maldonado*, 72 Cal.App.4th 637 (Cal. Ct. App. 1999).......................10

*Snyder v. Phelps*, 131 S.Ct 1207 (2011) .............................................................12

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430 (9th Cir. 1995)..........................................................................11

*Werner v. Times-Mirror Co.*, 193 Cal. App.2d 111 (Cal. Ct. App. 1961) .........9

*Wilbanks v. Wolk*, 121 Cal.App.4th 883 (Cal. Ct. App. 2004)...........................7

*Wilcox v. Superior Court*, 27 Cal.App.4th 809 (Cal. Ct. App. 1994)................7

*Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298 (Cal. Ct. App. 2002) ...........8

///

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - iv

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

14

**Statutes**

Cal. Civ. Code § 1798.85 .................................................................................... 12

Cal. Code Civ. P. § 425.16(b)(1) ................................................................. 5, 6, 7, 13

**Treatises**

Rest. 2d, Torts §652E ........................................................................................ 9

Opposition to Defendant's Motion to Strike;
Memorandum of Points and Authorities
Page - v

Leiderman Devine LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

15

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

California Code of Civil Procedure § 425.16, also known as the "Anti-SLAPP" statute, was designed to combat strategic lawsuits against public participation, not to protect strategic intimidation against public participation.  This lawsuit is not intended to punish Mr. Frey for public participation; it is intended to stop intimidation.

On an Anti-SLAPP motion to strike, the defendant first bears the burden of showing that the cause of action is based on acts made "in furtherance of the person's right of petition or free speech."  If so, the burden shifts to the plaintiff to show "minimal merit" to her claims.  While some—perhaps even most—of what Mr. Frey does on blog and Twitter account is within the ambit of the Anti-SLAPP statute, his actions forming the basis of this lawsuit are not.  Defendant cannot meet § 425.16's first prong.  Moreover, by this Opposition and the attached Declaration and Exhibits, Plaintiff has satisfied the "minimal merit" criteria to survive the Motion to Strike on each cause of action.  Plaintiff respectively requests that the Motion be denied.

However, if the court is inclined to grant Defendant's Motion to Strike, in whole or in part, Plaintiff requests a stay for limited discovery pursuant to Fed. R. Civ. P. 56,which requires adequate opportunity for discovery before summary judgment.

## SUMMARY OF FACTUAL ALLEGATIONS[1]

Crucial to this suit is Plaintiff's allegation that Defendant undertook the alleged harassment campaign in order to protect from incarceration his personal friend, James O'Keefe ("O'Keefe").  (Compl. ¶ 36.)  O'Keefe is a controversial conservative political activist who made a name for himself producing undercover "exposés."  (*Id.* at ¶¶ 11, 12.)  He is currently serving probation after pleading guilty to charges of entering real property of the United States under false pretenses, charges that arose out of one of O'Keefe's exposés aimed at sitting U.S. Senator Mary Landrieu.  (*Id.* at ¶¶ 13, 14.)

---

[1] This Summary is identical to the Summary contained in Plaintiff's Opposition to Defendant's Motion to Dismiss.  All references to paragraph numbers refer to Plaintiff's Complaint, unless otherwise specified.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

**A.    MS. NAFFE'S FRIENDSHIP WITH JAMES O'KEEFE ENDED IN CONTENTIOUS LITIGATION.**

Ms. Naffe was at one time a friend and colleague of O'Keefe. (Compl. ¶ 11.) But in the fall of 2011, after a friendship of more than two years, their relationship soured. (*Id.* at ¶ 15.) O'Keefe began making unwanted sexual advances, which Plaintiff rebuffed. (*Ibid.*) On October 2, 2011, Ms. Naffe was alone with O'Keefe in a barn in New Jersey, and O'Keefe drugged her in an attempt to sexually assault her (the "Barn Incident"). (*Ibid.*) O'Keefe offered Ms. Naffe money to keep quiet, and, when she rejected the offer and notified O'Keefe's colleagues, he threatened her with a lawsuit if she reported the incident to law enforcement. (*Ibid.*) And in November 2011, O'Keefe published a video degrading Ms. Naffe to youtube.com. (*Id.* at ¶ 16.)

Fed up, Ms. Naffe filed a criminal harassment complaint against O'Keefe. (*Ibid.*) That complaint was ultimately dismissed for lack of jurisdiction. (*Ibid.*) Mr. O'Keefe later filed an unrelated civil lawsuit against Ms. Naffe. (*Id.* at ¶ 29.) Their relationship has not been repaired.

Centrally important to this suit and Mr. Frey's motivations, Ms. Naffe had, at all relevant times, evidence that O'Keefe had wiretapped the Los Angeles office of California Congresswoman Maxine Waters and the office of OneUnited, where Congresswoman Waters' husband worked. (*Id.* at ¶ 21.)

**B.    MR. FREY HAD A PERSONAL FRIENDSHIP WITH JAMES O'KEEFE.**

Defendant Mr. Frey is a close personal friend of O'Keefe. (*Id.* at ¶ 18.) This friendship began when O'Keefe was an intern at the Los Angeles County District Attorney's Office (the "Office"). (*Ibid.*)

No later than February 28, 2012, Mr. Frey knew O'Keefe was in danger of going to prison: he knew O'Keefe was on federal probation; he knew O'Keefe had wiretapped Congresswoman Waters' office in his Office's jurisdiction; he knew Ms. Naffe had evidence of that wiretapping; and he knew that if she came forward with that evidence,

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 2

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

17

1   O'Keefe's punishment for violating the terms of his probation would likely be

2   incarceration.  (*Id.* at ¶¶ 19, 22, 25.)  These are the facts that primarily motivated Mr.

3   Frey's subsequent behavior.

### C.   MR. FREY'S ONLINE PERSONA, "PATTERICO," IS DELIBERATELY LINKED WITH HIS POSITION AND AUTHORITY AS A DISTRICT ATTORNEY.

6   Mr. Frey has a substantial following on his blog, www.patterico.com, and on his

7   Twitter account, @patterico.  (Compl. ¶ 23.)  Although his blog contains a strategic

8   disclaimer—a disclaimer that a reader may only find if he scrolls down and reads the

9   sidebar's fine print—stating that its contents are "personal opinions . . . not made in any

10  official capacity," that disclaimer is illusory and false.  (*Id.* at ¶ 38.)  On the contrary, Mr.

11  Frey uses his position and reputation as a government officer to advance his political

12  agenda, to increase the size of his audience, and to intimidate political enemies.  (*Ibid.*)

13  In short, Mr. Frey intends to—and does—imbue his online speech with the weight of

14  state authority, all while being careful not to declare so directly.

### D.   IN AN EFFORT TO STOP MS. NAFFE FROM COMING FORWARD WITH EVIDENCE OF JAMES O'KEEFE'S CRIME, MR. FREY HARASSED AND INTIMIDATED MS. NAFFE.

17  Beginning in February 2012, in order to protect O'Keefe from a potential prison

18  sentence, Mr. Frey began a campaign of harassment against Ms. Naffe.  (Compl. ¶¶ 24-

19  32.)  He published eight public articles to his blog disparaging Ms. Naffe and

20  demonstrating his allegiance to O'Keefe.  (*Id.* at ¶¶ 24, 27.)  One of these posts was

21  intended as a public cross-examination of her account of the Barn Incident.  (*Id.* at ¶ 27.)

22  Another post included documents related to O'Keefe's civil suit against Ms. Naffe.  (*Id.*

23  at ¶ 29.)  Yet another, unrelated to the Barn Incident or O'Keefe, was simply a vicious

24  publication of private information about Ms. Naffe.  (*Id.* at ¶ 31.)  This post included a

25  transcript from a 2005 deposition of Ms. Naffe taken in an entirely distinct dispute with

26  her former employer.  (*Ibid.*)  That unredacted transcript included extremely sensitive

27  information about Ms. Naffe's medical condition and the medications she was taking at

28  ///

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 3

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

the time.  (*Ibid.*)  It also included Ms. Naffe's social security number, date of birth, maiden name, and family address: a road map for identity thieves.  (*Ibid.*)

Mr. Frey also published several dozen threatening, misleading, and defamatory tweets from his @patterico Twitter account, including the following:

- On March 22, 2012, referring to Ms. Naffe and the Barn Incident, Mr. Frey tweeted: "@Dust92 Or because the 'victim' is a liar whose lies will be exposed?  That sometimes happens too!"  (*Id.* at ¶ 60.)

- On more than one occasion, and at least once on March 22, 2012, Mr. Frey attempted to destroy Ms. Naffe's credibility by suggesting that, since she did not call a cab during the Barn Incident, her whole story was made up: "Finally, for the umpteenth time: why not call a cab?"  (*Id.* at ¶ 24.)

- On March 23, 2012, tweeting directly at Ms. Naffe (and also referring to the Barn Incident), Frey posted: "@NadiaNaffe That is false.  But then, you're full of false allegations, aren't you?"  (*Id.* at ¶ 60.)

- On March 23, 2012, Frey contacted Ms. Naffe via Twitter, stating: "My first task is learning what criminal statutes, if any, you have admitted violating."  (Decl. of Nadia Naffe ("Naffe Decl.") at ¶ 27.)

These publications (the blog posts and tweets) have caused Ms. Naffe a great deal of anguish.  She has suffered a bleeding ulcer, which continues to cause her problems. (Naffe Decl. ¶ 35).  She was intimidated into not coming forward with evidence of O'Keefe's wiretapping in Los Angeles.  (*Id.* at ¶ 33.)  The day after Mr. Frey published the deposition transcript with Ms. Naffe's personal information, she began receiving alerts from credit reporting agency Experian explaining that someone had made changes to her credit report.  (Compl. ¶ 34.)  Indeed, she continues to receive reports that others are using her social security number fraudulently.  (*Ibid.*)

## ARGUMENT

Section 425.16 requires the trial court to undertake a two-step process.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009); *Kashian v. Harriman*, 98

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 4

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

19

1  Cal.App.4th 892, 906 (Cal. Ct. App. 2002).  First, the court must decide whether the

2  defendant has made a prima facie showing that the acts of which the plaintiff complains

3  were taken "in furtherance of the [defendant's] right of petition or free speech . . . ."

4  § 425.16(b)(1); *Hilton v. Hallmark*, 599 F.3d at 903.  Second, if the defendant makes that

5  showing, the burden shifts to the plaintiff to show "a probability of prevailing on the

6  claim."  *Hilton v. Hallmark*, 599 F.3d at 903 (quoting *Havellier v. Sletten*, 29 Cal.4th 82,

7  124 (Cal. 2002)).  As argued below, Plaintiff should win on both prongs of this test.

8  **I.    CHRISTY FREY HAS BEEN DISMISSED.**

9      Plaintiff has voluntarily dismissed Christy Frey from this case.  She is no longer a

10  named defendant.  As such, Defendant's objections regarding Christy Frey are moot.

11  **II.   PLAINTIFF'S CAUSES OF ACTION DO NOT ARISE FROM ACTS IN**
12  **FURTHERANCE OF DEFENDANT'S RIGHT TO FREE SPEECH ON A**
    **PUBLIC ISSUE.**

13      A defendant making an Anti-SLAPP motion to strike must, to satisfy the statute's

14  first prong, demonstrate that the underlying lawsuit arises out of acts made "in

15  furtherance of the [defendant's] right of petition or free speech under the United States

16  Constitution or the California Constitution in connection with a public issue . . . ."  Cal.

17  Code Civ. P. § 425.16(b)(1).  While there is no doubt Mr. Frey engages in a great deal of

18  speech on public issues, the acts forming the basis for this suit cannot be so characterized.

19      The Anti-SLAPP statute enumerates the conduct it intends to protect:

20      (1)    any written or oral statement or writing made before a legislative,
21             executive, or judicial proceeding, or any other official proceeding
               authorized by law,

22      (2)    any written or oral statement or writing made in connection with an
23             issue under consideration or review by a legislative, executive, or
               judicial body, or any other official proceeding authorized by law,

24      (3)    any written or oral statement or writing made in a place open to the
25             public or a public forum in connection with an issue of public interest,
               or

26      (4)    any other conduct in furtherance of the exercise of the constitutional
27             right of petition or the constitutional right of free speech in connection
               with a public issue or an issue of public interest.

28  Cal. Code Civ. P. § 425.16(e).

Opposition to Defendant's Motion to Strike;
Memorandum of Points and Authorities
Page - 5

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

20

1  Defendant argues that his harassing blog posts and tweets were made "in

2  connection with an issue of public interest" as that phrase is used in subsections (e)(3)

3  and (e)(4).  (Defendant's Motion to Strike ("MTS") at 8.)  He asserts that the Barn

4  Incident is a public issue, and points to the acts of others in support of that

5  characterization: (1) after the Barn Incident, Ms. Naffe accused O'Keefe of attempted

6  sexual assault in court filings; (2) she later took to her blog in an attempt to correct

7  reporting about it; and (3) O'Keefe is a public figure subject to media attention.  (MTS at

8  8-9.)  Since Mr. Frey's initial conduct toward Ms. Naffe grew out of his interest in the

9  Barn Incident, all of his conduct should be protected by the Anti-SLAPP statute.  (MTS

10  at 9.)  Or so he claims.

11  The Barn Incident is a red herring.  Although it provides convenient camouflage

12  for Mr. Frey, the basis for this suit is not his commentary on the Barn Incident.  Rather, it

13  is Mr. Frey's campaign to harass and intimidate Ms. Naffe into withholding evidence of a

14  wholly distinct crime, related to the Barn Incident only by virtue of O'Keefe's

15  involvement.  Mr. Frey was not commenting on the Barn Incident when he plastered Ms.

16  Naffe's private medical information over the front page of his blog.  (Naffe Decl. ¶ 25.)

17  He was not commenting on the Barn Incident when he made Ms. Naffe's social security

18  number available to identity thieves.  (*Id.* at ¶¶ 25, 29-30.)  He was not commenting on

19  the Barn Incident when he threatened a criminal investigation of Ms. Naffe.  (*Id.* at ¶ 27.)

20  The Barn Incident is merely cover for Mr. Frey's tortious behavior.

21  Therefore, even assuming that the Barn Incident is an "issue of public interest"

22  sufficient to satisfy the Anti-SLAPP statute's first prong, Defendant cannot show that this

23  suit arises out of activity "in connection" with it.  On this basis alone, the court should

24  deny Defendant's Motion to Strike.

25  **III.  PLAINTIFF HAS ESTABLISHED A PROBABILITY OF PREVAILING ON**
   **HER CLAIMS BY THE ATTACHED EVIDENCE.**

26

27  If the Court determines that Defendants' Motion satisfies the first prong, Plaintiff

28  contends that the Motion should still be denied since the attached evidence establishes

Opposition to Defendant's Motion to Strike;
Memorandum of Points and Authorities
Page - 6

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

21

that Plaintiff has a probability of prevailing on her claims for Public Disclosure Invasion of Privacy, False Light Invasion of Privacy, Defamation, Intentional Infliction of Emotional Distress and Negligence.  And as discussed below, Defendant's objections are meritless.

### A.    THE STANDARD OF PROOF FOR ESTABLISHING A PROBABILITY OF PREVAILING IS LOW.

Where § 425.16 applies, the cause of action "shall be subject to a special motion to strike, *unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim*."  Cal. Code Civ. P. § 425.16(b)(1). "To establish such a probability, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Matson v. Dvorak*, 40 Cal.App.4th 539, 548 (Cal. Ct. App. 1995); *Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1451 (Cal. Ct. App. 1999); *Wilcox v. Superior Court*, 27 Cal.App.4th 809, 823 (Cal. Ct. App. 1994).  The plaintiff's burden on this issue is akin to that of a party opposing nonsuit, directed verdict, or summary judgment.  *Paulus v. Bob Lynch Ford*, 139 Cal.App.4th 659, 672 (Cal. Ct. App. 2006).  However, a "motion to strike under section 425.16 is not a substitute for a motion for a demurrer or summary judgment. [citation]  In resisting such a motion, *the plaintiff need not produce evidence that he or she can recover on every possible point urged.  **It is enough that the plaintiff demonstrates that the suit is viable***, so that the court should deny the special motion to strike and allow the case to go forward."  *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 905 (Cal. Ct. App. 2004) (emphasis added).  "The causes of action need only be shown to have 'minimal merit.'"  *Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298, 318 (Cal. Ct. App. 2002).

///

///

///

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 7

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

22

B.     **DEFENDANT'S PUBLIC DISCLOSURE OF NAFFE'S PRIVATE INFORMATION WAS A TORTIOUS INVASION OF HER PRIVACY.**

Plaintiff's second cause of action is for public disclosure of private facts, a n invasion of privacy tort.  In California, there are four elements to establish a cause of action for the public disclosure tort: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern."  *Shulman v. Group W Prods., Inc.*, 18 Cal.4th 200, 214 (Cal. 1998).  Defendant challenges the second and fourth prongs here.

Defendant makes a short argument that "the information published by Mr. Frey concerns a matter of public interest, which itself diminishes the privacy expectation of the plaintiff."  (MTS at 11.)  In support he cites *Rosenfeld v. U.S. Dep't of Justice*, No. C-07-3240 EMC, 2012 WL 710186, *5 (N.D. Cal., Mar. 5, 2012).  But *Rosenfeld* is inapposite in two ways.  First, it was a Freedom of Information Act ("FOIA") case.  In FOIA cases, as the *Rosenfeld* court noted, there is a "strong presumption in favor of disclosure."  *Id.* at *2.  This presumption is not applicable to invasion of privacy torts.  Second, the individual who was the subject of the FOIA request had "written numerous memoirs, was the host of a live radio show for over two decades, and is described on his own website as 'a popular nation speaker on issues related to conservative politics, adoption and the life lessons.'"  *Id.* at *5.  He was a "public figure."  *Ibid.*  Defendant does not, and could not, argue that Ms. Naffe is a public figure.  *Rosenfeld* is simply not applicable.

Defendant also asserts that, since the deposition transcript was hosted on the federal courts' ECF/PACER system, the facts therein were, as a matter of law, not private.  (MTS at 11-12.)  True, *in general*, the First Amendment protects from liability disclosures of matters of public record.  *See Cox Broadcasting Corp v. Cohn*, 420 U.S. 469, 491-92 (1975).  But this general rule is subject to an important exception: a "matter which was once of public record may be protected as private facts where disclosure of that information would not be newsworthy."  *Diaz v. Oakland Tribune, Inc.*, 139 Cal.App.3d 118, 132 (Cal. Ct. App. 1983).  The First Amendment is no defense to

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

disclosures of information "so offensive as to constitute a 'morbid and sensational prying into private lives for its own sake' . . . ." *Id.* at 126.

Here, even though Ms. Naffe's deposition transcript was a matter of public record, it was <u>not</u> newsworthy.  The transcript was taken seven years prior to Mr. Frey's re-publication.  The deposition had nothing to do with the Barn Incident, except that both involved Ms. Naffe.  No public discourse regarding the Barn Incident was advanced by uncouth discussions of Ms. Naffe's 2005 prescriptions or medical conditions.  And nobody better understood the Barn Incident better because they had access to Ms. Naffe's social security number.  In sum, the facts in Ms. Naffe's 2005 deposition transcript were private.  *Cf. Melvin .v Reid*, 112 Cal.App. 285 (Cal. Ct. App. 1931) (reversing dismissal of invasion of privacy claim based on disclosure of plaintiff's past life as a prostitute seven years after she reformed, even though that fact was in the public record).

## C.    <u>DEFENDANT'S CONDUCT PAINTED PLAINTIFF IN A FALSE LIGHT.</u>

Plaintiff's third cause of action is false light invasion of privacy.  There are two elements of the false light tort: (1) "the false light in which the plaintiff was placed would be highly offensive to a reasonable person," and (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Rest. 2d, Torts §652E.

Defendant does not attack either element, instead arguing that the false light claim is "derivative of, and duplicative of" her defamation claim.  (MTS at 15.)  Plaintiff concedes that in many cases, defamatory statements may also form the basis for a false light claim, thus making the false light claim "duplicative."  *See Werner v. Times-Mirror Co.*, 193 Cal. App.2d 111, 120 (Cal. Ct. App. 1961).

However, this is not such a case.  As discussed below, Plaintiff's defamation claim is based on false statements of fact.  Her false light claim is based on other statements and questions that cannot be interpreted as statements of fact, and therefore cannot support a defamation claim.  For example, one evidentiary basis for Ms. Naffe's false light claim is

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 9

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

24

1    Mr. Frey's relentless and harassing questioning about her failure to call a cab during the

2    Barn Incident.  (Naffe Decl. at ¶ 17.)  These questions, though not statements of fact,

3    were pregnant with accusation; they included an implied answer that Ms Naffe failed to

4    call a cab because she was lying about the Barn Incident.  They implied she submitted a

5    false report.  Although not false statements of fact—and therefore not sufficient to

6    support defamation—the rhetorical questions Defendant posed *ad nauseum* undoubtedly

7    painted Plaintiff in a highly offensive, false, accusatory light.

8        **D.    DEFENDANT IS LIABLE TO PLAINTIFF FOR DEFAMATION.**

9        Plaintiff's fourth cause of action is for defamation.  Defamation is "the [1]

10   intentional [2] publication of a [3] statement of fact that is [4] false, [5] unprivileged, and

11   [6] has a natural tendency to injure or which causes special damage."  *Smith v.*

12   *Maldonado*, 72 Cal.App.4th 637, 645 (Cal. Ct. App. 1999).

13       Defendant challenges the third, fourth and fifth elements of the claim, arguing that

14   the alleged defamatory statements "cannot reasonably be interpreted as stating actual

15   facts," that they were not provably false, and that in any event, the First Amendment

16   privileges his statements.  (MTS at 13-15.)  Supporting the defamation claim are Mr.

17   Frey's statements that Ms. Naffe is a "liar whose lies will be exposed" and that she is

18   "full of false allegations."  (*See* Compl. ¶ 60; Mar. 25, 2012 List of @patterico Tweets,

19   Ex. B.)  He argues that, in the context of political disputes, legal disputes, and Internet

20   debates, such statements are "unlikely to be taken as literally true statements."  (MTS at

21   14.)

22       Again, however, Defendant misstates the appropriate context.  In this case,

23   Plaintiff's allegations must be viewed in the context of Mr. Frey's concerted effort to

24   suppress evidence of O'Keefe's wrongdoing.  This was not an "ongoing online dispute."

25   (MTS at 14.)  This was harassment and intimidation in one direction only: from Mr. Frey

26   toward Ms. Naffe.  The literal meaning and substantive content of @patterico's tweets—

27   the aspect of it that is provably false—is that Ms. Naffe submitted a false complaint

28   against O'Keefe. *Compare, e.g.*, *Standing Comm. on Discipline of U.S. Dist. Court for*

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 10

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

25

*Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1440-42 (9th Cir. 1995) (holding an allegation of "dishonesty" not actionable because it lacked "substantive content" but upholding sanctions for an allegation that a judge was "drunk on the bench" because there was "nothing relating to the context in which this statement was made that tends to negate the literal meaning of the words").  Considered in the context of Mr. Frey's crusade to keep Ms. Naffe quiet about O'Keefe, Mr. Frey's tweets did contain a provably false statement of fact.  The court should sustain Plaintiff's defamation claim.

**E.    DEFENDANT'S OUTRAGEOUS CONDUCT CAUSED PLAINTIFF SEVERE EMOTIONAL DISTRESS.**

Plaintiff's fifth cause of action is intentional infliction of emotional distress ("IIED").  Defendant correctly observes that this tort has three elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (Cal. 2009).

Defendant raises two objections to this claim.  First, he describes his behavior as merely insulting Plaintiff and questioning her honesty.  (MTS at 16.)  Therefore, he argues, his conduct was not extreme and outrageous as a matter of law.  (MTS at 16.)  This misstates the basis for Plaintiff's IIED claim.  The extreme and outrageous conduct alleged is not restricted to Mr. Frey's insults or doubts about Ms. Naffe's honesty.  The extreme and outrageous conduct alleged is Mr. Frey's vicious harassment campaign, specifically designed to stop Ms. Naffe from coming forward with evidence that Mr. Frey's friend committed a crime.  Although this conduct included public insults and character assassination attempts, (Naffe Decl. ¶ 17) it also included his public threats to begin a criminal investigation of Plaintiff (*Id.* at ¶ 27), and his disclosure of highly private information about her.  (*Id.* at ¶ 25.)

///

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 11

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

26

Second, Defendant argues that "the conduct [Plaintiff] complains of is debate on a subject of public interest protected by the First Amendment . . . and hence exempt from attack as infliction of emotional distress." (MTS at 17 (citing *Snyder v. Phelps*, 131 S.Ct 1207 (2011).) But as argued above in Part II, *infra*, Mr. Frey's used his professed "subject of public interest"—the Barn Incident—as a pretext to engage in intimidation and harassment of Ms. Naffe, an otherwise private citizen. As the Supreme Court noted, "restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." *Snyder v. Phelps*, 131 S.Ct at 1215. In short, Defendant's objections to Plaintiff's IIED claim should be rejected.

## F.   DEFENDANT HAD A STATUTORY DUTY NOT TO PUBLISH MS. NAFFE'S SOCIAL SECURITY; HIS BREACH OF THAT DUTY CONSTITUTED NEGLIGENCE.

Plaintiff's sixth cause of action is for negligence. The well-known elements of negligence are (1) duty, (2) breach, (3) causation, and (4) damages. *Conroy v. Regents of Univ. of Cal.*, 45 Cal.4th 1244, 1250 (Cal. 2009).

Here, Mr. Frey asserts he had no duty to refrain from publishing Ms. Naffe's social security number. (MTS at 17-20.) But that duty is plainly imposed by statute. Cal. Civ. Code § 1798.85 ("a person or entity may not . . . publicly display in any manner an individual's social security number"). Defendant correctly states that the statute does not itself provide for a private right of action, (MTS at 19) but this argument confuses the "duty" element of a negligence cause of action with the existence of an independent, statutory cause of action. Common-law negligence (or negligence per se) is the cause of action; § 1798.85 is the source of Mr. Frey's duty.[2]

## G.   PLAINTIFF HAS SUBMITTED "MINIMAL MERIT" EVIDENCE OF EACH OF THE ABOVE CLAIMS.

By the attached Exhibits and Declaration, Plaintiff submits to the court more than mere allegations. Ms. Naffe's Declaration contains *testimony* as to the substance of her

---

[2] Plaintiff concedes that Defendant's relationship with the PACER service does not create an affirmative duty to redact documents retrieved from PACER. (MTS at 17.)

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Complaint.  The March 25, 2012 list of tweets from Mr. Frey's Twitter account (*see* Mar. 25, 2012 List of @patterico Tweets, Ex. B.) and the .pdf copy of the blog post in which Mr. Frey posted Ms. Naffe's deposition transcript further substantiate her claims.  (PDF of "Documents from Nadia Naffe's Race Discrimination Case Against the RNC: the Computer That Was Never Returned", *also available at* http://www.patterico.com/ 2012/03/24/documents-from-nadia-naffes-race-discrimination-case-against-the-rnc-the-computer-that-was-never-returned/.)  Plaintiff anticipates discovering much more evidence as this case moves forward, but at the pleading stage, without opportunity to discover evidence largely in the exclusive control of the Defendant, she has met her burden under the Anti-SLAPP statute's second prong to produce "minimal merit" evidence of her claims.  Having met her burden, Plaintiff respectfully asks this court to dismiss Defendant's Motion to Strike in its entirety.

## IV.    IN THE ALTERNATIVE, PLAINTIFF REQUESTS THAT THE HEARING BE CONTINUED AND SHE BE ALLOWED TO CONDUCT LIMITED DISCOVERY.

In the case that the court finds insufficient evidence to support any or all of Plaintiff's claims, she respectfully asks this court to stay its ruling for limited discovery. True, the statute by its own terms prohibits discovery after filing of a special motion to strike.  Cal. Code Civ. P. § 425.16(g) ("All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section.  The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion.").

But as noted by this very court, California's Anti-SLAPP statute directly conflicts with the Rule 56 of the Federal Rules of Civil Procedure, and thus does not govern federal court procedure.  *Rogers v. Home Shopping Network*, 57 F.Supp.2d 973, 982 (C.D. Cal. 1999) ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court."); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846-47 (9th Cir. 2001) (remanding and ordering the district court to allow for discovery of information "in the defendants' exclusive control," despite Anti-SLAPP provisions

Opposition to Defendant's Motion to Strike;
Memorandum of Points and Authorities
Page - 13

Leiderman Devine LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

28

prohibiting it).  In ruling on the instant motion, this court is governed by Rule 56, which requires that the non-moving party—here, Plaintiff—be given "the opportunity to discovery information that is essential to his opposition."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).  As such, Ms. Naffe should be given the opportunity to conduct discovery before dismissal under the Anti-SLAPP statute.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion to Strike should be denied.  Or, alternatively, the court should stay its ruling pending limited discovery.


Dated: November 19, 2012                          LEIDERMAN DEVINE LLP



                                          By: /s/ James B. Devine
                                          _____
                                          James B. Devine
                                          Jason S. Leiderman
                                          Attorneys for Plaintiff
                                          NADIA NAFFE, an individual

OPPOSITION TO DEFENDANT'S MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES
Page - 14

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

29

## DECLARATION OF NADIA NAFFE

I, NADIA NAFFE, DECLARE AS FOLLOWS:

1.      I make this Declaration in support of Plaintiff's Opposition to Defendant's Anti-SLAPP Motion.

2.      Prior to the events forming the basis for this lawsuit, I was a personal friend and professional colleague of James O'Keefe ("O'Keefe"), a conservative activist specializing in producing undercover videos that style themselves as "exposés" of liberal political misdeeds.

3.      I am informed and believe and based thereon allege that O'Keefe is a popular member of the conservative community who has been vilified by the mainstream press for unfair and biased attacks on his targets, but is much admired by a section of conservatives.   I am informed and believe and based thereon allege that Defendant MR. FREY is among O'Keefe's admirers and personal friends.

4.      I am informed and believe and based thereon allege that in January 2010, O'Keefe was arrested during an undercover project aimed at sitting U.S. Sentator Mary Landrieu.

5.      I am informed and believe and based thereon allege that in May, 2010, O'Keefe plead guilty to entering real property of the United States under false pretenses for which he is currently serving three years of probation.

6.      In or around Fall 2011, after a friendship of approximately two and a half years, O'Keefe began making romantic overtures toward me, overtures I rejected.  These harassing romantic advances culminated in a frightening incident on October 2, 2011, in a barn in New Jersey, during which O'Keefe drugged me in an attempt to sexually assault me (the "Barn Incident").  A few weeks after this incident, O'Keefe offered to pay me in consideration for my promise not to disclose the barn incident.   I rejected O'Keefe's offer.  Instead, I sent a letter to O'Keefe and the board of directors of his company, requesting he cease harassing me.  O'Keefe, in turn, threatened to sue me if I contacted law enforcement about the Barn Incident.

DECLARATION OF NADIA NAFFE

Page 1

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

7.      In November 2011, O'Keefe posted a harassing, degrading, public video about me to youtube.com.  In response I filed a criminal harassment complaint against O'Keefe in New Jersey, which was ultimately dismissed for lack of jurisdiction.

8.      In February 2012, the late conservative media mogul Andrew Breitbart—a personal friend of both me and (on information and belief) O'Keefe—mischaracterized the Barn Incident while speaking with a reporter.  In an effort to correct misconceptions about my pending complaint against O'Keefe and the underlying facts of the Barn Incident, I publicly challenged Mr. Breitbart's mischaracterizations in my personal blog and via my Twitter account.

9.      I am informed and believe and based thereon allege that MR. FREY is a personal friend of O'Keefe, and that friendship began when O'Keefe worked as an intern in the County District Attorney's Office with MR. FREY while O'Keefe was a law school student.

10.      I am informed and believe and based thereon allege that MR. FREY is aware of the fact that O'Keefe is currently on federal probation, and that any criminal charges against O'Keefe would potentially violate the terms of his probation.

11.      Although MR. FREY and I had mutual friends and acquaintances, including O'Keefe, we had no direct contact with each other prior to the events forming the basis for this lawsuit.

12.      I was involved in an incident in Los Angeles, California, during which O'Keefe wire tapped Congresswoman Maxine Waters' office and the office of OneUnited, the bank that employed Congresswoman Waters' husband.  I was used by O'Keefe to further this wire tapping plan.

13.      I am informed and believe and based thereon allege that MR. FREY was aware of  my involvement with O'Keefe's wire tapping of Congresswoman Waters at some point after the incident occurred.

14.      I am informed and believe and based thereon allege that MR. FREY publishes a "blog" on the Internet known as "Patterico's Pontifications" at the publically

DECLARATION OF NADIA NAFFE

Page 2

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

31

available website www.patterico.com and that MR. FREY has the power of moderation over all articles and comments on his blog, and may therefore edit and delete comments and comment timestamps.

15.      I am informed and believe and based thereon allege that MR. FREY does in fact use his power of moderation to alter the content of his website, to delete posts or comments he later thinks better of, and to change or delete comments that demonstrate his use of the site during regular business hours.

16.      I am informed and believe and based thereon allege that in February and March 2012, MR. FREY posted at least eight separate articles concerning me on his blog at www.patterico.com and actively participated in comment threads with respect to the articles, posting the comments under his nickname "Patterico."

17.      I am informed and believe and based thereon allege that during the same time period—and at all times of day and night—MR. FREY posted several dozen threatening, harassing and defamatory statements concerning I using his twitter account, @patterico, which statements are commonly known as "tweets."  In his tweets, MR. FREY described me as a liar, illiterate, callous, self-absorbed, despicable, a smear artist, dishonest, and absurd (among other less direct harassment).  In particular, MR. FREY repeatedly asked the rhetorical question: "why did [I] not call a cab to escape the barn during the Barn Incident?" which was intended to discredit my account of the Barn Incident.  MR. FREY has admitted as much, describing his activity as "poking holes" in the theory I put forth in my criminal harassment complaint against O'Keefe.

18.      I am informed and believe and based thereon allege that as of at least February 28, 2012, MR. FREY knew: (a)  I had evidence of O'Keefe's wire tapping of Congresswoman Waters' office and the OneUnited Offices; (b) I was planning on coming forward with this evidence; (c) since the wiretapping occurred within the County's jurisdiction, MR. FREY's office would likely receive the evidence; and (d) O'Keefe risked a prison sentence for violating his federal probation if  I made the evidence available.

DECLARATION OF NADIA NAFFE

Page 3

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

19.      I am informed and believe and based thereon allege that, combined with MR. FREY's personal friendship with O'Keefe, the facts in paragraph 18 constitute a motive for MR. FREY to engage in behavior likely to stop me from coming forward with the evidence.

20.      I am informed and believe and based thereon allege that on February 28, 2012, MR. FREY published to his blog portions of the transcript from the probable cause hearing in my criminal harassment lawsuit against O'Keefe in a manner that was intentionally out-of-context.

21.      I am informed and believe and based thereon allege that in the same February 28, 2012, blog post, MR. FREY criticized journalist Tommy Christopher for failing to vet me before publishing an article about the Barn Incident and subsequent lawsuit, and made a list of 29 questions Mr. Christopher "should" have asked when interviewing me for an article regarding the Barn Incident.  I am informed and believe and based thereon allege that these 29 questions were intended to provide O'Keefe with legal ammunition to fight my criminal harassment lawsuit, and so constituted the giving of legal advice.

22.      On March 14, 2012, in an effort both to combat misconceptions regarding the barn incident, I began posting a series of articles on her personal Internet blog.  In these blog posts, I wrote about the incident involving O'Keefe wire tapping Congresswoman Waters' office and the OneUnited offices.  At that time she published the blog posts, I was planning on turning over an audio recording of the wire tapping of Congresswoman Waters to the County, through its Sherriff's Department or its District Attorney's office.

23.      I am informed and believe and based thereon allege that on Friday, March 23, 2012, at a time when MR. FREY should have been in the employ of the County, MR. FREY published to his blog several documents related to a civil suit filed by O'Keefe against me, including an order granting an injunction against me (this suit is separate from the criminal harassment complaint arising from the Barn Incident).

DECLARATION OF NADIA NAFFE

Page 4

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

24.     Also on March 23, 2012, I responded to a tweet from MR. FREY's account, informing him that I intended to notify the County District Attorney's office and the California State Bar that MR. FREY was misusing government time and resources by blogging and tweeting about my dispute(s) with O'Keefe.

25.     I am informed and believe and based thereon allege that on March 24, 2012, MR. FREY retaliated against me by publishing to his blog over 200 pages of a 2005 deposition transcript from an unrelated civil matter between me and a former employer. The deposition transcript MR. FREY posted contained a great deal of private and personal information, including my social security number, date of birth, maiden name, mother's maiden name, family address, information about my medical condition and the medications I was taking at that time.

26.     I am informed and believe and based thereon allege that on March 25, 2012, after word spread that my social security number was in the first few pages of the deposition transcript hosted on his blog, MR. FREY wrote in the comments section of the March 24 blog post: "I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons."

27.     Also on March 23, 2012, MR. FREY contacted me on Twitter stating: "My first task is learning what criminal statutes, if any, you have admitted violating."  I am informed and believe and based thereon allege that MR. FREY did so to intimidate me from bringing forth evidence to the County by making me believe he was acting under the color of the law, as a deputy district attorney, to criminally prosecute me for an alleged crime.

28.     I am informed and believe and based thereon allege that in another comment time stamped one minute later, MR. FREY continued: "She may just be starting to realize that she that she has made a series of mistakes that could land her in trouble.  Maybe she's reconsidering . . . ."

29.     I am informed and believe and based thereon allege that at some time after his March 25, 2012, blog posts, MR. FREY removed the deposition transcript from his

DECLARATION OF NADIA NAFFE

Page 5

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

34

website; however, my personal information and social security number were nonetheless preserved for several weeks or months in an Internet web cache, available to anyone with an Internet connection wishing to view personal, private details for whatever reason.

30.    On March 26, 2012, I began receiving email alerts from the credit reporting agency Experian, explaining that some people had made changes to her credit report.   I continue to receive reports that individuals are fraudulently using my social security number.

31.    I am informed and believe and based thereon allege that MR. FREY engaged in the defamatory and harassing activity described herein in order (a) to intimidate me into not handing over evidence to the County regarding O'Keefe's wiretapping of Congresswoman Waters, and (b) to protect the reputations of his personal friends, O'Keefe and Mr. Breitbart.

32.    As a result of the actions of MR. FREY, I believed and continue to believe (a) that I would not be welcome in the County District Attorney's Office; (b) that MR. FREY and his colleagues have prejudged my character and credibility; (c) that the office would not accept any evidence I have regarding O'Keefe's Los Angeles wire tapping; and (d) that were I to come forward with that evidence, I would be subject to further harassment at the hands of MR. FREY.

33.    In other words, as a result of the actions of MR. FREY, I was in fact intimidated into not giving evidence of O'Keefe's wire tapping to the County.

34.    As a direct, proximate, and foreseeable result of MR FREY's conduct alleged herein, I have suffered highly acute emotional anguish.

35.    In particular, my emotional distress has physically manifested in a bleeding ulcer, a medical condition I did not have prior to MR. FREY's harassment.

36.    As a direct result of MR. FREY's harassment, and in order to prevent further harassment, I have been forced to make private both my Twitter account and my blog at nadianaffe.com.  Though I desire to, MR. FREY has made it impossible to freely participate in online speech.

DECLARATION OF NADIA NAFFE

Page 6

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1     37.    I am informed and believe and based thereon allege that MR. FREY

2  considers my absence from public online debates a victory for him.

3       I declare under penalty of perjury that the foregoing is true and correct.

4       Executed on November 19 2012, at Cambridge, MA .

6                           By: _____

7                                NADIA NAFFE

DECLARATION OF NADIA NAFFE

Page 7

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

36




## 3/24/2012

### Documents from Nadia Naffe's Race Discrimination Case Against the RNC: The Computer That Was Never Returned

Filed under: General — Patterico @ 5:11 pm

Poking around PACER, one finds the most interesting things. Things that journalists like Tommy Christopher might want to look into, if they found themselves writing about Nadia Naffe. The following is from an order made by the court overseeing that lawsuit, after taking testimony from Naffe regarding a laptop that she had been lent by the Florida Republican Party during her employment. The court found that she had been asked to return it, and intentionally did not:

> Based upon testimony of the plaintiff at the hearing, I find that the plaintiff, upon her termination on April 2, 2004, was specifically instructed to return all RPOF equipment, including a computer. The plaintiff had the computer at that point and intentionally did not return it. Subsequently, the plaintiff took the laptop computer to her mother's home in Pensacola, Florida, and it could no longer be located there, assertedly because the home was severely damaged during Hurricane Ivan.

The relevance of the laptop is described in her deposition, which I found on PACER as well, in three parts: one, two, and three. Interesting reading. Apparently she believed she had been given an inferior laptop, presumably because she was black, given the lawsuit's allegations.

But I guess it was good enough to keep after she was terminated, even though she had been instructed to return it.

By the way, I should note that Naffe has threatened to report me to my State Bar and my place of employment for writing posts critical of her:



The theory is that, by pointing out holes in her story, on a public blog, concerning a matter of public interest, I am giving James O'Keefe "legal advice" in a civil suit.



The claim is absurd. If a non-lawyer criticizes O'Keefe, in a way that gives her a legal argument in court, is that practicing law without a license? No self-respecting employer or bar investigator would buy this logic, so she moved on to another false claim: that I updated my blog on company time. You can add that to a large set of other falsehoods she has told in recent days and weeks.

The motive is to silence me. The likely result is that her tactics will draw greater attention to my criticism of her claims, and her tactics of trying to silence her critics.

UPDATE: Interesting points in comments about the medications she was taking, and how those medications don't mix well with alcohol. One of the medications, Seroquil, is commonly prescribed for schizophrenia, mania, or bipolar disorder — all afflictions that may well not be temporary. If she was still taking the medications in late 2011, it could explain why she allegedly had such a strong reaction to alcohol. Details here.

There is another point about Seroquil that, together with the above information, might make for an interesting post. Will have to think about this one . . .

Comments (402)

## 402 Comments

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...     http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

1. Did I just give legal advice again? Dammit!

   *Comment by Patterico — 3/24/2012 @ <u>5:15 pm</u>*

2. And it was on company time, too, since I have to work all weekend (at home) — and took a few minutes out of that weekend work schedule to write this post.

   Double whammy!

   *Comment by Patterico — 3/24/2012 @ <u>5:17 pm</u>*

3. She's a piece o' work. A perennial victim of discrimination/litiGATOR.

   *Comment by Colonel Haiku — 3/24/2012 @ <u>5:21 pm</u>*

4. I find Nadia to be of sufficient intellectual heft to be able to possibly keep up with my 6th Grade daughter. Harvard, my a\*\*. Unless Harvard has a Middle School.

   *Comment by <u>dfbaskwill</u> — 3/24/2012 @ <u>5:23 pm</u>*

5. I've seen a lot of people start walking on eggshells when these kinds of charges and innuendos are pushed out into the public square.
   Patrick cowboys the f up and rides it.

   Good

   Breitbart would be proud

   *Comment by SteveG — 3/24/2012 @ <u>5:30 pm</u>*

6. Harvard does have an Extension School. I believe anyone can attend.

   Wonder if Tommy C. should look into that too.

   But there I go, a sympathizer with the "Klu" Klux Klan, suggesting that someone who thinks "your" is the contraction for "you are" (as demonstrated by consistent tweets over months) is not necessarily Harvard material.

   *Comment by Patterico — 3/24/2012 @ <u>5:31 pm</u>*

7. "She's a piece o' work."

   She's a piece of something…but, it ain't work.

   *Comment by Dave Surls — 3/24/2012 @ <u>5:36 pm</u>*

8. Sure hope the teacher's union doesn't come after Patterico now for giving Nadia unauthorized grammar lessons.

   *Comment by elissa — 3/24/2012 @ <u>5:39 pm</u>*

9. elissa,

   That was a very clever comment.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...     http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by Patterico — 3/24/2012 @ 5:41 pm*

10. LOL, Elissa.

   BTW, you've gotta love the Streisand effect.

   *Comment by Dustin — 3/24/2012 @ 5:45 pm*

11. When the Black Panther's put up a reward, an Louis F. marks citizens for death we're looking at a spot of bother.

   *Comment by gary gulrud — 3/24/2012 @ 5:55 pm*

12. *you gave him 29 BULLET POINTS*
   the fake "right" actual LEFT – using incendiary language again.

   *Comment by builderD — 3/24/2012 @ 5:56 pm*

13. Yeah, I love the "company time" idea, as if you are on the clock working exactly your 8 hour day.

   *Comment by MayBee — 3/24/2012 @ 6:00 pm*

14. Patterico – Can I get some advice at the same hourly rate you are billing O'Keefe?

   *Comment by daleyrocks — 3/24/2012 @ 6:00 pm*

15. Skipping over the laptop or a moment: Prozac and Ambien then. Prozac and Ambien now?

   Prozac + alcohol equals exacerbated response to alcohol. Prozac plus Ambien plus Alcohol even moreso. Drugs affecting serotonin change both alcohol metabolism and its effects in the brain.

   In fact, Ambien, full stop. Irrationality+confusion+ motor impairment

   *Comment by SarahW — 3/24/2012 @ 6:02 pm*

16. (see Pdf 2 for factors affecting her testimony)

   *Comment by SarahW — 3/24/2012 @ 6:03 pm*

17. Patrick still won't confess what sandwich he consumed using his taxpayer paid salary on his taxpayer subsidized lunch time.

   *Comment by SarahW — 3/24/2012 @ 6:05 pm*

18. "Prozac + alcohol equals exacerbated response to alcohol. Prozac plus Ambien plus Alcohol even moreso. Drugs affecting serotonin change both alcohol metabolism and its effects in the brain."

   SarahW – If you're looking for some suggestions, I could add a few.

   *Comment by daleyrocks — 3/24/2012 @ 6:06 pm*

19. "Patrick still won't confess what sandwich he consumed using his taxpayer paid salary on his taxpayer subsidized lunch time."

Or if he consumed taxpayer subsidized condiments on said sandwich.

*Comment by daleyrocks — 3/24/2012 @ 6:08 pm*

20. Just noting she was taking both of those back then. Was she taking them when she was forced to use harsh soap. #lyebarn

*Comment by SarahW — 3/24/2012 @ 6:09 pm*

21. Those little packets aren't free you know.

*Comment by SarahW — 3/24/2012 @ 6:10 pm*

22. If the company just asks for it's property back, you don't have to give it back. It isn't like taking the company's time.

*Comment by MayBee — 3/24/2012 @ 6:11 pm*

23. She's a liar. But you knew that. It's clear she converted the laptop to her own use, if she did it dishonestly she's a thief.

*Comment by SarahW — 3/24/2012 @ 6:13 pm*

24. Daley has been the the #facedown barn?

*Comment by SarahW — 3/24/2012 @ 6:14 pm*

25. "Just noting she was taking both of those back then."

SarahW – OK then. Some people have trouble sleeping and try a variety of cocktails, both liquid and powdered. As you noted, some combinations exaggerate individual effects of cocktail components. Some folks look for that enhanced overall effect, some don't.

*Comment by daleyrocks — 3/24/2012 @ 6:16 pm*

26. J. Edgar Hoover this one times tried to get MLK to give his laptop back.

*Comment by SarahW — 3/24/2012 @ 6:18 pm*

27. SarahW – I've been #facedown but not in a barn that I remember anyway.

*Comment by daleyrocks — 3/24/2012 @ 6:19 pm*

28. that "s" in times is not an attempt at dialect, just bad typing.

*Comment by SarahW — 3/24/2012 @ 6:22 pm*

29. I'm ticked that O'Keefe didn't do this research prior to getting involved with this twit. This filing should have been a red flag James!!!

*Comment by Pamela — 3/24/2012 @ 6:24 pm*

30. I bring it up mainly because I was wondering the other day if she were taking something.

*Comment by SarahW — 3/24/2012 @ 6:25 pm*

31. *and it was on company time, too, since I have to work all weekend (at home)*

   Some of these trolls have peculiar job histories. Flex time takes on a whole other meanings.

*Comment by Noodles — 3/24/2012 @ 6:27 pm*

32. SarahW is really on to something.

   She was taking Seroquel, as indicated in the third deposition. It is used to treat schizophrenia, mania, and bipolar disorder. The attorney says in that deposition that "she survives with that medication," and it's a reasonable question to ask whether she still takes the drug. Taking it with alcohol is not recommended and can increase Seroquel's side effects, which can include drowsiness, agitation, dizziness, fatigue, weakness, lethargy, irritability, nausea, and shakiness.

   By the way, I am working on an edit for the first depo, and will try to put the link back up soon.

*Comment by Patterico — 3/24/2012 @ 6:28 pm*

33.   "Patrick still won't confess what sandwich he consumed using his taxpayer paid salary on his taxpayer subsidized lunch time."

   Ground beef enchilada a la carte, small albondigas soup, diet Coke. Lunch of champions.

*Comment by Patterico — 3/24/2012 @ 6:34 pm*

34. YOU SCARED SOMEONE….. THEY NOW HAVE A PROTECTED TWITTER ACCOUNT…BWAHAHAHAHAH

*Comment by Pamela — 3/24/2012 @ 6:34 pm*

35. Apparently the Prozac and Ambien was what she was taking on the first day of the deposition, but then she became distraught after the first day, and her psychiatrist then prescribed more serious medicine, including the ones described in my previous comment.

*Comment by Patterico — 3/24/2012 @ 6:39 pm*

36. Holy heck. Well, that kind of illness would explain her jumbled interpretations of language that would not confuse others, and her mental insertion of serious threats into generally benign remarks/situations.

   If her condition has worsened, perhaps it might explain why her own friends do not quite recognize her at the moment. It might even account for some of her peculiar difficulties with spelling and syntax (far less present in her earlier tweet history and blogging.)

   Of course just plain old malice and stupidity might account for it. Though in my own case I usually just blame mypopia/presbyopia and floaters.

*Comment by SarahW — 3/24/2012 @ 6:41 pm*

37. That bitch is, in my opinion, fucking crazy.

   It is my contention that she is a worthless pile of crap who's only skills are lying, stealing, and filing bullshit lawsuits.

*Comment by Scott Jacobs — 3/24/2012 @ 6:46 pm*

38. Well that could explain much concerning her apparent random association back and forth with reality. And her sense of victom-hood. Hope to heck she isn't out there driving. (Or being driven to rape-barns.)

*Comment by builderD — 3/24/2012 @ 6:49 pm*

39.    Holy heck. Well, that kind of illness would explain [...] (a lot)

I hope she has friends and family who reach out and help her, if this is the case. And it might be a case of mixed mental illness and malice… in which case I hope folks show her more grace than she's showing.

*Comment by Dustin — 3/24/2012 @ 6:50 pm*

40. This was a case she wanted to bring, right?

*Comment by MayBee — 3/24/2012 @ 6:51 pm*

41. Wishing her not to drive , can't be construed as giving her legal advice from an unlicensed individual – can it ?

*Comment by builderD — 3/24/2012 @ 6:52 pm*

42. I'd be reluctant let someone drive a car or be a passenger on public transportation if they were taking medication that makes them drowsy, sick, or confused.

*Comment by DRJ — 3/24/2012 @ 6:53 pm*

43. You know the truth of this one, DRJ: no good deed goes unpunished. Suddenly O'Keefe doesn't look quite so skeevy, huh?

*Comment by Simon Jester — 3/24/2012 @ 6:56 pm*

44. My non- accredited, non- legal, un-licensed , legal advice to her would be : To use the diminished reality defense caused by medication/alcohol reactions. Her best defense against what sure seem as likely countersuits.

*Comment by builderD — 3/24/2012 @ 6:59 pm*

45. Why is that after reading this I get the feeling Nancy Pelosi is going to call another meeting and we are going to have to listen to Nadia giving Congressional Testimony telling us how America needs to provide all young Republican Women, Seroquel, Prozac, and Ambien free of charge.
**Patterico**

*Comment by Sanmon — 3/24/2012 @ 7:03 pm*

46. and free taxi-fare if drunk, company or school computers , legal advice, rape-barn kits, twitter accounts . . . wait . . . i think all/ or most of of that was/is available to her.

*Comment by builderD — 3/24/2012 @ 7:08 pm*

47. "Taking it with alcohol is not recommended and can increase Seroquel's side effects"

Patterico – Everybody knows those recommendations are just there to scare people. Add a case a beer, some xanax, some weed, you can have a one person party and crash for 12-18 hours.

*Comment by daleyrocks — 3/24/2012 @ <u>7:18 pm</u>*

48. It might just have been rxd to deal with her anxiety…but given all the strange behavior…

Anyway, it would make her beer beerier, that's for sure.

*Comment by Sarahw — 3/24/2012 @ <u>7:19 pm</u>*

49. klonopin chaser of course.

*Comment by daleyrocks — 3/24/2012 @ <u>7:20 pm</u>*

50. Good God, these transcripts are tedious to read. I will keep trying though.

*Comment by Noodles — 3/24/2012 @ <u>7:23 pm</u>*

51. That bitch is, in my opinion, f*cking crazy.

It is my contention that she is a worthless pile of cr@p who's only skills are lying, stealing, and filing bullsh*t lawsuits.

*Comment by <u>Scott Jacobs</u> — 3/24/2012 @ <u>7:31 pm</u>*

52. Scott – Don't hold back.

*Comment by daleyrocks — 3/24/2012 @ <u>7:32 pm</u>*

53. Hmmmm, lets see now, can we think of anyone else who threatens bar complaints and complaints to your employer upon critical blog posts …

Gee, something ought to pop up in my memory.

*Comment by <u>SPQR</u> — 3/24/2012 @ <u>7:49 pm</u>*

54. And if Nadia and that certain someone shared a common friend or two . . . wouldn't that be something?!

*Comment by Patterico — 3/24/2012 @ <u>7:51 pm</u>*

55. Reading through that, I have to say politics are really messed up if you can have black outreach, Black Republican groups, and then it's illegal race-based employment practice for the party to then assign black employees to work those events.

*Comment by MayBee — 3/24/2012 @ <u>8:39 pm</u>*

56. She seems madder that she wasn't running that show, if you ask me. Disgruntlement at not being in charge.

*Comment by Sarahw — 3/24/2012 @ <u>8:54 pm</u>*

57. I just got done reading the second one. The defense attorney's frustration with her mendoucheity was

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

palpable.

*Comment by JD — 3/24/2012 @ 8:54 pm*

58. Not liking hr ideas is, and asking her to retract her big plans seems to have frrustrated her. She was offended at suggestion repub rallying was unsophisticated .

*Comment by Sarahw — 3/24/2012 @ 8:57 pm*

59. About to re-upload Volume 1.

*Comment by Patterico — 3/24/2012 @ 9:01 pm*

60. iPad typing, cheezit crackers. Im buying a stylus tomorrow, maybe it will improve

*Comment by Sarahw — 3/24/2012 @ 9:09 pm*

61. Just re-uploaded Volume 1. Had to redact a Social Security number. Kind of silly, since the document is freely available on PACER, but whatever.

*Comment by Patterico — 3/24/2012 @ 9:11 pm*

62. Doing the redaction made the document monstrously large.

*Comment by Patterico — 3/24/2012 @ 9:12 pm*

63. The trolls have a different set of rules for you to follow. They obviously really don't care about the number.

*Comment by Noodles — 3/24/2012 @ 9:14 pm*

64. Oh, I know the rules are different for me.

The medication is relevant, by the way. Who made a public issue out of why she got loopy from some alcohol?

*Comment by Patterico — 3/24/2012 @ 9:16 pm*

65. OMG, well this explains why she fits in with the nutroots, that deposition is agonizing,

*Comment by narciso — 3/24/2012 @ 9:17 pm*

66. Yeah, it's kind of weird. They know you are a good/decent person and expect you to act like one. They know they themselves are lowlifes and expect themselves to act like ones.

The meds don't surprise me. I guessed Celiac Disease. What do I know?

*Comment by Noodles — 3/24/2012 @ 9:21 pm*

67. Here's the thing.
A lot of people have issues.
But if you know about yourself that you have a history of needing strong medicine because you panic, and you can't concentrate, and you can't remember simple things….then you should be a decent person and not try to attribute those symptoms to someone else trying to drug and then rape you.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by MayBee — 3/24/2012 @ 9:26 pm*

68. A decent person would say, "We fought that night and I acted irrationally and don't remember a lot…but I have a history of that and I accept full responsibility for my behavior. I still never again want to work with James O'Keefe".

*Comment by MayBee — 3/24/2012 @ 9:29 pm*

69. I wonder if there are going to be any new stories on Gawker or Mediwhateverite with this new information?

Somehow I don't think they will be as excited since it seems to be folding in on itself.

*Comment by Noodles — 3/24/2012 @ 9:35 pm*

70. The truth didn't serve the template, which countered the 'idiosyncratic' nature of the Occupy protests

*Comment by narciso — 3/24/2012 @ 9:37 pm*

71. I just opened up doc 3, I'm presuming "lamaticol" is lamictal,the anti – seizure med….

*Comment by Sarahw — 3/24/2012 @ 10:08 pm*

72. *That bitch is, in my opinion, fucking crazy.*
*It is my contention that she is a worthless pile of crap who's only skills are lying, stealing, and filing bullshit lawsuits.*
*Comment by Scott Jacobs — 3/24/2012 @ 6:46 pm*

– When did the conversation switch to Gloria Allred?

Oh.

*Comment by Icy — 3/24/2012 @ 10:10 pm*

73. Itt's used for manic expression too….

*Comment by Sarahw — 3/24/2012 @ 10:10 pm*

74. "I still never again want to work with James O'Keefe."

… because he's a creeper.

*Comment by Leviticus — 3/24/2012 @ 10:13 pm*

75. Yeah, Leviticus. It's him. He's the creeper.

*Comment by MayBee — 3/24/2012 @ 10:17 pm*

76. "I just opened up doc 3, I'm presuming "lamaticol" is lamictal,the anti – seizure med…."

SarahW – Some docs have used anti-seizure meds of label for bulimia, anxiety, alcohol as well.

*Comment by daleyrocks — 3/24/2012 @ 10:17 pm*

11/19/2012 1:42 PM

46

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...     http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

77. off label.

*Comment by daleyrocks — 3/24/2012 @ 10:18 pm*

78. *The medication is relevant, by the way. Who made a public issue out of why she got loopy from some alcohol?*
*Comment by Patterico — 3/24/2012 @ 9:16 pm*

– Mystery solved: she roofied herself!

*Comment by Icy — 3/24/2012 @ 10:23 pm*

79. She can be a creeper too, MayBee. It's not like there's a Mutually Exclusive Creepiness Principle at play here…

*Comment by Leviticus — 3/24/2012 @ 10:35 pm*

80. "Mystery solved: she roofied herself!"

- Icy

Makes more sense than her current story, since she obviously doesn't remember it…

*Comment by Leviticus — 3/24/2012 @ 10:37 pm*

81. So, Leviticus, two creepers don't make a right. Or something? I'm confused.
Can you ask the question again?

*Comment by MayBee — 3/24/2012 @ 10:56 pm*

82. Leviticus,

It is certainly possible that the things O'Keefe did not specifically deny about the Boudreau incident did occur — and if so, there was some horrible judgment at play there.

And I don't know what happened in the barn and don't pretend to.

But when we're deciding how to apportion scorn, at what point do the equities shift and cause us to heap the greater amount on Ms. Naffe? When she smears a dead family man? When she (however comically) uses lies to threaten the livelihood of your blog host?

When?

*Comment by Patterico — 3/24/2012 @ 11:15 pm*

83. #37

Yeah, what Scott said.

I about died laughing, reading that deposition, btw. To paraphrase "light fingers" Nadia: I'm not sure if I can answer your questions, on account of I'm a whack job, and the drugs I'm taking might make me even more of a whack job (true: side effects of Ambien can include hallucinations and delusions, according to wiki).

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Nothing like having your sole witness (at least I think she's their sole witness) confess to taking various mind-altering drugs, and then stating for the record that she's not even sure she'll be able to testify!

That's a real credibility builder.

Too freaking funny.

Thanks, Pat.

*Comment by Dave Surls — 3/24/2012 @ 11:19 pm*

84. Damn! And it would have been a big comeback hit for Whitney, too:

**The bitch, the bitch, the bitch … the bitch is whack!**

*Comment by Icy — 3/24/2012 @ 11:21 pm*

85. Ding Ding Ding — we have a winner.

Scott Jacobs @ #37.

This one's not to hard to figure out.

As Forrest's mother used to say "Stupid is as stupid does."

*Comment by shipwreckedcrew — 3/24/2012 @ 11:30 pm*

86. Leviticus is nothing if not consistent: past (alleged) ickiness begets future false accusations; cry no tears over O'Keefe, for he brought this upon himself.

*Comment by Icy — 3/24/2012 @ 11:41 pm*

87. "She was taking Seroquel, as indicated in the third deposition. It is used to treat schizophrenia, mania, and bipolar disorder."

You have to admit that her doctor knows how to diagnose.

*Comment by Dave Surls — 3/25/2012 @ 1:26 am*

88. "Itt's used for manic expression too…."

Is that a medical condition where you can't stop talking?

I think I might have that.

*Comment by Dave Surls — 3/25/2012 @ 1:29 am*

89. I, personally, am worried that Mrs. Patterico will sue the bunch of us for alienation of Patterico's affections since he is using marital assets and taking away from quality family time to talk to us on this blog.

*Comment by nk — 3/25/2012 @ 3:43 am*

90. "She was taking Seroquel…"

I think she's moved on to harder stuff, and is now taking a combination of Stupid-itol and Liesthruherteeth-itol. And, judging by her semi-coherent twitterisms, she's probably shooting up skank-idrene as well.

*Comment by Dave Surls — 3/25/2012 @ 4:59 am*

91.  iPad auto-correct is in Sheridan mode again.

*Comment by Sarahw — 3/25/2012 @ 6:12 am*

92.  What the hell does a guy have to do to express his opinion in a protected fashion and yet still get sued by that loony-toon chick?

Damnit, I want in on the fun!

*Comment by Scott Jacobs — 3/25/2012 @ 6:23 am*

93.  What the hell does a guy have to do to express his opinion in a protected fashion and yet still get sued by that loony-toon chick?

Damnit, I want in on the fun!

*Comment by Scott Jacobs — 3/25/2012 @ 6:23 am*

94.  She had some tweet the other day that seemed overly touchy about speculation over her mental status.

Transient situational anxiety usually gets nothing more than some Ativan or Xanax thrown at it,. She was on some serious stuff then. Her drug cocktail at the time of the deposition is more common with diagnoses of bipolar, (or as Daleyrocks explained, alcoholism associated with mood disorder.)

Her atory always had one big thinking error on display: she tends to judge people's motivations behind their actions from their immediate effect on herself. She feels bad, the motivation is bad, or even hostile or threatening or some kind of deliberate cruelty. Other, more benign reasons can't be true, because of how she felt.

*Comment by Sarahw — 3/25/2012 @ 6:48 am*

95.  nadia thinks she's
     perpetual victim of
     discrimination

*Comment by Colonel Haiku — 3/25/2012 @ 7:01 am*

96.  Has there been any new activity/reaction yet from the big guy–the White House Correspondent–the practitioner of sacred and real journalism–Tommy Xtopher?

Obviously, for most behind-the scenes zealot leftist narrative builders and disseminators Nadia's credibility and issues with being truthful don't matter because they're convinced it's their job (and therefore quite OK to outright lie and make up stuff) to take down their political opponents at any cost. But at *some* point doesn't this start to catch up with Tommy? Won't his sloppiness, the laziness, the growing reputation for lack of curiosity or investigative rigor affect his standing with employers? He's already publicly embarrassed himself and Mediaite in the Weinergate affair. How many more passes does he get before colleagues or ambitious young journalists who want his job begin to undermine

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

him–if they haven't already started?

*Comment by elissa — 3/25/2012 @ 7:11 am*

97.  I'm wondering if Patrick's pondered follow up will relate to Seroquel's use as a "date rape" drug?

I'm also wondering what proportion of cunning and malice is in theer with the crazy. Could she have meant to set up o'keefe, or did she just go 'round the bend?

*Comment by Sarahw — 3/25/2012 @ 7:13 am*

98.  Elissa, "too good to check" is how they roll over there. Tommy, however, is fast becoming a Jamie Gorelick figure, mistress of disaster.

*Comment by Sarahw — 3/25/2012 @ 7:20 am*

99.  "How many more passes does he get?"

You know the answer… as many as he needs and then it's a "passes-spike" in his last year right before he retires.

*Comment by Colonel Haiku — 3/25/2012 @ 7:32 am*

100.  Anti-seizure medications such as Lamictal, Depakote, Tegretol etc are used in bipolar disorder as mood stabilizers

*Comment by JGaulte — 3/25/2012 @ 7:37 am*

101.  If she is being treated for alcoholism I would expect to see Antabuse,Vivitrol, or Campral in her medication profile as well…JG/RPh

*Comment by JGaulte — 3/25/2012 @ 7:44 am*

102.  Clearly, the court documents and filings being discussed on this thread were also available to any intrepid journalist. There are only a couple of possibilities at play here: Tommy C. already knew what was in them about Nadia but plowed ahead anyway–foolishly assuming that nobody else would bother to look. Or, it never occurred to him to background check Nadia in the first place –which would be all the more stunningly stupid in light of his very public Nikki Reid disaster.

*Comment by elissa — 3/25/2012 @ 7:48 am*

103.  McKenna has way more patience with her nonsense than I would.

*Comment by JD — 3/25/2012 @ 7:50 am*

104.  Haiku @ 7:32

I'm actually not so sure Tommy's all that immune from a professional standpoint. Journalism (and I do use the term loosely) can be a very competitive and nasty business. Reporters are willing to almost kill each other for "the get". Lots of ambitious journos would love to have his ID tag and to be sitting in his seat in the WH press room. I would not rule out palace intrigue and it appears that Tommy may be too clueless to even be watching his back or protecting what's left of his reputation.

*Comment by elissa — 3/25/2012 @ 8:04 am*

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Case 2:12-cv-08443-GW-MRW    Document 20-2    Filed 11/19/12    Page 15 of 67    Page ID #:168

105.  25mg of Seroquel is below the daily dose commonly seen to treat schizophrenia. For schizophrenia the daily dosage range is usually several hundred milligrams up to the FDA labeled maximum dosage of 900mg/day and in some cases greater. Seroquel (specifically the XR dosage form) also has an FDA labeled indication as adjunctive therapy in Major Depressive Disorder to augment the action of an antidepressant. It also has an FDA labeled indication in the treatment of depressive episodes associated with Bipolar disorder. The lower doses of Seroquel are most commonly seen to treat depressive manifestations of Bipolar 1 or 2. The additional use of the medication lamotragine (lamictal) also points to Bipolar disorder….JG/RPH

*Comment by JGaulte — 3/25/2012 @ 8:10 am*

106.  tommy throws at wall
and hopes that some sh*t will stick
cares not for The Truth

*Comment by Colonel Haiku — 3/25/2012 @ 8:37 am*

107.  update:

Robin Abcarian in today's LA Times says that Mr. O'Keefe has adopted Saul Alinsky's theatrical tactics. Hmmm?

*Comment by AZ Bob — 3/25/2012 @ 9:36 am*

108.  You guys are just like the Klu Klucks Klan

*Comment by JD — 3/25/2012 @ 9:58 am*

109.  "(or as Daleyrocks explained, alcoholism associated with mood disorder.)"

Sarahw – I was not attempting to diagnose, merely pointing out that some folks take drug label warnings as mere suggestions and ignore or seek out the enhanced effects described in the warnings through combination with alcohol or other drugs.

*Comment by daleyrocks — 3/25/2012 @ 9:58 am*

110.  "If she is being treated for alcoholism I would expect to see Antabuse,Vivitrol, or Campral in her medication profile as well…JG/RPh"

JGaulte – If she admits to a problem with alcohol as you suggest above, I agree. Otherwise a doctor may attempt to treat with anti-anxiety or anti-seizure meds until she is ready to stop drinking. Just a thought.

*Comment by daleyrocks — 3/25/2012 @ 10:02 am*

111.  Here's what I read throughout that deposition:
"And I'm rockin' one leg. Jealous?"

*Comment by MayBee — 3/25/2012 @ 10:09 am*

112.  Daleyrocks – I hope I didn't imply you were diagnosing! No, it's important to note off label uses, because her specific situation then and now is only partly or not known.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

She discusses bouts of depression (explains it as a cause for leaving employment), and she discusses anxiety in parts 2 and 3 above.

The cocktail she gets is a common one for bipolar conditions. That would be my speculation if I were pressed to make one. I 'd add I think she goes off the deep end; if blogger and tweeter Nadia is ALL Nadia, then I see hints of mania/though disorder/ language dysfunction. Bipolar, or worse. I was reading through to see if she'd had any kind of breakdown or psychosis mentioned. All I've seen so far in those records is depression and anxiety. But that's a strong cocktail. It suggests more.

*Comment by Sarahw — 3/25/2012 @ 10:14 am*

113. How many patients admit to doctors they drink to excess? I assume some do, especially those that see the doctor because they want to stop drinking, but my guess is most don't.

*Comment by DRJ — 3/25/2012 @ 10:14 am*

114. Maybee heh. – that's been my mental picture of #BARNGIRL for a while.

*Comment by Sarahw — 3/25/2012 @ 10:15 am*

115. Could yu repeat the question please, after rambling borderline coherent totally mendoucheous answer cracks me up.

Sometimes yes, and sometimes no.

Explain the yes to me. Now explain the no to me.

That deposition was about 8 hours longer than it needed to be, due to her asshattery.

*Comment by JD — 3/25/2012 @ 10:15 am*

116. Why did Nadia Naffe protect her twitter account?

*Comment by JD — 3/25/2012 @ 10:18 am*

117. She (or someone helping her) shut down everything. The Nadia Milhouse facebook account, some old blogs, her Milhouse listing on some social networking groups. Some of those were mentioned here, next day they were removed.

*Comment by Sarahw — 3/25/2012 @ 10:23 am*

118. ( The facebook was at least removed from public searches.)

*Comment by Sarahw — 3/25/2012 @ 10:24 am*

119. Sarah, do you think the internet and social media shut downs also signify the (reluctant) shut down of the failing "operation"? Or does it mean something else?

*Comment by elissa — 3/25/2012 @ 10:28 am*

120. "But I'm responding!" (when she is upset at having her non-answers declared unresponsive)

What was that thing Lileks used to joke about?

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Oh yes: " the chastening stare of the Perry Head"

http://www.lileks.com/bleats/archive/04/0804/0802art/perryhead.jpg

*Comment by Sarahw — 3/25/2012 @ 10:30 am*

121. I wrote something that I referred to as "my proposal". But that does not mean it was mine, does not mean I was proposing what was contained in said proposal, and does not imply that I would be interested in doing what was contained in my proposal.

*Comment by JD — 3/25/2012 @ 10:34 am*

122. Elissa, I don't know. She was getting kind of out there.

BUT –

She might be afraid and/or rationally want to block off prying.

She might have gone off the bend for reals, and is in a paranoid mood.

Maybe counsel or a good friend has corrected her and done what it could to clean up her act.

I have to think her friends would catch on at some point.

*Comment by Sarahw — 3/25/2012 @ 10:35 am*

123. The reason TC didn't get these documents of PACER (run by US Dist. Ct. clerk's office) is because you have to pay a per-page fee to download court documents using that site.

TC doesn't pay for information critical to getting a story right. He would rather make it up for free.

*Comment by shipwreckedcrew — 3/25/2012 @ 10:43 am*

124. Also – It was somebody else's proposal really so I just called it my proposal which is not taking credit for it in the least. It's just proposal boilerplate.

*Comment by Sarahw — 3/25/2012 @ 10:43 am*

125. This is one of my favorites:

*A: It was more than once. I wouldn't call
3 that repeatedly.*

*Comment by Sarahw — 3/25/2012 @ 10:46 am*

126. But Tommy knew about the litigation, and his org should have a subscription. I that's not in his toolbox, that's very nearly a disgrace.

*Comment by Sarahw — 3/25/2012 @ 10:49 am*

127. "If that's not", that is

*Comment by Sarahw — 3/25/2012 @ 10:49 am*

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

128.    But Tommy knew about the litigation, and his org should have a subscription. I that's not in his toolbox, that's very nearly a disgrace.

Comment by Sarahw

I agree.

And it's not expensive.

*Comment by Dustin — 3/25/2012 @ 10:53 am*

129.    Was it before lunch or after lunch? I don't know, I don't want to speculate or put wrong information into the record, was it within minutes? I don't know. Was it with hours? I don't know. Was it the same day? I don't know. The same week? I don't know. The same month?!?!?!?!?!!?

*Comment by JD — 3/25/2012 @ 10:57 am*

130.    It's Dan Abrams. You would think he would have a Pacer account.

*Comment by MayBee — 3/25/2012 @ 11:03 am*

131.    It seems impossible that he would not.

*Comment by Sarahw — 3/25/2012 @ 11:07 am*

132.    ok then, at the end of Doc 3:

17 It's my client's
18 understanding the Lamaticol [lamictal] that she takes in
19 the morning is what — that medication is to
20 keep her coherent

More than anxiety going on. More than low mood.

*Comment by Sarahw — 3/25/2012 @ 11:14 am*

133.    "She discusses bouts of depression (explains it as a cause for leaving employment), and she discusses anxiety in parts 2 and 3 above."

Sarahw – I wasn't trying to be critical. I haven't made it through 2&3 yet. I see the anti-depressants, anti-anxiety, and sleep meds combo commonly in this area, not necessarily an indicator of serious serious probs.

OT – In an example of great thinking, some women like to drop the booze for the pills cuz the pills don't have calories. Preserve girlish figures by getting hooked on benzos!

*Comment by daleyrocks — 3/25/2012 @ 11:17 am*

134.    "That deposition was about 8 hours longer than it needed to be, due to her asshattery."

JD – What I submitted to the EEOC did not include all the specific instances of racism and racial stereotyping that I invented after coaching by the EEOC. That's why there are differences in the documents. Can't you see that Mr. McKenna?

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by daleyrocks — 3/25/2012 @ 11:22 am*

135. Daleyrocks, no worries. I'm not feeling unfairly criticized or even criticized – and hope anyone is circumspect about drawing conclusions about Ns reasons.

   However I did see this at the end of Doc 3
   See the post right above yours for short quote) -

*Comment by Sarahw — 3/25/2012 @ 11:24 am*

136. Bet Mr. McKenna had a drink or two himself after having to endure that ordeal.

*Comment by elissa — 3/25/2012 @ 11:25 am*

137. I think if Tommy or Shuster had looked at this before promoting the #soapscare story, it would have been doing a kindness to her.

*Comment by MayBee — 3/25/2012 @ 11:26 am*

138. "See the post right above yours for short quote) -"

   Sarahw – Heh. Dosage could have used a little tweaking.

*Comment by daleyrocks — 3/25/2012 @ 11:30 am*

139. Maybee, but she was always expendable.

*Comment by Sarahw — 3/25/2012 @ 11:37 am*

140. A PACER account is nothing special. Tommy (or any of you) can sign up for one right now with a credit card.

   I was charged for only 30 pages per volume of depo at 8 cents a page. Less than 8 bucks for the whole thing. Better yet, they spot you the first 10 bucks per quarterly billing cycle. I may end up paying a few bucks because I downloaded a lot of documents besides these — but this is not expensive. And the "subscription" is free.

*Comment by Patterico — 3/25/2012 @ 11:40 am*

141. It's been a long time since I asked about it, but I think Hubs has a deal where he gets all the docs he wants in the eastern district for a flat fee.

*Comment by Sarahw — 3/25/2012 @ 11:42 am*

142.    Better yet, they spot you the first 10 bucks per quarterly billing cycle.

   Yeah, they've only billed me once and I've used it for years. If you don't use it much, you never go beyond the freebies.

   But Tommy is a journalist and if he didn't value his reputation enough to drop a few bucks on normal research that explains why his reputation is where it is today.

*Comment by Dustin — 3/25/2012 @ 11:44 am*

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

143.  What's worse is if he did.

*Comment by Sarahw — 3/25/2012 @ 11:47 am*

144.  By the way: please note that at least one Twitter thug is alleging I posted this information as "revenge" for Nadia's threatened complaint. This is straight from their playbook. If you do journalism about someone, they attack you personally. Not only do they get to try to intimidate you, but now they can also argue that your future journalism is personal retaliation for their complaint.

This actually turns the attack itself into a weapon. If she didn't file a frivolous complaint, they couldn't portray the journalism I was going to do anyway as "revenge posting" done for personal reasons.

They do the same thing with investigations: open a bogus investigation by complaining about the journalist in a frivolous manner, and then describe the journalist as "under investigation."

Interestingly, this thug critic has employed this very tactic himself.

Somewhere there is a playbook where this is all written down.

*Comment by Patterico — 3/25/2012 @ 11:49 am*

145.  I'm guessing he didn't though. He's too ready to go with that which he is ready to believe.

At sometime in the past few days this story should have stopped making sense to him, though, if it ever made sense to him.

He was all too ready to get her to tell her story, not for the truth of the matter but for the damage it could accomplish. He's like a mean girl. True or false is less important than the effect of the gossip.

*Comment by Sarahw — 3/25/2012 @ 11:52 am*

146.  "I may end up paying a few bucks because I downloaded a lot of documents besides these"

Patterico – If the suit moved any distance down the road, I assume Kester was deposed. If he was, did you download that for comparison?

*Comment by daleyrocks — 3/25/2012 @ 11:55 am*

147.      If she didn't file a frivolous complaint, they couldn't portray the journalism I was going to do anyway as "revenge posting" done for personal reasons.

Yup

      then describe the journalist as "under investigation."

Check

Ever since Nadia teamed up with Neal, it's been like deja vu. Practically every element of this crew's BS has been repeated.

What's sad is if it turns out Nadia has some serious mental problems, and they used her like this anyway (but I recall when Ron was pretending to be crazy… right when he thought he was about to get into serious trouble).

*Comment by Dustin — 3/25/2012 @ 11:58 am*

148. Here's what's weird, Patterico. It's her lawsuit. She wanted it. She has indicated she currently feels she was completely right in filing this lawsuit. So how is this revenge? Does that mean they are seeing something unflattering in it?

*Comment by MayBee — 3/25/2012 @ 11:59 am*

149. And did they ever depose her doctor?

*Comment by Sarahw — 3/25/2012 @ 12:00 pm*

150. Shades of "Obamacare"

*Comment by Sarahw — 3/25/2012 @ 12:01 pm*

151. It's a lovely name until the program is unpopular.

*Comment by Sarahw — 3/25/2012 @ 12:02 pm*

152. Now… from American International Pictures… "They Were Expendable"… starring Tommy Christopher, as Cody Finke, ace reporter… directed by Roger Corman… rated 'IM' for immature audiences only…

*Comment by Colonel Haiku — 3/25/2012 @ 12:03 pm*

153. It's revenge because it undermines her (already weak) story.

*Comment by Sarahw — 3/25/2012 @ 12:04 pm*

154. You are all sexist and racist

*Comment by JD — 3/25/2012 @ 12:07 pm*

155. Yeah, it's just interesting to see them admit that.

*Comment by MayBee — 3/25/2012 @ 12:09 pm*

156. ==*At sometime in the past few days this story should have stopped making sense to him*==

Sarah, yes. And this is one of the reasons I hate twitter so much. People get so emotionally involved in things in such public, personal, vitriolic ways and so invested in their own position that it becomes almost impossible for them to pull back from even when it stops making any sense. If required, an article or a single blog posting can be updated or amended or softened or tweaked with new info in a professional way. A series of profanity and spittle-laced tweets on the other hand are harder to correct and are out there making people like TC and others look foolish for all eternity.

*Comment by elissa — 3/25/2012 @ 12:10 pm*

157.     Patterico – If the suit moved any distance down the road, I assume Kester was deposed. If he was, did you download that for comparison

Here's the thing: that deposition (if it exists) is probably not online. Depositions rarely appear on PACER; only court filings do. The reason Nadia's was put online is because it was an exhibit to a

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...   http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

motion seeking more deposition time because of her delay tactics.

So you see, her obstreperous behavior in the depo ended up being responsible for your ability to read it.

There's a lesson there for anyone willing to see it.

*Comment by Patterico — 3/25/2012 @ 12:16 pm*

158.   obstreperous

Unruly, stubbornly out of control

Learn somethin' every day.

*Comment by Dustin — 3/25/2012 @ 12:17 pm*

159.   What ended up happening with her suit?

*Comment by MayBee — 3/25/2012 @ 12:19 pm*

160.   "Sarah, yes. And this is one of the reasons I hate twitter so much."

elissa – I agree. Twitter is the debbil's invention.

*Comment by daleyrocks — 3/25/2012 @ 12:22 pm*

161.   Tommy, afaik, opted not to issue more information in his very legitimate media outlet.
Shuster only chose to issue a semi-apology after making a statement on a news outlet owned by the former Vice President of the United States.

Twitter may be a problem, but in this case Patterico has been able to use it to draw attention to reporting that smears O'Keefe using a questionable witness.

*Comment by MayBee — 3/25/2012 @ 12:26 pm*

162.   One justification NN had for her difficulties in deposition was her medical condition/medications.

Would there have been any response to the motion on file with a medical report or some such? If the motion wasn't objected to I guess there wouldn't be but maybe there is?

*Comment by Sarahw — 3/25/2012 @ 12:28 pm*

163.   I just want somebody to double check.

*Comment by Sarahw — 3/25/2012 @ 12:30 pm*

164.   All I know, Sarah, is that the court granted more time for the depo, and in the same order, the court ordered Nadia to review her deposition transcript and note any answers that she gave that were incorrect because of her medication.

*Comment by Patterico — 3/25/2012 @ 12:39 pm*

165.   What ended up happening with her suit?

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Settled. Looks like it was about to go to trial. Last document is a dismissal based on a settlement.

*Comment by Patterico — 3/25/2012 @ 12:40 pm*

166. I wonder if Nadia's attorney told her to take down her social media presence. If so, perhaps he also explained how it would hurt her legal position to be filing frivolous complaints against me.

I kind of doubt this is what happened, because if so, it sure took him a long time to get around to doing this. But you never know.

*Comment by Patterico — 3/25/2012 @ 12:42 pm*

167. *Somewhere there is a playbook where this is all written down*

**"How To Blame The Victim While Invoking The Memory of Your Dead Son" by John Edwards**

*Comment by Icy — 3/25/2012 @ 12:44 pm*

168. "The reason Nadia's was put online is because it was an exhibit to a motion seeking more deposition time because of her delay tactics."

P – Got it.

*Comment by daleyrocks — 3/25/2012 @ 12:46 pm*

169. Thanks, Patterico. Settlement is what I would have guessed.

*Comment by MayBee — 3/25/2012 @ 12:51 pm*

170. Given the medication Nadia was (is?) taking, she probably follows careful rules about drinking, like only doing it on days ending in "y".

*Comment by daleyrocks — 3/25/2012 @ 12:54 pm*

171. "when we're deciding how to apportion scorn, at what point do the equities shift and cause us to heap the greater amount on Ms. Naffe? When she smears a dead family man? When she (however comically) uses lies to threaten the livelihood of your blog host?"

-Patterico

I think it's probably appropriate to heap the greater amount of scorn on Naffe even at this point, because of the two of them she's the one who keeps running her mouth and that (often) bespeaks guilt. I'm just saying we should be heaping a lesser (but still significant) amount of scorn on O'Keefe, to keep ourselves honest.

*Comment by Leviticus — 3/25/2012 @ 1:07 pm*

172. Scorn seems a little much for O'Keefe given what we actually know.

In fact, whatever sins he's committed it appears he's paid for many times over.

*Comment by Dustin — 3/25/2012 @ 1:13 pm*

173. So is that the main thing she has done to upset you, Leviticus — "running her mouth"?

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Anything more specific, perhaps?

*Comment by Patterico — 3/25/2012 @ 1:14 pm*

174. In O'Keefes defense, he might not have seen the crazy coming.

If she had not decompensated in his presence beforehand, nor that of other persons he knew, maybe her behavior was not only hard to handle and interpret, but impossible to predict.

*Comment by SarahW — 3/25/2012 @ 1:15 pm*

175. Allowing flagrant misrepresentations to stand as truth. Dissembling endlessly. Forcing her way into the public eye then (pathetically) trying to squelch her critics with threats. Possibly lying outright on multiple occasions. Needing an attorney before she's 30. And, finally, associating with James O'Keefe.

*Comment by Leviticus — 3/25/2012 @ 1:19 pm*

176. And she hasn't "upset" me – I just don't think she's particularly trustworthy, at this point.

*Comment by Leviticus — 3/25/2012 @ 1:21 pm*

177.        trying to squelch her critics with threats

This is the one I thought might get your attention.

*Comment by Patterico — 3/25/2012 @ 1:21 pm*

178.        And she hasn't "upset" me – I just don't think she's particularly trustworthy, at this point.

Oh. OK, then.

*Comment by Patterico — 3/25/2012 @ 1:22 pm*

179. Any others who aren't upset by her baseless threats towards me?

*Comment by Patterico — 3/25/2012 @ 1:23 pm*

180. What do you want me to say, man? She doesn't know what the f*ck she's talking about. You yourself pointed out how utterly ridiculous the threat was. So no, I'm not upset by it. It'd be like getting upset over a 5 year old's threat to run away and join the circus.

Doesn't mean I don't have a great deal of respect for you.

*Comment by Leviticus — 3/25/2012 @ 1:27 pm*

181. I would like to point out that this claim being settled gives us an excellent example of what employment attorneys can get settlements on. Putting too much faith in the fact that an employment dispute has been settled is always a mistake. Even if the claim is against James O'Keefe.

*Comment by MayBee — 3/25/2012 @ 1:30 pm*

182. That is an excellent point, MayBee.

It seems like arrests, settlements, etc. are like Rorschach tests: people see what they want to see —

based on their politics.

*Comment by Patterico — 3/25/2012 @ 1:33 pm*

183.  I don't see any evidence that Naffe's accusations being baseless has any deterrent on her actually filing the suit.

So yes, I'm upset for you.

*Comment by MayBee — 3/25/2012 @ 1:33 pm*

184.  Leviticus,

I think Nadia Naffe and her enablers know something you don't: Even baseless claims can be hard to defend against, and they can tarnish or end careers.

*Comment by DRJ — 3/25/2012 @ 1:35 pm*

185.  "It seems like arrests, settlements, etc. are like Rorschach tests: people see what they want to see — based on their politics."

- Patterico

Whatever.

*Comment by Leviticus — 3/25/2012 @ 1:36 pm*

186.  "I think Nadia Naffe and her enablers know something you don't: Even baseless claims can be hard to defend against, and they can tarnish or end careers."

- DRJ

If that happens, I will be immensely upset for Patterico. Here and now, where Naffe is just another entitled moron shooting her mouth off, no, I'm not upset. He played it down himself. It's silly.

*Comment by Leviticus — 3/25/2012 @ 1:37 pm*

187.      Whatever.

My comment wasn't specifically directed at you.

Do you actually disagree with it?

Really?

*Comment by Patterico — 3/25/2012 @ 1:41 pm*

188.  Leviticus,

In retrospect, maybe this will be considered mere "silly" talk. However, attacking someone in their career isn't a joke and the worst doesn't have to happen for me to get upset about it.

*Comment by DRJ — 3/25/2012 @ 1:45 pm*

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

189. Leviticus- Do you still suspect O'Keefe tried to get busy with NN?

*Comment by MayBee — 3/25/2012 @ 1:46 pm*

190.      In retrospect, maybe this will be considered mere "silly" talk. However, attacking someone in their career isn't a joke and the worst doesn't have to happen for me to get upset about it.

Bingo.

*Comment by Patterico — 3/25/2012 @ 1:49 pm*

191. "Scorn"????

O'Keefe did a great service to Americans when he exposed the ACORN machine for what it was. I have nothing but respect for the young man.

*Comment by Colonel Haiku — 3/25/2012 @ 1:51 pm*

192. I'm most distressed with the scruples of those who wanted to get her story out before appraising it while it could still do some "good" (i.e. maximum damage.)

*Comment by SarahW — 3/25/2012 @ 1:55 pm*

193. "My comment wasn't specifically directed at you."

- Patterico

I figured it was directed at me. I don't disagree with it at all.

*Comment by Leviticus — 3/25/2012 @ 1:55 pm*

194. FYI, Patterico, PACER fees go up next week to 10 cents / page. I think the quarterly minimum for no bill goes up a bit too.

*Comment by SPQR — 3/25/2012 @ 1:55 pm*

195. It's just unforgiveable.

*Comment by SarahW — 3/25/2012 @ 1:55 pm*

196. MayBee -

I don't know at this point.

*Comment by Leviticus — 3/25/2012 @ 1:56 pm*

197. Meanwhile, still ruminating over a Starchild nexus.

*Comment by SarahW — 3/25/2012 @ 2:00 pm*

198. SarahW,

I wonder if Prudence Paine might have some input?

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by DRJ — 3/25/2012 @ 2:05 pm*

199.  *However, attacking someone in their career isn't a joke and the worst doesn't have to happen for me to get upset about it.*

Also, whether the attacks are disproved and the accusers found to be liars – even discrediting themselves along the way, personal and professional damage can still be done. And at times, it can be irreparable. Not everyone waits for evidence *before* assuming accusations are true. We know who those people are. And they will be relentless in pushing the lies.

*Comment by Dana — 3/25/2012 @ 2:15 pm*

200.  *Do you still suspect O'Keefe tried to get busy with NN?*

MayBee, IIRC, there was a comment NN wrote at the link happyfeet provided in an earlier post of her statement (since removed), where she referred to O'Keefe in oddly intimate terms – someone she had 'deep affection for' and considered 'precious'. It was somewhat surprising and out of nowhere. It made me wonder whether NN tried to get busy with O'Keefe and was rebuffed… hence, an angry rejected overly medicated drunk girl with an axe to grind.

Maybe simplistic, but she just doesn't seem that bright or clever.

*Comment by Dana — 3/25/2012 @ 2:21 pm*

201.  Also, whether the attacks are disproved and the accusers found to be liars – even discrediting themselves along the way, personal and professional damage can still be done. And at times, it can be irreparable. Not everyone waits for evidence before assuming accusations are true. We know who those people are. And they will be relentless in pushing the lies.

Also, for busy people with a short attention span, when something is confidently asserted, some people retain it and believe it. Or at least think it MIGHT be true. I had someone ask me if O'Keefe really clerked for me, based on assertions made by an anonymous Twitter account who has done nothing but issue lies and smears in support of evil people. All he had to do was say it, and someone who should know better wondered if it was true.

It's not, by the way, as I already explained earlier. I have never met the man.

*Comment by Patterico — 3/25/2012 @ 2:29 pm*

202.  I don't disagree with it at all.

Then why the "whatever" comment?

*Comment by Patterico — 3/25/2012 @ 2:30 pm*

203.  "Also, for busy people with a short attention span, when something is confidently asserted, some people retain it and believe it. Or at least think it MIGHT be true."

What else explains Tommy's method of reporting? Why else would he want to facilitate getting someone's story "out" before he checks it?

*Comment by SarahW — 3/25/2012 @ 2:32 pm*

204.  Because I thought it was directed at me.

*Comment by Leviticus — 3/25/2012 @ 2:36 pm*

205.  ==*What else explains Tommy's method of reporting? Why else would he want to facilitate getting someone's story "out" before he checks it?*==

alternate revenue source?

blackmail?

*Comment by elissa — 3/25/2012 @ 2:37 pm*

206.    FYI, Patterico, PACER fees go up next week to 10 cents / page. I think the quarterly minimum for no bill goes up a bit too.

I'm not sure why I was able to download a document with 180-200 pages and only be charged for 30, but that's what happened. Even with the new rates, you could download all the depos yourself, and if that's all you got for the quarter, it would be free.

*Comment by Patterico — 3/25/2012 @ 2:38 pm*

207.  Shorthand Leviticus: regardless of the truth about the current circumstance, O'Keefe deserves to be harassed due to past misconduct — both real or alleged.

Somewhere in the deep south there's an open seat for Sheriff. Any candidates out there?

*Comment by Icy — 3/25/2012 @ 2:43 pm*

208.  Not "harassed." Just held in contempt.

*Comment by Leviticus — 3/25/2012 @ 2:46 pm*

209.  Leviticus, why do you feel compelled to include your contempt of O'Keefe *alongside* Nadia's egregious lies and accusations, as if they were equal?

It's one thing to claim *Naffe is just another entitled moron shooting her mouth off*, but even moron's shooting their mouths off can do irreparable harm to a person's professional and private life.

*Comment by Dana — 3/25/2012 @ 2:54 pm*

210.  "Leviticus, why do you feel compelled to include your contempt of O'Keefe alongside Nadia's egregious lies and accusations, as if they were equal?"

- Dana

I don't have to keep saying it, I suppose, so long as people get that that's my position and refrain from absentmindedly drifting into canonization of the guy in fits of sympathy as this thing unfolds. I am content at this point to watch Pat and others dissect Naffe's story, to see her present any evidence she may have to back her story up, etc, without making more reference to my low opinion of O'Keefe.

*Comment by Leviticus — 3/25/2012 @ 3:00 pm*

211.  what……EVAH!!!

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

gotta do it with mo dramatic effect.

*Comment by Colonel Haiku — 3/25/2012 @ 3:02 pm*

212. Between Canonization and Contempt. A great blog post title if I've ever heard one!

*Comment by elissa — 3/25/2012 @ 3:06 pm*

213. FWIW, I don't have the highest regard for O'Keefe either but that is not germane to the matter at hand – which is Nadia Naffe.

*Comment by Dana — 3/25/2012 @ 3:07 pm*

214. Ok stop right there: "present any evidence she may have to back her story up"

Such as?

You are too sensible not to comprehend that her #rapebarn accusations are, in the light most favorable to herself, invented upon reflection, based entirely upon her subjective responses while she was intoxicated and irrational and nonsensical (on order of 5yo clown college applicants.)

Not to mention a claim of unlawful restraint is ludicrous under the fact situation she outlines, and that she was never improperly touched.

*Comment by SarahW — 3/25/2012 @ 3:14 pm*

215. Patterico:

> *I'm not sure why I was able to download a document with 180-200 pages and only be charged for 30, but that's what happened.*

I think that's standard. According to PACER's FAQs:

> *The $.08 per page charge is based on the number of pages that result from each search and each requested report or document. The charge is not based on printing.*
> ***
> *Please note that there is a 30-page cap for documents and case-specific reports (i.e. docket report, creditor listing, claims register). You will not be charged more than $2.40 when you access documents or case-specific reports that are more than 30 pages. Please be aware that the 30-page cap does not apply to name search results, lists of cases, or transcripts (when available online).*

*Comment by DRJ — 3/25/2012 @ 3:15 pm*

216. There you go!

It's a great research tool and a great deal.

Of course, if Big Media uses it, it's journalism.

If a blogger does it, you threaten their job and call it harassment and stalking.

*Comment by Patterico — 3/25/2012 @ 3:16 pm*

217. Touche'.

Apparently depositions are considered documents and not transcripts, or at least these were.

*Comment by DRJ — 3/25/2012 @ 3:18 pm*

218. I guess some media outlets can't afford $8-10 for research like this. Times really are tough, aren't they?

Of course, they can't say that since they can read it for free now that you've posted it here.

*Comment by DRJ — 3/25/2012 @ 3:22 pm*

219. With all this PACER talk, I might have to join later. Maybe after Mad Men.

Of course, surprises are nice. It must mean something is coming soon on Da Creeps.

*Comment by Noodles — 3/25/2012 @ 3:24 pm*

220. I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons.

I don't really have much else to say about it right now anyway.

*Comment by Patterico — 3/25/2012 @ 3:42 pm*

221. She may just be starting to realize that she has made a series of mistakes that could land her in trouble. Maybe she's reconsidering and that's why the Twitter and Facebook are gone.

Let's see.

*Comment by Patterico — 3/25/2012 @ 3:43 pm*

222. Maybe someone told her that she looked like a fascist moron for threatening someone for remarks about the… porous nature of her story on a disclaimer riddled personal blog in a post subtitled 'Crowdsourcing'. "Do you know how stupid that sounds?" is not a legal strategy, unless they're waiting till later to teach us all the awesome stuff.

*Comment by Leviticus — 3/25/2012 @ 3:53 pm*

223. I think chances are pretty fair she's not right in the head; that increases compassion. If that doesn't mitigate the malicious spirit of her efforts, it at least points to obnoxiousness promoted by distorted perceptions and lack of insight.

*Comment by SarahW — 3/25/2012 @ 4:00 pm*

224. "She may just be starting to realize that she has made a series of mistakes that could land her in trouble. Maybe she's reconsidering and that's why the Twitter and Facebook are gone."

I'll bet one of her lawyers became aware of what she's been doing, and told her to shut the hell up.

Frankly, I don't think she's smart enough to figure it out on her own.

*Comment by Dave Surls — 3/25/2012 @ 4:06 pm*

225. "Ok stop right there: "present any evidence she may have to back her story up"?"

- SarahW

I was thinking more along the lines of evidence to support her allegations that O'Keefe had previously used that building to videotape a girl in a compromised position without her knowledge, but the publication of any emails she gets past a preliminary injunction too, I suppose. If that allegation is not supported by airtight evidence, then it's really really damn low. It's damn low to let people like Shuster and Olbermann turn whatever happened that night into a "rape plot," too, but that would be much lower.

*Comment by Leviticus — 3/25/2012 @ 4:21 pm*

226.      I was thinking more along the lines of evidence to support her allegations that O'Keefe had previously used that building to videotape a girl in a compromised position without her knowledge, but the publication of any emails she gets past a preliminary injunction too, I suppose. If that allegation is not supported by airtight evidence, then it's really really damn low.

I guess she'll be bringing all those emails to court, and the judge will get to look at them and determine whether any such emails exist.

If they don't, maybe she'll say she took them to her mom's house and they got lost in the hurricane, like the laptop she kept.

*Comment by Patterico — 3/25/2012 @ 4:24 pm*

227. Hopefully she's smart enough to realize that people saved the weird stuff she said on her Twitter. People like me. But almost assuredly not just me.

*Comment by Patterico — 3/25/2012 @ 4:25 pm*

228. I think Ms. Naffe is smart enough to know it's one thing to talk about filing a legal claim and it's another to go through with it. As her deposition illustrates, the resulting scrutiny goes both ways.

*Comment by DRJ — 3/25/2012 @ 4:27 pm*

229. Yeah. Based on her conduct up to this point, I can't imagine that any sensible judge would allow her to release anything that's not directly relevant and highly probative to her specific allegations. If that results in nothing being released, that'll say a lot about who she is and what she's about.

*Comment by Leviticus — 3/25/2012 @ 4:28 pm*

230.      without her knowledge

Assuming (which I do not) that such a video exists, how in the world would one know it was a secret to one of the parties? Just because it exists? If there was a way to know it was taken that way, wouldn't Nadia have pointed this out very early on? She had this material for a while.

Instead, and this is assuming the video exists (which I don't) she speculates hoping people decide O'Keefe is a creeper. The mission to harm his reputation works even when you realize Nadia is not being fair.

It's insidious. Of course, assuming this video exists (guess what: I don't) and was taken without the lady's knowledge, that is awful behavior. Though Nadia's telling the world highly sexual things about this lady was a revictimization or simply a victimization.

O'Keefe is a very controversial figure. I don't want to help smears work by letting my personal views contribute to a lie's effectiveness, but it's not always easy.

*Comment by Dustin — 3/25/2012 @ 4:29 pm*

231. Dustin:

> *O'Keefe is a very controversial figure. I don't want to help smears work by letting my personal views contribute to a lie's effectiveness, but it's not always easy.*

That's the nice thing about focusing on the facts, both here and in the Zimmerman-Trayvon Martin case. We don't know enough about anyone's character to let that be the deciding factor regarding what happened or who we believe.

[note: fished from spam filter. --Stashiu]

*Comment by DRJ — 3/25/2012 @ 4:35 pm*

232. "Doing the redaction made the document monstrously large."

That's because the version posted to PACER is rendered text, not an image.

An example of rendered text are the comments on this blog post. An example of scanned image is the excerpt in your blog post "Based upon . . ."

It looks like the transcript you made is a computer-generated image, you used a digital "printer" to transform the document from the rendered text (plus red box) to make a computer-generated image with no rendered text.

Differences are: you can select and copy rendered text, but not scanned image (unless OCR is performed on it)

If you zoom in on rendered text, it always looks clean no matter how high your zoom level. But if you zoom in on a scanned image, eventually it looks blocky and pixelated. Because you used a software "printer" to generate the volume with the SSN, it doesn't look very blocky, but if you zoom in enough you can see it's not as smooth as rendered text.

Rendered text tends to use much less memory to store the same amount of writing.

Here's a very important distinction: you can "redact" rendered text by drawing black highlighting over it (for example with a highlighter in MS Word, or the highlighter built in to Acrobat, or you can use Acrobat to put a colored box over it), and it appears to be redacted, but in reality, the rendered text still lives underneath the highlighting. A person looking at the PDF, or printing it out, won't see the "redacted" text. But they can select the text, copy, and paste it into an MS Word document, and read what you thought had been redacted. Ctrl-A Ctrl-C Ctrl-V.

As far as I can tell, you DID properly redact the SSN. I can't delete the red box to look at what was underneath it. Even if I went through the PDF bit-by-bit, I think the SSN is simply not stored there.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

In the future, the way to keep file size down is to replace only particular pages that need redaction, and to leave the rest of the pages as the original rendered text. If you have a full version of Acrobat, it is easy to insert/remove pages.

Another way of thinking about the problem of false redaction of rendered text is to imagine if this comment was written entirely in white letters. Because the background is white, you would see nothing. But you could select the text of the comment to copy it and paste it into a text file or MS Word document, and from there you could read it. So you always have to be very careful with rendered text.

On the other hand, if you were to print out this page, including all the comments, and my comment was white text on a white background, the physical pieces of paper would show nothing. No matter how much trickery you had at your disposal, you could not tell by looking at the pieces of paper what my comment was. Blank paper simply does not give up its secrets.

*Comment by Daryl Herbert — 3/25/2012 @ 4:37 pm*

233.  Very interesting, Daryl. Thanks.

*Comment by DRJ — 3/25/2012 @ 4:41 pm*

234.  "If they don't, maybe she'll say she took them to her mom's house and they got lost in the hurricane, like the laptop she kept."

Patterico – Scoff if you must. Hurricanes can be tricky weather events. I've had them snatch small and large items out of my house when I was distracted for less than five seconds without disturbing anything else. Never turn your back on those suckers.

*Comment by daleyrocks — 3/25/2012 @ 5:30 pm*

235.  *I think I may lay off Nadia*

– That's what O'Keefe said. *rimshot*

*Comment by Icy — 3/25/2012 @ 7:31 pm*

236.  Comment by Sarahw — 3/25/2012 @ 10:23 am

*She (or someone helping her) shut down everything. The Nadia Milhouse facebook account, some old blogs, her Milhouse listing on some social networking groups. Some of those were mentioned here, next day they were removed.*

As of last night….

http://www.bostonypa.com/profile/NadiaMilhouse?xg_source=activity

….found immediately with a Google search for Nadia Milhouse

….was still there..

and it still is. I didn't want to refresh it but I checked in another windwow.

It says there:

*Profession*

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Education and Training*

*I'm interested in*
*Networking*

*About me*
*Hello YPA! My name is Nadia Kroger-Milhouse and I'm thrilled to become a member of such a fantastic group. I finally had a chance to finish my profile and I'm looking forward to becoming more aquainted with everyone.*

*About me: I have been a teacher for 10 years. I'm in the process of starting an education non-profit. I love working with students and watching them grow and develop. I enjoy snow boarding, hiking, jogging and bicycling.*

*I am of Jewish and Hispanic decent. I'd like to meet members with similar goals and interest. I look forward to hearing from you!*

Now, does the picture here, look like the picture here, on the Nadia Naffe Twitter account?

http://twitter.com/#!/nadianaffe

It's protected, but the picture and some information is still there.

*Nadia Naffe*
*@NadiaNaffe*

*Blogger. Political Junkie. Cigar Aficionado. Frustrated Conservative. Email:*
*nnaffe@fas.harvard.edu*

Nadia Kroger-Milhouse does look younger, but people sometimes put up old pictures. Nadia Naffe's skin is slightly darker, but that could be the photography.

*Comment by Sammy Finkelman — 3/25/2012 @ 8:40 pm*

237.   Some years ago, I served on the Harris County Unauthorized Practice of Law Committee. We had responsibility for investigating complaints. When appropriate, we filed civil suits to obtain injunctive relief and restitution to victims. When appropriate, we referred the results of our investigations to the Harris County District Attorney with recommendations regarding criminal prosecution. Thus I can unequivocally say the following without fear of well-informed contradiction:

Ms. Naffe's allegation, had it been made about a lawyer in Houston, would definitely have been brought to the full attention of the entire Committee at one of its regular meetings.

You see, occasionally — after an hour or two debating many routine cases and a few genuinely close questions, factual and often philosophical, regarding the unauthorized practice of law — sometimes we needed a bit of comic relief.

On such occasions, a committee member who'd reviewed and rejected a complaint as frivolous would nevertheless bring it to the meeting to read aloud, purely for comic effect.

During my tenure, the number of then-currently, validly licensed Texas lawyers who were disciplined or prosecuted — or even contacted by the Committee to inquire about possible defenses — for allegedly practicing law without a license in Harris County, Texas: Zero.

I can't speak for California. I'm not sure yet whether the Ninth Circuit has legalized thought-crimes or made common sense illegal; I'm not sure if California construes the term "unauthorized practice" to include and embrace its opposite, that is, licensed (authorized) practice of law. But in Houston, from among those responsible for investigating such complaints, Ms. Naffe would have only gotten a belly laugh in response.

*Comment by Beldar — 3/25/2012 @ 8:51 pm*

238. Sammy, Nadia is definately AKA Milhouse

That Boston picture is new since the other day! This was her profile pic this morning in the Boston Group.

She was pulled from this meetup group: http://www.meetup.com/Boston-Tea-Party/members/?offset=40&desc=1&sort=chapter_member.atime

*Comment by SarahW — 3/25/2012 @ 9:17 pm*

239. The Boston account profile has also been altered.

I were Nadia K Milhouse in Boston, I'd want no confusion on the point -

*Comment by SarahW — 3/25/2012 @ 9:24 pm*

240. *I'm not sure yet whether the Ninth Circuit has legalized thought-crimes* – If you mean "criminalize", then see: Prop 8 decision.

*or made common sense illegal* – Only for themselves, when adjudicating cases on days that end in "y".

*Comment by Icy — 3/25/2012 @ 9:28 pm*

241. *Sammy, Nadia is definately AKA Milhouse*

Milhooouuuusssse!

*Comment by Colonel Haiku — 3/25/2012 @ 9:29 pm*

242. How odd. I cannot find that there is a Nadia-Kroger-Milhouse in Massachusetts. In fact, a Nationwide search came up empty for any Nadia Milhouse but Nadia Kolasa Milhouse.

I guess if kroger is a teacher, her certification will be online if it's like Virginia and California.

*Comment by SarahW — 3/25/2012 @ 9:31 pm*

243. I should also mention, just for completeness while ridiculing, that whether done by a licensed lawyer or a layman, the offering of opinions in public on a matter of public controversy isn't considered the "practice of law" for purposes of the Texas statute forbidding the unauthorized practice of law. That would be another entirely sufficient reason to disregard Ms. Naffe's complaint, and would only have added to its humor value had I come across it as a committee member some years ago.

*Comment by Beldar — 3/25/2012 @ 9:33 pm*

244. Icy, you're right (#240), I meant "de-legalized," and the Ninth Circuit's recent decision on Prop 8 is a

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

good example of my grounds for wondering.

*Comment by Beldar — 3/25/2012 @ 9:37 pm*

245. The old profile is still in the google cache for the moment. I took a screenshot just bc it's likely to disappear shortly. It's an empty profile except for the Sam Adams avatar.

*Comment by SarahW — 3/25/2012 @ 9:42 pm*

246. Rats, teacher certs aren't publicly searchable online, that I can tell.

*Comment by SarahW — 3/25/2012 @ 9:42 pm*

247. Of all the Bostons in all the world, Nadia Kolasa Milhouse walks into hers.

*Comment by SarahW — 3/25/2012 @ 9:44 pm*

248. I'm curious that no national search brings up a Nadia K Milhouse that isn't Kolasa. That's odd, for a teacher.

*Comment by SarahW — 3/25/2012 @ 9:45 pm*

249. "In fact, a Nationwide search came up empty for any Nadia Milhouse but Nadia Kolasa Milhouse."

SarahW – She spelled out her middle name "Kolasha" in part one of the deposition.

*Comment by daleyrocks — 3/25/2012 @ 9:46 pm*

250. Maybe she has a hyphenated name? Nope, search on a hyphenated name comes up empty. I must not be doing it right.

*Comment by SarahW — 3/25/2012 @ 9:47 pm*

251. I saw that. She's in databases as Kolasa, though.

*Comment by SarahW — 3/25/2012 @ 9:47 pm*

252. I'm sure the h spelling is correct if she put it in a deposition instead of an electric bill.

*Comment by SarahW — 3/25/2012 @ 9:49 pm*

253. What's curious is I can't find this other Boston Nadia Milhouse. I'll check Knowx tomorrow just to satisfy my curiosity.

*Comment by SarahW — 3/25/2012 @ 9:50 pm*

254. Daleyrocks – you saw the other Boston Nadia Milhouse has a middle name of Kroger…. that's what I'm looking for.

*Comment by SarahW — 3/25/2012 @ 9:51 pm*

255. Sammy had posted a link to the Boston meetup group "nadia Milhouse" that was altered, I think today.

The pic and name there now, are not related to Nadia Naffe.

Before today, it had a Sam Adams avatar and no profile description, other than a professed interest in education and training and networking, and an age range that fit Nadia Naffe.

Nadia Naffe's profile was pulled from another Boston Tea Party Meetup group.

*Comment by SarahW — 3/25/2012 @ 9:57 pm*

256. *Of all the Bostons in all the world, Nadia Kolasa Milhouse walks into hers.*

snort

*Comment by MayBee — 3/25/2012 @ 9:57 pm*

257. Just going to throw this in, though I doubt it will help a lot: Nadia's Harvard email indicates the "FAS" college (the arts and sciences), which includes the graduate extension school (they have mixed online classes for degrees wish as an MA in Journalism).

*Comment by Dustin — 3/25/2012 @ 9:59 pm*

258. Guys, I think we've been Marianela'd

The profile pic appears to be lifted from a Hispanic fashion website.

http://www.migentehispana.com/Templates/images/fashion/614858_low.jpgile

*Comment by Sarahw — 3/25/2012 @ 10:07 pm*

259. doh. Here is a link that should work: http://www.migentehispana.com/Templates/fashion002.htm

*Comment by Sarahw — 3/25/2012 @ 10:09 pm*

260. Wait, which pic Sarah?

I think she just changed that meetup one to any random pic. We know what she looks like.

*Comment by Noodles — 3/25/2012 @ 10:11 pm*

261. Now I know we've been marianela'd.

https://www.facebook.com/people/Christina-Cordova/100002323219684

*Comment by Sarahw — 3/25/2012 @ 10:11 pm*

262. Just going to throw this in, though I doubt it will help a lot: Nadia's Harvard email indicates the "FAS" college (the arts and sciences), which includes the graduate extension school (they have mixed online classes for degrees wish as an MA in Journalism).

I am going to lay money that anyone who wants to call the Harvard Extension School tomorrow to see if she has been a student there will be told that she has.

*Comment by Patterico — 3/25/2012 @ 10:11 pm*

263. I don't think so. That pic belongs to a real person.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Case 2:12-cv-08443-GW-MRW    Document 20-2    Filed 11/19/12    Page 38 of 67    Page ID
#:191

*Comment by Sarahw — 3/25/2012 @ 10:12 pm*

264.        Now I know we've been marianela'd.

That's . . . very, very odd.

What do you make of it, Sarah?

*Comment by Patterico — 3/25/2012 @ 10:12 pm*

265. Yeah, but that is not a pic of Nadia. Remember, many people have met her in real life.

Yet there is the FB page Sammy found, and its picture is of another person. That's very strange.

*Comment by Patterico — 3/25/2012 @ 10:13 pm*

266. Maybe I am missing something but all I can see is that sometime today she went and jacked with all her accounts.

*Comment by Noodles — 3/25/2012 @ 10:19 pm*

267. Patrick – I don't know but I call shenanigans.

just to emphasize to anyone confused – A Nadia Milhouse in Boston was part of that Boston meet-up group, and was linked to a local event.
.
Her profile had been a Sam Adams avatar and a few words about interests.

That profile was altered this morning with emphasis on a name that is distinguished as Nadia KROGER Milhouse, and on a racial heritage at variance with our Nadia Naffe/Milhouse.

Noodles, If I find Nadia Kroger Milhouse in a legitimate databack I'll take it back. But I can't find another Nadia K Milhouse in Boston, in Massachusetts, with or without a hyphen,
and I haven't yet found one in a national database.

*Comment by Sarahw — 3/25/2012 @ 10:23 pm*

268. Wow.

*Comment by MayBee — 3/25/2012 @ 10:25 pm*

269. I still don't get the connection between the FB page Sammy found and Nadia Naffe. It's clearly not her picture. So . . . what?

*Comment by Patterico — 3/25/2012 @ 10:25 pm*

270. Comments crossed. I just read Sarah's explanation and I get it now.

*Comment by Patterico — 3/25/2012 @ 10:26 pm*

271.        17 It's my client's
        18 understanding the Lamaticol [lamictal] that she takes in
        19 the morning is what — that medication is to
        20 keep her coherent

They need to up the bitch's dose, if that's the case…

*Comment by Scott Jacobs — 3/25/2012 @ 10:28 pm*

272. Again, I may be missing something but I think she just went in and changed it (most likely because she saw us talking about it).

I wouldn't be surprised if *someone* thought it would be *lulzy* to put up a picture linked to the name Cordova so Tineye finds it that way.

*Comment by Noodles — 3/25/2012 @ 10:28 pm*

273.     Needing an attorney before she's 30.

Oh well lah-dee-dah, ain't you just a fancy man, not needin' a lawyer before you're 30… :p

*Comment by Scott Jacobs — 3/25/2012 @ 10:29 pm*

274. SarahW,

Could you send the link to and screenshot of the Google cache? Feel free to embed in a comment but I'd like it by email too.

*Comment by Patterico — 3/25/2012 @ 10:30 pm*

275.     Meanwhile, still ruminating over a Starchild nexus.

Playing Mass Effect 3? 😃

*Comment by Scott Jacobs — 3/25/2012 @ 10:31 pm*

276. "Daleyrocks – you saw the other Boston Nadia Milhouse has a middle name of Kroger…. that's what I'm looking for."

SarahW – I never saw a Kroger-Milhouse. When I saw you guys use that I was wondering if she got married again and decided to hyphenate. The deposition also spells her maiden name with two "ll's", but she never spelled it out for them. Who knows if it was ever reviewed for accuracy.

The 10 years as a teacher in the YPA profile is complete BS based on what we know, so I was assuming it was another person or she decided to blatantly lie.

*Comment by daleyrocks — 3/25/2012 @ 10:32 pm*

277. That Cordova facebook account has been around since at least April 2011.

*Comment by MayBee — 3/25/2012 @ 10:34 pm*

278. That's likely an innocent person whose picture they decided to grab to cover her tracks.

*Comment by Patterico — 3/25/2012 @ 10:35 pm*

279. The similarity to the Marienela tactic — and the rabid way that the allies have gone after me for this post — really make a person wonder.

*Comment by Patterico — 3/25/2012 @ 10:36 pm*

280.    It's a totally fake FB. 2 friends, a picture from somewhere on the web, no activity.

*Comment by MayBee — 3/25/2012 @ 10:36 pm*

281.        I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons.

F*ck that. B*tch did her level best to f*ck with your life.

Burn her f*cking world to the ground, and salt the earth as you leave. Make the wasteland a memorial to all who would consider pulling that kind of bullsh*t.

*RUIN HER*. Don't stop until she calls you at home crying, begging for your forgiveness.

*Comment by Scott Jacobs — 3/25/2012 @ 10:37 pm*

282.    My guess is that this is a troll by the usual suspects. They see people looking stuff up on here so they change some accounts with a picture linked to Cordova and watch as we all run around.

*Comment by Noodles — 3/25/2012 @ 10:40 pm*

283.    I pray that Nadia gets what she deserves.

*Comment by daleyrocks — 3/25/2012 @ 10:40 pm*

284.    MayBee,

I dunno. She just may not be that into Facebook.

*Comment by Patterico — 3/25/2012 @ 10:40 pm*

285.    Not just Boston. Quincy. Clearly a message.

*Comment by MayBee — 3/25/2012 @ 10:41 pm*

286.    Again, I'm inclined to sit back and see whether Nadia follows through on her threat, or has wised up. Will know soon enough.

For what it's worth, I may not be able to share whatever I learn publicly, as office communications are assumed to be private.

*Comment by Patterico — 3/25/2012 @ 10:42 pm*

287.    Hurricane stole Nadia's Facebook account.

*Comment by daleyrocks — 3/25/2012 @ 10:42 pm*

288.    Patrick, that account had been mentioned by me on your blog just before everything was pulled/jacked, whatever.

A logical reason for the sudden and very specific alteration in profile, iwoukd be that is was meant to distinguish it from nkm and all of her nuttiness. That's whatI presumed was going on when Sammy

pointed out that meetuip profile had not been removed., and I saw it has been so changed.

The new profile name wasn't showing up anywhere it usually would, and that very unusual for a teacher.

The image match showed that pic doesn't belong to the Nadia Kroger millhouse the teacher, in Boston, but a dental hygienist in Arizona.

Since Nadia was fond of meetup groups, and spending time in Boston ( and in other Boston meetups, such as the tea parry group) and i could never find Nadia Mulhouse. I still think that was Nadia Kolasha' mil houses profile.

*Comment by Sarahw — 3/25/2012 @ 10:43 pm*

289. Can you send it on?

*Comment by Patterico — 3/25/2012 @ 10:44 pm*

290. Sarah,

Yes, I understand. The explanation is clear. Thank you.

*Comment by Patterico — 3/25/2012 @ 10:44 pm*

291. Or maybe it he Facebook is fake too. The pic is all over the place. And hubs wants me to stop looking and come to bed.

Ill look for Nadia Kroger Milhouse In knowX tomorrow.

*Comment by Sarahw — 3/25/2012 @ 10:49 pm*

292. No such YPA profile on the Wayback Machine.

*Comment by Patterico — 3/25/2012 @ 10:49 pm*

293. Gerald Naffe will probably take you more credible places.

Of course someone could get O'Keefe's side of the story. Or maybe Hannah's. Or maybe, I don't know, about 50 or so people that know her online.

*Comment by Noodles — 3/25/2012 @ 10:50 pm*

294. Sure. But if it's her, why did they not just scrub it, but also put a bullshit picture to throw people off?

*Comment by Patterico — 3/25/2012 @ 11:00 pm*

295. That's why it seems like a troll (especially witht the Cordova name). Maybe they are tracking IPs. Who knows? None of this makes sense.

It really doesn't make sense that her blog it not updated and her Twitter is down. She didn't think this was a possibility?

James sure doesn't seem worried.

@JamesOKeefeIII
A remix of "King for one day" by Thompson Twins just came on Sirius First Wave. I had to pull the car over and dance.

*Comment by Noodles — 3/25/2012 @ 11:06 pm*

296. It's also Nydia Loya
https://www.facebook.com/people/Nydia-Loya/100002809882297

*Comment by MayBee — 3/25/2012 @ 11:21 pm*

297. Image search

*Comment by MayBee — 3/25/2012 @ 11:25 pm*

298. This is more likely the source of the image.

http://es.123rf.com/photo_614858_modelo-de-la-manera.html

*Comment by Noodles — 3/25/2012 @ 11:26 pm*

299. I don't speak Spanish but I think I can read it.

Modelo De la Manera

*Comment by Noodles — 3/25/2012 @ 11:26 pm*

300. I was wrong. I think it just means *Fashion Model*.

*Comment by Noodles — 3/25/2012 @ 11:30 pm*

301. Yeah, it's all over. A stock photo for a hispanic woman.

*Comment by MayBee — 3/25/2012 @ 11:31 pm*

302. Although Nadia Kroger-Milhouse looks younger in the picture than Nadia Naffe, according to her stated biography, she has to be about the same age as Nadia Naffe (born Oct 1978), since she states she has been teacher for 10 years.

Important question: Are we sure that the Boston (or Quincy Massachusetts) Nadia Naffe is the same person as the Florida Nadia Naffe who worked for the Republican Party and was planning on studying accounting and had never worked as a teacher, as of September, 2005? Or is there just one Nadia Naffe, who resembles a pathological liar?

The Florida Nadia Naffe said her middle name was Kolasha and her maiden name was Nadia **Kolasha** Millhouse (she spelled out Kolasha, but Millhouse may have been spelled by the court reporter, perhaps relying on some document) See her July 29, 2005 deposition page 5 lines 20 and 22 and Page 6 line 2. She says that Naffe is her married name and that she was married from 1996 to 2000.

But Massachusetts Nadia Naffe says her name is Nadia **Kroger**-Milhouse.

There seems to be an issue in the deposition about whether she was related to a Johnny Hunter. Her position is that she was not, but it seems like maybe she had told people – and convinced Johnny Hunter? – that she was. The allusion is a little bit too fragmentary to guess what really happened here

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

but I'd say there really seems to be a possibility of some blatant dishonesty going on here.

*Comment by Sammy Finkelman — 3/25/2012 @ 11:44 pm*

303.  Sammy- the picture isn't of Nadia anyone. It's a stock photo that's been used around the web and on facebook for at least 2 different women.

*Comment by MayBee — 3/25/2012 @ 11:54 pm*

304.  *Hurricane stole Nadia's Facebook account.*
*Comment by daleyrocks — 3/25/2012 @ 10:42 pm*

. . . and her meds.

*Comment by Icy — 3/25/2012 @ 11:57 pm*

305.  Comment by Patterico — 3/25/2012 @ 10:13 pm

*Yet there is the FB page Sammy found, and its picture is of another person. That's very strange.*

That's not FaceBook. That's the Boston Young Professionals Association. It's her page at BostonYPA.com.

It has a connection to Facebook (and some other places) You can like it on Facebook – but it completely independent of Facebook. It's linked to it in some way, like blogs can be.

*Comment by Sammy Finkelman — 3/26/2012 @ 12:07 am*

306.  I was talking about the Christina Cordova page. I guess someone else found that? I lose track sometimes.

*Comment by Patterico — 3/26/2012 @ 12:14 am*

307.  Sarahw found it on Facebook and posted the link at 3/25/2012 @ 10:11 pm PDT two minutes before you made that comment. That appears to be the original, because the YPA Profile picture is cropped.. I found that first, at about 9 PM Saturday night March 2 24, 2012, EDT but didn't post anything about it until 8:40 pm PDT (11:40 PM EDT – that late!? I guess I kept checking things out.)

*Comment by Sammy Finkelman — 3/26/2012 @ 1:17 am*

308.  I found the photo – Sarahw found out it was on Facebook.

The FB/YPA photo looks like it might very well be of the same woman pictured on the Nadia Naffe Twitter account. Not the same photo, but the same woman, but taken 10 years or more earlier. It's actually too young for the Nadia Kroger-Milhouse profile.

And Sarahw says that, contrary to appearances, that picture didn't use to be there (the Nadia Milhouse YPA page gives every appearance of not having been updated since March 1 at the latest.)

There never was much activity. She joined apparently on January 20. There's 2 comments and 2 likes.

And only the mention of the Social/Professional Networking Mixer at Bell In Hand in Faneuil Hall scheduled for March 1, 2012 from 7pm to 9pm that was what – going to be broadcast on the local ABC affiliate?

If the picture is new, of course, it never would have seemed incongruous for a woman in her early 30s. If anybody actually was looking at it.

I don't know if anyone can check JPG dates. Copying a photo – or scanning an old one – changes the date.

*Comment by Sammy Finkelman — 3/26/2012 @ 2:03 am*

309.  The FB/YPA photo looks like it might very well be of the same woman pictured on the Nadia Naffe Twitter account. Not the same photo, but the same woman, but taken 10 years or more earlier. It's actually too young for the Nadia Kroger-Milhouse profile.

Dude. Different person.

*Comment by Patterico — 3/26/2012 @ 6:40 am*

310.  Sammy, I took a screenshot of the profile that was there before (the one that was active fri or Sat or whenever it is I last looked at it). It had the Sam Adams avatar.

The new pic is some hispanic woman, who is not Nadia Naffe and not linked to her twitter picture.

At this time I think the YPA meetup profile had been "our" Nadia's, If she's hiding her greasy reality show tryout or someone is just having a bit of fun, good for them.

My curiosity will only extend so far as to see If there is a "Kroger Milhouse" Nadia in a Knowx search. If there is one I'll tell.

Kitteh to someone's laser pointer is alright for a lazy Sunday, but screw it. If someone's got a story to tell, they'll tell it whether you ask them or not.

In the immortal words of Happyfeet, fuuu Patterico-haunting skanks, and enjoy your thorazine.

*Comment by Sarahw — 3/26/2012 @ 6:58 am*

311.  My curiosity on this also extends only so far. And I've probably reached that point.

*Comment by Patterico — 3/26/2012 @ 7:07 am*

312.  Oh, Maybee's quick take on the "Cordova" Arizona Hygienist was quite correct.

All the family photos are borrowed.

"Mom"
http://e.cityweekly.net/cityweekly/2010/02/25/#?article=773338

"Kid"
https://www.facebook.com/WICharacterEducationPartnership

I didn't bother with "niece"

*Comment by SarahW — 3/26/2012 @ 7:21 am*

313.  Since there is a minor Twitter troll connected to a certain convicted bomber and perjurer who is trying to make an issue out of Scott Jacobs's comment above, let me say for the record that I do not agree

with anyone who urges that I "ruin" Nadia Naffe. I am simply engaging in journalism regarding a person who has started a public controversy, who has chosen to target me in real life because of that journalism. It's really just that simple.

I would also ask that commenters refrain from making comments like that, because they don't help. The Twitter troll is planning to report me to my office now because of that comment, even though it is not my comment and I disagree with the sentiment. Comments like that do nothing to help and actually are counterproductive.

*Comment by Patterico — 3/26/2012 @ 7:26 am*

314. I will add that comments like that are not only counterproductive, they play directly into the harassers' hands. It is actually part of their playbook to elicit cornments like that. They would be especially thrilled to goad me
Into making such comments. But they'll settle for watching one of my commenters doing it and then smearing me with it.

*Comment by Patterico — 3/26/2012 @ 7:33 am*

315. Me, I'd rather Nadia helped than ruined. My hunch is that she's got some mental problems and was goaded into making this situation a lot worse. She probably just needs some help and could actually be helpful in revealing the truth about those who have used her.

As usual, they use people in a way that doesn't really help them, but does keep them furious at the Enemy.

*Comment by Dustin — 3/26/2012 @ 7:40 am*

316. To be clear, I'd rather she *be* helped than be ruined. I still think her actions are very wrong and obviously I don't support them, but I think she needs help. The last thing I want to see is this person even less stable.

*Comment by Dustin — 3/26/2012 @ 7:42 am*

317. catching up. i don't see how patterico's public commentary in his prior post about nadia's barngate posts, raising his questions about it, is an ethics violation for an attorney. i'm certainly no expert, but I remember that the deputy AG Andrew Shirvell in Michigan was allowed a lot of leeway to discuss his political views online–he only got fired/disciplined because he crossed the line into stalking an individual person and smearing them in fairly crazy ways for being gay. That's NOTHING like what happened here. you couldn't have any legal "blawgs" if commenting on a case was an ethics violation.

as for the laptop, i'm not seeing the huge significance of that. employees like to take the things they've been given when they leave, which they shouldn't do. it appears the defendant in the case knew the laptop was destroyed and wanted an "inference" drawn that its destruction meant it had bad stuff on it that would hurt nadia's discrimination case. obviously that would help defendants case, so its a smart argument, but the court didn't do that. Whatever happened to the discrimination case? Was it dismissed? Settled?

*Comment by milowent — 3/26/2012 @ 8:38 am*

318. Milowent – it was not her laptop to keep. I think that was the bigger point they were making, that she is a thief.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...     http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by JD — 3/26/2012 @ 8:48 am*

319. She kept it after she had been terminated (which no, people do not do) and after she had been asked to return it, took it to her mothers, where it was "destroyed".

The idea that regular people just keep work laptops after they've been asked to return them is just kind of shocking to me.

*Comment by MayBee — 3/26/2012 @ 9:00 am*

320. I do think it's interesting that people set up fake Twitter and Facebook accounts to spring into use when needed.
In this case, there is the fake dental hygienist and her photo double in Houston on facebook just created and hanging around the web. So weird.

*Comment by MayBee — 3/26/2012 @ 9:04 am*

321. MayBee – it is common for people to steal laptops from their employer. Duh.

*Comment by JD — 3/26/2012 @ 9:31 am*

322. Where was that Meagan Broussard chick from? I forget, but wasn't it near Houston?

I have the dimmest unreliable memory of that "hispanic woman" stock photo pic being used as a friend in some other fake fb profile, maybe a fake GC profile.

*Comment by Sarahw — 3/26/2012 @ 9:37 am*

323. "To be clear, I'd rather she *be* helped"

Yeah, well, I'd help her from afar, if I was you, Dustin.

She seems to have a slight tendency to bite the hand that feeds.

*Comment by Dave Surls — 3/26/2012 @ 9:44 am*

324. In her depo, Nadia was confronted with a letter from her ("demented") employer at the brickyard documenting her sudden departure, and requesting return of keys, overpaid salary, and cellphones.

Nadia said she'd never laid eyes on the letter before, and had not given it over as part of document production.

Yet she she had carefully documented return of the cellphone (and, fwiw, nk not given that documentation over to opposing counsel)

I'm guessing she didn't give the salary back.

*Comment by Sarahw — 3/26/2012 @ 9:46 am*

325. Asking for the laptop back is just poor form on the part of the employer. It really reflects poorly on them that they tried to use that against their former employee.

milowent- the court *deferred* any jury instruction about an inference to be made for the trial judge. The trial never happened.

*Comment by MayBee — 3/26/2012 @ 9:47 am*

326. "Would you mind if I share your blog with my twitter group?"

If you went around saying that to people thirty years ago, they would have locked you up in the nuthouse.

*Comment by Dave Surls — 3/26/2012 @ 9:48 am*

327. Everybody should have the opportunity to work in the nourishing environment of a brickyard.

*Comment by daleyrocks — 3/26/2012 @ 9:53 am*

328. "Asking for the laptop back is just poor form on the part of the employer."

MayBee – Exactly. First they give the black chick a laptop that's inferior quality than the ones they gave white employees, then they have the gall to ask for their second rate property back when she leaves their employment? **PRIMA FACIE RACISM**

**NO JUSTICE, NO PEACE**

*Comment by daleyrocks — 3/26/2012 @ 9:58 am*

329.        Since there is a minor Twitter troll connected to a certain convicted bomber and perjurer
            who is trying to make an issue out of Scott Jacobs's comment above

I believe the propper internet response is "COME AT ME BRO!!!"

*Comment by Scott Jacobs — 3/26/2012 @ 11:33 am*

330. "The idea that regular people just keep work laptops after they've been asked to return them is just kind of shocking to me."

Well, prepare to be shocked. I don't know if they are "regular" people, but when you leave your employer in a dispute, I think its much more likely to happen. Its clearly not appropriate, but it happens

This study says 3% of departing employees admitted (self-report!!) they wrongfully kept their laptops.
http://www.ponemon.org/local/upload/fckjail/generalcontent/18/file/Data%20Loss%20Risks%20During%20Downsizing%20FINAL%201.pdf

Employers blog about this problem, its not isolated:

http://www.millercanfield.com/publications-alerts-542.html

http://www.founderspace.com/team/what-if-a-laid-off-employee-refuses-to-return-his-laptop-to-the-company/

http://www.lawtechie.com/2011/10/confidentiality-agreement-warrants-return-of-passwords-but-not-laptop/

—

"The trial never happened." Why not?

*Comment by milowent — 3/26/2012 @ 11:41 am*

331.   Nadia Naffe is one of the 3%erz. Se stole their laptop, and that was the evil inference that counsel wanted people to draw.

*Comment by JD — 3/26/2012 @ 11:47 am*

332.   The one's that do are guilty at least of conversion and if they lie and sneak it away, it's theft.

*Comment by SarahW — 3/26/2012 @ 11:55 am*

333.   So admitting she has it, but not returning it, is conversion at the very least. If she lied about its demise, she flat stole it.

*Comment by SarahW — 3/26/2012 @ 11:56 am*

334.   It was a sneaky hurricane what ruined a laptop but not the structure.

*Comment by JD — 3/26/2012 @ 11:58 am*

335.   Twitter troll is insane. Patterico endorses the content of every comment posted on this site, despite what Patterico might say to the contrary.

*Comment by JD — 3/26/2012 @ 12:13 pm*

336.   Of course twitter troll is insane. Plain starkers.

I have a name for that technique ( to Pachoucha) from one of my hub's first big cases.

*Comment by SarahW — 3/26/2012 @ 12:24 pm*

337.   Naffe's tactics are very CAIR-like.

*Comment by LadyLiberty1885 — 3/26/2012 @ 1:39 pm*

338.   alright, you made me guys look. the timeline of the naffe GOP discrimination lawsuit is roughly as follows:

Aug 2003- Naffe is hired as field director in Florida for GOP/Bush-Cheney campaign

April 2, 2004 – Naffe says she is fired after filing complaint about racial discrimination

August 2004 – Naffe files federal lawsuit
http://articles.orlandosentinel.com/2004-08-24/news/0408240053_1_discrimination-state-party-tampa

July 2005 – Naffe gives deposition

Sometime after deposition – case settles out of course, presumably all terms are confidential.

http://www.tampabay.com/news/politics/gop-challengers-blogger-taking-early-aim-at-hillsborough-commissioner/1185923

*Comment by milowent — 3/26/2012 @ 1:52 pm*

339. out of court*, sorry for the typo.

   *Comment by milowent — 3/26/2012 @ 1:52 pm*

340. There are a lot more "clues" in Rape Barn 2: Electric Boogaloo than any old or dummy account that might be out there.

   Every word in it is deliberate.

   *Comment by Noodles — 3/26/2012 @ 1:56 pm*

341. I did run that knowx tracer, btw, to see what came up.

   Exactly one Nadia Milhouse (#rapehouse nadia)

   No Nadia Kroger Milhouse, No Nadia Kroger-Milhouse in multi-state search

   No Nadia Kroger in MA

   Verdict: ZZZZZzzzzzenanigans

   *Comment by Sarahw — 3/26/2012 @ 3:54 pm*

342. "April 2, 2004 – Naffe says she is fired after filing complaint about racial discrimination"

   milowent – Hurricane Ivan, the event which Nadia blames for the loss of the RPOF's laptop, was in September 2004.

   *Comment by daleyrocks — 3/26/2012 @ 4:21 pm*

343. @342 – and? i guess no one cared about until she filed suit in August 2004, then? again, not surprising to me. The GOP was a little busy with things other than recovering an allegedly old laptop. when she sued, any defense attorney worth his salt would want to see that laptop for evidence.

   *Comment by milowent — 3/26/2012 @ 6:55 pm*

344. I don't think that's the fact situation, Milowent. She was asked to return it upon termination.

   *Comment by SarahW — 3/26/2012 @ 7:01 pm*

345. See the paragraph from the depo at the top of this post.

   *Comment by SarahW — 3/26/2012 @ 7:04 pm*

346. "I don't think that's the fact situation, Milowent. She was asked to return it upon termination."

   I guarantee you she was, that would be standard protocol for anyone with halfway competent HR people. what you do when people don't comply is another thing.

   the value of the laptop in all this would be more useful if we knew how much the GOP paid to settle her discrimination claim, which we are not going to find out, i am sure.

   unless nadia synced her emails to James' laptop, i guess.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by milowent — 3/26/2012 @ 9:45 pm*

347. "when she sued, any defense attorney worth his salt would want to see that laptop for evidence."

milowent – Exactly, but the hurricane ate it. Also, it is not in any way inconsistent with the links you posted earlier.

Remember Nadia seemed to have a lot of trouble remember what work she had done on which computer and fessed up to not having searched her home computer for discoverable documents during her deposition. Of course she didn't want to turn over the laptop.

*Comment by daleyrocks — 3/26/2012 @ 11:24 pm*

348. daley – i didn't read the whole deposition. i interpreted the posting of it as fair game, since its a public document, but its mostly evidence with which to potentially smear nadia regarding her barngate narrative. if hannah giles or izzy santa or lila rose, all who worked closely with o'keefe, came out and said "this o'keefe barn story sounds like total bullshit, James would never do anything like that" i'd probably be over it completely. in any event, this is all really just a personal squabble between o'keefe and nadia. the failed sting on the NYU professor who had the gall to ask for project veritas' form 990 is the most interesting part of the whole shebang.

*Comment by milowent — 3/27/2012 @ 5:27 am*

349. oh, and i don't really believe the laptop was damaged during hurricane ivan, its just too convenient.

*Comment by milowent — 3/27/2012 @ 5:28 am*

350. I'm guessing the settlement is somewhere in the "pay the attorney" range. But that's just a guess.

*Comment by SarahW — 3/27/2012 @ 6:03 am*

351. "daley – i didn't read the whole deposition. i interpreted the posting of it as fair game, since its a public document, but its mostly evidence with which to potentially smear nadia regarding her barngate narrative."

milowent – I guess commenting on Nadia's activities regarding her employment with the RPOF and prior to the settlement of her lawsuit (shortly after the deposition) makes sense to you. To me it amounts to phoning it in.

*Comment by daleyrocks — 3/27/2012 @ 11:12 am*

352. I meant to include without reading the deposition

*Comment by daleyrocks — 3/27/2012 @ 11:13 am*

353. Comment by milowent — 3/27/2012 @ 5:28 am

*oh, and i don't really believe the laptop was damaged during hurricane ivan, its just too convenient.*

Highly unlikely,m but the judge had to accept that , because there is no easy wasy to prove otherwise.

My question is, what was so important not to return the laptop? I don't think it was the money – not at that stage. I suppose it is fear of what could be found on the laptop. What could be found? Much of the content of erased files of course. I am wondering what she might have been worrying about.

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

*Comment by Sammy Finkelman — 3/27/2012 @ 1:34 pm*

354.  I don't get that part at all. She had their property and shouldn't have and it was destroyed so she should pay for the computer and the software and the data. This isn't complicated.

An honorable person would pay for the property.

*Comment by Dustin — 3/27/2012 @ 1:37 pm*

355.  Comment by Sarahw — 3/26/2012 @ 6:58 am

*Sammy, I took a screenshot of the profile that was there before (the one that was active fri or Sat or whenever it is I last looked at it). It had the Sam Adams avatar.*

I looked at the current page just after or abuput 9 PM Saturday night Eastern Daylight Time, March 24, 2012. I believe I booted up at about 8:55 PM, as I took a pictures of the screen at about that time (A day or two before, Firefox had somehow wandered off the icons on the bottom of that iMac)

You could have seen the old one later than 9 PM Saturday EDT if your browser had not refreshed the page.

I also looked at the Nadia Naffe Twitter page, which was protected at that point. That page did not automatically refresh – a later loading of that page had a different number of follwers and people following.

*Comment by Sammy Finkelman — 3/27/2012 @ 2:08 pm*

356.  *It's an empty profile except for the Sam Adams avatar.*

*At this time I think the YPA meetup profile had been "our" Nadia's, If she's hiding her greasy reality show tryout or someone is just having a bit of fun, good for them.*

It looks like someone went to a lot of trouble to create false history like the editing of the London Times in George Orwell's 1984. It';s not just replacing the picture – it's putting in historical data (although it might have been from another profile maybe)

The purpose, obviously, is so that the casual researcher should come to the conclusion that Nadia Milhouse and Nadia Naffe are not the same person.

There has to be an important reason for this.

If the Twitter picture is a picture of the real Nadia, then it looks like Nadia – or WINSTON SMITH – used some search engine to find a picture of a woman who resembled her and put that into the YPA profile. (the picture intended for people who knew for a fact that the YPA Nadia Milhouse and the Twitter Nadia Naffe were the same person. The false biography and slight name change intended for those who did not.)

*Comment by Sammy Finkelman — 3/27/2012 @ 2:10 pm*

357.  *The new pic is some hispanic woman, who is not Nadia Naffe and not linked to her twitter picture.*

The whole idea was that people should not think they were the same person. But a similar picture was used so as to limit suspicion on the part of people who knew for a fact that the two accounts belonged

to the same person.

The following website:

http://es.123rf.com/photo_614858_modelo-de-la-manera.html

…says that the photographer was:

Carla Van Wagoner
De United States
Miembro desde January 2006

*Comment by Sammy Finkelman — 3/27/2012 @ 2:23 pm*

358. Cool, you foud the source for the stock photo! Ironic how often it gets used on cosmetic dentistry
    websites, given all the fuss about teeth jokes.

    *Comment by Sarahw — 3/27/2012 @ 3:02 pm*

359. Sammy, that photgrapher is on shutterstock.com, too. There's a whole cache of the same model.
    http://www.shutterstock.com/cat.mhtml?lang=en&search_source=search_form&version=llv1&
    anyorall=all&safesearch=1&searchterm=Hispanic+woman&photos=on&search_group=&orient=&
    search_cat=&searchtermx=&photographer_name=CarlaVanWagoner&people_gender=&
    people_age=&people_ethnicity=&people_number=&commercial_ok=&color=&
    show_color_wheel=1&secondary_submit=Search

    *Comment by Sarahw — 3/27/2012 @ 5:29 pm*

360. Sorry, link is wonky. But you can search on the photographer's name to see the collection.

    I wonder what the photographer would think about use of her pictures by fake-account scammers?
    Maybe nothing if she got paid. Maybe something if the image has just been lifted for free.

    *Comment by Sarahw — 3/27/2012 @ 5:36 pm*

361. Went to the photographers FB…the model is one of her friiends. I dropped the photographer a short
    note with the links in case she retains any interest in the pics, and might care about them being used to
    create fraud IDs.

    *Comment by Sarahw — 3/27/2012 @ 6:43 pm*

362. Very interesting about the photo.

    milowent said:
    *as for the laptop, i'm not seeing the huge significance of that. employees like to take the things
    they've been given when they leave, which they shouldn't do. it appears the defendant in the case
    knew the laptop was destroyed and wanted an "inference" drawn…*

    and
    *oh, and i don't really believe the laptop was damaged during hurricane ivan, its just too convenient.*

    and
    *This study says **3% of departing employees** admitted (self-report!!) they wrongfully kept their laptops.*

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

This while including a link stating this is fraud and employers find it a problem

and

*and? i guess no one cared about until she filed suit in August 2004, then? again, not surprising to me.*

In service to not caring about Nadia stealing her employer's computer, milowent hauls the goalposts around with him for a while.

*Comment by MayBee — 3/27/2012 @ 7:03 pm*

363.  SOP, MayBee

*Comment by JD — 3/27/2012 @ 7:05 pm*

364.  Of course they cared that she stole a laptop. You just can't sue people for that kind of stuff because it's not worth it.

Not only does she steal computers, but she actually boasted stealing all her associate's (O'Keefe) emails. And then when they had problems, she held them over his head. She's read every single secret in that man's email. This is an unbelievable breach of privacy.

Imagine what Shuster and Tommy Christopher would say about O'Keefe if he did this to a woman he was angry with.

And everyone who has ever left her alone in their house or let her borrow their laptop or phone now is chewing on what Nadia has on them.

*Comment by Dustin — 3/27/2012 @ 7:24 pm*

365.  "In service to not caring about Nadia stealing her employer's computer, milowent hauls the goalposts around with him for a while."

MayBee – Then milowent fesses up to not have read Nadia's deposition which might have given a real indication why she would not want to have turned over the laptop. Heck, she admitted she didn't even search her home computer for documents responsive to discovery requests.

Pure hackery on milowent's part.

*Comment by daleyrocks — 3/27/2012 @ 7:31 pm*

366.  if its hackery not to choose to read a 500 page deposition, i'm guilty as charged. my point has always been that laptop theft of former employees is a not uncommon problem employers have to deal with. when it happens to anyone here, go talk to HR, now you know that have guides for dealing with that stuff.

again, if if hannah giles or izzy santa or lila rose, all who worked closely with o'keefe, came out and said "this o'keefe barn story sounds like total bullshit, James would never do anything like that" i'd probably be over it completely.

*Comment by milowent — 3/27/2012 @ 7:45 pm*

367.  "my point has always been that laptop theft of former employees is a not uncommon problem employers have to deal with."

milowent – It depends on your definition of uncommon, doesn't it? My point is that it is unethical and stealing. Also given Nadia's obvious evasiveness in her deposition, if I had to bet, I would guess there was ample reason for her not to produce the laptop if she was contemplating a lawsuit against the RPOF.

*Comment by daleyrocks — 3/27/2012 @ 8:42 pm*

368. "if its hackery not to choose to read a 500 page deposition, i'm guilty as charged."

milowent – Guilty. Why read any of the subject of the post you are attempting to bloviate authoritatively on, right? Makes no sense at all.

*Comment by daleyrocks — 3/27/2012 @ 8:44 pm*

369. mil may have a bright future in congress. They tend to not read stuff before they bloviate authoritatively there, either.

*Comment by elissa — 3/27/2012 @ 8:56 pm*

370. You have to pass the bill, to find out what was in it, methinks.

*Comment by Simon Jester — 3/27/2012 @ 9:22 pm*

371. i guess you guys never have to sleep, you are better folks than i. that why if hannah, izzy, or lila just spoke up, lazy people like me and the mainstream media would stop wondering if there is a story here.

*Comment by milowent — 3/27/2012 @ 9:25 pm*

372. If there is not sufficient evidence that Nadia Naffe is a lying liar what tells lies, then I don't know what to tell you.

*Comment by JD — 3/27/2012 @ 9:34 pm*

373. "i guess you guys never have to sleep, you are better folks than i."

milowent – Or you could just be a lazy hack.

*Comment by daleyrocks — 3/27/2012 @ 9:46 pm*

374. if hannah, izzy, or lila just spoke up … jesus christ, why won't anyone just point me to what they've probably said somewhere already? cuz i'm a lazy hack.

*Comment by milowent — 3/27/2012 @ 9:51 pm*

375. Folks, having interacted with Milowent this evening on Twitter, I'd ask you lighten up a bit…

Sure, he's lazy. He admits it, and you know what? That's fine. If he doesn't want to search for links on his own, that isn't horrible.

Just provide the things. Once you do, he's willing to look at them, and question those whose story the evidence proves to be false.

Occupy Rebellion still hasn't really answered his questions after proof a criminal case had been tossed out, once confronted with a screen shot proving it had been.

*Comment by Scott Jacobs* — *3/27/2012 @ 10:00 pm*

376. Why do they have to say something to please you, milowent? None of them have said anything about it. Which, considering the way Nadia treats people who talk about her, that is probably wise policy.

You notice they aren't taking a stand on her behalf, right?
There's no evidence to support what she says, her history shows her to be litigious, accusatory, and dissembling, not to mention someone who helps herself to information on computers that belong to other people.

But yeah, you go ahead and ignore all that and make your own rule for what other people should do to prove her accusations wrong.

*Comment by MayBee* — *3/27/2012 @ 10:11 pm*

377. In other words, you don't care to let her own actions, words, and history speak to the trustworthiness of her accusations.

Instead, you insist that other people not involving themselves surely means something bad.

*Comment by MayBee* — *3/27/2012 @ 10:15 pm*

378. milowent – I can also say it's not uncommon for employers to use information contained on company owned assets used by employees, such as computers, as grounds to terminate employees. Some employees try to take steps to prevent employers from reviewing what is on their computers by erasing their contents or refusing to return portable or remotely sited computers. A lot of files can be recovered forensically if the employee does not know what he/she is doing.

*Comment by daleyrocks* — *3/27/2012 @ 10:15 pm*

379. Milo, thinks Weinergate was a political hoax, swallows the Planned Parenthood meme, hook line and sinker, and that's among the most reputable things on his blog.

*Comment by narciso* — *3/27/2012 @ 10:17 pm*

380. *if hannah giles or izzy santa or lila rose, all who worked closely with o'keefe, came out and said "this o'keefe barn story sounds like total bullshit, James would never do anything like that" i'd probably be over it completely.*
*Comment by milowent* — *3/27/2012 @ 7:45 pm*

– So, having "worked closely with O'Keefe" makes their hearsay opinions more relevant than any actual documented testimony/statements and evidence, or lack thereof?

*Comment by Icy* — *3/28/2012 @ 2:13 am*

381. Yeah… Way to go folks. That's exactly how you convince a guy on the edge. Nicely done.

Idiots.

*Comment by Scott Jacobs* — *3/28/2012 @ 2:41 am*

382. "Just provide the things. Once you do, he's willing to look at them, and question those whose story the evidence proves to be false."

thanks scott. its funny, because i first got interested in investigating stories during rathergate, and i completely supported the research done showing the docs were a hoax, because it was good research vetting by folks like patterico on the right. that is the way i have approached things since then. i defended patterico posting the deposition as fair game (though i was told by lefties "why are you defending this!!"!"), but i don't think the laptop theft story proves much of anything.

"Why do they have to say something to please you, milowent?"

they don't. but trying to pick who is more believable between o'keefe and naffe? i have serious issues with that.

*Comment by milowent — 3/28/2012 @ 6:25 am*

383.   Sure it proves something, Milowent. It proves she is willing to convert property belonging to others to her own use, fib about it, and was not only dilatory about meeting her obligations in document production, but probably had discoverable work product on the machine.

*Comment by SarahW — 3/28/2012 @ 6:53 am*

384.   "but trying to pick who is more believable between o'keefe and naffe? i have serious issues with that."

milowent – It's even harder when you don't read publicly available source material.

Have you read Nadia's complaint that was dismissed by the judge in New Jersey and compared that to what she is saying now?

*Comment by daleyrocks — 3/28/2012 @ 7:08 am*

385.   You shouldn't have a problem picking who is more believable in the present instance, milowent, because O'keefe has accused her of nothing except threatening to reveal his email communications, and she's actually done that.

Moreover, her own story, read in the light most favorable to herself, is full of holes and inconsistencies. Her innuendo/conclusions rest on relation of her subjective fears and personal reactions to her situation, none of which materialized, by her own account, and ludicrous, somewhat nutty notions of what unlawful restraint might be.

Every action of Okeefes from the times his first removal from the barn to his dropping her off at the train station with aid of another driver can be viewed in a vastly different light based on her own admission that she was drinking, and information that has come to light about her mood instability and former and very likely present use of medication to control unstable mood, that not only amplifies the effects of alcohol, but which if being adjusted or missed or over-used could result into her tipping into an episode of detatchment from reality or mania. Moreover well after the fact such an episode could lead to a confabulated history.

*Comment by SarahW — 3/28/2012 @ 7:10 am*

386.   Scott,

Calling other commenters "Idiots" because they didn't follow your advice on how to win friends and influence people? Classic.

*Comment by DRJ — 3/28/2012 @ 7:48 am*

387. "Calling other commenters "Idiots" because they didn't follow your advice on how to win friends and influence people? Classic."

DRJ – Also, I have not seen anything on this thread to indicate the commenter in question is in good faith "on the edge."

Dancing goal posts is never the best indicator in my experience.

*Comment by daleyrocks — 3/28/2012 @ 8:00 am*

388. *Just provide the things. Once you do, he's willing to look at them, and question those whose story the evidence proves to be false.*

Funny.

*Comment by MayBee — 3/28/2012 @ 8:24 am*

389. I think that's funny because that's exactly what happened until we got to the point where only *other* women weighing in will do.

*Comment by MayBee — 3/28/2012 @ 8:39 am*

390. Why should any other woman "weigh in" when Nadia's narrative speaks for itself (as in being backaway crazy)?

*Comment by SarahW — 3/28/2012 @ 8:42 am*

391. You don't need anything BUT her own narration to determine its unreliability.

*Comment by SarahW — 3/28/2012 @ 8:42 am*

392. I agree. It's all right there for those who want to read it. There are also some very good clues as to why involved women wouldn't want to jump in and publicly criticize NN.

*Comment by MayBee — 3/28/2012 @ 8:57 am*

393. uninvolved women

*Comment by MayBee — 3/28/2012 @ 9:07 am*

394. Begone, foreign spambot!

*Comment by Icy — 4/2/2012 @ 1:07 pm*

395. Hey, it worked!

Here, let me try it again: Amy Holmes, conservative babe extraordinaire, marry me!

???

*Comment by Icy — 4/2/2012 @ 1:10 pm*

396. better be careful
with da brussels never know

what will sprout later

*Comment by Colonel Haiku — 4/8/2012 @ 2:38 pm*

397. Has NN posted #rapebarn 3 like she promised?

*Comment by JD — 4/8/2012 @ 3:30 pm*

398. Nope, but it would be strange for her to post anything before he hearing, in May, don't you think? (That is,if her lawyer has control of his erratic client.)

*Comment by Sarahw — 4/8/2012 @ 4:50 pm*

399. Her last comment at her site says it is coming, sarahw

*Comment by JD — 4/8/2012 @ 5:34 pm*

400. i heart scentsy candles NG has a neurosis about my one at work I leave it on overnight all the time and she's very very certain it's gonna burn the office down one day

wouldn't that be something

*Comment by happyfeet — 4/8/2012 @ 6:20 pm*

401. JD, I saw that earlier this week sometime. I call it #bottomlessbarn

*Comment by Sarahw — 4/8/2012 @ 7:14 pm*

402. From what I have read here, Ms. Naffe would seem to have a limitless future if she were to enter the federal civil service system.

*Comment by Ed B. — 4/21/2012 @ 12:26 am*

RSS feed for comments on this post.

Sorry, the comment form is closed at this time.

- Recent Comments

- 

  Purchases made through this search function benefit this site, at no extra cost to you.

- 

  **Help keep the site alive!**

  PayPal only (no credit cards):

  [Donate]

  Credit Card donations (PayPal takes a bite):

  [Donate]

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

Subscribe for $9 per month:





- 
- 
- About Patterico

  ○ Pronounced "Patter-EE-koh"

  E-mail: Just use my moniker Patterico, followed by the @ symbol, followed by gmail.com

  Frequently Unasked Questions (FUQs)

  Contributor:
  Hot Air
  Big Journalism

  What They're Saying

  The statements made on this web site reflect the personal opinions of the author. They are not made in any official capacity, and do not represent the opinions of the author's employer.



Patterico
**Patterico**

Patterico @Stranahan Thanks. I appreciate the kind words, and I am glad I played a role in introducing you guys to one another.
yesterday · reply · retweet · favorite

Patterico Standing for free speech: @AaronWorthing @rsmccain @Stranahan
2 days ago · reply · retweet · favorite

Liberty_Chick LA Weekly:

11/19/2012 1:42 PM

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...    http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

SWATting, a Deadly Political Game
laweekly.com/2012-11-08/new...
Article features @Patterico,
@AaronWorthing, et al's cases.
10 days ago · reply · retweet · favorite

Patterico What should Republicans
do now? patterico.com/2012

Join the conversation

[Copyright policy](#)

- Search:

  [ Search ]

- Categories:
  - [2004 Election](#)
  - [2008 Election](#)
  - [2010 Election](#)
  - [2012 Election](#)
  - [Abortion](#)
  - [Accepted Wisdom](#)
  - [ACORN/O'Keefe](#)
  - [Air Security](#)
  - [Awards](#)
  - [Bear Flag League](#)
  - [Blogging Matters](#)
  - [Bogus Statistics](#)
  - [Books](#)
  - [Brad Friedman](#)
  - [Brett Kimberlin](#)
  - [Buffoons](#)
  - [California Recall Election](#)
  - [Civil Liberties](#)
  - [Constitutional Law](#)
  - [Court Decisions](#)
  - [Crime](#)
  - [Current Events](#)
  - [Deport the Criminals First](#)
  - [Dog Trainer](#)
  - [Economics](#)
  - [Education](#)
  - [Environment](#)
  - [Fiskings](#)
  - [Gadgets](#)
  - [General](#)
  - [Government](#)
  - [Grammar](#)
  - [Gunrunner](#)

11/19/2012 1:42 PM

96

- Health Care
- Hiltzik
- Homespun Bloggers
- Humor
- Immigration
- Infotel
- International
- Judiciary
- Kozinski
- Law
- Lunatics
- Media Bias
- Miscellaneous
- Morons
- Movies
- Music
- Nature
- Neal Rauhauser
- No on 36
- No on 66
- Nobel Peace Prize
- Obama
- Political Correctness
- Politics
- Principled Pragmatism
- Public Policy
- Race
- Real Life
- Religion
- Ron Brynaert
- Schiavo
- Scum
- Second Amendment
- Sheehan
- Snarkage
- Space
- Sports
- Spy Wiper
- Terrorism
- Velvet Revolution
- War
- Watcher's Council
- Year in Review

- Archives:
  - November 2012
  - October 2012
  - September 2012
  - August 2012
  - July 2012
  - June 2012

Patterico's Pontifications » Documents from Nadia Naffe's Race Discrimin...     http://patterico.com/2012/03/24/documents-from-nadia-naffes-race-discr...

- May 2012
- April 2012
- March 2012
- February 2012
- January 2012
- December 2011
- November 2011
- October 2011
- September 2011
- August 2011
- July 2011
- June 2011
- May 2011
- April 2011
- March 2011
- February 2011
- January 2011
- December 2010
- November 2010
- October 2010
- September 2010
- August 2010
- July 2010
- June 2010
- May 2010
- April 2010
- March 2010
- February 2010
- January 2010
- December 2009
- November 2009
- October 2009
- September 2009
- August 2009
- July 2009
- June 2009
- May 2009
- April 2009
- March 2009
- February 2009
- January 2009
- December 2008
- November 2008
- October 2008
- September 2008
- August 2008
- July 2008
- June 2008
- May 2008
- April 2008
- March 2008

- ○ February 2008
- ○ January 2008
- ○ December 2007
- ○ November 2007
- ○ October 2007
- ○ September 2007
- ○ August 2007
- ○ July 2007
- ○ June 2007
- ○ May 2007
- ○ April 2007
- ○ March 2007
- ○ February 2007
- ○ January 2007
- ○ December 2006
- ○ November 2006
- ○ October 2006
- ○ September 2006
- ○ August 2006
- ○ July 2006
- ○ June 2006
- ○ May 2006
- ○ April 2006
- ○ March 2006
- ○ February 2006
- ○ January 2006
- ○ December 2005
- ○ November 2005
- ○ October 2005
- ○ September 2005
- ○ August 2005
- ○ July 2005
- ○ June 2005
- ○ May 2005
- ○ April 2005
- ○ March 2005
- ○ February 2005
- ○ January 2005
- ○ December 2004
- ○ November 2004
- ○ October 2004
- ○ September 2004
- ○ August 2004
- ○ July 2004
- ○ June 2004
- ○ May 2004
- ○ April 2004
- ○ March 2004
- ○ February 2004
- ○ January 2004
- ○ December 2003

- November 2003
- October 2003
- September 2003
- August 2003
- July 2003
- June 2003
- May 2003
- April 2003
- March 2003
- February 2003

### March 2012

| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

« Feb        Apr »

## Favorite Sites

- A Million Monkeys Typing
- Ace of Spades
- Acute Politics
- Alarming News
- Anwyn's Notes in the Margin
- Badgers Forward
- Beldar Blog
- Best of the Web
- Betsy's Page
- Big Lizards
- BizzyBlog
- Blackfive
- Blogging.la
- BuzzMachine
- Captain's Quarters
- Carol Platt Liebau
- Commonwealth Conservative
- Confirm Them
- Constitutional Conservative
- Cop the Truth
- Countercolumn
- Dan Weintraub
- DANEgerus
- Dave Barry
- Day by Day
- Dead Parrot Society
- Dean's World

- ○ Dispatches from the Culture Wars
- ○ Doc Rampage
- ○ Don Surber
- ○ Donald Luskin
- ○ Double Toothpicks
- ○ Dowingba
- ○ Dustbury
- ○ EagleSpeak
- ○ Error Theory
- ○ Everything I Know Is Wrong
- ○ FullosseousFlap's Dental Blog
- ○ Galley Slaves
- ○ HipperCritical
- ○ Hoodathunk?
- ○ How Appealing
- ○ Hoystory.com
- ○ Hugh Hewitt
- ○ InstaPundit
- ○ Internet Radio Network
- ○ Jules Crittenden
- ○ Junkyard Blog
- ○ Just One Minute
- ○ Kausfiles
- ○ KelliPundit
- ○ L.A. Observed
- ○ Laura's Miscellaneous Musings
- ○ Les Jones
- ○ Let's Try Freedom
- ○ Likelihood of Confusion
- ○ Lileks: The Bleat
- ○ Little Green Footballs
- ○ Local Liberty Blog
- ○ Margi Lowry
- ○ Media Lies
- ○ Michael J. Totten
- ○ Michelle Malkin
- ○ My Pet Jawa
- ○ Neo Warmonger
- ○ New England Republican
- ○ Oh, That Liberal Media
- ○ Okie on the Lam
- ○ Old Patriot's Pen
- ○ Oraculations
- ○ Outside the Beltway
- ○ Pajama Pundits
- ○ Patrick Ruffini
- ○ Pejmanesque
- ○ Piece of Work in Progress
- ○ Pigilito
- ○ Polipundit
- ○ Politburo Diktat

- o Popehat
- o Power Line
- o PressThink
- o Professor Bainbridge
- o Professor Chaos
- o Pundit Review
- o Radley Balko
- o Ramblings' Journal
- o RantingProfs
- o Real Clear Politics Blog
- o Right Wing News
- o Rightwing Nuthouse
- o Roger L. Simon
- o Say Uncle
- o ScrappleFace
- o Sister Toldjah
- o Sisu
- o Southern Appeal
- o Speed of Thought
- o Spyware Warrior
- o Stop the Bleating!
- o Strong As An Ox and Nearly As Smart
- o Stubborn Facts
- o Such Little Things
- o The Astute Blogger
- o The Big Picture
- o The Buck Stops Here
- o The Dialectizer
- o The Hotline
- o The Iconic Midwesterner
- o The Movie Court
- o The National Debate
- o The Onion
- o The Shape of Days
- o The Spoons Experience
- o The Unalienable Right
- o The View from the Nest
- o The Volokh Conspiracy
- o ThoughtsOnline
- o ThreeSheets
- o TigerHawk
- o Tim Blair
- o Tim Worstall
- o Villainous Company
- o VodkaPundit
- o Winds of Change
- o Wizbang

# Links

- o
- o
- o
- o

## • Patterico Sells Out

- o [Bodybugg](#)
- o [Cheap azbox receiver](#)
- o [Conservative Blog Advertising MiniNetwork](#)
- o [L.A. Blogads Network](#)
- o [LED](#)
- o [Lingerie](#)
- o [My Food Diary](#)
- o [okayprom](#)
- o [plastic film](#)
- o [yoursdress](#)
- • Meta:
  - o [RSS 2.0](#)
  - o [Comments RSS 2.0](#)

*Powered by* **[WordPress](#)**.

Page loaded in: 0.6597 secs.

Case: 13-55666     02/07/2014     ID: 8970590     DktEntry: 23-2     Page: 107 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 1 of 32   Page ID #:221

**Home**
**Connect**
**Discover**

[      ]



### Patterico

**@Patterico**
*Harangues that just make sense. All statements are made in my private capacity and not on behalf of my employer.*
Tehran · http://patterico.com
Blocked

**6,206** TWEETS
**527** . FOLLOWING
**5,223** . FOLLOWERS

**Tweet to Patterico**

Tweets
Following
Followers
Favorites
Lists

**Recent Images**



file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...





Similar to Patterico

**Lori Ziganto**  @snarkandboobs Follow

**Jenn Taylor**  @JennQPublic Follow

**rebecca grunewald**  @duchessrebecca Follow

© 2012 Twitter
About
Help
Terms
Privacy
Blog
Status
Apps
Resources
Jobs
Advertisers
Businesses
Media
Developers

## Tweets



13h  **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@BreitbartUnmask lol lol lol
In reply to BreitbartUnmasked

11/19/2012 1:57 PM

105

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 109 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 3 of 32    Page ID #:223



13h  **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
@BreitbartUnmasked Oh: not the Bell video. You know which video. And man does it make you mad that it's all there. On video. Coming soon.
In reply to BreitbartUnmasked



13h  **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
@BreitbartUnmask No hoping. I know lol lol lol.
In reply to BreitbartUnmasked



14h  **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
@BreitbartUnmask Sure. Shows who you are.
In reply to BreitbartUnmasked



14h  **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
Clumsy frame job is clumsy.



14h  **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
@BreitbartUnmask Wait until the video showing the framing is released. And it will be. Hahahaha.
In reply to BreitbartUnmasked



**Patterico**  @Patterico

· Close

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 110 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 4 of 32    Page ID #:224

@BreitbartUnmask Wow. I guess you're retaliating against us for what we did. Except for the fact that we all know your PACER reveal came 1st

Hide conversation

4:58 AM - 25 Mar 12 via Twitter for iPhone · Details

Reply
Retweet
Favorite



22h · **Patterico** @Patterico
· Reply
· Retweet
· Favorite
· Open

@Dust92 You guess correctly.

In reply to Dustin



22h · **Patterico** @Patterico
· Reply
· Retweet
· Favorite
· Open

From @NadiaNaffe lawsuit against RNC: judge's finding that she intentionally kept a work laptop after being fired. is.gd/IWZOqN



**Patterico** @Patterico
· Close

@BreitbartUnmask You misspell "your" the same way @NadiaNaffe does. Anyway, done talking to an anonymous liar.

Hide conversation

9:59 PM - 23 Mar 12 via TweetDeck · Details

Reply
Retweet
Favorite



**Patterico** @Patterico
· Close

@Popehat Fair enough. I'll look it up. Thanks.

Hide conversation

9:57 PM - 23 Mar 12 via Twitter for iPhone · Details

Reply
Retweet
Favorite

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 111 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 5 of 32    Page ID #:225



23 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open
  @BreitbartUnmask Actually, that is a lie and you are a liar.
  In reply to BreitbartUnmasked



23 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open
  @Popehat If I check my email on ur phone, and when I return phone to you, you find you can access my email w/o my permission, can u legally?
  In reply to Popehat



23 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open
  @CincyCapell "Their own"? Uh, no. @nadianaffe Is no conservative.
  In reply to Cincy Capell



**Patterico**  @Patterico
- Close
  @NadiaNaffe My first task is learning what criminal statutes, if any, you have admitted violating.
  Hide conversation

  9:46 PM - 23 Mar 12 via Twitter for iPhone · Details
  Reply
  Retweet
  Favorite



**Patterico**  @Patterico
- Close
  @NadiaNaffe This is quite a distraction from the points I raised in the post. I promise I will elaborate!
  Hide conversation

  9:45 PM - 23 Mar 12 via Twitter for iPhone · Details
  Reply
  Retweet
  Favorite

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 112 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 6 of 32   Page ID #:226



**Patterico** @Patterico

· Close

@NadiaNaffe You're not OK with my having a public voice at all. Why lie about it?

Hide conversation

9:43 PM - 23 Mar 12 via Twitter for iPhone · Details

Reply
Retweet
Favorite



**Patterico** @Patterico

· Close

@Popehat Do you know the federal statute covering unauthorized access of email?

Hide conversation

9:40 PM - 23 Mar 12 via Twitter for iPhone · Details

Reply
Retweet
Favorite



**Patterico** @Patterico

· Close

@jdonels Can you send me the federal statute?

Hide conversation

9:39 PM - 23 Mar 12 via Twitter for iPhone · Details

Reply
Retweet
Favorite



**Patterico** @Patterico

· Close

@NadiaNaffe Utterly false but why let that bother you?

Hide conversation

9:38 PM - 23 Mar 12 via Twitter for iPhone · Details

Reply
Retweet
Favorite



23 Mar    **Nadia Naffe** @NadiaNaffe

· Reply
· Delete
· Favorite
· · Open

Case: 13-55666     02/07/2014     ID: 8970590     DktEntry: 23-2     Page: 113 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW     Document 20-3     Filed 11/19/12     Page 7 of 32     Page ID #:227

Thats for Internal Affairs & CA Bar to decide. O'keefe worked for Dist Atty Fey before dropping out of law school. @Durdenhood01 @patterico

Retweeted by Patterico

In reply to Tyler Hood



**Patterico**  @Patterico

· Close

@Popehat I sincerely doubt I will, given how silly the allegation is. But I appreciate the offer.

Hide conversation

9:25 PM - 23 Mar 12 via TweetDeck · Details

Reply

Retweet

Favorite



23 Mar     **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

All @NadiaNaffe is doing is strengthening evidence of ties between her and others who have used similar tactics.



23 Mar     **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

It is also crystal clear that Deputy D.A. may discuss matters of public interest on their own time using their own equipment.



23 Mar     **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

It is crystal clear any complaint filed by @NadiaNaffe will be frivolous attempt to silence my public voice. Part of a pattern.



23 Mar     **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

O'Keefe injunction against @NadiaNaffe releasing his hacked emails now online. Come see why she is

Case: 13-55666     02/07/2014     ID: 8970590     DktEntry: 23-2     Page: 114 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 8 of 32   Page ID #:228

threatening my job. is.gd/7eonhf



23 Mar    **BreitbartUnmasked**  @BreitbartUnmask
· Reply
· Retweet
· Favorite
·  · Open
@NadiaNaffe @Patterico Many complaints about Frey already filed. Suggest IA and reporting him. The more the people report less power he has.
Retweeted by Patterico
In reply to Nadia Naffe



**Patterico**  @Patterico
· Close
@NadiaNaffe That is false. But then, you're full of false allegations, aren't you?
Hide conversation

4:22 PM - 23 Mar 12 via Twitter for iPhone · Details
Reply
Retweet
Favorite



**Patterico**  @Patterico
· Close
@NadiaNaffe You are doing a fantastic job of drawing greater attention to my questions. Thank you.
Hide conversation

**1RETWEET**



4:19 PM - 23 Mar 12 via Twitter for iPhone · Details
Reply
Retweet
Favorite



**Patterico**  @Patterico
· Close
@NadiaNaffe Did I? Then I'll say it again. Criticism on a matter of public interest is not witness tampering.
Hide conversation

4:16 PM - 23 Mar 12 via Twitter for iPhone · Details
Reply
Retweet

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 115 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 9 of 32    Page ID #:229

favorite



23 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· · Open
@NadiaNaffe If you think you will intimidate me into silence with laughable tactics like this, you are sadly mistaken. @tommyxtopher
In reply to Nadia Naffe



**Patterico**  @Patterico
· Close
@NadiaNaffe The state bar will laugh at your complaint. As I am laughing now. You seriously go to Harvard? @tommyxtopher
Hide conversation

4:11 PM - 23 Mar 12 via Twitter for iPhone · Details
Reply
Retweet
Favorite



**Patterico**  @Patterico
· Close
@NadiaNaffe Then I guess by your logic anyone who criticizes @JamesOKeefeIII is practicing law without a license. @tommyxtopher
Hide conversation

4:10 PM - 23 Mar 12 via Twitter for iPhone · Details
Reply
Retweet
Favorite



23 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· · Open
On what planet is it "legal advice" to point out obvious questions about a sketchy person's story?



23 Mar    **Nadia Naffe**  @NadiaNaffe
· Reply
· Delete

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 116 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 10 of 32    Page ID #:230

· Favorite
· · Open

Patrick Fey, aka @Patterico is a Asst DA at the Justice Dept & he's giving O'keefe legal advice for a defense on his blog? @ElectMarcoRubio

Retweeted by Patterico

In reply to Rubio4President



23 Mar    **Nadia Naffe**  @NadiaNaffe

· Reply
· Delete
· Favorite
· Open

Thanks for letting me know Asst DA Patrick Fey/ @Patterico is giving O'keefe legal advice. I'm filing a CA bar complaint. @ElectMarcoRubio

Retweeted by Patterico

In reply to Rubio4President



23 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· · Open

@NadiaNaffe now threatening to report me to state bar for my criticism of her matter of public interest. Where have we seen this before?



23 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· · Open

Judge blocks @NadiaNaffe from releasing @JamesOKeefeIII emails. is.gd/7eonhf



23 Mar    **Patterico**  @Patterico

Reply
· Retweet
· Favorite
· · Open

The best part is that showing what you guys did will help us win elections. Everything you did -- all of it -- was counterproductive. Haha.



23 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 117 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 11 of 32    Page ID #:231

· · Open
It's always sad when evil people get angry that things aren't going their way...


23 Mar    **Patterico** @Patterico
· Reply
· Retweet
· Favorite
· · Open
Evidence gathering drawing to a close. That video will tell so much. So long and thanks for all the admissions!


23 Mar    **Patterico** @Patterico
· Reply
· Retweet
· Favorite
· · Open
Months of harassment silences nobody; just gives us an amazing story to tell. Your thuggery will be an object lesson. Make ya mad? Too bad.


23 Mar    **Patterico** @Patterico
· Reply
· Retweet
· Favorite
· · Open
@NicoleGennette Indeed. Pointing out severe holes in a leftist's story is always "wildly inappropriate" per creepy sockpuppets like you.
In reply to P.J. Nicolatore


**Patterico** @Patterico
· Close
@Dust92 Or because the "victim" is a liar whose lies will be exposed? That sometimes happens too!
Hide conversation
11:56 PM - 22 Mar 12 via Twitter for iPhone · Details
Reply
Retweet
Favorite

Case: 13-55666   02/07/2014   ID: 8970590   DktEntry: 23-2   Page: 118 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 12 of 32   Page ID #:232



22 Mar   **Patterico**   @Patterico

· Reply
· Retweet
· Favorite
· Open

Some questions about #rapebarn. patterico.com/2012/03/22/que…



22 Mar   **Patterico**   @Patterico

· Reply
· Retweet
· Favorite
· Open

@bschlyer My main interest is the smear on Andrew, publicized by @tommyxtopher, that Andrew ignored a "rape plot." He can't defend himself.

In reply to Bret Schlyer



22 Mar   **Patterico**   @Patterico

·
·
· Open

I missed the bit about the "rape plot" and Andrew's supposed hypocrisy. That's the part I'm most interested in.

**Bret Schlyer**   @bschlyer

· Close

@Patterico I see nothing but innuendo instead of accusation. Pretty much what I expected. #smear

Retweeted by Patterico

Hide conversation

· **1 RETWEET**

9:43 AM - 22 Mar 12 via web · Details

Reply
Retweet
Favorite



22 Mar   **Patterico**   @Patterico

· Reply
· Retweet
· Favorite
· Open

@bschlyer On the central questions, it's hard to disagree. I think the "and/or" is my favorite part. She

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 119 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 13 of 32    Page ID
#:233

doesn't know? #honesty

In reply to Bret Schlyer



22 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· · Open

If you and your friend then have a falling out, is the friend morally entitled to access your account & publish your emails on the Internet?



22 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

Say you once checked your email at a friend's and saved your password on the computer.



22 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@tommyxtopher will ignore these questions and Nadia's ties to the Anons and do his usual hack job. Count on it.



22 Mar    **Patterico**  @Patterico

· · Reply
· · Retweet
· Favorite
· Open

Finally: for the umpteenth time: why not call a cab?



22 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

And, significantly: where is the "rape plot" and the evidence of Andrew's hypocrisy?



22 Mar    **Patterico**  @Patterico

· Reply

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 120 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 14 of 32    Page ID
#:234

· Retweet
· Favorite
· · Open
Is there anything missing from that republished email?


22 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· · Open
Just how "remote" was this barn?


22 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· · Open
"James had downloaded and/or linked his Gmail account to my device." And/or? Really? Those are kinda different.


22 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open
I can't wait to see @tommyxtopher's uncritical touting of the barn thing. I can think of several obvious problems I guarantee he'll ignore.


22 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· · Open
I missed the bit about the "rape plot" and Andrew's supposed hypocrisy. That's the part I'm most interested in.


21 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open
You chose . . . poorly.

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 121 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 15 of 32    Page ID #:235



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

Hahahahahahahahahahahahahahahahaha.



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 OK, respond and we'll chat?
In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 I have sent three.
In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@ElectMarcoRubio I would like to know how you know about this alleged email, Mr. Marco Rubio fan. @NadiaNaffe
In reply to Rubio4President



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 I have email. It's quite public. patterico AT gmail DOT com. Do you gchat?
In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply

Case: 13-55666     02/07/2014     ID: 8970590     DktEntry: 23-2     Page: 122 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW     Document 20-3     Filed 11/19/12     Page 16 of 32     Page ID
#:236

- · Retweet
- · Favorite
  - · Open
    @wolfiesgirl2011 I think that was me who linked that.
    In reply to wolfiesgirl



21 Mar     **Patterico**   @Patterico
- · Reply
- · Retweet
- · Favorite
  - · Open
    @OwainCunedda But if it's just right on the street in a suburban area, it's quite another. Wouldn't you agree, Honest Guy? @wolfiesgirl2011
    In reply to Dayton Cheatham



21 Mar     **Patterico**   @Patterico
- · Reply
- · Retweet
- · Favorite
  - · Open
    @OwainCunedda I mean, if the "rape barn" was miles off the street on a huge piece of property, behind a locked gate. that's one thing...
    In reply to Dayton Cheatham



**Patterico**   @Patterico
- · Close
    @OwainCunedda Did you like my link to Westwood cabs? @wolfiesgirl2011
    Hide conversation

    3:12 AM - 21 Mar 12 via TweetDeck · Details
    Reply
    Retweet
    Favorite



21 Mar     **Patterico**   @Patterico
- · Reply
- · Retweet
- · Favorite
  - · Open
    @wolfiesgirl2011 Just sent another.
    In reply to wolfiesgirl



21 Mar     **Patterico**   @Patterico
- · Reply

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 123 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

- Retweet
- Favorite
- Open
  @wolfiesgirl2011 I think that term was coined by one of my commenters as a joke, but @ElectMarcoRubio is running with it, the idiot.
  In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open
  @wolfiesgirl2011 What do you have against DMs?
  In reply to wolfiesgirl

**Patterico**  @Patterico
- Close
  @ElectMarcoRubio It's hardly false imprisonment if the "rape barn" is feet from the street and you could easily catch a cab. Am I right?
  Hide conversation

  3:04 AM - 21 Mar 12 via web · Details
  Reply
  Retweet
  Favorite

**Patterico**  @Patterico
- Close
  @ElectMarcoRubio Hahahahahaha! Even you are calling it the "rape barn"! Love it. Yes: I ask: WHY NOT CALL A FREAKING CAB?!?!
  Hide conversation

  3:03 AM - 21 Mar 12 via web · Details
  Reply
  Retweet
  Favorite

21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open
  @wolfiesgirl2011 I didn't see a link in any of that sock puppet's recent tweets. Which one are you talking about? Also check DM!
  In reply to wolfiesgirl

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 124 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 18 of 32    Page ID
#:238



21 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

Raise your hand if you think @ElectMarcoRubio actually wants to elect Marco
Rubio. #howmanystupidpeopleareontwitter
In reply to Rubio4President



21 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@ElectMarcoRubio Because it's not "ink" and it's not 2:30 a.m. where I am. And also you're still a fraud.
In reply to Rubio4President



21 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@wolfiesgirl2011 Yes, they do. And they know what we have. And the videotape reference is no
accident.
In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@OwainCunedda I have this magic ability to see tweets from people whom I block on principle. But I
see they deny having the same powers.
In reply to Dayton Cheatham



**Patterico**  @Patterico

· Close

@wolfiesgirl2011 Wouldn't it? And I have a feeling all these scumbags know EXACTLY what I'm talking
about, and are all very nervous about it
Hide conversation

2:49 AM - 21 Mar 12 via TweetDeck · Details

reply

retweet

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 19 of 32   Page ID #:239

favorite



· Close

**Patterico**  @Patterico

@wolfiesgirl2011 Facts and evidence are nothing more than a path to the truth. The truth is the ultimate goal.

Hide conversation

2:48 AM - 21 Mar 12 via TweetDeck · Details

Reply

Retweet

favorite



21 Mar   **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open

@OwainCunedda If I were her, rather than call Andrew Breitbart in Los Angeles, I might call one of these companies: is.gd/hs6qxl
In reply to Dayton Cheatham



21 Mar   **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open

@OwainCunedda Last I checked she had me blocked. I think I asked already and was ignored. Feel free to ask yourself!
In reply to Dayton Cheatham



21 Mar   **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open

@wolfiesgirl2011 I would LOVE to talk privately to someone who could fill me in on such facts. I again offer to discuss this all via DM.
In reply to wolfiesgirl



21 Mar   **Patterico**  @Patterico
· Reply
· Retweet

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 126 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 20 of 32    Page ID
#:240

· Favorite
· · Open
  @ElectMarcoRubio Perhaps that's because you're a complete, total, and screamingly obvious fraud.
    In reply to Rubio4President



21 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· · Open
  @wolfiesgirl2011 Follow for DM?
    In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open
  @wolfiesgirl2011 DM.
    In reply to wolfiesgirl



Patterico  @Patterico
· Close
  @wolfiesgirl2011 Like, say you had a videotape that showed someone was a complete liar? And all his friends? Wouldn't that be fun to show?
    Hide conversation

    2:40 AM - 21 Mar 12 via TweetDeck · Details
    Reply
    Retweet
    Favorite



21 Mar    **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open
  @wolfiesgirl2011 You know what speaks louder than any single voice? Facts and evidence. Facts and evidence can move the world.
    In reply to wolfiesgirl



Patterico  @Patterico
· Close
  @OwainCunedda Dude, she is not going to talk facts with me. Like, why not call a cab? You think she'll answer that question? Come on.

Case: 13-55666     02/07/2014     ID: 8970590     DktEntry: 23-2     Page: 127 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW     Document 20-3     Filed 11/19/12     Page 21 of 32     Page ID
#:241

Hide conversation

2:37 AM - 21 Mar 12 via TweetDeck · Details

reply

Retweet

favorite



21 Mar   **Patterico**   @Patterico

· Reply
· Retweet
· Favorite
· · Open

@wolfiesgirl2011 They are starting to realize that it is all going to be told. All of it. And they are
DESPERATE.

In reply to wolfiesgirl



21 Mar   **Patterico**   @Patterico

· Reply
· Retweet
· Favorite
· · Open

@wolfiesgirl2011 Yup. There's two visible, one in the shadows, and one who pretends to be opposed to
them but actually is not.

In reply to wolfiesgirl



**Patterico**   @Patterico

· Close

@wolfiesgirl2011 They are DESPERATE to look like they aren't watching all their dishonest efforts bite
them in their posteriors.

Hide conversation

2:34 AM - 21 Mar 12 via TweetDeck · Details

reply

Retweet

favorite



21 Mar   **Patterico**   @Patterico

· Reply
· Retweet
· Favorite
· · Open

@wolfiesgirl2011 What you have to realize is that these people are putting on their game face, but their
whole enterprise is crumbling.

In reply to wolfiesgirl

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 128 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 22 of 32    Page ID #:242



21 Mar    **Patterico**  @Patterico

·  Reply
·  Retweet
·  Favorite
· · Open

@wolfiesgirl2011 It's clear. I saw where the laughable concept of witness intimidation arose and it wasn't from her. It was from a fool.

In reply to wolfiesgirl

---



**Patterico**  @Patterico

· Close

@wolfiesgirl2011 I'd be very interested to see how far you'd have to walk from the "barn" to meet a taxicab. Miles? Yards? Feet? Inches?

Hide conversation

2:31 AM - 21 Mar 12 via TweetDeck · Details

Reply
Retweet
Favorite

---



**Patterico**  @Patterico

· Close

@wolfiesgirl2011 Do they have taxicabs in New Jersey? Is the "barn" in a taxicab-free zone?

Hide conversation

2:30 AM - 21 Mar 12 via TweetDeck · Details

Reply
Retweet
Favorite

---



**Patterico**  @Patterico

· Close

@OwainCunedda She has me blocked. You can feel free to tell me where I'm wrong. I'm talking facts. Is ANYONE willing to talk facts with me??

Hide conversation

2:29 AM - 21 Mar 12 via TweetDeck · Details

Reply
Retweet
Favorite

---



**Patterico**  @Patterico

· Close

@wolfiesgirl2011 She's clearly all about the attention, and incompetent partisan hacks like @tommyxtopher will give her plenty.

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 129 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 23 of 32    Page ID #:243

Hide conversation

2:28 AM - 21 Mar 12 via TweetDeck · Details

teply

tetweet

avorite

 **Patterico**  @Patterico

· Close

@wolfiesgirl2011 I'm sure there are other things, but that's a large collection of reasons that her credibility is very suspect.

Hide conversation

2:27 AM - 21 Mar 12 via TweetDeck · Details

teply

tetweet

avorite

 **Patterico**  @Patterico

· Close

@wolfiesgirl2011 7. I have a hard time figuring out what she thinks her career path is, given her behavior on all these issues.

Hide conversation

2:27 AM - 21 Mar 12 via TweetDeck · Details

teply

tetweet

avorite

 **Patterico**  @Patterico

· Close

@wolfiesgirl2011 6. She seems to be taking the tack that any criticism of her is "witness intimidation," which is an utter joke.

Hide conversation

2:26 AM - 21 Mar 12 via TweetDeck · Details

teply

tetweet

avorite

21 Mar  **Patterico**  @Patterico

· Reply

· Retweet

· Favorite

· Open

@wolfiesgirl2011 5. The people she has chosen to associate with are people with a history of false smears against Breitbart people.

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 130 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 24 of 32    Page ID
#:244

In reply to wolfiesgirl



21 Mar  **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
·· Open
@wolfiesgirl2011 4. She personally smeared me on Twitter, and has not retracted or apologized even though it's clear it was a false claim.

In reply to wolfiesgirl



**Patterico**  @Patterico
· Close
@wolfiesgirl2011 3. She claims O'Keefe gave her 7 years of emails, which is absurd on so many levels I don't even know where to start.
Hide conversation

2:24 AM - 21 Mar 12 via TweetDeck · Details
Reply
Retweet
Favorite



21 Mar  **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
·· Open
@wolfiesgirl2011 2. She issued a tasteless, shockingly self-absorbed tweet about Andrew's heart attack on the day he died.

In reply to wolfiesgirl



21 Mar  **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
·· Open
@wolfiesgirl2011 1. She smeared Andrew Breitbart by implying he was a hypocrite about "rape plots" when she testified she was not harassed.

In reply to wolfiesgirl

**Patterico**  @Patterico
· Close
@wolfiesgirl2011 Why should we question her honesty? Let me count the ways...

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 131 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 25 of 32   Page ID #:245

Hide conversation

2:22 AM - 21 Mar 12 via TweetDeck · Details

reply
Retweet
Favorite



**Patterico** @Patterico
·  Close
@wolfiesgirl2011 I didn't mean to say there was only one reason to question her honesty! There are many, in my opinion.
Hide conversation

2:22 AM - 21 Mar 12 via TweetDeck · Details

reply
Retweet
Favorite



**Patterico** @Patterico
·  Close
@wolfiesgirl2011 Oh, and you can bet @tommyxtopher will lap that story right up, too. Just like the lowlife partisan hack he really is.
Hide conversation

2:20 AM - 21 Mar 12 via TweetDeck · Details

reply
Retweet
Favorite



21 Mar   **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open
@wolfiesgirl2011 He knows precisely how I feel. We had it out already. I owe him nothing.
In reply to wolfiesgirl



21 Mar   **Patterico**  @Patterico
· Reply
· Retweet
· Favorite
· Open
@wolfiesgirl2011 That's a story so patently absurd, only the most credulous, hackish pseudojournalist could buy it. Paging @tommyxtopher!
In reply to wolfiesgirl

Case: 13-55666      02/07/2014      ID: 8970590      DktEntry: 23-2      Page: 132 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 26 of 32    Page ID #:246



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
   @wolfiesgirl2011 And for her to say O'Keefe gave her 7 years of emails? Yeah, I don't believe that for a second.
      In reply to wolfiesgirl



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
   @wolfiesgirl2011 I think we can agree that for Nadia to attribute that statement to me is an outrageous smear. Really makes me Q her honesty
      In reply to wolfiesgirl



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
   @wolfiesgirl2011 That's fine.
      In reply to wolfiesgirl



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
   @wolfiesgirl2011 I read it already. Let's pretend it's non-racial (which I don't buy). It's still an offensive and ridiculous thing to say.
      In reply to wolfiesgirl



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open
   @wolfiesgirl2011 It's a stupid and offensive thing to say any way you slice it. I want nothing to do with him. He is blocked.
      In reply to wolfiesgirl

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 133 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 27 of 32    Page ID
#:247



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 We'll have to agree to disagree. My interpretation is not a "lie." It is my interpretation. And it is the reasonable one.

In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 If you can't see that saying "wiff them teefs" to a black person and calling it dialect is offensive then you're hopeless.

In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 It's not a lie and I have every right to say what I want, when I want. I'm tired of that racist's whining.

In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe You also suggested that I implied you belonged on a "plantation" and that I tried to "pick & chose" who you talk to -- smears.

In reply to Nadia Naffe



21 Mar    **Patterico**  @Patterico
- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 Do not call something a "lie" without being acquainted with the facts.

In reply to wolfiesgirl

11/19/2012 1:57 PM

130

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 134 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 28 of 32    Page ID #:248



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@wolfiesgirl2011 I don't feel like re-arguing this. He said "wiff them teefs" and admitted it was mocking dialect. I find it disgusting.

In reply to wolfiesgirl



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe Your "heart attack" tweet about Andrew was repulsive and tasteless. Your smear of me was baseless. Those two facts bother me.

In reply to Nadia Naffe



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe Based on your smear of me, and what appears to be a smear of Breitbart editors, you seem to be exhibiting a pattern of smearing.

In reply to Nadia Naffe



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe What evidence do you have that they operate those accounts? I say right here and now: I bet you have none and will produce none.

In reply to Nadia Naffe

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe Additionally, I note that you keep claiming that certain Breitbart editors operate Twitter accounts. I think you're full of it.

In reply to Nadia Naffe



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe Your quote was: "Your guy @MCHblazer used racial code words." That is the very definition of a smear. @milowent

In reply to Nadia Naffe



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe I have zero connection with that jerk, got into a shouting match with him, and blocked him. @milowent

In reply to Nadia Naffe



21 Mar    **Patterico**  @Patterico

- Reply
- Retweet
- Favorite
- Open

@NadiaNaffe If that's not precise enough for you, review our timelines from Sunday. It's all there. @milowent

In reply to Nadia Naffe

11/19/2012 1:57 PM

132

Case: 13-55666    02/07/2014    ID: 8970590    DktEntry: 23-2    Page: 136 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW    Document 20-3    Filed 11/19/12    Page 30 of 32    Page ID #:250



21 Mar    **Patterico**   @Patterico

·   Reply
·   Retweet
·   Favorite
· ·   Open

@NadiaNaffe You nevertheless insisted on portraying him as connected with me, an allegation that was totally baseless and false. @milowent

  In reply to Nadia Naffe



21 Mar    **Patterico**   @Patterico

·   Reply
·   Retweet
·   Favorite
· ·   Open

@NadiaNaffe I directly told you that it was a smear, and quoted my extensive and repeated criticism of his statement. @milowent

  In reply to Nadia Naffe



21 Mar    **Patterico**   @Patterico

·   Reply
·   Retweet
·   Favorite
· ·   Open

@NadiaNaffe Some guy issued a racist insult to you, which I denounced about 5 times in a row -- and you claimed he was my guy. @milowent

  In reply to Nadia Naffe



21 Mar    **Patterico**   @Patterico

·   Reply
·   Retweet
·   Favorite
· ·   Open

@NadiaNaffe We discussed this. Did you somehow forget? @milowent

  In reply to Nadia Naffe



21 Mar    **Patterico**   @Patterico

·   Reply
·   Retweet
·   Favorite
· ·   Open

@milowent Attention seeker.

  In reply to milowent

Case: 13-55666   02/07/2014   ID: 8970590   DktEntry: 23-2   Page: 137 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW   Document 20-3   Filed 11/19/12   Page 31 of 32   Page ID #:251



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@milowent Well, I guess that's better than using an unproven fact from an unreliable witness as the basis to ask an "excellent question."

In reply to milowent



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@milowent She claimed to have his emails going back 7 years. And that he gave him to her. I don't believe that. It makes no sense.

In reply to milowent



21 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@milowent That's not what makes me suspicious. People sometimes have good reasons to hold on to evidence. I just find her dishonest, creepy.

In reply to milowent



20 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@milowent Do you honestly believe he sent her 7 years worth of emails? I don't. Not for a second.

In reply to milowent



20 Mar   **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

@milowent It's also a question that assumes facts I don't believe. Nadia smeared me personally this weekend. I do not trust her.

In reply to milowent

Case: 13-55666     02/07/2014     ID: 8970590     DktEntry: 23-2     Page: 138 of 211

file:///C:/Users/Eric/Documents/August 2012/Nadia Naffe/FW ADA Patri...

Case 2:12-cv-08443-GW-MRW     Document 20-3     Filed 11/19/12     Page 32 of 32     Page ID #:252



20 Mar     **Patterico**  @Patterico

· Reply
· Retweet
· Favorite
· Open

Oh, I won't. I'll keep telling the truth. That's what scares them. RT @CFoxtrot Don't stop!

1   GOETZ FITZPATRICK LLP
    RONALD D. COLEMAN
2   rcoleman@goetzfitz.com
    One Penn Plaza, Suite 4401
3   New York, NY 10119
    Telephone: 212.695.8100
4   Facsimile: 212.629.4013

5   Counsel for Defendant
    JOHN PATRICK FREY
6

7   BROWN WHITE & NEWHOUSE LLP
    KENNETH P. WHITE (Bar No. 238052)
8   kwhite@brownwhitelaw.com
    333 South Hope Street, 40th Floor
9   Los Angeles, CA 90071-1406
    Telephone: 213. 613.0500
10  Facsimile: 213.613.0550

11  Local Counsel for Defendant
    JOHN PATRICK FREY
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15  NADIA NAFFE, an individual,          Case No.: CV12-08443-GW (MRWx)

16              Plaintiff,               Judge:    Hon. George H. Wu

17       v.

18  JOHN PATRICK FREY, an individual,    **DEFENDANT JOHN PATRICK**
    and the COUNTY OF LOS ANGELES,       **FREY'S REQUEST FOR JUDICIAL**
19  a municipal entity,                  **NOTICE IN SUPPORT OF**
                                         **PENDING MOTIONS AND**
20              Defendants.              **DECLARATION OF KENNETH P.**
                                         **WHITE**
21

22                                       Hearing Date: _February 14, 2012
                                         Time: ___      8:30 a.m.
23                                       Courtroom:      10

24

25                                       Complaint Filed: October 2, 2012

26

27

28

─────────────────────────────────────────
                DEFENDANT'S REQUEST FOR JUDICIAL NOTICE
772885.1

136

TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Evidence, Rule 201, Defendant John Patrick Frey respectfully requests that the Court take judicial notice of the following court documents and the following fact in connection with his (1) Motion to Dismiss First Through Sixth Causes of Action Pursuant to FRCP 12(b)(6); (2) Renewed Motion to Strike Pursuant to California Code of Civil Procedure 425.16; (3) Motion To Dismiss Second Through Seventh Causes of Action Pursuant to FRCP 12(b)(1); and (4) Motion for Undertaking Pursuant to California Code of Civil Procedure Section 1030:

1. The docket for the matter *Nadia Naffe v. Republican Party of Florida, et al.*, 04-CV-1916-JDW ("the Florida Case"), in the United States District Court for the Middle District of Florida, attached hereto as Exhibit A;

2. Item 75 from the docket of the Florida Case, titled "Motion of Defendant Republican Party of Florida to Exceed Seven Hour Time Limit To Complete Plaintiff's Deposition and Memorandum in Support," attached hereto as Exhibit B;

3. Item 76 from the docket of the Florida Case, titled "Plaintiff's Response to Republican Party of Florida's Motion to Exceed Seven-Hour Time Limit to Complete Plaintiff's Deposition," attached hereto as Exhibit C;

4. The transcript of the December 11, 2011 Probable Cause Hearing in *People v. James O'Keefe*, Summons No. SC2011-2180, in Westwood Borough Municipal Court, New Jersey, attached hereto as Exhibit D;

5. The Order to Show Cause With Temporary Restraints issued on March 23, 2012 in *James O'Keefe, III v. Nadia Naffe*, Civil Action C-93-12, Superior Court of New Jersey, Chancery Division, Bergen County, attached hereto as Exhibit E;

6. The fact that former defendant Steve Cooley was a candidate for Attorney General of the State of California in the November 2, 2010 General Election, as reflected in the excerpt of the California Secretary of State's Certified List of Candidates attached hereto as Exhibit F.

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

772885.1

BROWN, WHITE & NEWHOUSE LLP
ATTORNEYS

These items are a proper subject for judicial notice for the following reasons:

- Under Federal Rule of Evidence 201(b)(1) and (2), they are "generally known within the trial court's jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

- Ninth Circuit precedent establishes that it is proper for this Court to take judicial notice of the proceedings of other state and federal courts. *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169 (10th Cir. 1979)) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). That doctrine specifically extends to transcripts of proceedings. *Reyn's Pasta Bella, LLC v. VISA USA, INC.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of transcripts of another proceeding; *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F.Supp.2d 983, 989-90 (E.D. Cal. 2012) (same).

- Ninth Circuit precedent also establishes that it is proper for the Court to take judicial notice of the results of elections. *Badillo v. City of Stockton*, 956 F.2d 884, 887 n1. (9th Cir. 1992) ("We have held that election results are an appropriate subject of judicial notice.").

This Request for Judicial Notice is made in further Support of Defendants' pending motions, and is based upon the attached declaration of Kenneth P. White and the attached exhibits.

DATED: January 11, 20132                Respectfully submitted,

                                        GOETZ FITZPATRICK LLP LLP


                                        By   *s/Ronald D. Coleman*
                                             RONALD D. COLEMAN
                                             Counsel for Defendants
                                             JOHN PATRICK FREY AND
                                             CHRISTI FREY

1

2    DATED:  January 11, 2013              Respectfully submitted,

3                                          BROWN WHITE & NEWHOUSE LLP

4

5                                          By   _s/Kenneth P. White_
                                                  KENNETH P. WHITE
6                                               Local Counsel for Defendants
                                                JOHN PATRICK FREY AND
7                                                    CHRISTI FREY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

772885.1

1

### DECLARATION OF KENNETH P. WHITE

2 I, KENNETH P. WHITE, declare:

3     1.    I am an attorney licensed to practice law in California, and am a Partner at

4 Brown White & Newhouse LLP, attorneys for John Patrick Frey. I make this Declaration in

5 support of Defendant's Request for Judicial Notice. I have personal knowledge of the

6 following facts and if called upon to testify, would and could do so competently as follows.

7 However, because this declaration is for a limited purpose, it does not include all facts I know

8 about the matter.

9     2.    Attached as Exhibit A hereto is a true and correct copy of the docket for the

10 matter *Nadia Naffe v. Republican Party of Florida, et al.*, 04-CV-1916-JDW ("the Florida

11 Case"), in the United States District Court for the Middle District of Florida, which I

12 personally printed from PACER.

13     3.    Attached as Exhibit B hereto is a true and correct copy of Item 75 from the

14 docket of the Florida Case, titled "Motion of Defendant Republican Party of Florida to Exceed

15 Seven Hour Time Limit To Complete Plaintiff's Deposition and Memorandum in Support,"

16 without its exhibits, which I personally printed from PACER.

17     4.    Attached as Exhibit C hereto is a true and correct copy of Item 76 from the

18 docket of the Florida Case, titled "Plaintiff's Response to Republican Party of Florida's

19 Motion to Exceed Seven-Hour Time Limit to Complete Plaintiff's Deposition," which I

20 personally printed from PACER.

21     5.    Attached as Exhibit D hereto is a true and correct copy of the transcript of the

22 December 11, 2011 Probable Cause Hearing in *People v. James O'Keefe*, Summons No.

23 SC2011-2180, in Westwood Borough Municipal Court, New Jersey.

24     6.    Attached as Exhibit E hereto is a true and correct copy of the Order to Show

25 Cause With Temporary Restraints issued on March 23, 2012 in *James O'Keefe, III v. Nadia

26 Naffe*, Civil Action C-93-12, Superior Court of New Jersey, Chancery Division, Bergen

27 County.

28 //

1    7.    Attached as Exhibit F hereto are the first three pages of the Certified List of

2  Candidates – Short List of the November 2, 2010 General Election of the State of California,

3  printed from the web site of the California Secretary of State at

4  http://www.sos.ca.gov/elections/statewide-elections/2010-general/short-certified-list.pdf,

5  reflecting that Steve Cooley was a candidate for Attorney General in that election.

6    I declare under penalty of perjury under the laws of the State of California that the

7  foregoing is true and correct.  Executed on January 11, 2013 in Los Angeles, California.

8

9    _S/Kenneth P. White_

10   KENNETH P. WHITE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

142

CLOSED

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:04-cv-01916-JDW-TGW

Naffe v. Republican Party of Florida et al                        Date Filed: 08/25/2004
Assigned to: Judge James D. Whittemore                            Date Terminated: 01/20/2006
Referred to: Magistrate Judge Thomas G. Wilson                    Jury Demand: Plaintiff
Cause: 28:1331 Fed. Question: Employment Discrimination           Nature of Suit: 442 Civil Rights: Jobs
                                                                   Jurisdiction: Federal Question

**Plaintiff**

**Nadia K. Naffe**                            represented by    **Charles Gilbert Burr , III**
                                                                Burr & Smith, LLP
                                                                Suite 300
                                                                442 W Kennedy Blvd
                                                                Tampa, FL 33606
                                                                813/253-2010
                                                                Fax: 813/253-0695
                                                                *TERMINATED: 12/03/2004*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Cyrus Mehri**
                                                                Mehri & Skalet, PLLC
                                                                1300 19th St. N.W., Suite 400
                                                                Washington, D.C. 20036
                                                                202/822-5100
                                                                Fax: 202/822-4997
                                                                *TERMINATED: 12/03/2004*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Nicole Austin-Hillary**
                                                                Mehru & Skalet, PLLC
                                                                Suite 400
                                                                1300 19th St NW
                                                                Washington, DC 20036
                                                                202/822-5100
                                                                Fax: 202/822-4997
                                                                *TERMINATED: 12/03/2004*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

143

**Sam Jones Smith**
Burr & Smith, LLP*
Suite 300
442 W Kennedy Blvd
Tampa, FL 33606
813/253-2010
Fax: 813/254-8391
Email: ssmith@burrandsmithlaw.com
*TERMINATED: 12/03/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Moten Thompson**
Thompson Legal Center, LLC.
Suite 2030
5010 W Carmen St
Tampa, FL 33609
813-769-3900
Fax: 813-425-3900
Email: jmthompsonlegal@gmail.com
*ATTORNEY TO BE NOTICED*

**V.**

**Defendant**

**Republican Party of Florida**              represented by **Edmund J. McKenna**
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
Suite 3600
100 N Tampa Street
Tampa, FL 33602
813/289-1247
Fax: 813/289-6530
Email:
edmund.mckenna@ogletreedeakins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dawn Siler-Nixon**
Ford & Harrison, LLP
Suite 900
101 E Kennedy Blvd
Tampa, FL 33602
813/261-7800
Fax: 813/261-7899
Email: dsiler-nixon@fordharrison.com
*ATTORNEY TO BE NOTICED*

144

Electronic Case Filing | U.S. District Court - Middle District of Florida          https://ecf.flmd.uscourts.gov/cgi-bin/DktRpt.pl?110561250364398-L_4...

**Defendant**

**Republican National Committee**                     represented by **Edward Lee Isler**
                                                        Isler Dare Ray & Radcliffe, P.C.
                                                        1919 Gallows Road
                                                        Suite 320
                                                        Vienna, VA 22182
                                                        703/748-2690
                                                        Fax: 703/748-2695
                                                        Email: eisler@rayandisler.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Janet Goldberg McEnery**
                                                        MacFarlane, Ferguson & McMullen, PA
                                                        201 N Franklin St - Ste 2000
                                                        PO Box 1531
                                                        Tampa, FL 33601-1531
                                                        813/273-4200
                                                        Fax: 813/273-4396
                                                        Email: jeg@macfar.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Michelle Bodley Radcliffe**
                                                        Isler Dare Ray & Radcliffe, P.C.
                                                        1919 Gallows Road
                                                        Suite 320
                                                        Vienna, VA 22182
                                                        703/748-2690
                                                        Fax: 703/748-2695
                                                        Email: mradcliffe@rayandisler.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Noel Poncy McDonell**
                                                        MacFarlane, Ferguson & McMullen, PA
                                                        201 N Franklin St - Ste 2000
                                                        PO Box 1531
                                                        Tampa, FL 33601-1531
                                                        813/273-4200
                                                        Fax: 813/2734396
                                                        Email: npm@macfar.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Bush-Cheney '04, Inc.**

represented by **Edward Lee Isler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Janet Goldberg McEnery**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle Bodley Radcliffe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noel Poncy McDonell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Kincaid Brick Co.,**
*also known as*
Kincaid Brick Yard
*also known as*
Brickcrete, Inc.

represented by **Richard Scott Agster**
Law Office of Richard S. Agster
3602 W Euclid Ave
Tampa, FL 33629
813/832-3939
Fax: 813-832-3841
Email: lawrsa@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Marjorie Kincaid**

represented by **Richard Scott Agster**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/23/2004 | 1 | COMPLAINT for injunctive relief and damages against Bush-Cheney '04, Inc., Republican National Committee, Republican Party of Florida ; jury demand ( Filing fee $ 150 receipt number T028845), filed by Nadia K. Naffe.(CH) (Entered: 08/25/2004) |
| 08/27/2004 | 2 | RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 2 (aho) (Entered: 08/27/2004) |

| 11/11/2004 | 3 | MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff* by Nadia K. Naffe. (Smith, Sam) (Entered: 11/11/2004) |
| 11/23/2004 | 4 | NOTICE of Hearing on Motion 3 MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff*: Motion Hearing set for 12/3/2004 11:00 AM in Courtroom 13 B before Judge James D. Whittemore. (aho) (Entered: 11/23/2004) |
| 11/30/2004 | 5 | ORDER RESCHEDULING HEARING (Time of hearing only) on 3 MOTION to withdraw as attorney for Plaintiff. Hearing scheduled for 12/3/04 at 9:30 A.M. Directing Plaintiff's counsel to immediately notify Plaintiff of time change and responsibility to be present at said hearing. Signed by Judge James D. Whittemore on 11/30/2004. (kle) (Entered: 11/30/2004) |
| 12/03/2004 | 6 | NOTICE by Nadia K. Naffe re 3 MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff o f Filing Proposed Order* (Attachments: # 1 Order on Motion for Leave to Withdraw)(Smith, Sam) (Entered: 12/03/2004) |
| 12/03/2004 | 7 | Minute Entry for proceedings held before Judge James D. Whittemore : Motion Hearing held on 12/3/2004 re 3 MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff* filed by Nadia K. Naffe. (Court Reporter Linda Starr.) (aho) (Entered: 12/06/2004) |
| 12/03/2004 | 8 | ORAL ORDER granting 3 Motion to withdraw as attorney. Attorney Cyrus Mehri; Sam Jones Smith; Nicole Austin-Hillary and Charles Gilbert Burr terminated. All future pleadings and correspondence shall be sent to the Plaintiff directly at her home address listed in the record, pending appearance of substitute counsel . Signed by Judge James D. Whittemore on 12/3/2004. (aho) (Entered: 12/06/2004) |
| 12/03/2004 | 9 | ORAL MOTION to extend time to serve process by Nadia K. Naffe. (aho) (Entered: 12/06/2004) |
| 12/03/2004 | 10 | ORAL ORDER granting 9 Motion to extend time. Court grants the plaintiff an additional 60 days to serve process, to 2/22/05 . Signed by Judge James D. Whittemore on 12/3/2004. (aho) (Entered: 12/06/2004) |
| 12/14/2004 | 11 | ORDER granting 3 MOTION for leave to withdraw as attorney for Plaintiff. CLERK shall add Plaintiff, pro se, to this case pending an appearance by substitute counsel. Plaintiff shall serve her complaint or an amended complaint on all Defendants on or before February 20, 2005. Signed by Judge James D. Whittemore on 12/13/2004. (kle) (Entered: 12/14/2004) |
| 01/31/2005 | 12 | TRANSCRIPT of Motion hearing held on 12/3/04 before Judge James D. Whittemore. Court Reporter: Linda Starr. (CH) (Entered: 01/31/2005) |

| | | |
|---|---|---|
| 02/10/2005 | 13 | NOTICE of Appearance by James Moten Thompson on behalf of Nadia K. Naffe (Thompson, James) (Entered: 02/10/2005) |
| 02/10/2005 | 14 | AMENDED COMPLAINT against all defendants, filed by Nadia K. Naffe.(Thompson, James) (Entered: 02/10/2005) |
| 02/10/2005 | 15 | Summons issued as to Republican Party of Florida, Republican National Committee, Bush-Cheney '04, Inc. Consent(s) issued. (CH) (Entered: 02/11/2005) |
| 02/18/2005 | 16 | MOTION to extend time to Serve Summonses by Nadia K. Naffe. (Thompson, James) (Entered: 02/18/2005) |
| 02/22/2005 | 17 | ORDER granting 16 Plaintiff's Motion for Extension of Time for Serving Summons. Signed by Judge James D. Whittemore on 2/22/2005. (kle) (Entered: 02/22/2005) |
| 02/28/2005 | 18 | Unopposed MOTION for extension of time to file answer or otherwise plead *for All Defendants* by Republican Party of Florida. (McKenna, Edmund) (Entered: 02/28/2005) |
| 03/01/2005 | 19 | ORDER granting the 18 Unopposed Motion of Defendant, Republican Party of Florida, for extension of Time for all Defendants to Respond to Complaint. Defendants shall respond to the Complaint on or before 3/25/05. Signed by Judge James D. Whittemore on 3/1/2005. (kle) (Entered: 03/01/2005) |
| 03/14/2005 | 20 | NOTICE of Designation and Consent-to-Act by Janet Goldberg McEnery on behalf of Republican National Committee, Bush-Cheney '04, Inc. (CH) (Entered: 03/15/2005) |
| 03/14/2005 | 21 | MOTION to appear pro hac vice by Edward Lee Isler on behalf of Republican National Committee, Bush-Cheney '04, Inc. (CH) (Entered: 03/15/2005) |
| 03/14/2005 | 22 | MOTION to appear pro hac vice by Michelle Bodley Radcliffe on behalf of Republican National Committee, Bush-Cheney '04, Inc. (CH) (Entered: 03/15/2005) |
| 03/16/2005 | 23 | ORDER granting 21 and 22 motions to appear pro hac vice. Signed by Judge James D. Whittemore on 3/16/2005. (kle) (Entered: 03/16/2005) |
| 03/22/2005 | 24 | WAIVER OF SERVICE returned executed by Nadia K. Naffe as to Republican National Committee on March 3, 2005. (Attachments: # 1)(Thompson, James) (Entered: 03/22/2005) |
| 03/25/2005 | 25 | CERTIFICATE of interested persons and corporate disclosure statement by Republican National Committee. (Isler, Edward) (Entered: 03/25/2005) |
| 03/25/2005 | 26 | ANSWER and affirmative defenses to amended complaint by Republican National Committee.(Isler, Edward) Modified on 3/28/2005 (CH). (Entered: 03/25/2005) |
| 03/25/2005 | 27 | CERTIFICATE of interested persons and corporate disclosure statement by Bush-Cheney '04, Inc.. (Isler, Edward) (Entered: 03/25/2005) |
| 03/25/2005 | 28 | ANSWER and affirmative defenses to amended complaint by Bush-Cheney '04, Inc.(Isler, Edward) Modified on 3/28/2005 (CH). (Entered: 03/25/2005) |
| 03/25/2005 | 29 | ANSWER and affirmative defenses to amended complaint by Republican Party of Florida.(McKenna, Edmund) Modified on 3/28/2005 (CH). (Entered: 03/25/2005) |

13

148

| 03/28/2005 | 30 | CERTIFICATE of interested persons and corporate disclosure statement by Republican Party of Florida. (McKenna, Edmund) (Entered: 03/28/2005) |
|---|---|---|
| 05/12/2005 | 31 | CASE MANAGEMENT REPORT. (McKenna, Edmund) (Entered: 05/12/2005) |
| 05/16/2005 | 32 | CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 10/30/2005. Dispositive motions due by 1/30/2006. Pretrial Conference set for 5/12/2006 11:00 AM in Courtroom 13 B before Judge James D. Whittemore. Jury Trial set for 6/5/2006 08:30 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 5/16/2005. (, kle) (Entered: 05/16/2005) |
| 05/23/2005 | 33 | NOTICE by Republican Party of Florida *of Service of Fed. R. Civ. P. 26 Initial Disclosures* (McKenna, Edmund) Modified on 5/24/2005 (CH). NOTE: DOCUMENT DELETED, IS DISCOVERY, ATTORNEY NOTIFIED (Entered: 05/23/2005) |
| 05/23/2005 | 34 | NOTICE by Republican National Committee *of Service of Rule 26(a) Initial Disclosures* (Radcliffe, Michelle) Modified on 5/24/2005 (CH). NOTE: DOCUMENT DELETED, IS DISCOVERY, ATTORNEY NOTIFIED (Entered: 05/23/2005) |
| 05/23/2005 | 35 | NOTICE by Bush-Cheney '04, Inc. *of Service of Rule 26(a) Initial Disclosures* (Radcliffe, Michelle) Modified on 5/24/2005 (CH). NOTE: DOCUMENT DELETED, IS DISCOVERY, ATTORNEY NOTIFIED (Entered: 05/23/2005) |
| 05/31/2005 | 36 | MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A - Case Management Report# 2 Exhibit B-Plaintiff's Notice of Compliance with Mandatory Disclosure Requirement)(McKenna, Edmund) (Entered: 05/31/2005) |
| 06/09/2005 | 37 | RESPONSE to motion re 36 MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* filed by Nadia K. Naffe. (Thompson, James) (Entered: 06/09/2005) |
| 06/13/2005 | 38 | MOTION for leave to file *a Reply Memorandum in Response to Plaintiff's Response to Defendant's Motion to Compel Initial Disclosures* by Republican Party of Florida. (Attachments: # 1 Reply Memorandum of the Republican Party of Florida in Support of its Motion to Compel Initial Disclosures from Plaintiff, Nadia Naffe)(McKenna, Edmund) (Entered: 06/13/2005) |
| 06/13/2005 | 39 | ORDER granting 38 Motion for leave to file reply . Signed by Judge Thomas G. Wilson on 6/13/2005. (Wilson, Thomas) (Entered: 06/13/2005) |
| 06/13/2005 | 40 | NOTICE of Hearing on MOTION to compel Initial Disclosures From Plaintiff Nadia Naffe (Doc. 36): hearing scheduled for 6/24/2005 at 2:30 PM in Courtroom 12A before Magistrate Judge Thomas G. Wilson. (mm) (Entered: 06/13/2005) |
| 06/14/2005 | 41 | REPLY to response to motion re 36 MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* filed by Republican Party of Florida. (Attachments: # 1 Exhibit A-Correspondence to Mr. Thompson# 2 Exhibit B - Plaintiff's Amended Initial Disclosures)(McKenna, Edmund) (Entered: 06/14/2005) |
| 06/21/2005 | 42 | NOTICE of Appearance by Dawn Siler-Nixon on behalf of Republican Party of Florida (Siler-Nixon, Dawn) (Entered: 06/21/2005) |

| | | |
|---|---|---|
| 06/23/2005 | 43 | MOTION to compel *the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A - Correspondence from Mr. Thompson)(McKenna, Edmund) (Entered: 06/23/2005) |
| 06/24/2005 | 44 | MINUTE ENTRY for proceedings held before Judge Thomas G. Wilson : Motion Hearing held on 6/24/2005 re 36 MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* filed by Republican Party of Florida-oral argument by parties; court will grant motion to certain extent; order to follow. (DIGITAL) (Williams, Carrie) (Entered: 06/24/2005) |
| 06/24/2005 | 45 | ORDER granting in part and denying in part 36 Motion to compel-granted to the extent that, no later than 10 days from the date of this order, the plaintiff to provide further itemization and documentation--please see order for further information . Signed by Judge Thomas G. Wilson on 6/24/2005. (Williams, Carrie) (Entered: 06/24/2005) |
| 07/01/2005 | 46 | RESPONSE to motion re 43 MOTION to compel *the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence and Memorandum in Support* filed by Nadia K. Naffe. (Attachments: # 1 Attachment A# 2 Attachment B# 3 Attachment C# 4 Attachment D)(Thompson, James) Modified on 7/1/2005 (CH). NOTE: DOCUMENTS DELETED, CORRUPTED AND NOT READABLE, ATTORNEY NOTIFIED TO REFILE (Entered: 07/01/2005) |
| 07/01/2005 | 47 | RESPONSE to motion re 43 MOTION to compel *the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence and Memorandum in Support* filed by Nadia K. Naffe. (Attachments: # 1 Attachment A# 2 Attachment B# 3 Attachment C# 4 Attachment D)(Thompson, James) (Entered: 07/01/2005) |
| 07/01/2005 | 48 | NOTICE of EVIDENTIARY Hearing on the defendant's MOTION to compel the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence (Doc. 43): The hearing is SCHEDULED for 7/20/2005 at 2:30 PM in Courtroom 12A before Magistrate Judge Thomas G. Wilson. The PLAINTIFF is REQUIRED to appear at this hearing. She will be required to testify under oath and be subject to cross examination regarding the loss of the laptop computer. (mm) (Entered: 07/01/2005) |
| 07/05/2005 | 49 | Emergency MOTION to continue *Evidentiary Hearing Date and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A-Docket of the United States Court of Appeals Eleventh Circuit indicating oral argument-7-21-05) (McKenna, Edmund) (Entered: 07/05/2005) |
| 07/13/2005 | 50 | ORDER granting 49 Motion to continue hearing until July 28, 2005, at 2:30 p.m . Signed by Judge Thomas G. Wilson on 7/13/2005. (Wilson, Thomas) (Entered: 07/13/2005) |
| 07/26/2005 | 51 | NOTICE by Nadia K. Naffe *of Filing* (Attachments: # 1 Affidavit)(Thompson, James) (Entered: 07/26/2005) |
| 07/27/2005 | 52 | AFFIDAVIT of Barbara Jones re: 47 Response to motion, by Nadia K. Naffe. (Thompson, James) (Entered: 07/27/2005) |

Electronic Case Filing | U.S. District Court - Middle District of Florida    https://ecf.flmd.uscourts.gov/cgi-bin/DktRpt.pl?110561250364398-L_4...
Case 2:12-cv-08443-GW-MRW    Document 38    Filed 01/11/13    Page 16 of 72    Page ID #:540

| 07/28/2005 | 53 | MINUTE ENTRY for proceedings held before Judge Thomas G. Wilson : Evidentiary Hearing (Motion to Compel, Doc. 43) held on 7/28/2005. Testimony of Nadia Naffe. Court to enter order making findings. (DIGITAL) Court Reporter: Kerry Brennan (Williams, Carrie) (Entered: 07/28/2005) |
|---|---|---|
| 07/28/2005 | 54 | ORDER denying 43 Motion to compel to the extent that it requests the return of the laptop computer since the present evidence is that the laptop computer has been discarded, and, in all events, is not available to the plaintiff. To the extent the motion requests a jury instruction for an adverse inference based on spoliation of evidence, that matter is appropriately DEFERRED for the consideration of the trial judge. Please see order for further details. Signed by Judge Thomas G. Wilson on 7/28/2005. (Williams, Carrie) (Entered: 07/29/2005) |
| 08/01/2005 | 55 | WITNESS LIST by Republican Party of Florida. (McKenna, Edmund) (Entered: 08/01/2005) |
| 08/01/2005 | 56 | WITNESS LIST by Republican National Committee. (Radcliffe, Michelle) (Entered: 08/01/2005) |
| 08/01/2005 | 57 | WITNESS LIST by Bush-Cheney '04, Inc.. (Radcliffe, Michelle) (Entered: 08/01/2005) |
| 08/24/2005 | 58 | MOTION for issuance of order to show cause *why Kincaid Brick Company aka Kincaid Brick Yard aka Brickrete Inc. Should Not be Held in Contempt for Failing to Respond to Defendant's Subpoena and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A-Subpoena - Kincaid Brick Company# 2 Exhibit B - Affidavit of Process Server# 3 Exhibit C - Plaintiff Nadia Naffe's Notice of Serving Answers to Defendant's First Set of Interrogatories)(McKenna, Edmund) (Entered: 08/24/2005) |
| 09/08/2005 | 59 | RESPONSE to motion re 58 MOTION for issuance of order to show cause *why Kincaid Brick Company aka Kincaid Brick Yard aka Brickrete Inc. Should Not be Held in Contempt for Failing to Respond to Defendant's Subpoena and Memorandum in Support* filed by Kincaid Brick Co., Marjorie Kincaid. (CH) (Entered: 09/12/2005) |
| 09/12/2005 | 60 | TRANSCRIPT of Motion hearing held on 7/28/05 before Judge Magistrate Thomas G. Wilson. Court Reporter: Kerry Brennan. (CH) (Entered: 09/13/2005) |
| 09/14/2005 | 61 | STIPULATION *Selecting Mediator* by Nadia K. Naffe. (Thompson, James) (Entered: 09/14/2005) |
| 09/15/2005 | 62 | ORDER ruling deferred 58 Motion for order to show cause - if defendant disagrees with Kincaid Brick's representation that it has complied with the subpoena, it is to file a reply to this motion within 10 days of the date of this Order. Otherwise, the motion will be denied as moot. Signed by Judge Thomas G. Wilson on 9/15/2005. (Williams, Carrie) (Entered: 09/16/2005) |
| 09/19/2005 | 63 | MOTION for Partial Judgment on the Pleadings *(Partial) and Memorandum in Support* by Republican Party of Florida. (McKenna, Edmund) Modified on 9/20/2005 (CH). (Entered: 09/19/2005) |
| 09/20/2005 | 64 | NOTICE of unavailability of counsel byRepublican Party of Florida from November 17, 2005 to through November 29, 2005. (McKenna, Edmund) (Entered: 09/20/2005) |

| | | |
|---|---|---|
| 09/21/2005 | 65 | Unopposed MOTION for protective order by Republican Party of Florida. (Attachments: # 1 Text of Proposed Order Agreed Protective Order)(McKenna, Edmund) (Entered: 09/21/2005) |
| 09/28/2005 | 66 | ORDER denying as moot 58 Motion for order to show cause . Signed by Judge Thomas G. Wilson on 9/28/2005. (Wilson, Thomas) (Entered: 09/28/2005) |
| 10/03/2005 | 67 | MOTION for Extension of Time to File Response/Reply by Nadia K. Naffe. (Thompson, James) (Entered: 10/03/2005) |
| 10/04/2005 | 68 | RESPONSE to motion re 63 MOTION for Judgment on the Pleadings *(Partial) and Memorandum in Support* filed by Nadia K. Naffe. (Thompson, James) (Entered: 10/04/2005) |
| 10/05/2005 | 69 | ORDER granting 67 Plaintiff's Motion to Enlarge Time to Respond to Defendant's Motion for Partial Judgment on the Pleadings. Response due by 10/4/2005. Signed by Judge James D. Whittemore on 10/4/2005. (kle) (Entered: 10/05/2005) |
| 10/05/2005 | 70 | Supplemental MOTION for protective order *(Agreed Substitute Order)* by Republican Party of Florida. (Attachments: # 1 Text of Proposed Order Agreed Protective Order) (McKenna, Edmund) (Entered: 10/05/2005) |
| 10/11/2005 | 71 | MOTION for leave to file *Reply Memorandum in Support of Motion of Defendant Republican Party of Florida for Partial Judgment on the Pleadings* by Republican Party of Florida. (Attachments: # 1 Reply Memorandum in Support of Motion of Defendant Republican Party of Florida for Partial Judgment on the Pleadings) (McKenna, Edmund) (Entered: 10/11/2005) |
| 10/12/2005 | 72 | AGREED ORDER Governing the Exchange and Protection of Confidential Information Signed by Judge Thomas G. Wilson on 10/12/2005. (Williams, Carrie) (Entered: 10/12/2005) |
| 10/13/2005 | 73 | ORDER granting 71 Defendant's Motion to File a Reply Memorandum in Support of its Motion for Judgment on the Pleadings. Signed by Judge James D. Whittemore on 10/12/2005. (kle) (Entered: 10/13/2005) |
| 10/13/2005 | 74 | MEMORANDUM in support re 63 Motion for Judgment on the Pleadings *(Reply)* filed by Republican Party of Florida. (McKenna, Edmund) (Entered: 10/13/2005) |
| 10/14/2005 | 75 | MOTION for discovery *(To Extend Time for Plaintiff's Deposition)* by Republican Party of Florida. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C)(McKenna, Edmund) (Entered: 10/14/2005) |
| 10/31/2005 | 76 | RESPONSE to motion re 75 MOTION for discovery *(To Extend Time for Plaintiff's Deposition)* filed by Nadia K. Naffe. (Thompson, James) (Entered: 10/31/2005) |
| 10/31/2005 | 77 | NOTICE by Nadia K. Naffe re 76 Response to motion *of Filing Exhibit* (Thompson, James) (Entered: 10/31/2005) |
| 10/31/2005 | 78 | NOTICE of Hearing on MOTION to Extend Time for Plaintiff's Deposition (Doc. 75): Oral argument on the motion is scheduled for 11/10/2005 at 2:30 PM in Courtroom 12A before Magistrate Judge Thomas G. Wilson. (mm) (Entered: 10/31/2005) |

| | | |
|---|---|---|
| 11/03/2005 | 79 | MOTION to compel *Production of Documents and/or Privilege Log* by Republican Party of Florida. (McKenna, Edmund) (Entered: 11/03/2005) |
| 11/10/2005 | 80 | MINUTE ENTRY for proceedings held before Judge Thomas G. Wilson : Motion Hearing held on 11/10/2005 re 75 MOTION for discovery *(To Extend Time for Plaintiff's Deposition)* filed by Republican Party of Florida. Oral argument by parties. May be permitted an additional 3 hours to depose plaintiff. Plaintiff to read deposition testimony prior to session and be prepared to specify on the record any prior answers. (DIGITAL) (Williams, Carrie) (Entered: 11/14/2005) |
| 11/10/2005 | 81 | ORDER granting 75 Motion for discovery to extent that plaintiff may be deposed 3 additional hours and she shall read her deposition testimony prior to resumption of deposition, and, if an inquiry is made by defense counsel, be prepared to specify on the record any prior answers that she gave that were incorrect because of her medication.. Signed by Judge Thomas G. Wilson on 11/10/2005. (Williams, Carrie) (Entered: 11/14/2005) |
| 11/28/2005 | 82 | ORDER granting 79 Motion to compel (and, in light of the lack of opposition, the plaintiff within 21 days of the date of this Order shall produce all relevant documents that were bates stamped by her former counsel in this litigation. See Local Rule 3.01(b) . Signed by Judge Thomas G. Wilson on 11/28/2005. (Wilson, Thomas) (Entered: 11/28/2005) |
| 12/07/2005 | 83 | MOTION for clarification re 82 Order on motion to compel, *or, in the alternative Motion to Reconsider and Memorandum of Law* by Nadia K. Naffe. (Attachments: # 1 Exhibit)(Thompson, James) (Entered: 12/07/2005) |
| 12/20/2005 | 84 | MEMORANDUM in opposition re 83 Motion for clarification *and/or reconsideration* filed by Republican Party of Florida. (Attachments: # 1 Exhibit A - Correspondence from Plaintiff's Counsel dated 12-1-05)(McKenna, Edmund) (Entered: 12/20/2005) |
| 12/28/2005 | 85 | ORDER re 83 MOTION for clarification re 82 Order on motion to compel, *or, in the alternative Motion to Reconsider and Memorandum of Law* filed by Nadia K. Naffe - plaintiff to file a reply within 15 days which responds to all of the issues raised by the defendant in its opposition. Signed by Judge Thomas G. Wilson on 12/28/2005. (Williams, Carrie) (Entered: 12/28/2005) |
| 01/06/2006 | 86 | Joint MOTION to modify *The Scheduling Order to Extend the Deadlines for Meidation and the Filing of Dispositive Pre-trial Motions and Memoranda* by Republican Party of Florida. (McKenna, Edmund) (Entered: 01/06/2006) |
| 01/09/2006 | 87 | ORDER granting 86 Stipulated Motion to Modify Scheduling Order. New Mediation deadline: 2/15/06; New Dispositive Motion Deadline: 2/28/06. Signed by Judge James D. Whittemore on 1/9/2006. (kle) (Entered: 01/09/2006) |
| 01/12/2006 | 88 | RESPONSE re 84 Memorandum in opposition filed by Nadia K. Naffe. (Thompson, James) (Entered: 01/12/2006) |
| 01/17/2006 | 89 | ORDER directing Republican Party of Florida to file a reply within 15 days re 88 Response filed by Nadia K. Naffe, Signed by Judge Thomas G. Wilson on 1/17/2006. (Williams, Carrie) (Entered: 01/18/2006) |

| 01/20/2006 | 90 | ORDER dismissing case without prejudice pursuant to notification of settlement. All motions are denied as moot. The clerk is directed to close this case. Signed by Judge James D. Whittemore on 1/19/2006. (kle) (Entered: 01/20/2006) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/03/2013 13:51:38 | | |
| PACER Login: | bw1076 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 8:04-cv-01916-JDW-TGW |
| Billable Pages: | 9 | Cost: | 0.90 |

154

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NADIA K. NAFFE,                          :

          Plaintiff,                     :
                                         :
v.                                       :        Case No. 8:04-CV-1916-T-27TGW
                                         :
REPUBLICAN PARTY OF FLORIDA,             :
REPUBLICAN NATIONAL COMMITTEE            :
AND BUSH-CHENEY '04, INC.,               :
                                         :
          Defendants.                    :
_____  :

### MOTION OF DEFENDANT REPULICAN PARTY OF FLORIDA TO EXCEED SEVEN HOUR TIME LIMIT TO COMPLETE PLAINTIFF'S DEPOSITION AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 30(d)(2), and as more fully set forth in the incorporated

Memorandum of Law, Defendant, Republican Party of Florida ("RPOF"), moves this Court for

an Order extending the seven hour/one day limit for taking Plaintiff Nadia Naffe's ("Naffe")

deposition based on Naffe's refusal to answer questions and obstructive conduct which prevented

a full and fair examination of Naffe and requests that the Court assign a special master at Naffe's

expense to control Naffe's conduct at the continuation of her deposition. The grounds for this

Motion are more fully set forth below.

### CERTIFICATE OF CONFERRAL PURSUANT TO M. D. FLA. L. R. 3.01(G)

Pursuant to M.D. Fla. L.R. 3.01(g), counsel for RPOF states that he has attempted to

confer in good faith to resolve the issues contained herein by several face-to-face conversations

and by sending a letter to Plaintiff's counsel on October 10, 2005.

21

**MEMORANDUM OF LAW**

**I.    NAFFE'S MULTI-DAY DEPOSITION**

On July 29, 2005, Naffe initially appeared for deposition.  (*See* Transcript of Volume I of Naffe's deposition Exhibit A, "Volume I").   Although **the deposition took the entire day,** beginning at 10:03 a.m. and ending at 4:15 p.m., **there was only three (3) hours and forty (40) minutes** of record testimony, because of Naffe's numerous disruptions throughout the deposition.  Naffe repeatedly refused to answer questions and insisted on taking numerous breaks, continually interrupting the flow of the deposition.  *Id.*  Consequently, RPOF's counsel was unable to complete his questioning of Naffe.

Because the deposition was not complete, the parties continued the deposition on September 14, 2005.  (*See* Transcript of Volume II of Naffe's deposition Exhibit B, "Volume II").  Yet again, Naffe continued with her disruptive behavior, by effect or design thwarting RPOF's counsel's efforts to take her deposition.  Although **the deposition lasted almost seven (7) hours**, from 9:54 a.m. until 4:35 p.m., there was **only three (3) hours and fifty-nine (59) minutes of record testimony** because of Naffe's continued refusal to answer questions and numerous breaks.  *Id.*

The deposition was again continued to September 26, 2005.  (*See* Transcript of Volume III of Naffe's deposition Exhibit C, "Volume III").  On September 26, 2005, RPOF was only able to **complete one (1) hour and fifty (50) minutes of record testimony**, although the deposition **began at 9:58 a.m. and ended at 2:48 p.m.**, because Naffe, again, engaged in conduct calculated (successfully) to impede RPOF's ability to conclude her deposition.  Naffe even claimed that because of the medication she was taking, her doctor told her "it is possible that I can't give accurate answers." (Volume III, pp. 319:18-9).  After one (1) hour and fifty (50)

2

22

minutes of record testimony, Naffe's counsel refused to permit any further questions of his client.

Throughout the deposition, Naffe continuously refused to answer even the simplest questions. *See* Volumes I, II and III. For example, when counsel for RPOF asked Naffe to look at a copy of an envelope, Ex. 20, and state whether she listed "Bison Supply" as her return address, Naffe answered "yes and no." (Volume II. p. 249:17-20). On numerous occasions, Naffe insisted on taking breaks, instead of answering the pending questions. (Volume I. pp. 14, 40, 93,112-13, 150-51; Volume II, pp. 200-01, 223, 250, 256, 268, 288, 297, Volume III. pp. 332, 356). Naffe even took breaks within ten (10) minutes of her last break. (Volume II. pp. 250, 256). When Naffe did respond to a question, her responses were evasive and wholly inadequate. (*See, e.g.,* Volume I. pp. 18:4 –21:6, 25:1-30:14, 34:22-40:12, 52:7-56:8; Volume III. pp. 328:12-330:21). Additionally, Naffe repeatedly equivocated on simple questions, like whether she received anything of "value" for working for a particular individual (Volume II. pp. 250:10 – 251:18), failed to confirm details about relevant facts (Volume I. pp. 30:16-32:1, 57:8-22, 58:12-59, 1, 60:12-63, 20, 64:11-66:4, 77:8-79:25; Volume II. pp. 250:10 – 251:18; Volume III. pp. 343:1 – 346:24) and refused to acknowledge obvious material differences between her submissions to the EEOC and her responses to interrogatories in connection with the present case (Volume I. pp. 30:16-32:1, 87:11-91:6). In fact, at one point, RPOF's counsel had to get a dictionary to define the common term, "value," because of Naffe's insistence that she did not understand the meaning of the word. (Volume II. pp. 250:10 – 251:18). Naffe also asked for a definition of the term "spouse." (Volume II p. 184:8-11).

3

## II.  MORE TIME IS NEEDED FOR A FULL AND FAIR EXAMINATION OF NAFFE

### A.  NAFFE'S INAPPROPRIATE DEPOSITION CONDUCT

Federal Rule of Civil Procedure 30(d)(2) provides that "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." However, the Rule further provides:

> The court **must allow** additional time consistent with Rule 26(b)(2) if **needed for a fair examination of the deponent** or if **the deponent** or another person, or other circumstance, **impedes or delays the examination.**

*Id.* (emphasis added).  Rule 30(d)(2)'s seven-hour limitation on a party's deposition was imposed to rectify the problem that "overlong depositions can result in undue costs and delays in some circumstances." Advisory Committee Note to 2000 Amendments to Rule 30(d).  The Rule initially contemplates counsel making a good faith effort to reach a stipulation as to the amount of additional information to be covered. *Id.*  If additional time is needed, the Rule contemplates that counsel stipulate to extend the deposition, without the need for court intervention. *Malec v. Trs. of Boston College*, 208 F.R.D. 23, 24 (D. Mass. 2002).  Yet, where, as here, the plaintiff's counsel summarily declines to extend the deposition, in the face of his client's conduct, court intervention may be sought. *Id.*  Consequently, the RPOF is left with no choice but to turn to the Court for assistance.

The Advisory Committee Notes suggest that a rigid application of the seven-hour rule should not be a barrier to the interests of justice, noting that "[i]t is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court," and "[p]reoccupation with timing is to be avoided."[1]  Advisory Committee

---

[1]  In fact, each court which has reviewed this issue since the 2000 Amendments, indicates that additional time should be granted liberally, here the interests of justice so require. *Moore v. CVS*

4

Note to the 2000 Amendments to Rule 30(d). In fact, "no court has construed the 2000 Advisory Committee notes as causing some profound change in the Rules requiring parties to use a stopwatch and immediately and finally adjourn a deposition after the seven hours of testimony taken." *Moore v. CVS Corp.*, 2005 WL 581357, *3 (W.D. Va. March 11, 2005). Instead, courts should routinely allow continuation past the seven hour/one day time limit if continuation is needed, as here, for a fair examination of the deponent. *Id.*

The general rule is clear -- "'*[p]reoccupation with timing is to be avoided.*'" *Id.* (emphasis in original) (citing, 2000 Advisory Committee notes to Rule 30(d)(2)). "Extra time '**must**' be given under the Rule where good cause is shown, 30(d)(2) (second sentence), and the Court has discretion to determine how much time is reasonable under the circumstances." *Independence Park Apartments v. United States*, 59 Fed. Cl. 765, 769 (Fed. Cl. 2004) (emphasis added); *see also Raymond v. Ameritech Corp.*, 2004 WL 1381134, *2 (N.D. Ill. May 7, 2004) (refusing to limit the additional time sought beyond the seven-hour limit, reasoning that "[a]s long as the attorney is not asking repetitive questions or has become abusive, the deposition has not become abusive in nature, I'm not going to give anybody a time limitation" when there was a "wide range of issues" as to which plaintiff was not yet deposed). "Further, the 2000 Advisory Committee Notes to Rule 30(d) clearly state that only the time taken for the actual deposition, not breaks, count toward the seven hours, and that for good cause shown, the court should enlarge the time limit." *Condit v. Dunne*, 225 F.R.D. 100, 112 -13 (S.D. N.Y. 2004).

In *LaPlante v. Estano*, 226 F.R.D. 439, 440 (D. Conn. 2005), the court ordered the continuation of plaintiff's deposition past the seven hour/one day limit where "the plaintiff, and

---

*Corp.*, 2005 WL 581357, *3 (W.D. Va. March 11, 2005); *Malec v. Trs. of Boston College,* 208 F.R.D. 23, 24 (D. Mass. 2002); *Independence Park Apartments v. United States*, 59 Fed. Cl. 765, 769 (Fed. Cl. 2004); *Grill v. Costco Wholesale Corp.*, 2004 WL 2314639, *1 (W.D. Wash. October 7, 2004).

his attorney, were recalcitrant and uncooperative in their refusal to answer questions that [sought] information which [was] clearly relevant, not privileged, not overly broad, and not unduly burdensome." (citing, Fed. R. Civ. P. 26(b)(2)).  The Court even warned plaintiff "that if he again fails to be forthcoming and cooperative with obviously relevant and not privileged information, the deposition will be continued thereafter, at his expense, until he complies with that which the Federal Rules of Civil Procedure demand of him." *Id.*

Similarly, in *Miller v. Waseca Med. Ctr.*, 205 F.R.D. 537, 541 (D. Minn. 2002), the court allowed depositions to proceed past the seven hour/one day limit where the court found that the "Plaintiff[s] tended to provide narrative responses to 'yes' or 'no' questions.  This had the result that Defendants had to ask a number of additional questions in their reasonable quest to obtain an unambiguous answer to the questions." *Id.*  The court explained: "Substantial additional time was required by the failure of Plaintiffs to answer 'yes' or 'no' to questions which fairly called for such a response, and additional time will be needed if they continue to do so." *Id.*

Here, Naffe did just that - - "provide[d] narrative responses to 'yes' or 'no' questions" which required counsel to ask a number of additional questions in his reasonable quest to "obtain unambiguous answers to the questions," among other inappropriate conduct.  The transcripts of Naffe's deposition are littered with Naffe's failure to answer specific questions requiring a "yes" or "no" answer.  Moreover, Naffe's intentional, combative conduct throughout the deposition prevented a fair examination of her within the seven hour/one day limit of Rule 30(d)(2).  In fact, the examples of Naffe simply not answering questions or engaging in obstructive conduct with the obvious purpose of delaying or impending the deposition are far to numerous to reduce to this writing.

A mere cursory review of any portion of the deposition transcripts would reveal that

Naffe's intentional conduct in flatly refusing to give "yes" or "no" answers to "yes" or "no"

questions and instead giving long narratives, unrelated to the subject matter of the question

posed, exponentially increased the amount of time the deposition took:

Page 144
25    Q    Do you recognize Defendant's Exhibit 9?

Page 145
1    A    Yes, I recognize it; but it's not
2    complete. It's part -- it looks like it's the
3    middle of an e-mail, and you haven't included the
4    whole thing. You've just given me one part of a
5    communication.
---------------------------------------------------------------------
Page 146
16    Q    Did you propose that the Republican Party
17    of Florida take the lead on the counter
18    demonstration to the NAACP?
19    A    In the context of --
20    Q    In the context of your job in this
21    e-mail. Did you make that proposal or not?
22    A    All I really was proposing was that --
23    was suggesting that if these folks were coming
24    anyway, that we be nice to them and give them coffee
25    and, you know, maybe the chairman spare a little bit

Page 147
1    of her time to give to these folks.
2    Q    And that --
3    A    If that was -- if that was their
4    intention to come up there. I mean, I really didn't
5    care if they came up there or not. But I was just
6    saying, you know, if these folks are going to be
7    rallying all day, I was just saying that it would be
8    nice, you know, since I -- I think the press was
9    already going to be there, you know, just to show
10    these folks some hospitality and give them coffee
11    and maybe the chairman could spare them a few
12    moments of her time.
13    Q    I'm going to ask it one last time. Did
14    you propose, where it says here "I propose," that
15    the Republican Party of Florida, where it says here

7
27

162

16  "RPOF," should take the lead, where it says here
17  "should take the lead on this" -- "this" being the
18  counter demonstration to the NAACP -- did you
19  propose that?
20      A       Well, that determines what you are saying
21  the meaning of "this" means.  When I'm talking about
22  "this," I'm just -- all I'm saying is be nice to the
23  people when they come up there and give them --
24  you're -- the statement is there.  You're
25  interpreting it one way.  You know, I meant it

Page 148
1   another way, and, you know, the RPOF knew what I
2   meant because we had talked about it on the phone.
3   The statement as you read it speaks for itself.

(Volume I).

Page 25
1       Q       What computer did you use to type up
2   Defendant's Exhibit 3?
3       A       Defendant's Exhibit 3.  I don't
4   remember.
5       Q       Do you still have a copy of this on your
6   computer?
7       A       Well, if I don't remember which computer
8   I typed it up on, I probably wouldn't be accurately
9   able to tell you if I had a copy of it either.
10      Q       Did you search your computer for relevant
11  documents in response to the request for production
12  of documents?
13      A       I don't have a computer to search for
14  relevant documents.
15      Q       You currently do not have a computer?
16      A       Yes, I have a computer, but I would have
17  no reason to search my personal computer for
18  relative documents pertaining to the RPOF.

(Volume I).

Page 57
8       Q       Have you not told people that you are
9   related?
10      A       He thinks that he's related to me, but I
11  don't think that -- it may be possible.  But I'm not
12  certain that it is.

8
28

163

Case 2:04-cv-08443-JDW-TGW  Document 75   Filed 10/14/05   Page 9 of 20  PageID 763

13    Q      Are you -- do you consider yourself
14    friends?
15    A      He certainly has done a lot of nice
16    things for me.
17    Q      Do you consider yourself friends?
18    A      "Friend" is a pretty strong word.  I have
19    a handful of friends.  I could probably count them
20    on one hand.  He's someone who's been very, very
21    kind who's done some very kind things for me in the
22    past.

(Volume I).

Page 87
11    Q      In Exhibit 3 that whole discussion is not
12    mentioned at all.  Is that correct?
13          MR. THOMPSON:  I'm going to object to
14          form.
15    A      What was your question again, sir?
16          MR. McKENNA:  Read the question back,
17          please.
18          (The reporter read as requested.)
19    A      Relating Interrogatory No. 7 with January
20    9th, I'm at -- again, I'm answering a specific
21    question that the RNC asked.  I was never required
22    to list every single incident.  I was just giving a
23    summary in what you're calling Exhibit 3 of some of
24    the incidents.  So every single thing is not going
25    to be here.

Page 88
1     Q      And it's not there.  Correct?
2           MR. THOMPSON:  Object to form.
3     A      The specific words and language that
4     you're talking about is not there, sir.
5     Q      The incident is not there either.  Right?
6           MR. THOMPSON:  Object to form.
7     A      Again --
8     Q      Ma'am, it's a simple question.  It's yes
9     or no.  Is it there or not?
10    A      It's not a yes-or-no question, and I've
11    --
12    Q      Is there a discussion on your January 9,
13    2004 entry regarding a budget in Defendant's Exhibit
14    3?
15          MR. THOMPSON:  Object to form.

9
29

164

16    A    My January 9, 2004 statement in Exhibit 3
17  is not related to any specific question on any
18  interrogatory.
19        MR. McKENNA:  Move to strike as
20  nonresponsive.
21  BY MR. McKENNA:
22    Q    In Defendant's Exhibit 3, the January 29,
23  2004 entry, does it refer to a budget at all?
24        MR. THOMPSON:  Object to form.
25    A    I just told you two questions ago when

Page 89
1  you asked me that question, Mr. McKenna, that the
2  specific words and the specific language that you're
3  looking for isn't there like that.
4    Q    And the incident is not discussed in
5  there.  Correct?
6        MR. THOMPSON:  Object to form.
7    A    You're comparing apples to oranges.
8  You're talking about two different things.  This --
9  these are interrogatories in a lawsuit, and this is
10  not.  And again --
11        MR. McKENNA:  I'm going to certify that
12  as failure to answer, and I'm going to seek --
13    A    I am happy to answer any of your
14  questions, but you don't want to hear my answers.
15    Q    Now -- so Interrogatory No. 7 asks you
16  for racially insensitive and stereotypical remarks.
17  Is that right?
18    A    Interrogatory No. 7 I believe said a lot
19  more than that.  I just -- I just for my own purpose
20  just pulled out -- each question had like eight
21  parts, and I just tried to identify the questions as
22  I could understand them.
23    Q    Okay.  And you did not mention that
24  racially insensitive and stereotypical remark to the
25  EEOC in Exhibit 3.  Right?

Page 90
1        MR. THOMPSON:  Object to form.
2    A    I had several conversations with the EEOC
3  and interviews about what happened during my
4  employment, and -- and I discussed it with them.  I
5  wasn't required to write everything down on Exhibit
6  3.

(Volume I).

Page 165

4     Q    Ms. Naffe, do you recall the discussion
5   we had at the beginning of your prior deposition
6   about the format of depositions?
7     A    I vaguely remember it.
8     Q    Do you recall that you have to do verbal
9   responses?
10     A    Well, why don't you repeat everything
11   again.
12     Q    Repeat everything again, sure.  This
13   deposition is being taken pursuant to notice under
14   the Federal Rules of Civil Procedure.  It will be
15   used for discovery, cross examination and other
16   purposes permitted by law.  Do you understand that,
17   ma'am?
18     A    Could you talk a little slower, please?
19     Q    Do you understand that, ma'am?
20     A    Well, I'd like you to repeat it just a
21   little bit slower.  You're going too fast.
22        MR. McKENNA:  Would you read back the
23   question, please?
24        (The reporter read as requested.)
25     A    Yes, I understand that.

(Volume II).

Page 168

24     Q    Are you on any medication that would
25   affect your ability to testify?

Page 169

1     A    Maybe.
2     Q    What medication is that?
3     A    The same medications as last time.
4     Q    Which are?
5     A    Prozac and Ambien.
6     Q    And why do you believe that Prozac would
7   affect your ability to testify?
8     A    I can't make that determination.  I'm not
9   a doctor.
10     Q    Do you have any reason to believe that
11   the Prozac would affect your ability to testify here
12   today?
13     A    I don't know.

11

31

166

14     Q    Do you have any reason to believe that
15   the Ambien would have any effect upon your ability
16   to testify here today?
17     A    I don't know.

Page 170
13     Q    Pursuant to the discussion that counsel
14   had off the record, I'm going to ask you again,
15   ma'am:  Do you have any reason to believe that
16   Prozac will affect your ability to testify
17   completely, accurately and truthfully?
18     A    Is that the same question that you asked
19   me last time?  Well, I don't have the question in
20   front of me.
21          MR. THOMPSON:  Just go ahead and answer.
22     Q    That's the question, ma'am.  Are you
23   going to answer it?
24     A    Is that the question you asked me last
25   time?

Page 171
1     Q    Are you refusing to answer the question,
2   ma'am?
3     A    No, I am not refusing to answer the
4   question.
5          MR. THOMPSON:  Just --
6     A    Could you repeat the question?
7          MR. McKENNA:  Please read back the
8   question.
9          (The reporter read as requested.)
10     A    I don't think so, but I'm not a doctor.

(Volume II).

Page 342
10     Q    Were you in a habit of forwarding things
11   to the Republican Party of Florida without reading
12   them first?
13     A    That's not what I said, Mr. McKenna.
14   This is apparently the time line that Suzann had
15   been e-mailing about.  And, you know, it's their
16   event; and, you know, I guess, you know, they can
17   have it any way they want, but, you know, I can't
18   control -- I can't control what they put down as
19   their time line.  And I really -- you know, I can't
20   answer for people.

12

32

21    Q    I didn't ask about other people.  I asked
22  you if you were in the habit of forwarding things to
23  the Republican Party of Florida that you had not
24  read first.
25    A    Not usually.

(Volume III).

Page 343
1     Q    Now, isn't it true, ma'am, that you
2   wanted to do African-American outreach at the
3   Republican Party of Florida?
4     A    No, that's not true.
5     Q    You did not present a proposal in which
6   you requested to do minority outreach to the
7   Republican Party of Florida?
8     A    Which proposals are you talking about?
9     Q    Isn't it true that you made a proposal to
10  the Republican Party of Florida in which you asked
11  to do African-American outreach on behalf of the
12  party?
13    A    I never asked to do African-American
14  outreach on behalf of the party.
15         (Exhibit 25 marked for identification.)
16    Q    I'm going to hand you what we've marked
17  for purposes of identification as Exhibit 25 and ask
18  you if you recognize that document.
19    A    Uh-huh.  I sure do.
20    Q    And is that not your proposal for the
21  creation of a minority outreach department in the
22  Republican Party of Florida?
23    A    This is a proposal that I worked on, but
24  there is not one word or sentence in here that says
25  that I, Nadia Naffe, wanted to do this.

Page 344
1     Q    I see.  So you didn't want to do it.  Is
2   that your testimony?
3     A    I'm answering your question.
4     Q    I'm asking you a question.  Is that your
5   testimony, that you did not want to do minority
6   outreach with the Republican Party of Florida?
7     A    I didn't want to be pigeonholed to work
8   exclusively with black Republicans.  I wanted to
9   work with all the Republicans in Florida, and that's
10  why I didn't want to work for one specific

13

11  candidate.  I wanted to work with all the
12  candidates, and that's why I wanted to work for
13  RPOF.
14      Q    So you wanted to do some minority
15  outreach with African-Americans but not
16  exclusively.  Is that your testimony?
17      A    No, that's not – that's not what I
18  meant.  I don't want you to misunderstand me to say
19  I dislike working with African-Americans, because
20  that's not what I'm trying to say at all.
21          What I'm trying to say is, is that I was
22  interested in the job that Jamie Miller presented in
23  his e-mail to me working within my territory, with
24  my counties as a field director, working on grass
25  roots projects, voter registration drives, campaign

Page 345
1   events, voter integrity programs.  Those were the
2   types of things that attracted me to the position in
3   the first place, and those were the types of things
4   that I expected to be doing.
5           Florida is a diverse state, and I didn't
6   want to be stuck working with one group of people,
7   and -- I didn't want to be stuck working with one
8   group of people.  I wanted to work with all the
9   Republicans in Florida.
10      Q    So you wanted to work with the African
11  Americans as well as the whites.  Is that correct?
12      A    I didn't say that, Mr. McKenna.  In fact,
13  on the very first page it says, "I fully believe
14  that Minority Outreach should include all
15  minorities."
16          "All minorities" are women, Hispanics,
17  and that's Mexicans, Latinos.  That's Teenage
18  Republicans.  That's College Republicans, and the
19  only people that aren't exclusive to technically
20  minorities are white males, such as yourself.  But I
21  wanted to work with all the Republicans in Florida.
22      Q    Are you finished with your answer?
23      A    Yes, sir.
24      Q    Okay.  The very first line of the second
25  paragraph states "that there are nearly 1 million

Page 346
1   black voters here in Florida."  Do you see that,
2   ma'am?

14
34

169

```
 3      A    Yes.
 4      Q    Do you reference women anywhere in there?
 5      A    Well --
 6      Q    Do you reference women anywhere in there?
 7      A    Explain what you mean by "women."
 8      Q    Do you have the word "women" in the
 9   second paragraph of Exhibit 25?
10      A    Women are included in the 1 million black
11   voters.  Myself and your colleague, Ms. Siler-Nixon,
12   would be included in that 1 million, and it's not
13   exclusive.  You know, African-American people come
14   in two types, male and female.
15      Q    Do you reference Hispanics anywhere in
16   there?
17      A    Hispanics are -- I don't reference the
18   different minority groups by name, but, as I said
19   again, I said in the last paragraph, "I fully
20   believe that Minority Outreach should include all
21   minorities."  And the vice chairman is educated
22   enough to know what "all minorities" are, and he's
23   also intelligent enough to know that 1 million black
24   voters doesn't just mean men, it means black voters.
```

(Volume III).

Moreover, on numerous occasions, instead of answering a question posed to her, Naffe requested a break,[2] which prevented counsel for RPOF from asking questions in a more reasonable pace to ensure that her deposition would be completed within the seven-hour limit. On the first day alone, not counting lunch, Naffe requested five (5) breaks.  Naffe even requested and took breaks while a question was being asked, which, of course, required that line of questioning be repeated when Naffe returned from her break.  (Volume I, pp. 14, 40, 93, 112-13, 150-51 marked as Exhibit D).  Naffe even asserted during the third day of her examination, that immediately following the second day of her deposition, her doctor told her that she might not be able to answer questions accurately because of the medication she was taking, which caused

---

[2] In fact, during her testimony Naffe requested and took fifteen (15) different breaks.

more time to chase the issue related to Naffe's ability to accurately respond to questions posed during the current and previous depositions.  (Volume III, pp. 318:18 – 322:4).

Clearly, Naffe engaged in conduct that has required courts to continue a deposition in excess of the seven hour/one day limit pursuant to Rule 30(d)(2)'s mandate that the examination "must" be continued for a fair examination of the deponent.  RPOF should be granted additional time to complete Naffe's deposition based on her obstinate deposition conduct.

### B.    NAFFE'S FAILURE TO FULLY RESPOND TO DISCOVERY

Further lengthening her deposition and necessitating additional time, Naffe testified that her previous responses to discovery were either inaccurate or incomplete.  After a question was posed regarding Naffe's inconsistent testimony, Naffe claimed that her answers to RPOF's Interrogatories were not complete, requiring additional examination to determine the accuracy of each response.  (Volume I. pp. 20:23 – 21: 6).  Moreover, Naffe admitted that she had failed to produce documents responsive to RPOF's Request for Production of Documents.[3]  (Volume I., pp. 23:1-24:25).

The Federal Rules of Civil Procedure contemplate "the examination reveals that documents have been requested but not produced, that may justify further examination once production has occurred."  2000 Advisory Committee Notes to Rule 30(d)(2).  Courts have routinely allowed the continuation of a deposition past the seven hour/one day limit where plaintiffs failed to produce relevant documents. *See, e.g., Grill v. Costco Wholesale Corp.*, 2004 WL 2314639, *1 (W.D. Wash. October 7, 2004) (allowing continuation of plaintiff's deposition past the seven-hour/one day limit when plaintiff's several theories of discrimination and failure

---

[3] RPOF is filing a Motion to Compel Plaintiff to produce the documents which she noted in her deposition had not been produced.

to produce relevant documents made it impossible to finish the deposition within the time limit Rule 30(d)(2) imposes).

Rule 30(d)(2) clearly provides that the court "must" grant additional time for a deposition consistent with Rule 26(b)(2) "if needed for a fair examination of the deponent" or if the deponent "impedes or delays the examination." Clearly, Naffe's failure to produce documents requested and providing inaccurate responses to specific interrogatories, as well as Naffe's deposition conduct, is a textbook case for the foregoing provision. Here, additional time is warranted based on Naffe's incredulous conduct, which impeded and delayed the examination, preventing a fair examination within the time allotted. Consistent with Rule 26(b)(2), RPOF does not seek to ask questions that have already been fully answered. Rather, RPOF seeks answers to questions that have not been answered and to complete its examination without the interruptions, failure and flat refusals to respond and long narratives, unrelated to the question posed and unnecessary to properly respond, heretofore engaged in by Naffe.

## III.    APPOINTMENT OF A SPECIAL MASTER AT PLAINTIFF'S EXPENSE IS NECESSARY DUE TO PLAINTIFF'S CONDUCT

Fed. R. Civ. P. 53 provides for the appointment of a Special Master. Rule 53(b) and *LaBuy v. Howes Leather Co.*, 352 U.S. 249 (1957), require a showing of exceptional circumstances before a Special Master may be appointed. Here, however, exceptional circumstances are present. In *Fisher v. Harris, Upham & Co., Inc.* 61 F.R.D. 447 (S.D. N.Y. 1973), appeal dismissed, 576 F.2d 896 (2d Cir. 1975), the district court found exceptional circumstances were, as here, "[t]he conduct of the parties prior to the Special Master's appointment demonstrated that they were unable to proceed with discovery without impartial supervision." *Id.* at 449. In *Fisher*, "depositions predating the Master's supervision are filled

with irksome quibbling, needless interruptions. . . . Extensive colloquies and arguments . . . [and] substantial delays in the testimony." *Id.*

> The *Fischer* Court also recognized that:
>
> Numerous cases approve the appointment of a Special Master to supervise discovery proceedings where the issues are complicated or the parties recalcitrant. *First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas & Elec. Co.*, 245 F.2d 613 (8th Cir.), *cert. denied*, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957), cited in *Bourgeois v. El Paso Natural Gas Co.*, 257 F.2d 807 (2d Cir. 1958); *Shapiro v. Freeman*, 38 F.R.D. 308 (S.D. N.Y. 1965); *Hirsch v. Glidden Co.*, 79 F. Supp. 729 (S.D. N.Y. 1948); *United Artists v. Grinieff*, 17 Fed.Rules Serv. 30b, 42, Case 1 (S.D. N.Y. July 3, 1952); *cf. Olson Transp. Co. v. Socony-Vacuum Oil Co.*, 7 F.R.D. 134 (E.D. Wis. 1944); *Stentor Elec. Mfg. Co. v. Klaxon Co.*, 28 F.Supp. 665 (D. Del. 1939).

Id. at 449 (citations in original). *See also National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987) ("Discovery is an area where special masters are frequently appointed either because the problems are complicated or the parties are recalcitrant."). "[U]se of a special master to supervise discovery may still be appropriate and useful in unusual cases." Wright & Miller, *Federal Practice and Procedure*: Civil § 2605, at 790-791. Plaintiff's "egregiously sanctionable conduct during the course of discovery in this matter presents a clear case of the exceptional circumstances contemplated by Rule 53 as justifying the appointment of a special master." *National Ass'n of Radiation Survivors v. Turnage* 115 F.R.D. 543, 561 (N.D. Cal. 1987).

WHEREFORE, Defendant Republican Party of Florida respectfully requests that this Court grant it Motion to Exceed the Seven Hour Time Limit to Complete the Naffe's Deposition, allow the continuation of Naffe's deposition, order Naffe to answer the questions posed without interspersing long narrative responses, provide complete and accurate responses to previously posed discovery, produce all documents responsive to previously propounded discovery, and

assign a special master at Naffe's expense to control Naffe's conduct at the continuation of her deposition.

Respectfully submitted,

FORD & HARRISON, LLP

By:    /s/ Edmund J. McKenna
      Edmund J. McKenna
      Florida Bar No. 0845922
      Dawn Siler-Nixon
      Florida Bar No. 993360

For the firm

FORD & HARRISON LLP
101 East Kennedy Boulevard, Suite 900
Tampa, Florida 33602-5133
Telephone:  (813) 261-7800
Facsimile:  (813) 261-7899

Case 8:04-cv-01918-JDW-TGW   Document 75   Filed 10/14/05   Page 20 of 20 PageID 774

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to the following:

James Moten Thompson
Nelson Bisconti & Thompson LLC
718 W Dr. Martin Luther King Jr. Blvd, Suite 200
Tampa Florida 33603-3104

Janet Goldberg McEnery
Noel McDonell
McFarlane, Ferguson & McMullen
201 N. Franklin Street, Suite 2000
Tampa, Florida 33602

Edward Lee Isler
Michelle Bodley Radcliffe
Ray & Isler, P.C.
1919 Gallows Road, Suite 320
Vienna, Virginia 22182

_/s/ Edmund J. McKenna_
Attorney

TAMPA:204672.1

175

# EXHIBIT C

41

176

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NADIA K. NAFFE,                              :
                                             :
                Plaintiff,                   :
                                             :
v.                                           :    Case No. 8:04-CV-1916-T-27TGW
                                             :
REPUBLICAN PARTY OF FLORIDA,                 :
REPUBLICAN NATIONAL COMMITTEE                :
AND BUSH-CHENEY '04, INC.,                   :
                                             :
                Defendants.                  :
_____:

**PLAINTIFF'S RESPONSE TO REPUBLICAN PARTY OF FLORIDA'S MOTION
TO EXCEED SEVEN-HOUR TIME LIMIT TO COMPLETE PLAINTIFF'S
DEPOSITION**

Plaintiff responds to Defendant Republican Party of Florida's Motion to Exceed

Seven-Hour Time Limit to Complete Plaintiff's Deposition as follows:


The Republican Party of Florida's ("RPOF's") argument that Plaintiff has

engaged in some sort of "rigid application of the seven-hour rule" so as to warrant further

extension of Plaintiff's deposition is far fetched at best.  Contrary to Defendant

Republican Party of Florida's contentions, the Plaintiff has made extraordinary

concessions and has given Republican Party of Florida's Defendant reasonable

accommodations, however the Republican Party of Florida's has spurned Plaintiff's

attempts at resolution.

Plaintiff has, to date consented to three days of depositions with nine and a half

hours (9 ½) of actual taped record testimony.  Moreover, Plaintiff has agreed to allow

Defendant Republican National Committee and Defendant Bush Cheney "04, Inc.

together an additional two hours of deposition time should Defendant Republican

National Committee and Defendant Bush-Cheney '04, Inc. require such for their cases.

Moreover, at the third full deposition day, Defendant Republican Party of Florida decided

it did not like Plaintiff's statement that she spoke with her treating doctor who told her

that her medication could affect her memory and testimony. Defense counsel got up from

the table, refused to continue the deposition and kept Plaintiff and her counsel waiting at

the law office of the Republican Party of Florida's counsel from 10:07 a.m. until 11:25

a.m. while Defense counsel decided if he wanted to ask any questions. After the one (1)

hour and twenty (20) minute "break", the deposition finally resumed until around 3:00

p.m.


## PLAINTIFF'S ATTEMPTS TO RESOLVE ISSUE


Defendant materially misstates the facts surrounding the extended time allowed in

the deposition stating that "Naffe's counsel refused to permit any further questions of his

client." Both the Republican Party of Florida's "facts" surrounding that third deposition

day and the "facts" surrounding the entire deposition are misleading. Plaintiff's counsel

regularly informed Defendant that Plaintiff would consent to any reasonable concessions

only to be regularly ignored or brushed off by Defendant.

Even prior to the start of Plaintiff's deposition, Plaintiff's counsel agreed to allow

Defendants Republican National Committee and Bush-Cheney "04, Inc. an additional

two hours if needed for their case should Defendant Republican Party of Florida use up

the entire seven (7) hour deposition time.  During day one of Plaintiff's deposition,

counsel for the RPOF spent the majority of his time inquiring about differences between

a chronological narrative she gave to the EEOC and her answers to the various

defendants' interrogatories. During the first of these questions, Ms. Naffe explained that

the EEOC narrative was an overall summary while the interrogatories answered specific

questions not asked by the EEOC. Rather than accept this obvious answer, RPOF counsel

instead spent the next several hours, not inquiring into the case facts, but asking Ms.

Naffe to explain and admit to each difference between what was said in the EEOC

narrative which were not responding to specific questions and her interrogatory answers

which were. Each time Ms. Naffe explained that the former was a summary and the latter

was a response to a specific question. (Plaintiff's deposition Volume I ("Vol I") pp. 40-

71, 77-79, 86-90, 91-93) At the end of the first day of Plaintiff's deposition, after three

(3) hours and forty-one (41) minutes of record testimony Plaintiff's counsel agreed to

allow another day of deposition as well as a "small amount" of additional time.  (Vol I

137).  The next deposition day, with three (3) hours and twenty (20) minutes remaining,

Defendant's counsel proceeded to use the first three hours of record testimony (from 9:54

a.m. until 2:08 p.m.) questioning Plaintiff on matters not related to either the prosecution

or defense of her claims of discrimination, harassment or retaliation.  During this time,

Defense counsel spent an hour of record testimony inquiring about the details of a single

job held by Plaintiff following her employment at the Republican Party of Florida

(Transcript II  225-251).

　　　When Defendant's counsel finally did begin inquiring into issues related to the

merits of the case, he did so in a manner that could only be intended to drag the

deposition out even further.  For example, Defendant's counsel repeatedly demanded that

Plaintiff state that an event she testified to was not put into her Amended Complaint.

Defendant's counsel raised his voice to Plaintiff and demanded;  "Just say yes or no."

(Trans II 261:16)  Plaintiff responded that she could not answer such a question without

first reviewing the Amended Complaint.  Defendant's Counsel then stated; **"Then read**

**it. We've got all the time in the world."**[1]  (Trans II 261: 21-22)  Plaintiff's counsel

offered to stipulate that the document could speak for itself, however Defendant's

counsel insisted that Plaintiff read the document (which does speak for itself) to testify as

to what it did not say.

    As the seven-hour mark approached, the undersigned asked Defendant's counsel

how much extra time he wanted. (Trans II 270: 24- 271:3)  Defendant's counsel refused

to even discuss the matter.  The relevant portion of this conversation was as follows:

> MR. THOMPSON: If I'm going to give you – agree to extra time, how much
> extra time do you need?
> MR. MCKENNA: I'm not going to have a discussion with you on the record.  I
> want to ask my questions.
> MR. THOMPSON: I actually think that if it's something you're going to try to
> address to the Court, I think the record is the best place to have the discussion.
> MR. MCKENNA: I'm not prepared to discuss it.  I want to ask my questions.

(Trans II 271: 1-12)

Mr. McKenna then proceeded to ask more questions.

    The second deposition day ended with seven (7) hours forty (40) minutes of

record testimony taken, including three (3) hours of the second day inquiring into matters

unrelated to the merits of Plaintiff's claims or Defendant's defenses.  Despite the fact that

Defendant had gone 40 minutes over, Plaintiff's counsel still agreed to allow more

---

[1] Of course, at this point, Defendant had already approached his 7-hour time limit.

testimony and reconvene Plaintiff's deposition at a later date. Prior to the third day of

deposition, Plaintiff's counsel wrote to Republican Party of Florida's counsel Ed

McKenna asking him to give an estimate as to how much extra time he was requesting.

(Exhibit "A") Defendant's counsel never even responded.

    At the start of the third day of Plaintiff's deposition, the issue was again raised as

follows:

> MR. THOMPSON:  We are about – we've done about eight hours' worth
> of depositions.  It's over the seven-hour allotment.  In order, you know, to try to
> avoid any kind of potential discovery dispute, you know, I am consenting to a
> little bit more time for Mr. McKenna.
> I wrote him last week - - or the week before last asking how much more
> time he was going to be taking, and I did not get a response.  What I want to avoid
> is consenting to more time in order to avoid a discovery dispute and then still
> have a discovery dispute later on.  I'd like to know how much more time you
> think you need.
> MR. MCKENNA:  Well, I can tell you what topics I still want to cover,
> and I intend to cover the complaints that she made and her allegations of
> harassment retaliation. [2]  Now, how long that's going to take, given where we've
> been, I don't know.  There still may be discovery disputes, though, Jim.  There sill
> may be disputes about whether she's answered questions, about whether I've
> gotten all the documents that I'm entitled to, you know.  And we've got
> correspondence going back and forth on the fact.  So I'm not going to agree that
> there aren't going to be any discovery disputes.
> MR. THOMPSON:  All right.  I'm just going to let you know in advance.
> At some point I'm going to say, "Enough is enough."  And if you want to go to
> the judge, you can certainly go to the judge and ask for more time, but I'm not
> going to let this thing just be a never-ending, on-going deposition - - it's already
> in its third day - - where it just continues in perpetuity...

(Trans III 315: 12 – 316:24)

    Shortly into day three of Plaintiff's deposition, Plaintiff conveyed that her treating

doctor told her that her condition and medication could affect her memory and her ability

to testify.  Defendant's counsel refused to continue the depositions and had Plaintiff and

her counsel wait in his law office for an hour and twenty minutes while he decided

---

[2] Mr. McKenna went on to spend an hour inquiring into just the first of over six complaints made by
Plaintiff.  Defendant's counsel clearly showed he had no care for the time he was taking in his deposition.

whether or not he wanted to ask deposition questions at all.  It is ironic that Defendant's

counsel now states in his motion that "Republican Party of Florida was only able to

complete one (1) hour and fifty (50) minutes of record testimony, although the deposition

began at 9:58 a.m. and ended at 2:48 p.m.".  Of course, Defendant's counsel did not

mention that one (1) hour and twenty (20) minutes of the down time was caused by him

or that the majority of the remainder was due to a normal lunch break.

The deposition finally ended when Plaintiff could not go on due to her medication

wearing off.  Republican Party of Florida has now spent nine and a half hours deposing

Plaintiff.   Republican Party of Florida is now asking the court to allow its deposition to

go on in perpetuity with no end in sight.

### DEFENDANT'S FAILURE TO COMPLY WITH LOCAL RULE 3.01(g)

In spite of Defendant's Certificate of Compliance, Republican Party of Florida

has made no effort to resolve the issue with Plaintiff.  In fact, the opposite is true.  The

undersigned has made repeated efforts to discuss resolution of the issue with Defendant's

counsel only to be repeatedly rebuffed.

### ARGUMENT

While the rules contemplate that the seven-hour limit is not rigid and that a

stopwatch approach to depositions should be discouraged, such is clearly not the situation

in the case at hand.  Defendant Republican Party of Florida has already expended nine

and a half (9 ½) hours of record deposition time and Plaintiff has already agreed to allow

Defendant's Republican National Committee and Bush-Cheney '04, Inc. an additional

two hours in order to address matters unique to their defenses.  Moreover, Plaintiff has

repeatedly asked Defendant Republican Party of Florida what extra time it was seeking

only to be repeatedly ignored and rebuffed. The closest Republican Party of Florida came to responding was saying that it needed to inquire into six or more complaints of discrimination, into harassment and into retaliation. It then took an hour inquiring into just one of those six plus complaints.

    The simple fact is clear from a reading of the transcript. The Republican Party of Florida has taken so long in this deposition because of its own choices in conducting the deposition, not because of any evasiveness on the part of the Plaintiff. What the Republican Party of Florida views as evasive is any answer that, however valid, the Republican Party of Florida simply doesn't like. If the answer did not coincide with the Republican Party of Florida's own script of events, Republican Party of Florida's counsel simply repeated the question over and over then accused Plaintiff of evasiveness. Moreover, whenever Plaintiff asked for clarifications, as instructed to do by Republican Party of Florida's counsel at the start of the deposition, Republican Party of Florida's counsel would simply raise his voice and state the questions again. Republican Party of Florida itself gives an example when it asked Plaintiff if she received anything of value from someone. Plaintiff asked shat he meant by "of value" (it could mean monetary value or it could mean more such as the value of friendship or spiritual worth). Rather than explain the question, Republican Party of Florida's counsel stormed out of the deposition, grabbed a dictionary and gave one of the definitions for value contained therein. Plaintiff then answered the question. Counsel's behavior and delay was not called for and did nothing to speed up the deposition that had already approached the seven-hour mark. Additionally, Republican Party of Florida's actions in spending hours going over the different answers to distinctly different interrogatory questions and a

48

183

separate narrative did nothing to advance the depositions (the documents speak for themselves) and only caused more delays. Moreover, knowing that Republican Party of Florida had three (3) hours and twenty (20) minutes of deposition time remaining, Republican Party of Florida's counsel proceeded to inquire into matters unrelated to the merits of Plaintiff's claims or to the merits of Defendant's defenses for three (3) hours of those three (3) hours and twenty (20) minutes.

It should be crystal clear that the Republican Party of Florida's problems related to timing are of its own making and not caused by the Plaintiff. Even so, the undersigned consented to two and a half (2 ½) extra hours by Republican Party of Florida, has agreed to an additional two (2) hours if needed by the Republican National Committee and Bush-Cheney '04, Inc .and has made repeated attempts to resolve the timing issues with Republican Party of Florida's counsel only to be rebuffed and ignored.

Republican Party of Florida now acts and has acted throughout the depositions as if the Federal Rules of Civil Procedure do not apply to it. When faced with time running out, instead of speeding up, the Republican Party of Florida actually slowed down and began inquiring into matters not relevant to the prosecutions or defense of the merits of the case. While the undersigned acknowledges that the Republican Party of Florida can inquire into whatever it wants, it does so on its own choosing and at its own peril. While 11th Circuit case law is sparse into the area raised in Republican Party of Florida's motion, it does acknowledge that a party should at least attempt to comply with the limits set forth in the rules.(*Nanikivil v. Lockheed Martin Corp.*, 216 F.R.D. 689 (M.D. Fla 2003) Republican Party of Florida did not.

While Plaintiff concedes that case law outside of their circuit suggests that reasonable leeway should be given and that counsel should be reasonable in avoiding a strict stop watch approach to depositions, Plaintiff contends that she has made every reasonable effort to resolve the matter with Defendant only to be ignored and rebuffed. Defendant RPOF has failed to establish "good cause" so as to justify any further extension of time beyond the nine and a half (9 ½) hours already taken. (See Advisory Committee Notes to Rule 30, 200 Amendment, Subdivision (d).) Defendant's motion should therefore be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF Electronic Filing and U.S. Mail to Edward Lee. Isler, Esquire, Michelle Bodley Radcliffe, Esquire, Ray & Isler, P.C., 1919 Gallows Road, Suite 320, Vienna, Virginia 22182, Janet Goldberg McEnery, Esquire, Noel McDonell, Esquire, McFarlane, Ferguson & McMullen, One Tampa City Center, 201 N. Franklin Street, Suite 2000, Tampa, Florida 33602 and Edmund J. McKenna, Esquire, Dawn Siler-Nixon, Esquire, Ford & Harrison, LLP, 101 E. Kennedy Boulevard, Suite 900, Tampa, Florida 33602-5133, on this 31st day of October, 2005.

Respectfully Submitted,

 s/ James M. Thompson
JAMES M. THOMPSON, ESQUIRE
Nelson, Bisconti & Thompson, L.L.C.
718 W. MLK Boulevard, Suite 200
Tampa, Florida 33603-3104
(813) 221-0999 • (813) 314-9626 Fax
FBN: 861080
Attorney for the Plaintiff

# EXHIBIT D

1

WESTWOOD BOROUGH MUNICIPAL COURT
BERGEN COUNTY, NEW JERSEY
SUMMONS NO. SC2011-2180
APPEAL NO._____

STATE OF NEW JERSEY,          )
                              )
        VS.                   )      TRANSCRIPT
                              )          OF
JAMES O'KEEFE,                )       PROBABLE
                              )   CAUSE HEARING
          Defendant.          )

              Place:  Westwood Borough Municipal Court
                      101 Washington Avenue
                      Westwood, New Jersey 07675

              Date: December 21, 2011

BEFORE:

     HON.  R. ALAN KARCH, J.M.C.

TRANSCRIPT ORDERED BY:

     JAMES O'KEEFE, III
     P.O. Box 794
     Paramus, NJ 07653

APPEARANCES:

     JOHN WESCHEL, ESQ. (John Weschel, Esq.)
     Attorney for Complainant, Nadia Naffe

     L. SCOTT BERKOBEN, ESQ.
     (L. Scott Berkoben, P.A.)
     Attorney for Defendant

                   **Isabel E. Cole, Transcriber**
                   **COLE TRANSCRIPTION, L.L.C.**
                   **Certified Court Transcribers**
                       **P.O. BOX 1216**
               **OCEAN GATE, NEW JERSEY 08740-1216**
                      **1-732-237-3200**

ORIGINAL        Audio Recorded
                Audio Operator, Not Listed

2

### I N D E X

Witness                    Direct

FOR THE COMPLAINANT

Nadia Naffe                8

THE COURT

Decision          20

53

188

Colloquy                                                    3

THE COURT:  This will be the matter of the application for a probable cause hearing on the complaint filed by Nadia -- is if Naffe?

MR. WESCHEL:  Naffe.

THE COURT:  Nadia Naffe against James O'Keefe, III.

Mr. O'Keefe.  Mr. O'Keefe, if you'll come up and sit at this table here.

Mr. Weschel, you can, your client can be seated at counsel table.

You understand this is a probable cause hearing so this is no matter that will be be, there will not be any cross-examination on this case.  This matter simply exists to determine if there's probable cause for the issuance of a complaint.

MR. WESCHEL:  I understand that, Judge.

MR. BERKOBEN:  Excuse me, Your Honor.

THE COURT:  Mr. Berkoben.

MR. BERKOBEN:  Thank you.  Some weeks ago I received a call from a lady identifying herself as Ms. Naffe, indicating she had a case in Westwood, and, but before we started she said she wanted to know if I spoke to a James O'Keefe.

THE COURT:  Well, before we do this, what's your interest in this particular case?

Colloquy                                                    4

MR. BERKOBEN:  Mr. O'Keefe would like me to appear with him at this hearing and I just wanted to make that disclosure so it wouldn't become an issue later.

THE COURT:  All right.  Is this is an issue to determine whether there's a conflict, is that it?

MR. BERKOBEN:  I just wanted to make a disclosure.  I don't believe there's a conflict.

THE COURT:  All right.  Have you ever represented Ms. Naffe?

MR. BERKOBEN:  I have not.  I have not represented Mr. James O'Keefe in the past either.

THE COURT:  All right.  So do we have any issues?

MS. NAFFE:  You told me that you had conferred with him is what you said on the phone.

MR. BERKOBEN:  Well actually, I didn't.

MR. WESCHEL:  Judge, I --

MR. BERKOBEN:  Some weeks later Mr. O'Keefe came in.

THE COURT:  Let me, let me get past this just a little bit here because, at this point, *at this* point, there's no determination of whether there is a case.

MR. BERKOBEN:  Right.

54

189

**Colloquy**                                                        5

        THE COURT:  Any issues that would come up as
to questions of Counsel's ability to represent the
party may be an issue that would be addressed at the
later time.  At this point, it is not a case where
either Mr. Berkoben on behalf of Mr. O'Keefe, or Mr.
O'Keefe himself, would be involved in any questioning
of any witnesses.  In fact, it's anticipated that the
only person who would be testifying today would be
Ms. --
        MS. NAFFE:   Naffe.  Naffe.
        THE COURT:  Thank you, Ms. Naffe.  I'll try
to remember that.
        MS. NAFFE:   Okay.  Thank you.
        THE COURT:  I'm going to write it down
phonetically here.
        All right.  Mr. Weschel, do you have any
objection to Mr. Berkoben sitting at counsel table?
        MR. WESCHEL:  I have no objection to Mr.
Berkoben sitting at counsel table.  However, if Mr.
Berkoben is going to be representing, if probable cause
is found and Mr. Berkoben is planning to represent Mr.
O'Keefe, given the fact that my client consulted with
Mr. Berkoben and I believe discussed the incident with
him, I would have an objection with him going forward.
        THE COURT:  All right.  Well, you will not be

**Colloquy**                                                        6

1  waiving any objection by proceeding today with that
2  understanding, and I don't know what -- at some further
3  time, if there is some further time, that matter would
4  be best brought to the Court's attention perhaps with
5  certifications and briefs at that point.
6         Mr. Berkoben, if you wish, you can be seated.
7         MR. BERKOBEN:  Sure.
8         THE COURT:  All right.  A probable cause
9  hearing occurs when a complaint is filed, a civilian
10  complaint is filed and there's a request made to
11  determine whether or not that complaint should issue.
12  At this point, no complaint has issued on this matter.
13         Ms. Naffe, you filed a complaint on November
14  21st of 2011 alleging an incident of harassment took
15  place in the Borough of Westwood allegedly by James
16  O'Keefe, III; is that correct?
17         MS. NAFFE:   Yes, sir, that's correct.
18         THE COURT:  All right.  I have read your
19  certification that you have filed in support of the
20  probable cause complaint.  I don't know if you have a
21  copy of it with you.
22         MR. WESCHEL:  We do.
23         THE COURT:  Ofr. McCan (sic), if you'd just
24  do me a favor.  Would you, this is a one, two, three,
25  four five, six-page certification.  If you'd just hand

Colloquy                                7

that to Ms. Naffe.
            MR. WESCHEL:  She has a copy here, Judge.
            THE COURT:  Oh, you have a copy of that?
            MR. WESCHEL:  Yes.
            THE COURT:  Mr. Weschel, just take a look at
that and make sure that the copy you have matches the
copy that the Court has.
            MR. WESCHEL:  It appears identical, Your
Honor.
            THE COURT:  All right.  Mr. Can, if you'll
hand me back the one with the clip on it.  That's
right.  That would be the Court's copy.
            Ms.  Naffe, if you'd just take a look at that
complaint, is that, the material set forth in there, is
that your certification?
            MS. NAFFE:  Yes, sir, it is.
            THE COURT:  All right.  I'm going to ask you
to raise your right hand.
**N A D I A   N A F F E, COMPLAINANT, SWORN**
            THE COURT:  All right.  Anthony, could you
close the door and just ask everybody to be quiet
please.  We have volume issues here.
            Ms. Naffe, I'm going to ask you to keep your
voice up.  You appear to be soft spoken but I want to
make sure everything's properly recorded.

N. Naffe - Court                         8

 1          MS. NAFFE:  All right.  Thank you.
 2  **EXAMINATION BY THE COURT:**
 3      Q    Is there anything in that certification that
 4  needs to be amended or changed?
 5      A    I don't think so, sir, no.
 6      Q    All right.  A complaint for harassment, the
 7  statute for harassment says,
 8                "A person commits a petty disorderly
 9                person's offense if with purpose to harass
10                another he:
11                "Makes, or causes to be made a
12                communication or communications anonymously,
13                or at extremely inconvenient hours, or in
14                offensively coarse language, or any other
15                manner likely to cause annoyance or alarm.
16                "Subjects another to striking, kicking,
17                shoving or other offensive touching or
18                threatens to do so or;
19                "Engages in any other course of alarming
20                conduct or repeatedly committed acts with
21                purpose to alarm or seriously annoy such
22                other person."
23          In reviewing your certification, it's clear
24  that there was nothing that set forth there regarding
25  any striking, shoving, touching or any other threat to

**N. Naffe - Court**

9

do so; is that correct?

A    That's correct.

Q    All right.  In the statement itself, and albeit a lengthy statement, it appears that the, we're then dealing either with an offensive communication or a course of alarming conduct.  I didn't discern any course of alarming conduct in this statement.  So I need you to tell me what happened so that I can determine whether there was probable cause, which is to mean that it was reasonable to issue a complaint.

A    Okay, sir.  Sure.  I'll just start at the beginning then.

Q    You don't need to go into the full depth.  This is not a trial.  I'm not trying to make a finding of fact beyond a reasonable doubt.  I'm just trying to determine -- it appeared to me from your statement that you voluntarily met with Mr. O'Keefe and voluntarily came to Westwood.  At some point it appears that there was a dispute between you and Mr. O'Keefe, and Mr. O'Keefe left the area where you had been, and then you were calling him and texting him to come back and take you to some form of public transportation.

A    That's correct, sir.

Q    That in and of itself doesn't show me that there was any harassment.  So I need to know if there

---

**N. Naffe - Court**

10

was anything -- see, your statement doesn't, doesn't make out a case for harassment.

You indicate that he left, you contacted him to get him to take you to a train station or something like that' is that correct?

A    That is correct, sir.

Q    And he refused to do that?

A    That's correct, sir.

Q    But what element of this rises to, to the level of harassment, the course of alarming conduct or something of that nature?

A    I'm sorry.  In regards to what, sir?

Q    Well, the pattern that's set forth in your probable cause hearing indicates that you may have, there may have been a personal dispute with Mr. O'Keefe, and Mr. O'Keefe may have had a dispute with you, but it does not show me that there was anything that occurred before this time, there was anything that was a pattern of continued action or that there was anything that was done with --

A    A pattern before which time are you referring to?

Q    The day in question in Westwood.

A    The harassment started because of an event that happened on October 2nd in Westwood.  At which point, I was working with James on an undercover video project

N. Naffe - Court                                    11

in September and October of this year in New York City.
On October 2nd James picked me up from the New York New
Jersey train station.  He then picked up dinner at a
Chipotle Grille.  He then went to a liquor store and
purchased beer.  At which point, he brought me back to
the barn, the place he described to me as a barn.  He
asked me to stay at the barn because hotels --
     Q    Now, when you say the barn, was that in, in
Westwood?
A    Yes, sir.
     Q    Okay.
A    James had said that hotels in New York City where
we were going to be filming was too expensive and that
he used this barn as an office and he'd asked me to
stay at this office.  He told me that it was a
furnished place, it had a bed and a bathroom and a
kitchen, and that's where I was going to be staying
when we were filming.  At which point, we got the barn.
We had a discussion about the project we were working
on to catch a journalist.  We had an argument.  At
which point, I ignored James.  I turned my back to him
and I started talking on the phone with someone else.
That is when he got upset and left and stormed out of
the barn.
          He then called me on the phone belligerent,


N. Naffe - Court                                    12

yelling, being verbally abusive.  It was at that point
that I told James that I didn't want to work with him
any longer on the video project.  I told James that I
was sick and that I wanted to go home.  I thought the
alcohol had made me sick.  I felt nauseated,
disoriented and extremely sleepy.  But he refused to
come back to the barn.  He said that all he cared about
was his project.  He insisted that I spend the night
there and that we take the matter up in the morning.
He wanted to go shoot videos the next day.
          I wanted to leave the barn by myself, but I
couldn't balance myself enough to walk down the stairs
and I felt, I found it hard to move and control my
muscles and I felt like I was essentially stranded
there.  He would not come back and get me.  I felt like
I had no reasonable means of escape.
          It was at that pont that I contacted James'
assistant, Ryan Gurdurski (phonetic), and told him that
I was sick and I wanted to leave.  I wanted to, I
wanted to leave the barn.  I wanted to find a way to
get back to the train station so I could get back to
Boston.
          Ryan told me he didn't have a car.  He couldn't
come pick me up, that this was a remote area in
Westwood.  He, he mentioned something about a bus, but

N. Naffe - Court                                    13

I, I had no means to get downstairs or get out to get
to a bus. He told me James was my only way out of this
barn.

So as you said, as the evening went on, there were
phone calls and texts and things like that. At which
point, I finally threatened James that I was going to
call the police and even destroy his Macs, his
computers, if he did not come back to the barn and get
me back to the train station. It was at that point
that he agreed to come back to the barn.

However, when he returned to the barn he didn't
return alone. He brought another man with him. I
didn't know that he was, the man was there. He was
hiding downstairs in the dark behind the staircase.
When I was, when James was walking me down the stairs I
heard his, I heard the man's footsteps and he surprised
me and I started screaming, and the both of them just
kept trying to persuade me to spend the night at the
barn, but I didn't want to spend the night. At which
point, there was a vehicle that I didn't, I didn't know
the man, I had never met him before. He was unknown to
me, and there was also a vehicle. James put me in the
back of the car. He continued to tell me that he
wanted me to spend the night there. He, he had other
excuses that he didn't have his credit card and he, he

---

N. Naffe - Court                                    14

had a lot of different excuses about why he couldn't
get me to the train station.

Finally, he had a conversation with the, with the
man about driving him somewhere to get some cash and
then they could drive me to the train station. It
appeared to me that there was no coordination between
them before that point to actually take me to the train
station. It was their intent to persuade me to spend
the night at that barn.

I remember the man driving us to another residence
where James got out of the car and, and went into the
house and came back with money and I passed out in the
backseat after that. When I awoke I was at Penn
Station.

I, I went back home. I, I returned home to
Boston. At which point I realized that there were
items missing from my luggage; my wireless mouse, my,
my USB connector and my scarf and my panties. I didn't
have any of those items. I text James and told him I
wanted these items back.

A short time later I got an E-mail from his
assistant, Ryan, advising me that he was going to mail
me back my mouse. I responded to that E-mail by
stating that I wanted all my items.

Q    Let me stop you just a minute.

N. Naffe ~ Court                              15

A    I'm getting to the harassment.  I'm getting to the
harassment if you just give me one more second.
     Q    Okay.
A    I'm getting there.
     He, he sent me a message, a message back that he
was going to send me my things.  On October 20th I
learned that the situation involving my missing items
had been relayed to a reporter regarding a completely
separate matter with some other activists that were
talking to a reporter at Politico about a story
regarding an MPR video they'd done with James.
     On October 23rd James contacted me and offered to
pay me money, I'm not exactly sure what for, but he
offered to pay me some money.  I declined the money and
it was at that point I noticed that the harassments
started.  I was contacted by a girlfriend of mine,
Hannah Giles, who advised me that James had contacted
her husband, who was a person who was co-indicted with
James and is on federal probation along with James for
another matter in Louisiana.  She told me that James
had contacted her husband accusing him of leaking
things to a reporter at Politico, and in that
conversation he stated that, "Nadia tried to, to set me
up like on the Love Boat."  He was referring to a
situation where he --

N. Naffe ~ Court                              16

     Q    All right.  Wait.
A    I'm getting, I'm getting, I'm getting, truly, I'm
getting there.
     Q    I'm trying to get to the point though.
Now --
A    He, now in that conversation --
     Q    Hold on just a second.
A    -- he, he made me out to be --
     Q    Ms. Naffe, Ms. Naffe --
A    -- out to be a tramp.
     Q    Ms. Naffe, just hold on a second.
A    Okay.
     Q    Is it your allegation that the incident of
harassment happened after you left Westwood and went
back to Boston?
A    Yes, sir.
     Q    All right.  So the incident in Westwood does
not play any role in the harassment per se?
A    Right.  When, when I wrote my complaint, the
supervising officer who was here at the time didn't
have the address that James had held me at so we were
unable to file a complaint for criminal restraint.
     Q    No, I understand that, but --
A    So --
     Q    -- the issue that, that we're looking at and

N. Naffe - Court                                    17

harassment was, the bulk of your statement that you
gave to the police, the certification in support of the
probable cause, was the incidents that led to the time
you arrived in Westwood to the time you were taken back
to the train station in New York.
A    Exactly, and I had wanted to --
Q    But those incidents, those incidents are not
what you're alleging is the harassment.  The harassment
happened after you left Westwood?
A    That is correct, sir.  And I start --
Q    Do you know, do you --
A    -- talking --
Q    -- know where Mr. O'Keefe was after you left
Westwood?
A    At which point do you mean?
Q    At any time, do you know if Mr. O'Keefe made
any of these communications from the Borough of
Westwood?
A    I believed he did because he resides in Westwood
and he's not allowed to leave the area without court
approval because he's on federal parole.  So he would
have had to have made those communications from
Westwood.
Q    But you're, you're presuming that based on
the fact of knowledge of some other case.  Is it your

---

N. Naffe - Court                                    18

knowledge that he's limited to the Borough of Westwood?
A    That is my knowledge, yes.
Q    All right.
A    He's on federal parole.  He's not allowed to
leave.
Q    Now, these communications were they made to
you or to others?
A    Some of them were made to, some of them were, one
of them was, one of them was made to me and the rest of
them were made to other people.  He used other people
to, to torment and annoy me.  He, he contacted my
friend Hannah's husband and made accusations about my
character.  He accused me of doing something to him
that he had done to someone else.  He then had another
conversation with another colleague of ours where he,
he called me filthy and dirty.
     At which point, I wrote James a letter and I told
him I wanted the harassment to stop.  I told him if he
didn't stop the harassment I was going to contact the
police and contact his probation officer.  At which
point, his response was to threaten, when I told him I
was going to go to the police his response was to, to
have his lawyer threaten to sue me if I did not re,
recant any statement of what he had done.
     And then on November the 17th he posted a video

## N. Naffe - Court                                            19

me on his website and on YouTube where he
identified me as a young Harvard student, a former
colleague, a turncoat, and he put pictures of me in
this, in this video, and he, he made all sorts of other
disparaging comments about me intended to harass and
torment me.  He, he, he later, he later took the video
down.

At which point, I decided that I couldn't deal
with his ongoing behavior and I, I sought the help
of the police.

Q       All right.  Ms. Naffe, is it, and this is
important for one of the elements here is the question
of jurisdiction.  Mr. O'Keefe met you, you said in
your statement, at a train station in Newark, New
Jersey.

A       That's where he picked me up at, that's correct.

Q       And is that where they drove you back to, the
train station in Newark?

A       No, he drove me back to a train station in New
York City.  He drove me to Penn Station.

Q       All right.

A       Or the, he was in the passenger side of the
vehicle and this other man who he brought with him he
was driving the vehicle.

Q       Now your, your belief that Mr. O'Keefe is,

## Decision                                                    20

travel is limited to the Borough of Westwood is based
on your understanding of what happened in another
court?

A       That's what his probation officer told me on the
phone.

Q       So that's what somebody told you?

A       I'm familiar with the court case.  I've read the
judge's order in the court case, and James himself had
told me that he's not allowed to leave the area,
although he often does.

Q       All right.  Is there anything else you want
to bring forward on this?

A       No, sir, not at this moment.  We, we may step
downstairs and, and certify those other charges at some
point today.

THE COURT:  Well, as to the charges that are
before this Court on Summons SC2180 alleging violation
of <u>New Jersey Statute</u> 2C:33-4 for harassment, I've read
the elements of the harassment statute to you when we
started.  Quite frankly, when I was focusing on this it
was on the incidents that you indicate occurred in the
Borough of Westwood on or about October 2nd.  You
indicated, however, that those were not the basis for
your harassment charge, that that was a predicate to
setting up the incidents that occurred after that time

Decision                                                    21

other communications.

MS. NAFFE:  That, that's, that's correct,

THE COURT:  Okay.
MS. NAFFE:  I think --
THE COURT:  The, the, there's a problem that, that is apparent on this.  One is that under the specific statute, the reason I focus on where the communications were made is that for an action to be cognized in the municipal court in Westwood it has to be shown that the communication was made either at the place where it originated or at the place where it was received.  And your indication was that you were in Boston at the time these incidents were brought to your attention.  So it would have been received outside of the jurisdiction of this court.

I'm not satisfied that there's an adequate showing that Mr. O'Keefe's freedom is limited to the Borough of Westwood so I can't make that leap that these contacts were made in the Borough of Westwood.  That removes element a. from the harassment charge, which is to say that a person,

"Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in

Decision                                                    22

offensively coarse language, or in any other manner likely to cause annoyance or alarm."
b. we discussed and you indicated there's no basis for that because there was no striking, kicking, shoving or other offensive touching.  So we're now raising the question of whether c. rises, which is,

"Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person."

You've testified to a posting on a website and on YouTube that, or of a questionable value and questionable taste and questionable propriety.  You testified to other communications that were made by James O'Keefe to other third parties; but, I don't find that there is a course of alarming conduct or repeatedly committed acts directed to you.  You have made a case that may sound like it requires some civil relief.  You made a case that sounded perhaps that would have tones of slander, but those are civil matters and not quasi criminal matters and not cognizable in this court.

In reviewing the statements and reviewing the testimony today, I am not able to find that there is probable cause for the harassment complaint for the

Decision                                              23

incidents that occurred between October 2nd of 2011 and
November 21, 2011.  November 21st being the date of the
issuance of the complaint.  So I am making a ruling
that I am not finding probable cause for the issuance
of the harassment complaint.

This does not -- this means that there was no
probable cause found by me today.  It is not
necessarily a bar for any other actions or relief that
you might have.  You have a very experienced attorney
sitting next to you.  I'm sure he can advise you of
your rights as to these procedures.  The probable cause
determination is based solely for the matters arising
and addressed to complaint SC2180.  So I'm finding that
there was no probable cause for the issuance of this
complaint.

I thank you for coming in and the parties are
free to go.

               MR. WESCHEL:  Thank you, Your Honor.
               MS. NAFFE:  Thank you, Judge.
               THE COURT:  Thank you.
                         * * * * *

                                                      24

         C E R T I F I C A T I O N

    I, ISABEL E. COLE, the assigned transcriber, do
hereby certify the foregoing transcript of proceedings
on December 21, 2011, digital index number from 12:50-
3:19, is prepared in full compliance with the current
Transcript Format for Judicial Proceedings and is a
true and accurate compressed transcript of the
proceedings as recorded.

_Isabel E. Cole_ / _AOC#101_
Isabel E. Cole         AOC#101
COLE TRANSCRIPTION, L.L.C.
Dated:  January 13, 2012

199

# EXHIBIT E

**FILED**

MAR 23 2012

Harry G. Carroll
J.S.C.

AROMANDO & LIGHT, LLC
195 Fairfield Avenue – Suite 4D
West Caldwell, New Jersey 07006
(973) 403-9100
Attorneys for Plaintiff

| | |
|---|---|
| JAMES O'KEEFE, III,<br><br>                                  **Plaintiff,**<br><br>vs.<br><br>NADIA NAFFE,<br><br>                                  **Defendant.** | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIV.: BERGEN COUNTY<br>DOCKET NO.:  C - 93 - 12<br><br>CIVIL ACTION<br><br>**ORDER TO SHOW CAUSE WITH<br>TEMPORARY RESTRAINTS** |

This matter having been opened to the Court by Aromando & Light, LLC, attorneys for Plaintiff James O'Keefe, III, upon Plaintiff's Verified Complaint and accompanying papers in support of Plaintiff's application for immediate temporary restraints and for accelerated discovery;

**AND IT APPEARING** from the Verified Complaint that Defendant Nadia Naffe is in possession of Plaintiff's private, proprietary and confidential information that has been stored on his personal computer ("Information");

**AND IT FURTHER APPEARING** that Defendant came into possession of the Information without permission from Plaintiff;

**AND IT FURTHER APPEARING** that the Defendant has released some of the Information and is presently threatening to release more Information to the public;

**AND IT FURTHER APPEARING** that Plaintiff will suffer irreparable harm unless the Court orders the relief set forth herein;

**AND** this Court having considered the likelihood of ultimate success of Plaintiff's claims, the balance of the hardships to the parties, the public interest, and whether Plaintiff will suffer immediate and irreparable harm if restraints are not entered against Defendant;

**AND** good cause otherwise having been shown for the entry of this Order;

**IT IS ON THIS** _23_ day of March, 2012;

**ORDERED** that Defendant Nadia Naffe and any person(s) acting in concert or participation with her who receives actual notice of this Order by personal service or otherwise, be and hereby are temporarily restrained and enjoined from disclosing, discussing, publishing or otherwise communicating the Information to or with any third party;

**AND IT IS FURTHER ORDERED** that Defendant show cause on _MAY 14_, 2012 at _9_ o'clock _a_.m. as to why a preliminary injunction should not be entered against her continuing the above restraints through the final adjudication of this matter; and

**AND IT IS FURTHER ORDERED** that Defendant shall have and bring with her to the hearing on _May 14_, 2012 at _9_ o'clock _a_.m. all originals and copies of the Information whether the Information is stored electronically or is contained in any other media whatsoever, including print; and

**IT IS FURTHER ORDERED** that Defendant shall submit any briefs in opposition to this application and any related papers on or before _April 30, 2012_ and Plaintiffs shall submit a reply brief and any related papers on or before _May 8, 2012_; and

CASE NAME: *James O'Keefe, III* v. *Kevin Ryan*
DOCKET NUMBER: *C-93-11*

## SUPPLEMENTAL PROVISIONS TO ORDER TO SHOW CAUSE

# Returnable:

### SERVICE OF PLEADINGS
A copy of this order to show cause, verified complaint, legal memorandum and any supporting affidavits or certifications submitted in support of this application be served upon the defendant personally within 3 days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

### PROOF OF SERVICE
The plaintiff must file with the court his/her/its proof of service of the pleadings on the defendant no later than three (3) days before the return day.

### DEFENDANT'S OSC/INJUNCTIVE RELIEF RESPONSE REQUIREMENTS
Defendant shall file and serve a written response to this order to show cause and the request for entry of injunctive relief and proof of service by 4/30/12. The original documents must be filed with the clerk of the Superior Court, Room 340. You must send a copy of your opposition papers directly to Judge Harry G. Carroll, whose address is Room 424, Courthouse, Hackensack, New Jersey. You must also send a copy of your opposition papers to the plaintiff's attorney whose name and address appears at the top of these papers, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file your opposition and pay the required fee and serve your opposition on your adversary, if you want the court to hear your opposition to the injunctive relief the plaintiff is seeking. NOTE: These papers are not the Answer to plaintiff's complaint, which must be filed within 35 days (see below).

### PLAINTIFF'S REPLY RESPONSIBILITY
The plaintiff must file and serve any written reply to the defendant's order to show cause opposition 5/8/12. The reply papers must be filed with the Clerk of the Superior Court and a copy of the reply papers must be sent directly to the chambers of Judge Carroll.

### OSC MAY PROCEED EX-PARTE
If the plaintiff does not file and serve opposition to this order to show cause, the application will be decided on the papers on the return day and relief may be granted by default, provided that the plaintiff files a proof of service and a proposed form of order at least three days prior to the return day.

### PREHEARING SUBMISSION FORM OF ORDER/JUDGMENT
If the defendant has not already done so, a proposed form of order addressing the relief sought on the return day (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than 3 days before the return day.

### NOTICE TO DEFENDANT – LAWSUIT ANSWER RESPONSIBILITY
Defendant, take notice that the plaintiff has filed a lawsuit against you in the Superior Court of New Jersey. The verified complaint attached to this order to show cause states the basis of the lawsuit. If you dispute this complaint, you, or your attorney, must file a written answer to the complaint and proof of service within 35 days from the day of service of this order to show cause; not counting the day you received it. These documents must be filed with the Clerk of the Superior Court. Include the filing fee, payable to the "Clerk of the Superior Court." You must also send a copy of your Answer to the plaintiff's attorney whose name and address appear on these papers, or to the plaintiff, if no attorney is named. A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default. Please note: Opposition to the order to show cause is not an Answer and you must file both. Please note further: If you do not file and serve an Answer within 35 days of this Order, the Court may enter a default against you for the relief plaintiff demands.

### LEGAL SERVICES NOTICE
If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.

### RETURN DAY TESTIMONY
The Court will entertain argument, but not testimony, on the return day of the order to show cause, unless the court and parties are advised to the contrary no later than 3 days before the return day.

Hon. Harry G. Carroll, J.S.C.

# EXHIBIT F

204

## Certified List of Candidates - Short List
### 2010 Gubernatorial General November 02, 2010
#### Qualified As Of 08/26/2010 5:41:37PM

### GOVERNOR

**Jerry Brown**                                                             Democratic
Attorney General of California

**Meg Whitman**                                                             Republican
Businesswoman

**Chelene Nightingale**                                            American Independent
Business Owner

**Laura Wells**                                                                  Green
Financial Systems Consultant

**Dale F. Ogden**                                                           Libertarian
Business Consultant/Actuary

**Carlos Alvarez**                                                    Peace and Freedom
Retail Worker

### LIEUTENANT GOVERNOR

**Gavin Newsom**                                                           Democratic
Mayor, City and County of San Francisco

**Abel Maldonado**                                                         Republican
Senator/Businessman/Farmer

**Jim King**                                                        American Independent
Real Estate Broker

**James "Jimi" Castillo**                                                        Green
Cultural Spiritual Advisor

**Pamela J. Brown**                                                         Libertarian
Economics Professor

**C.T. Weber**                                                        Peace and Freedom
Retired Government Analyst

### SECRETARY OF STATE

**Debra Bowen***                                                           Democratic
Secretary of State

**Damon Dunn**                                                             Republican
Small Business Owner

**Merton D. Short**                                                 American Independent
Aviator

**Ann Menasche**                                                                Green
Civil Rights Attorney

**Christina Tobin**                                                         Libertarian
Voting Rights Advocate

* Incumbent                                      70                        Page 1 of 34

## Certified List of Candidates - Short List
### 2010 Gubernatorial General November 02, 2010
#### Qualified As Of 08/26/2010  5:41:37PM

### SECRETARY OF STATE

**Marylou Cabral**                                              Peace and Freedom
  Community Volunteer

### CONTROLLER

**John Chiang\***                                                      Democratic
  Controller

**Tony Strickland**                                                    Republican
  State Senator/Businessman

**Lawrence G. Beliz**                                        American Independent
  Independent Businessman

**Ross D. Frankel**                                                         Green
  Accountant

**Andrew "Andy" Favor**                                                Libertarian
  Certified Public Accountant

**Karen Martinez**                                              Peace and Freedom
  Retired

### TREASURER

**Bill Lockyer\***                                                     Democratic
  California State Treasurer

**Mimi Walters**                                                       Republican
  Businesswoman

**Robert Lauten**                                            American Independent
  No Ballot Designation

**Charles "Kit" Crittenden**                                                Green
  Retired Professor

**Edward M. Teyssier**                                                 Libertarian
  Business Owner/Attorney

**Debra L. Reiger**                                             Peace and Freedom
  Retired Technology Manager

### ATTORNEY GENERAL

**Kamala D. Harris**                                                   Democratic
  District Attorney, City and County of San Francisco

**Steve Cooley**                                                       Republican
  District Attorney, County of Los Angeles

**Diane Beall Templin**                                      American Independent
  Attorney/RE Broker

**Peter Allen**                                                             Green
  Environmental Energy Attorney

\* Incumbent                          71                           Page 2 of 34

206

## Certified List of Candidates - Short List
### 2010 Gubernatorial General November 02, 2010
#### Qualified As Of 08/26/2010  5:41:37PM

### ATTORNEY GENERAL

**Timothy J. Hannan**                                                          Libertarian
Attorney/Arbitrator/Mediator

**Robert J. Evans**                                                    Peace and Freedom
Criminal Defense Lawyer

### INSURANCE COMMISSIONER

**Dave Jones**                                                               Democratic
Member, California State Assembly

**Mike Villines**                                                            Republican
Businessman/State Assemblyman

**Clay Pedersen**                                                  American Independent
Retail Manager

**William Balderston**                                                            Green
Teacher/Union Organizer

**Richard S. Bronstein**                                                     Libertarian
Licensed Insurance Broker

**Dina Josephine Padilla**                                           Peace and Freedom
Injured Worker Consultant

### BOARD OF EQUALIZATION MEMBER DISTRICT 1

**Betty T. Yee***                                                            Democratic
Equalization Board Member

**Kevin R. Scott**                                                           Republican
Small Business Owner

**Kennita Watson**                                                           Libertarian
Retired Quality Engineer

**Sherill Borg**                                                     Peace and Freedom
Community Development Officer

### BOARD OF EQUALIZATION MEMBER DISTRICT 2

**Chris Parker**                                                             Democratic
Tax Professional/Educator

**George Runner**                                                            Republican
Taxpayer Advocate/Senator

**Willard D. Michlin**                                                       Libertarian
CPA/Businessman

**Toby Mitchell-Sawyer**                                             Peace and Freedom
Security Officer

---

\* Incumbent                                 72                              Page 3 of 34

## <u>CERTIFICATE OF SERVICE</u>

When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 7, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*s/Kenneth P. White*_____
Kenneth P. White