The United States Court of Appeals
for the Ninth Circuit

---

No. 13–55666

---

NADIA NAFFE,
*Plaintiff-Appellant,*

v.

PATRICK FREY, et. al.,
*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
No. CV 12-8443-GW
The Honorable George H. Wu, Judge

---

BRIEF OF DIGITAL MEDIA LAW PROJECT AS *AMICUS CURIAE* IN
SUPPORT OF DEFENDANTS-APPELLEES

---

Eugene Volokh
UCLA SCHOOL OF LAW
FIRST AMENDMENT
AMICUS BRIEF CLINIC
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu
    Counsel for *Amicus Curiae*\*

---

\* Counsel would like to thank Tess Curet, Nathan Davis, and Ali Vaqar, UCLA School of Law students who helped write this brief.

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... 1

TABLE OF AUTHORITIES ........................................................................ 2

INTEREST OF *AMICUS CURIAE* ........................................................... 4

SUMMARY OF ARGUMENT .................................................................... 4

ARGUMENT ................................................................................................ 5

CONCLUSION .......................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Abudiab v. City & County of San Francisco*, No. C 09-1778 MHP, 2010 WL 2076022 (N.D. Cal. Apr. 12, 2010) ............................................. 9

*County of Allegheny v. ACLU*, 492 U.S. 573 (1989) ................................. 12

*Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517 (11th Cir.1995) ............... 10

*Huffman v. County of Los Angeles*, 147 F.3d 1054 (9th Cir. 1996) ............ 8

*Mark v. Borough of Hatboro*, 51 F.3d 1137 (3rd Cir. 1995) .................. 9, 11

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) ......................................... 11

*Naffe v. Frey*, No. CV 12-8443-GW (C.D. Cal. Dec. 10, 2012) .................... 8

*Ottman v. City of Independence,* 341 F.3d 751 (8th Cir. 2003) ................. 10

*Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996) ........... 8, 9, 10

*West v. Atkins,* 487 U.S. 42, (1988) ............................................................. 8

*Woodward v. City of Worland,* 977 F.2d 1392 (10th Cir.1992) ................. 10

## Statutes and Rules

42 U.S.C.A. § 1983 (West 1996) ................................................................. 7

## Web Sites and Newspaper Articles

Ben Schmitt, *A Few Minutes with ... an Outspoken Cop with a Blog*, Detroit Free Press, Feb. 3, 2008 ....................................................... 6

*Jack Dunphy*, Nat'l Rev. Online,
   http://www.nationalreview.com/author/jack-dunphy (last visited
   Feb. 5, 2014) .................................................................................................. 6

*John Bennett for City Council*, Warrendale (Detroit) Blog (July 20,
   2009), http://www.warrendaleblog.com/2009/07/john-bennett-for-
   city-council.html ............................................................................................ 6

PoliceOne.com, http://www.policeone.com/police-blogs/ (last visited
   Feb. 5, 2014) .................................................................................................. 6

*Prosecutor Joins Times as Featured Columnist*, Tri-County Times
   (Dec. 9, 1999, 1:00 AM), http://www.tctimes.com/prosecutor-
   joins-times-as-featured-columnist/article_868452d0-2519-5b4c-
   b0d6-171b799eb044.html .............................................................................. 7

Prosecutor's Discretion, http://prosecutorsdiscretion.blogspot.com/ .......... 7

Ron Fonger, *The Gloves Are off in Genesee County Commission
   Race Featuring Incumbent Henry and Former Prosecutor Busch*,
   mlive, (July 22, 2008, 7:39 AM),
   http://www.mlive.com/news/flint/index.ssf/2008/07/the_gloves_ar
   e_off_in_genesee.html .................................................................................. 7

*Scott G. Erickson*, Heritage Found., http://www.heritage.org
   /about/staff/nonstaff/e/scott-g-erickson ...................................................... 6

Scott G. Erickson, http://www. scottgerickson.com/ ................................... 6

## INTEREST OF *AMICUS CURIAE*[1]

The Digital Media Law Project ("DMLP") is an unincorporated association of attorneys and scholars hosted by the Berkman Center for Internet & Society at Harvard University. The DMLP is an academic research project that studies challenges for online journalism and networked communication, and responds with publicly accessible tools and legal resources. The DMLP frequently appears as an amicus curiae in cases where the application of law will have a significant effect on the use of digital media to inform the public.

## SUMMARY OF ARGUMENT

Over 20 million Americans work for the government, and many of them routinely express their personal views to the public, especially using the Internet. These speakers include prosecutors, professors, legislators, schoolteachers, police officers, and more. And these speakers often have special expertise and experience stemming from their public em-

---

[1] No party or party's counsel has authored this brief, in whole or in part. No party, party's counsel, or any other person has contributed money intended to fund preparing or submitting the brief, except that UCLA School of Law paid the expenses involved in filing this brief. All parties have consented to the filing of this brief.

4

ployment, which makes their opinions especially interesting and valuable to the public.

Yet even when such speakers say things that relate to government functions, they are often speaking in their personal capacities, and not under color of state law. This ability must be preserved, or else the value of such informative speech will be lost to the public.

As the district court correctly concluded, Patrick Frey acted entirely in his personal capacity when he commented on Nadia Naffe's pending lawsuit. His employer exercised no editorial control over what Frey wrote. Naffe acknowledges that Frey's website explicitly declares that all comments on the site are made in Frey's personal capacity and not as a district attorney. And Frey's post did not focus on conduct over which Frey, as a Los Angeles County prosecutor, would have jurisdiction.

For these reasons, *amici* respectfully request that the district court's dismissal of this case be upheld.

## ARGUMENT

Government employees—including prosecutors and police officers—routinely express their personal opinions to the general public. For instance, one of the contributors to the National Review Online's prominent

blog, The Corner, is a Los Angeles police officer who blogs under the pseudonym Jack Dunphy.[2] A San Jose police detective, Scott Erickson, contributes to the Heritage Foundation blog, and has also written op-eds for various newspapers.[3] A Detroit Police Officer, John Bennett, ran a noted local news blog that was apparently "repeatedly named 'Best Local News Site' by the *Metro Times* readers poll."[4]

These are just a few examples; the site PoliceOne.com collects a list of dozens more police officer blogs.[5] Likewise, prosecutors run the blogs

---

[2] *See Jack Dunphy*, Nat'l Rev. Online, http://www.nationalreview.com/author/jack-dunphy.

[3] *See Scott G. Erickson*, Heritage Found., http://www.heritage.org/about/staff/nonstaff/e/scott-g-erickson; Scott G. Erickson, http://www.scottgerickson.com/.

[4] *See* Ben Schmitt, *A Few Minutes with ... an Outspoken Cop with a Blog*, Detroit Free Press, Feb. 3, 2008; *John Bennett for City Council*, Warrendale (Detroit) Blog (July 20, 2009), http://www.warrendaleblog.com/2009/07/john-bennett-for-city-council.html.

[5] *See generally* PoliceOne.com, http://www.policeone.com/police-blogs/.

6

Prosecutor's Discretion and D.A. Confidential.[6] Other prosecutors sometimes write newspaper columns.[7]

Such authors, by virtue of their jobs and specialized experience, offer a unique perspective that enriches public debate. Yet Naffe's lawsuit threatens to jeopardize such speech.

Naffe's § 1983 claim is founded on the theory that Frey "acted under color of state law" when he criticized Naffe on his blog and via Twitter. First Amended Complaint ("Complaint") ¶ 24, 44. But the district court correctly reasoned that, given the facts Naffe alleged, the court could not credit the "conclusory assertion that Frey acted under color of state law." Civil Minutes–General, *Naffe v. Frey*, No. CV 12-8443-GW, at 2 (C.D. Cal.

---

[6] *See generally* Prosecutor's Discretion, http://prosecutorsdiscretion.blogspot.com/; http://www.daconfidential.com/.

[7] *See, e.g.*, *Prosecutor Joins Times as Featured Columnist*, Tri-County Times (Dec. 9, 1999, 1:00 AM), http://www.tctimes.com/prosecutor-joins-times-as-featured-columnist/article_868452d0-2519-5b4c-b0d6-171b799eb044.html (describing how Arthur Busch, then county prosecutor, was writing a bimonthly column and noting that Busch had also published his views on his own Web site); Ron Fonger, *The Gloves Are off in Genesee County Commission Race Featuring Incumbent Henry and Former Prosecutor Busch*, mlive, (July 22, 2008, 7:39 AM), http://www.mlive.com/news/flint/index.ssf/2008/07/the_gloves_are_off_in_genesee.html (noting that Busch had been a prosecutor from 1993 to 2005).

Dec. 10, 2012), 4 ER 1140. A speaker's simply mentioning that he is a deputy district attorney "does not transform everything he says on his blog or on Twitter into state action." *Id.* at 3, 4 ER 1141.

This is especially so given that Frey's blog includes an express disclaimer stating that it contains Frey's "personal opinions" and that any statements on the blog are "not made in any official capacity." Complaint ¶ 38; Naffe Opening Brief 16. That Frey did not act under color of law is even more clear given that Naffe "failed to allege facts demonstrating that [Frey's post] has anything to do with anything over which a Los Angeles County Deputy District Attorney such as Frey could possibly have jurisdiction." *Naffe*, at 4, 4 ER 1142. Naffe thus did not sufficiently support her claim that Frey acted in the performance of his official duties.

A government employee's actions are under color of state law only if they are "in some way 'related to the performance of his official duties.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (internal citation omitted). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1996) (hold-

8

ing that a sheriff's deputy who shot someone in a barroom brawl while off-duty was not acting under color of state law, because his actions were not related to his official duties).

An employee who is "pursuing his own goals and [i]s not in any way subject to control by [his public employer]" and does not "purport or pretend" to be acting as a government official does not act under color of law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1151 (3rd Cir. 1995). Indeed, even conduct at work may not be under color of state law if it is not done in the person's official capacity or pursuant to his official responsibilities. *Abudiab v. City & County of San Francisco*, No. C 09-1778 MHP, 2010 WL 2076022 (N.D. Cal. Apr. 12, 2010).

Thus, for instance, in *Van Ort*, a San Diego County police detective returned to a home where he had previously conducted an official investigation, and tried to force the residents to reveal the combination to a safe full of valuables. 92 F.3d at 833. Even though the detective learned about the safe through his employment as a police officer, this Court held that the detective was not acting pursuant to any government or police goal when he robbed the home. *Id.* at 838. And even if the victims recognized Stanewich as a police officer as he was robbing them, knowledge of his

9

identity would not have transformed the robbery into action under color of state law. *Id.* at 839. Likewise, the fact that Frey was known to be a government employee did not transform his speech into action under color of state law.

Courts have also "rejected the contention that co-worker harassment"—even harassment at work—"[is] done under color of law 'when the harassment [does] not involve use of state authority or position.'" *Ottman v. City of Independence,* 341 F.3d 751, 762 (8th Cir. 2003) (citing *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992)). "The mere fact that all [of the defendants] were state employees or that the offending acts occurred during working hours is not enough." *Id.* at 1401. "The dispositive issue is whether the defendant acted pursuant to power he or she possessed by state authority." *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1523 (11th Cir. 1995). These principles apply to this case: Frey's speech cannot be seen as under color of state law, because he was simply acting as a normal online speaker, rather than acting pursuant to his prosecutorial authority.

Frey does note on his blog that he is a prosecutor—which is understandable, because it shows readers that he is knowledgeable about crim-

inal law and the criminal justice process. But nothing Frey said regarding Naffe invoked his governmental power as a prosecutor. Frey was not on duty, and explicitly said that the statements on his blog were not made in any official capacity. And Frey was pursuing his own goals, not those of his employer, and his employer in no way guided Frey's blogging.

Conversely, *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000), offers a good contrast to the present case, by illustrating a situation in which a government employee really was acting under color of law]. In *McDade*, a government employee unlawfully accessed a state medical benefits database to find the address of her husband's ex-wife in order to serve the ex-wife with child custody papers. *Id.* at 1138. This Court held that the employee acted under the color of state law because she used her special access as a state employee to improperly use state resources to look up confidential information. *Id.* at 1140 (noting that "a password supplied by the County" "enabled [West] to access the information"). In contrast, Frey did not use any such special access, or any other power as a prosecutor, when criticizing Naffe.

Indeed, Supreme Court Justices have recognized that government officials may speak in their private capacity. For instance, the Establish-

11

ment Clause generally prohibits the government from promoting religious doctrine. *County of Allegheny v. ACLU*, 492 U.S. 573, 590 (1989). A district attorney's official website thus may not state "In Honor of Jesus Christ, Our Lord And Savior." But of course the district attorney is free to express his religious sentiments in his private capacity, for instance on his personal blog, in a sermon, or at a religious rally. His government employment, even if it is well-known to his listeners, does not transform his speech into state action.

And this can be true even though these officials are ostensibly on duty—even speech in official statements may sometimes be the official's private sentiments rather than government speech. Justices Stevens' and Ginsburg's views in *Van Orden v. Perry*, 545 U.S. 677, 723 (2005) (Stevens, J., dissenting, joined by Ginsburg, J.), offer a helpful illustration. The two Justices generally take the view that *government speech* endorsing religion is unconstitutional. *Id.* But their opinion in *Van Orden* acknowledged that even an official Thanksgiving proclamation by a sitting President may simply represent "the inherently personal views of the speaker *as an individual member of the polity*" (emphasis added), *id.*, rather than an impermissible governmental endorsement of religion. And

12

surely this must be so. Government officials often express religious sentiments like "God Bless America." Such statements are seen as constitutional precisely because they are understood as revealing the official's own personal views, rather than being an exercise of government power.

Government employees thus do not wear their employee hats at all times in all the things they say. In particular, when they do not exercise governmental power, their actions are viewed as being in their private capacity, not as being under color of state law. If this is so even as to some official proclamations, then, *a fortiori*, it must be true as to Frey's personal blogging, which contained a express disclaimer, was conducted outside working hours, and concerned matters over which Frey exercised no jurisdiction.

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully Submitted,

s/ Eugene Volokh
Attorney for *Amicus Curiae*

13

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,953 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2007 in 14-point Times New Roman.

Dated: February 10, 2014

s/ Eugene Volokh<br>
Attorney for Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 10, 2014.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: February 10, 2014

                                                 s/ Eugene Volokh
                                                 Attorney for Amicus Curiae