# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NADIA NAFFE, | ) U.S.C.A No. 13-55666 |
| Plaintiff-Appellant, | ) U.S.D.C. No. 12CV08443 |
| vs. | ) (CENTRAL DISTRICT OF CALIFORNIA) |
| JOHN PATRICK FREY, | ) |
| Defendant-Appellee. | ) |

## APPELLANT'S REPLY BRIEF

IREDALE & YOO, APC
EUGENE G. IREDALE, SBN: 75292
JULIA YOO, SBN: 231163
ATTORNEYS FOR PLAINTIFF/APPELLANT
NADIA NAFFE
105 West F Street, 4th Floor
San Diego, California, 92101
Phone (619) 233-1525

**TABLE OF CONTENTS**

I.   The District Court Erred in Dismissing the State
     Law Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.  Frey Acted Under Color of State Law to Threaten
     Nadia Naffe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

# TABLE OF AUTHORITIES

**Cases**

*Burns v. Anderson*, 502 F.2d 970 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Christensen v. Northwest Airlines Inc.* 633 5.2d 529 (9th Cir. 1980) . . . . . . . . . 5, 6

*Crum v. Circus Circus Enterprises* 231 F.3d 1129 (9th Cir. 2000) . . . . . . . . *passim*

*Flanagan v. Fanagan* 27 Cal 4th 766, 777 (2002) . . . . . . . . . . . . . . . . . . . . . . .  13

*Gaus v. Miles* 980 F.2d 564 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Geographic Expeditions Inc. v. Estate of Lhotka ex rel.
    Lhotka* 599 F.3d 1102 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Gill v. Allstate Insurance Co.*, 458 F.2d 577 (6th Cir. 1972) . . . . . . . . . . . . . . . . .  6

*Harris v. Rand* 682 F.3d 846 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283 (1983) . . . . . 4, 5,6

**Statutes & Codes**

California Civil Code § 1798.85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

California Penal Code § 632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

# I
## The District Court Erred in Dismissing the State Law Causes of Action

The complaint alleged that Frey published the transcript of plaintiff's deposition from a case in the U.S. District Court for the Middle District of Florida on his blog. (*Naffe v. Republican Party of Florida*, et al. Case No. 04CV01916) (ER00116)[1] Frey published personal identifying information including Ms. Naffe's Social Security number, date of birth, maiden name, mother's maiden name and family address. (*Id.*) The disclosure of plaintiff's Social Security number was in violation of California Civil Code § 1798.85. That law provides in relevant part that save for statutory exceptions not applicable here, a person may not publicly post or publicly display in any manner an individual's Social Security number. "Publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public.

Frey cannot reasonably claim that his disclosure of Ms. Naffe's Social Security number was a matter of legitimate public concern. He cannot reasonably argue that maliciously disclosing a person's Social Security number to expose them to harassment, fraud or theft by his followers is protected by the First Amendment.

---

[1] "ER" Refers to Appellant's Excerpts of Record. "AER" refers to Appellee's Excerpts of Record.

The complaint alleged that Frey knew that his readers included those who were filled with hatred toward Ms. Naffe. (*Id.*) On March 26, 2012, the day after Frey's publication, Ms. Naffe began receiving e-mail alerts from Experian, the credit reporting agency, explaining that changes had been made to her credit report. (ER001145) The Social Security number was publicly available for several weeks on an Internet web cache, even after it was removed from Frey's blog. (ER00117) Ms. Naffe continued to receive information that persons were fraudulently using her Social Security number. (*Id.*) The complaint alleged that Frey's publication of this personal identifying information was the cause of damage to Ms. Naffe, including emotional distress, aggravation of health issues and problems with her credit rating. (ER00121-22) Ms. Naffe sought compensatory and punitive damages. (ER00127)

At the behest of the District Court, Ms. Naffe submitted a declaration setting forth the damage caused by Frey's actions. Immediately after Frey's publication of her Social Security number, Experian began sending her alerts that changes were being made to her credit report. (ER001145) Although at the time she was a full-time student at Harvard University, and had no income, in August 2012 the IRS contacted her to inform her that several persons had used her Social Security number to report earned income. (*Id.*) In May 2012, a car dealership contacted her

2

regarding a potential car purchase with which she had no involvement. (*Id.*) She attributed depression, anxiety, migraine headaches, difficulty in concentration and a bleeding ulcer to her reaction to Frey's conduct. (*Id.*)

Despite the clear illegality of Frey's conduct, the allegation that he maliciously published her Social Security number to cause her harm and the specifics set forth in her declaration, the District Court ruled that Ms. Naffe had shown no "actual damages"; that her assertions about her "ailments" were "fairly vague and not supported by any corroborating evidence." (*Id.*) The District Court then held that: "Given the extent of the evidence Plaintiff has presented thus far, however, the Court would effectively have to conclude that any case seeking punitive damages and/or for attorney's fees automatically meets the $75,000 minimum, something the Court is unwilling to conclude." (ER001146)

The District Court erred as a matter of law in applying the wrong legal standard, which imposed upon plaintiff at the pleading stage the burden that Ms. Naffe justify her jurisdictional allegations by an evidentiary showing to a "preponderance of the evidence." This legal test was contrary to the law of this Circuit including *Crum v. Circus Circus Enterprises*, 231 F.3d 1129 (9th Cir. 2000) and *Geographic Expeditions Inc. v. Estate of Lhotka ex. rel. Lhotka* 599 F.3d 1102 1106 (9th Cir. 2010).

3

In this case, Ms. Naffe originally filed the suit in federal court. There is complete diversity of citizenship. Her allegation of the amount in controversy of greater than $75,000 controls, unless the claim is made in bad faith. Unless the District Court can determine under the "legal certainty" standard that the claim is really for less than the required jurisdictional amount in controversy, it may not dismiss the case. In *Crum v. Circus Circus Enterprises*, 231 F.3d 1129 (9th Cir 2000) the Court of Appeals reviewed the district court's dismissal for lack of subject matter jurisdiction *de novo*. Findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error. 231 F.3d at 1130

In *Crum v. Circus Circus Enterprises*, 231 F.3d 1129 (9th Cir 2000) the Court stated the clear legal rule which the district court failed to apply:

> District courts have jurisdiction in civil actions where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(a). Generally, the amount in controversy is determined from the fact of the pleadings. *See Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986). The sum claimed by the plaintiff controls so long as the claim is made in good faith. *See St. Paul Mercury Indem. Co.,* 303 U.S. at 288. "To justify dismissal, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Budget Rent-A-Car,* 109 F.3d at 1473 (quoting *St. Paul Mercury Indem. Co.,* 303 U.S. at 289.
> 231 F.3d at 1131

4

This Court's cases require that the "legal certainty" standard apply to allegations of jurisdictional amount in controversy. The legal test is set forth again in *Geographic Expeditions Inc. v. Estate of Lhotka,* 599 F.3d 1102 (9th Cir. 2010),:

> "A federal court has jurisdiction over the underlying dispute if the suit is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs (i.e., diversity jurisdiction). 28 U.S.C. § 1332(a). Where the plaintiff originally files in federal court, the amount in controversy is determined from the face of the pleadings. *Crum,* 231 F.3d at 1131 (9th Cir. 2000). The amount in controversy alleged by the proponent of federal jurisdiction-typically the plaintiff in the substantive dispute-controls so long as the claim is made in good faith. *Id.* To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. *Id.* (internal quotation omitted). This is called the 'legal certainty' standard, which means a federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount.' *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 292 (1983)" 599 F.3d at 1106

The District Court relied on *Christensen v. Northwest Airlines Inc.* 633 5.2d 529, 530-531 (9th Cir. 1980), *Gaus v. Miles* 980 F.2d 564, 567 (9th Cir. 2012) and *Harris v. Rand* 682 F.3d 846, 851, (9th Cir. 2012) in support of its decision to require Plaintiff to prove the jurisdictional threshold amount to survive a motion to dismiss. These cases do not support the trial court's ruling.

In *Christensen v. Northwest Airlines*, 633 F.2d 659 (9th Cir. 1980), the Court found that as a matter of law certain damages were unavailable, and that the claim of damages of over $10,000 was not made in good faith but only for the purpose of obtaining federal court jurisdiction. 633 F.2d at 530-53 In upholding the district court's dismissal, the *Christensen* court then applied the "legal certainty" standard eschewed by the district court in this case:

> "The District Court correctly held that appellant's claims of damages over $10,000 were not made in good faith but only for the purpose of obtaining federal court jurisdiction. *Christensen*, 455 F.Supp. at 494, 495. **It is clear to a legal certainty** that appellant's unliquidated tort claim could not sustain a judgment of over $10,000. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, (1938); *Burns v. Anderson*, 502 F.2d 970 (5th Cir. 1974); *Gill v. Allstate Insurance Co.*, 458 F.2d 577 (6th Cir. 1972); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971)." (emphasis added)

633 F.2d at 530-31

In this case the district court relied, *inter alia,* on *Gaus v. Miles* 980 F.2d 564 (9th Cir. 1992) But the Court in *Gaus* dealt with removal jurisdiction under 28 U.S.C. §1441. *Geographic Expeditions* specifically delineated the distinction between original and removal jurisdiction cases. In a case that has been removed to federal court from state court on the basis of diversity jurisdiction, the proponent of federal jurisdiction has the burden to prove "by a preponderance of

6

the evidence that removal is proper. See *Gaus v. Miles Inc*. 980 F.2d 564, 567 (9th Cir. 1992)" *Geographic Expeditions* at 1106-07 The preponderance standard applies because removal jurisdiction must be rejected if there is doubt in the first instance as to the propriety of removal. *Id.* The preponderance standard is appropriate in removal cases because the courts strictly construe the removal statute against removal jurisdiction. *Id.*

Finally, *Harris v. Rand* 682 F.3d 846 (9th Cir.) dealt only with the issue of diversity of citizenship and the requirement of a complaint's allegation of facts regarding a corporation's principal place of business. The *Harris* decision held that a complaint's factual allegations in support of diversity jurisdiction regarding a corporation's principal place of business "are entitled to a presumption of truth." 682 F.2d at 850-851. *Harris* did state that where allegations of a principal place of business are implausible, the district court may require more specific pleading. 682 F.3d at 851. If the district court has doubts that diversity of citizenship exists, it may insist that the jurisdictional facts be established and may demand that the party alleging jurisdiction justify its allegations by a "preponderance of the evidence." *Id.* The *McNutt* case, which *Harris* cites for this proposition, was decided in 1936, before the Federal Rules of Civil Procedure came into effect.

Even were the proper legal standard to be "preponderance of the evidence,"

7

Ms. Naffe clearly established that the $75,000 jurisdictional amount was satisfied. The district court stated that Ms. Naffe's was the only evidence before it with respect to damages and thus "purely as a mathematical matter, it obviously would satisfy a preponderance standard" (ER001145) Despite this finding, the district judge then posed several "questions" about the evidence. *Id.* He found Ms. Naffe's assertions "vague" and asked whether Frey should be liable for "death threats" issued by his followers and whether her claim of harm to her employment prospects may be considered since she was a full time student and had admitted to a role in wiretapping Maxine Waters' office. (ER001146) The district court then questioned whether it could consider punitive damages, "given the extent of the evidence presented thus far." (*Id.*)

The district court's speculation replaced fact finding based on the evidence it had requested to be submitted. A reasonable finder of fact could readily find at least $75,000 in damages for the stress and loss of peace of mind, caused by being the victim of identity theft and possible credit fraud, and being the subject of harassment by false reports of income to the IRS. A reasonable jury confronting the malicious release of birth date and Social Security information, in light of the circumstances of this case, could readily find substantial punitive damages. The application of the district court's stringent and dubious standard at the pleading

8

stage is unfair and unjustifiable. The district court's dismissal of the state law causes of action relied on a legally erroneous standard.[2] Factually, it was clearly in error.

## II
## Frey Acted Under Color of State Law to Threaten Nadia Naffe

Ms. Naffe agrees with the amicus that "government employees thus do not wear their employee hats at all times in all the things they say" (Amicus Brief p.13) Thus, Frey's criticisms of Ms. Naffe may be as vituperative as he wishes. Ms. Naffe agrees that his official position does not *ipso facto* transform them into acts under § 1983. But when a public prosecutor, after a complaint that alleges his misuse of public resources, responds with a threat of retribution reasonably interpreted not as mere animadversion or insult, but a threat of investigation or prosecution for criminal misconduct, he has crossed the line between permissible public comment into threat of retaliation which only his color of authority makes plausible. The issue presented here is not as Frey suggests, one of Nadia Naffe attempting to trench on his right to comment publicly about anything he wishes. It

---

[2]Frey's claim that a different legal standard applies depending on whether a party challenges the amount in controversy or the district court raises the issue *sua sponte* (Appellee's brief pp 38-41) is without any basis in law or reason. There is no rational basis to apply a different legal standard to the resolution of the same issue. In any event, once the District Court raised the issue, Frey enthusiastically and repeatedly urged it in multiple briefings.

is whether he may threaten and retaliate when she complains that he is misusing public resources in a campaign to vilify her, by making direct remarks to her that may reasonably be construed as threats of official retaliation. For purposes of the §1983 cause of action, Ms. Naffe explicitly disclaims any reliance on Frey's vitriolic insults.[3]

Frey argues in effect that a disclaimer allegedly located somewhere on his blog that he is acting in his private capacity only, means that he can never be acting under color of law regardless of the specific nature of any particular comment or threat. Frey tries to have it both ways: invoking his experience and position as a prosecutor to confront his cyberspace adversaries, but claiming he is

---

[3]Frey is hardly a latter-day Montaigne. His chief skill is invituperation and insult. His commentary on public events and persons includes the following: "...I have a message for this panel of Federal Judges-which the L.A. Times doesn't say and will never, ever say are all Democratic appointees: Honorable Laurance Karlton: Fuck you. Honorable Thelton Henderson: Fuck you, and you, the Right Honorable Stephen Reinhardt: Fuck you" (ER00104, 406-409)
"...Friedman's conclusion: we were all wrong, because O'Keefe really did engage in a 'wiretap plot.' His proof? A new 'FBI announcement' (actually a press release from the U.S. Attorney's Office from the Eastern District of Louisiana) shows that O'Keefe *intended to secretly record Landrieu's employees in a video sting.* You know: like he did at ACORN- which Brad claims violates "wiretap laws" and disingenuously labels "wiretapping."
**This is a fucking lie, and Brad Friedman is a fucking liar.** A "wiretap" is defined as "a concealed listening or recording device connected to a communications circuit." That definition does not apply to a simple undercover video sting - and Brad Friedman knows it. (emphasis in original) (ER00417)

acting only as a private citizen exercising his First Amendment rights when called to book:

> "You may have noticed that Naffe is now threatening to report me to the State Bar for this post, which is she claims, 'legal advice.' Because I point out holes in her story, she says, that constitutes 'legal advice' to James O'Keefe in a civil matter. She also falsely accuses me of updating the post during work hours.
> I have seen this playbook before, folks.
> By the way: given Naffe's admission that she accessed O'Keefe's emails, evidently without his permission, has she committed a crime? I offer no opinion on that, as this post (like all my posts!) is written in my private capacity, as an exercise of my rights as a private citizen under the First Amendment. I do wonder, however, whether the authorities are going to be investigating her for accessing O'Keefe's email without his permission.
> (ER 00422-23)

Since the accessing of the e-mails occurred in Los Angeles County, one may fairly ask whether the "authorities" might have included Frey's office.

Frey's argument is replete with claims that he is not a "wiretap" prosecutor; that the "task" of determining what criminal laws Ms. Naffe admitted to violating referred to a federal statute, which he had no authority to enforce. He badly misconceives the color of authority that is alleged. He threatened, in retaliation to punish and deter Ms. Naffe from her expression of First Amendment rights. Issues of federal or state prosecutorial authority do not matter. Whether Frey in fact

11

intended to prosecute or investigate does not matter. The question is whether Frey was using his position as a prosecutor to threaten and bully Ms. Naffe, a non lawyer who at one point referred to Frey as "U.S. District Attorney Patrick Frey." (ER00607) The issue is whether he used the color of law to intimidate, not whether he could or would prosecute Ms. Naffe in fact.

Frey's statements after his Tweet regarding his First "task" and publishing her Social Security number shows his intent to threaten to deter her from making a complaint about him. "She may just be starting to realize that she has made a series of mistakes that could land her in trouble. Maybe she's reconsidering..." (AER 34) Frey then wrote: "I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons" (*Id.*)

The fact is that a crime had been committed in the jurisdiction of the Los Angeles District Attorney, and that James O'Keefe was the person who committed it. California Penal Code § 632 provides as follows:

> (a) Every person who, intentionally and without the
> consent of all parties to a confidential communication,
> by means of any electronic amplifying or recording
> device, eavesdrops upon or records a confidential
> communication, whether the communication is carried
> on among the parties in the presence of one another or by
> means of a telegraph, telephone, or other device, except a

>  radio, shall be punished by a fine not exceeding two
>  thousand five hundred dollars ($2,500), or imprisonment
>  in the county jail not exceeding one year, or in the state
>  prison, or by both that fine and imprisonment.

In this regard, the term "wiretapping" used by the parties refers to non-consensual tape recording. The non consensual tape recording of a conversation with another person violates the statute. California case law construes "confidential" to mean no more than that the person being recorded does not know s/he is being recorded. *Flanagan v. Fanagan* 27 Cal 4th 766, 777 (2002). Frey's quibbles notwithstanding, he was in fact, attacking a witness to a violation of the Penal Code that had occurred in Los Angeles. Frey's office, had it chosen to do so, and had it obtained the evidence, could have prosecuted James O'Keefe, (which would have resulted in a revocation of his federal probation) Nadia Naffe could have been a prosecution witness (or a defendant).

The district court in its dismissal noted that: "Now, at oral argument, for the first time, plaintiff's counsel decided that Frey must have been referencing Penal Code Section 632." (ER001136) The Court overlooked the specific allegations of the first complaint, which stated:

>  Plaintiff is informed and believes and based thereon
>  alleges that as of at least February 28, 2012, Mr. Frey
>  and Mrs. Frey knew: (a) Plaintiff had evidence of
>  O'Keefe's wire tapping of Congresswoman Waters'

13

      office and the OneUnited Offices; (b) she was planning on coming forward with this evidence; (c) since the wiretapping occurred within the County's jurisdiction, Mr. Frey's, Mrs. Frey's and Cooley's office would likely receive the evidence; and (d) O'Keefe risked a prison sentence for violating his federal probation if plaintiff made the evidence available.

(ER 006)

    The very same allegations are in the First Amended Complaint (ER 00111-00112) The district court erred in refusing to allow this case to go forward.

### III
### Conclusion

    For the foregoing reason, Nadia Naffe requests that the Court reverse the order of dismissal, and remand this case to the District Court.


Dated: April 7, 2014                      BY: <u>s/ Eugene G. Iredale</u>
                                                       Eugene G. Iredale
                                                       Attorney for Plaintiff/Appellant
                                                       Nadia Naffe

**Form 8.    Certificate of Compliance Pursuant to 9th Circuit Rules 28-4, 29-2(c)(2) and (3), 32-2 or 32-4[1] for Case Number** 13-55666

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (check appropriate option):

☒ This brief complies with the enlargement of brief size permitted by Ninth Circuit Rule 28-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is 3584 words, 457 lines of text or 17 pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief complies with the enlargement of brief size granted by court order dated _____. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Rule 32-2 and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant: s/Eugene Iredale

("s/" plus typed name is acceptable for electronically-filed documents)

Date 04/07/2014

---

[1] If filing a brief that falls within the length limitations set forth at Fed. R. App. P. 32(a)(7)(B), use Form 6, Federal Rules of Appellate Procedure.

9th Circuit Case Number(s): 13-55666

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*******************************************************************************

## CERTIFICATE OF SERVICE
When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 04/07/2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format): s/ Eugene Iredale

*******************************************************************************

## CERTIFICATE OF SERVICE
When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format):